**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ANIMAL LEGAL DEFENSE FUND,** *et al.,* | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-2657-KHV-JPO** |
| | ) | |
| **LAURA KELLY,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiffs Animal Legal Defense Fund ("ALDF"), Center for Food Safety ("CFS"), Shy 38, Inc. ("Shy"), and Hope Sanctuary ("Hope") hereby respectfully submit this Memorandum in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The requested fee award is appropriate because Plaintiffs prevailed on the merits and vindicated the purposes of the Act. Plaintiffs seek a total recovery of attorneys' fees and expenses of $235,426.57,[1] which reflects a reasonable number of hours multiplied by reasonable billing rates, as detailed in this memorandum of law and the declarations and exhibits of Plaintiffs' counsel and expert witness, and Plaintiffs' documentation of those expenses.[2]

---

[1] Plaintiffs intend to supplement this total with the reasonable attorneys' fees for replying to the Defendants' response to this memorandum.

[2] Plaintiffs' have separately filed a Bill of Costs for $800.00 along with the required supporting materials.

Plaintiffs filed a timely Motion for Attorneys' Fees and Costs on February 5, 2020. Immediately thereafter, in compliance with Local Rule 54.2(a), Plaintiffs "promptly initiate[d] consultation with" the Defendants to determine if the fees and costs issue could be resolved without a contested motion. After Plaintiffs disclosed their attorney time sheets and proposed hourly rates, the parties engaged in several email exchanges to try to reach a mutually agreeable solution, but could not do so. Exhibit A, Declaration of Alan Chen in Support of Motion for an Award of Attorneys' Fees and Costs ("Chen Decl."), ¶26.[3] This Court granted three extensions of time so that these negotiations could take place, and this Memorandum is being filed by the current deadline, May 6, 2020.

## Background and Procedural History

On December 4, 2018, Plaintiffs filed this facial challenge to several sections of Kansas's farm animal and field crop and research facilities protection act, specifically Kan. Stat. §§ 47-1827(a), 47-1827(b), 47-1827(c)(1), (c)(2), (c)3, and (c)(4), and 47-1827(d)(1), which Plaintiffs have characterized throughout these proceedings as an "Ag-Gag" law. *See* Complaint, Dkt. #1, ¶¶ 42-59, 109. In their Complaint, Plaintiffs pled that the criminal punishment for violations of these provisions, Kan. Stat. § 47-1827(g), as well as its damages and restitution provision, Kan. Stat. § 47-1828, created or exacerbated a chilling effect that deterred them and their agents from conducting undercover investigations of commercial animal agricultural facilities in violation of their First Amendment rights or, in the case of Plaintiffs CFS, Shy, and Hope, preventing them from receiving information from such investigations. However, Plaintiffs did *not* directly

---

[3] In compliance with Local Rule 7.6, an index of exhibits submitted in support of this memorandum is included below. *See infra*, at 28.

2

challenge the constitutionality of the damages and restitution provision itself. Complaint, Dkt. #1, ¶¶ 108-114.

Throughout the litigation, counsel for Defendants have ably and aggressively represented their clients and defended the constitutionality of the Kansas Ag-Gag law. Indeed, upon filing their Answer, Defendants even expended time opposing Plaintiffs' motion to strike Defendants' jury demand, Dkt. #26, even though the Complaint on its face seeks only declaratory and injunctive relief. Dkt. #1, at ¶¶ 108-114. After these preliminary matters, the case proceeded apace through an in-person scheduling conference before Magistrate Judge O'Hara on March 1, 2019, the parties' initial disclosures, a discovery process that extended through June 28, 2019, and the preparation, pursuant to Local Rule 16.2, of a joint pretrial order. While discovery did not involve any depositions, the scope of the Defendants' requests resulted in the Plaintiffs reviewing and producing hundreds of pages of documents and responding to extensive requests for admission and interrogatories. Exhibit E, Declaration of Kelsey Eberly in Support of Motion for an Award of Attorneys' Fees and Costs, ¶¶7-8 ("Eberly Decl."). After the joint pretrial order was filed, but before entering into the summary judgment briefing process, Plaintiffs' counsel submitted a settlement proposal to the Defendants, but after a few weeks of exchanges, the parties were unable to come to an agreement. Chen Decl., ¶21. At that point, the parties prepared and submitted cross-motions for summary judgment, which addressed complicated issues of Article III standing as well as the complex First Amendment issues that were questions of first impression in this jurisdiction.

On January 22, 2020, this Court granted in part and denied in part Plaintiffs' Motion for Summary Judgment. In its opinion, the Court first declared that Plaintiffs did not have standing to challenge one of the Ag-Gag law's sections, Kan. Stat. § 47-1827(a). Plaintiffs had alleged that 1827(a) could be read to apply to undercover investigations that caused the type of *economic*

damage that might result from agricultural business lost because of Plaintiffs' disclosure of inhumane or unlawful conduct, but this Court held that that provision prohibits only *physical* damage. *Animal Legal Def. Fund v. Kelly*, No. CV 18-2657-KHV, 2020 WL 362626, at *8 (D. Kan. Jan. 22, 2020), Dkt. #63, ["*Kelly I*"]. In so doing, the Court effectively granted Plaintiffs part of the relief sought in their Prayer for Relief: that the Court, "In the alternative [to declaring the challenged sections unconstitutional], *declar[e] that the damage provision, Kan. Stat. § 47-1827(a) . . . do[es] not apply to the types of investigative activity* described in this Complaint and which Plaintiffs allege they would engage in but for the existence and enforceability of the Kansas Ag-Gag law." Complaint, Dkt. #1, ¶ 110 (emphasis added).

The Court also rejected Plaintiff CFS's alternative standing theory, which was based on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). *Kelly I*, at *12-*13. Furthermore, the Court concluded that Plaintiffs did not have standing to challenge § 47-1828, which authorizes a private right of action for anyone damaged by a violation of the Ag-Gag law. *Id.* at *13 ("Defendants assert that plaintiffs cannot satisfy the required element of causation because defendants are not responsible for enforcing Section 47-1828. Plaintiffs do not respond."). But, as indicated above, the Plaintiffs did not challenge the constitutionality of that section, which is why they opted not to respond.

Beyond these rulings, the Court went on to grant the Plaintiffs' motion for summary judgment by first concluding that Plaintiffs had standing to challenge each of the other provisions of the Ag-Gag law, holding that these provisions were each viewpoint- or content-based regulations of speech, and that they were therefore facially unconstitutional in violation of the First Amendment. *Id.* at *14-19. The resulting ruling and judgment granted almost every type of relief that the Plaintiffs had sought in their Complaint.

The one thing that Plaintiffs did not obtain in the January 22 Memorandum and Order was permanent injunctive relief. Accordingly, Plaintiffs quickly filed a Motion to Amend or Alter the Judgment, Dkt. #65, requesting that the Court amend the judgment to include a permanent injunction barring the enforcement of sections 1827(b), (c), and (d), and the parties fully briefed that motion. Defendants vigorously opposed this motion even though this Court had already granted Plaintiffs' summary judgment motion and declared those provisions to be unconstitutional. On April 3, 2020, this Court granted the Plaintiffs' Motion to Amend in full, and issued the requested permanent injunction. *Animal Legal Def. Fund v. Kelly*, No. CV 18-2657-KHV, 2020 WL 1659855, at *3 (D. Kan. Apr. 3, 2020), Dkt. #73 ("*Kelly II*"). Thus, Plaintiffs' lawsuit has been a complete success.

## Argument

Plaintiffs seek to recover their attorneys' fees and costs under 42 U.S.C. § 1988. *See id.* § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"). Although the statutory language requires this Court's discretion, the Supreme Court has stated that plaintiffs in civil rights cases "should ordinarily recover an attorney's fee" whenever they prevail. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted). Similarly, as the Tenth Circuit has noted, "when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

Congress enacted 42 U.S.C. § 1988 to ensure "effective access to the judicial process" for persons with civil rights grievances, H.R. Rep. No. 94-1558, at 1 (1976), and the Supreme Court has affirmed this statutory purpose. *Hensley*, 461 U.S. at 429. This purpose will not be achieved

unless prevailing plaintiffs' counsel recover a fee "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

This fee analysis begins by determining the lodestar amount, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The first step in calculating such a reasonable fee is determining a reasonable number of hours spent on the litigation. *Malloy v. Monahan*, 73 F.3d 1012, 1017 (10th Cir. 1996). The second step is "multiplying the hours by a reasonable rate." *Id.* at 1018. "A reasonable rate is the prevailing market rate in the relevant community." *Id*. The lodestar amount is presumed to be a reasonable fee. *Blum v. Stetson*, 465 U.S. 886, 897 (1984); *see also Malloy*, 73 F.3d at 1018. Furthermore, as the Supreme Court has recognized, unless plaintiffs' attorneys recover fees for "*all* hours reasonably expended on the litigation," victims of civil rights abuse will find it difficult to attract competent counsel. *Hensley*, 461 U.S. at 435 (emphasis added).

The district court may consider other factors, including the results obtained, in adjusting the fee upward or downward. *Hensley*, 461 U.S. at 434. The most critical factor in determining the reasonableness of a fee award is "the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). If a "plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" which encompasses all hours reasonably spent on the litigation and, where justified, may include an enhanced award. *Hensley*, 461 U.S. at 435.

## I.     Plaintiffs Are the Prevailing Parties

There can be no dispute that Plaintiffs are the "prevailing parties" in this action under section 1988(b) and are thus entitled to an award of reasonable attorneys' fees and expenses. If the degree of success obtained is the "most critical factor," *Hensley*, 461 U.S. at 436, here the

Plaintiffs' success was complete. A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997) (quoting *Farrar*, 506 U.S. at 109, 111-12); *see also Hall v. W. Prod. Co.*, 988 F.2d 1050, 1055 (10th Cir. 1993) (holding that a plaintiff prevails if she "has succeeded on any significant issue in litigation which achieved some of the benefits the parties sought in bringing the suit" (internal quotation marks and alterations omitted)).

Plaintiffs achieved their singular goal in the litigation: to have the challenged provisions of the Kansas Ag-Gag law enjoined as unconstitutional so that they could exercise their First Amendment rights related to undercover investigations in Kansas. *See Kelly I*, Dkt. #63; *Kelly II*, Dkt. #73. As described above, Plaintiffs prevailed on virtually all of their claims, and even where they did not, they effectively secured the relief they sought. *See supra*, Background and Procedural History; *see Robinson*, 160 F.3d at 1283 (declaring plaintiffs who secured a permanent injunction in a First Amendment religion clause case as prevailing parties because they "won virtually everything that they sought.").

For the reasons that follow, the fees and expenses Plaintiffs have requested in this petition are reasonable.

## II.      The Amount of Requested Fees is Reasonable

As explained in this section, Plaintiffs seek an award of attorneys' fees that is based on: (1) the current market rate for Kansas City, Kansas for counsel with comparable experience and expertise; (2) the reasonable number of hours expended on this complicated First Amendment case; and (3) a 10% enhancement to the lodestar amount for five of Plaintiffs' lawyers who came into this case with substantial expertise and experience litigating Ag-Gag challenges; (4) fees for

a paralegal and two student law clerks who worked on this litigation; (5) Plaintiffs' reasonable attorneys' fees expended in negotiating and litigating their motion for attorneys' fees; and (6) their costs.

### A.      Calculation of Hourly Billing Rates

A reasonable hourly rate is a rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 & n.11. The prevailing market rate applies "*regardless of whether plaintiff is represented by private or nonprofit counsel.*" *Id.* at 895 (emphasis added); *accord Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012). Courts typically determine the reasonable rate by defining the relevant legal market and then setting reasonable rates for comparably experienced attorneys within that market. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds, Pennsylvania v. Del. Valley Citizens' Council For Clean Air,* 483 U.S. 711, 725 (1987).[4] Thus, a reasonable rate will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria. *See id.* The appropriate hourly rate should "reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." *Id.*; *accord O Centro Espirita Beneficente União Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1078 (D.N.M. 2018).

The evidence submitted by Plaintiffs amply supports the requested rates and conforms to instructions from the courts as to how an applicant establishes a market rate. Plaintiffs seek rates within the range of market rates routinely awarded to counsel of comparable skill, experience, and

---

[4]  The Supreme Court's decision in that case disapproves only of *Ramos*'s consideration of risk of loss as a reason to grant an enhancement of an attorneys' fee award, but not other parts of the *Ramos* decision. Here, Plaintiffs do not seek a risk of loss enhancement.

reputation in the Kansas City, Kansas legal market. *See* Exhibit I, Declaration of Tai J. Vokins in Support of Motion for an Award of Attorneys' Fees and Costs ("Vokins Decl."), ¶8.

A total of ten attorneys worked on Plaintiffs' representation in this case, though Plaintiffs seek fees only for the time of eight of those attorneys.[5] Furthermore, only three of those lawyers (Chen, Strugar, and Eberly) were primarily responsible as lead counsel. Chen Decl., ¶17.

In terms of the reasonableness of the requested hourly rates, it should also be noted that none of Plaintiffs' out-of-state counsel seeks a home-market rate, which for most of them would have been substantially higher than Kansas City, Kansas rates (Los Angeles, Washington, D.C., Denver, San Francisco Bay Area), Vokins Decl., ¶10, even though the Tenth Circuit has recognized that in cases involving politically-charged issues that local lawyers may be reluctant to take on and that required special expertise—such as this case—the courts may consider using attorneys' home-market rates. *Ramos*, 713 F.2d at 555.

While basing their claim on Kansas City, Kansas market rates, Vokins Decl., ¶8, Plaintiffs note that in setting the appropriate rate, courts have held that special expertise may be required in First Amendment cases. *See, e.g., Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (finding district court did not abuse its discretion when it "noted the attorneys had expertise in First Amendment litigation, which provided additional support for higher hourly rates"); *O Centro Espirita*, 343 F. Supp. 3d at 1085 (awarding above-market rate because attorney had special experience litigating Religious Freedom Restoration Act cases). Taking these factors into account, the rates Plaintiffs' counsel request are well within the range of Kansas City, Kansas market rates for attorneys with similar qualifications and experience. Vokins Decl., ¶8.

---

[5] Plaintiffs have written off 4.4 hours of time for two attorneys, George Kimbrell and Amy Van Saun from the Center for Food Safety, whose total amount billed would have been $1,660. Chen Decl., ¶21.

As detailed in their declarations, many of Plaintiffs' counsel are distinguished, highly experienced litigators with considerable specialized expertise in First Amendment litigation. *See* Chen Decl., ¶12; Exhibit B, Declaration of Matthew Strugar in Support of Motion for an Award of Attorneys' Fees and Costs, ¶¶2-3 ("Strugar Decl."); Exhibit C, Declaration of Justin Marceau in Support of Motion for an Award of Attorneys' Fees and Costs, ¶5 ("Marceau Decl."); Exhibit D, Declaration of David Muraskin in Support of Motion for an Award of Attorneys' Fees and Costs, ¶¶13-15 ("Muraskin Decl."); Eberly Decl., ¶¶5-6. Indeed, Plaintiffs' counsel brought specialized and virtually unique expertise to this litigation. As explained below, this combined expertise saved Plaintiffs' counsel substantial time in this litigation, especially as compared to challenges to other states' Ag-Gag laws. The complex and novel issues presented in this case, coupled with the expertise of Plaintiffs' counsel, justify their requested hourly rates.

The proposed rates are listed in the table below and are drawn from these factors as well as the assessment of Plaintiffs' expert witness, who reviewed the case materials, time sheets, and experience of each of these attorneys. Vokins Decl., ¶8.[6]

| Attorney | Hourly rate |
| --- | --- |
| Alan Chen (University of Denver) | $600 |
| Matthew Strugar (Private public interest firm) | $400 |
| Justin Marceau (University of Denver) | $400 |
| David Muraskin (Public Justice) | $325 |
| Amanda Howell (ALDF) | $325 |
| Kelsey Eberly (ALDF) | $275 |
| Michael Moss (local counsel) | $250 |
| Alene Anello (ALDF) | $250 |

---

[6] Three of Plaintiffs' attorneys, Chen, Strugar, and Marceau, entered into a retainer agreement with Plaintiff ALDF to be compensated for their attorney time at a (non-profit discounted) rate of $150/hour, with the agreement that, should an award of attorneys' fees be made to these attorneys, $150/hour would be reimbursed to ALDF, but any fee award above $150/hour would be recovered by these attorneys at their standard hourly rate. Chen Decl., ¶24; Strugar Decl., ¶10; Marceau Decl., ¶12.

**B.      The Number of Hours Expended on the Litigation Was Reasonable**

Plaintiffs are entitled to compensation for all time "reasonably expended on the litigation." *Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 242 (1985) (quoting *Hensley,* 461 U.S. at 433); *see also Hensley*, at 440 (explaining that there is a presumption that the prevailing party will be compensated for all hours reasonably expended by its attorneys). Time is reasonably expended when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986), *supplemented,* 483 U.S. 711 (1987) (internal citation and quotations omitted). This includes all time spent in establishing entitlement to an amount of fees awardable under § 1988. *See Love v. Mayor of Cheyenne*, 620 F.2d 235, 237 (10th Cir. 1980).

The goal of fee shifting "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1980) (finding that "fee award[s] presumptively encompass[ ] all aspects of the civil action," and while "the parties' postures on individual matters may be more or less justified . . . fee-shifting statutes . . . favor[] treating a case as an inclusive whole, rather than as atomized line-items"). Thus, courts "need not, and indeed should not, become green-eyeshade accountants" in evaluating the reasonableness of the hours billed. *Vice*, 563 U.S. at 838.

Furthermore, as a general rule, courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). This rule applies with particular force in civil rights litigation, where compensation is contingent on victory, giving little incentive to bill excessive time. Moreover, Messrs. Chen and Marceau performed their work on this case above

11

and beyond their full-time positions as law professors, similarly making them unlikely and unable to bill excessive hours in this matter.

"[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning." *Id.* at 1112; *see also Seay v. Berryhill*, No. 5:16-CV-05096-VLD, 2018 WL 3014111, at *4 (D.S.D. June 15, 2018) ("[I]t is highly unlikely that an attorney will spend unnecessary time on a contingent fee case in the hopes of inflating a later fee award. The nature of contingent fee cases requires that attorneys hone their efficiency—the lawyer who doesn't do so soon finds him- or herself unable to earn a living.").

Finally, as stated above, Defendants' counsel were vigorous in opposing the Plaintiffs' case at every turn. Plaintiffs' expert fee witness, Tai J. Vokins, attests that this is typical of the Kansas Attorney General's office's practice. Vokins Decl., ¶¶5, 12. While well within the bounds of zealous advocacy of their clients, defense counsel's approach to the litigation caused Plaintiffs' counsel to expend additional hours to defend their case. As the Tenth Circuit has noted, "the Supreme Court has also recognized that part of an attorney's calculus of the amount of time reasonably necessary for a case is the vigor which the opponents bring to the dispute." *Robinson*, 160 F.3d at 1284 (*citing City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986)).

### 1. Plaintiffs Staffed this Case Efficiently

All of Plaintiffs' counsel's time was reasonably spent to achieve the eventual result.[7] Plaintiffs have provided contemporaneously-recorded time records with sufficient detail of what

---

[7] Since Plaintiffs filed their Motion for Attorneys' Fees and Costs, attorneys Chen, Strugar, and Eberly spent additional time on the merits in litigating a crucial aspect of this case, which was their successful Motion to Amend or Alter the Judgment to include permanent injunctive relief. *See*

was done on each entry.[8] *See Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.").

Plaintiffs' counsel litigated this case efficiently and without unnecessary duplication of effort. As detailed below, many of Plaintiffs' counsel are also counsel on challenges to similar laws in other states. By using lawyers with expertise on the novel and complex issues involved in this litigation, Plaintiffs avoided billing many hours that would have been involved had they used less experienced counsel.

For instance, in the challenge to the Utah Ag Gag statute, the plaintiffs' counsel at this stage of the litigation (successfully obtaining summary judgment and submitting their opening brief of a motion for attorneys' fees) incurred 956.65 hours. Exhibit A to Strugar Decl. ISO Motion for Attorney's Fees, ECF No. 207-1, *Animal Legal Def. Fund v. Herbert*, 2:13-cv-00679-RJS (D. Utah). At this same stage in the Idaho Ag-Gag litigation, the plaintiffs' counsel incurred more than 980 hours. *See* Exhibit B to Strugar Decl. ISO Motion for Attorney's Fees Brief in Support of Plaintiffs' Motion for Attorneys' Fees, ECF No. 118-2, *Animal Legal Def. Fund v. Otter*, 1:14-cv-104-BLW (D. Idaho) at 11-12. As time passes, Plaintiffs' counsel have become much more efficient because of their experience.

---

*Kelly II*, Dkt. #73. Those hours have been added to their original totals, which is why, along with the hours expended on the negotiation and litigation of the attorneys' fees request, the total fees requested in this Memorandum are greater than the amount set forth in the original fees motion.

[8] *See* Chen Decl., Attachments 1 & 2; Strugar Decl., Attachments 1 & 2; Marceau Decl., Attachment 1; Muraskin Decl., Attachment 1; Eberly Decl., Attachments 1 & 2; Exhibit F, Declaration of Michael Moss ("Moss Decl."), Attachment 1; Exhibit G, Declaration of Amanda Howell in Support of Motion for an Award of Attorneys' Fees and Costs, Attachment 1; Exhibit H, Declaration of Alene Anello in Support of Motion for an Award of Attorneys' Fees and Costs, Attachment 1.

The attorneys on this case worked collaboratively and did not engage in excessive or duplicative work. *See* Chen Decl., ¶22. One attorney took the lead in drafting each brief or sections of each brief and the others reviewed, revised, and strategized around that initial work. Because Plaintiffs' attorneys had to engage in a substantial amount of strategic decision making, legal research and analysis, drafting, editing, and communication to litigate this case, all Plaintiffs' attorneys were involved in at least consulting on most of the briefing. But the work was not excessive, duplicative, or redundant. To the contrary, the work product was invariably improved, making for a more effective and straightforward presentation of issues and arguments. These improvements, in turn, led to a clearer and more streamlined process for the Court and the parties.

| Attorney | Raw hours total (merits) |
|---|---|
| Alan Chen (University of Denver) | 160.3 |
| Matthew Strugar (Private public interest firm) | 57.4 |
| Justin Marceau (University of Denver) | 31 |
| David Muraskin (Public Justice) | 17.4 |
| Amanda Howell (ALDF) | 78 |
| Kelsey Eberly (ALDF) | 151.2 |
| Michael Moss (local counsel) | 52.3 |
| Alene Anello (ALDF) | 4.8 |
| **TOTAL RAW HOURS** | 552.4 |

In addition, Plaintiffs' counsel attempted at several stages of the litigation to streamline the process, initially by suggesting that little or no discovery would be necessary, Chen Decl., ¶20, and spent significant time trying to narrow the legal and factual issues through their proposed draft pretrial order, but Defendants did not agree to either of those paths. *Id.*

### 2. Plaintiffs Have Exercised Substantial Billing Judgment

In determining the number of hours reasonably expended on this action, counsel for Plaintiffs exercised significant billing judgment to eliminate the possibility of billing for duplicative or unproductive time. *See Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). For

example, Mr. Chen charged only one half the hours for his travel time to Kansas City to participate in the Initial Scheduling Conference, which he was required by the Court to attend in person. Chen Decl., ¶19 & Attachment 5. Plaintiffs have completely written down the time for two of the counsel of record in this case: George Kimbrell and Amy Van Saun of the Center for Food Safety. Chen Decl., ¶22. In addition, Plaintiffs' counsel have adjusted their hours downward by a total of nearly 73.3 billable hours, or 13 percent, as reflected in the following chart:

| Attorney | Raw hours total (merits) | Hours total after billing judgment | Percentage cut |
|---|---|---|---|
| Alan Chen (University of Denver) | 160.3 | 148 | 8% |
| Matthew Strugar (Private public interest firm) | 57.4 | 51.1 | 11% |
| Justin Marceau (University of Denver) | 31 | 26 | 16% |
| David Muraskin (Public Justice) | 17.4 | 14.8 | 15% |
| Amanda Howell (ALDF) | 78 | 51.7 | 34% |
| Kelsey Eberly (ALDF) | 151.2 | 132.7 | 12% |
| Michael Moss (local counsel) | 52.3 | 50 | 4% |
| Alene Anello (ALDF) | 4.8 | 4.8 | 0% |
| **TOTAL RAW HOURS** | 552.4 | 479.1 | 13% |

Similarly, no time is included in the request for clerical and administrative matters. That said, the fee request includes attorney time that was required due to necessities of the case, including propounding and responding to written discovery and briefing cross motions for summary judgment in a case that could most likely have been decided purely on the law. "'The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1146 (10th Cir. 2006) (quoting *City of Riverside*, 477 U.S. at 580 n.11).

The hours expended by Plaintiffs' counsel on the litigation were reasonable and necessary to achieve the positive and completely successful outcome. Any arguments by the State to the contrary should be rejected, particularly line-item attacks on the billings with the luxury of time

and hindsight and a lack of perspective on the realities of what it took to succeed in this case of significant nationwide importance.

### C.    Plaintiffs' Total Hours and Unadjusted Lodestar on the Merits Stage

The total number of hours for which compensation is requested (excluding hours spent on this fee motion) is 479.1, resulting in an unadjusted lodestar of $191,445. The unadjusted lodestar calculations are compiled in this table:

| Attorney | Grad year | Raw Hours | Adjusted Hours | Rate | Lodestar before Enhancement |
|----------|-----------|-----------|----------------|------|-----------------------------|
| Alan Chen (Univ. of Denver) | 1985 | 160.3 | 148 | $600 | $88,800 |
| Matthew Strugar (Private public interest firm) | 2004 | 57.4 | 51.1 | $400 | $20,440 |
| Justin Marceau (Univ. of Denver) | 2004 | 31 | 26 | $400 | $10,400 |
| David Muraskin (Public Justice) | 2009 | 17.4 | 14.8 | $325 | $4810 |
| Amanda Howell (ALDF) | 2011 | 78 | 51.7 | $325 | $16,802.50 |
| Kelsey Eberly (ALDF) | 2014 | 151.2 | 132.7 | $275 | $36,492.50 |
| Michael Moss (local counsel) | 2006 | 52.3 | 50 | $250 | $12,500 |
| Alene Anello (ALDF) | 2016 | 4.8 | 4.8 | $250 | $1200 |
| **TOTAL** | | 552.4 | 479.1 | | **$191,445** |

There is a presumption that this is a reasonable fee in a civil rights case. *See Perdue*, 559 U.S. at 553-54 (presumption that the lodestar is reasonable). The most important factor in determining appropriate attorneys' fees is the degree of success that the attorneys have obtained for their clients. *Farrar*, 506 U.S. at 114.

As described in the argument that Plaintiffs were the prevailing parties, *supra*, Argument, Section I, the Plaintiffs achieved virtually complete success in this litigation. This Court declared all but one of the challenged provisions of the Kansas Ag-Gag law to be facially unconstitutional in violation of the First Amendment and enjoined their enforcement, and issued an authoritative interpretation of the other challenged provision, 47-1827(a), to not apply to undercover investigations. The precedent set by this case will bolster the legislative fight to prevent similar

bills from being introduced or passed in other states and will advance litigation against other states' existing laws. Accordingly, Plaintiffs are entitled to fully recover the reasonable attorneys' fees that have been requested.

## III. Plaintiffs' Requested Lodestar Enhancement is Reasonable

While the lodestar provides "'the most useful *starting point* for determining the amount of a reasonable fee,'" *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988) (quoting *Hensley*, 461 U.S. at 434) (emphasis added), in cases of "exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435; *see also Perdue*, 559 U.S. at 552. While factors like complexity and attorney performance are best considered in setting an attorney's reasonable hourly rate and not in justifying an enhancement, the lodestar method was never intended to "be conclusive in all circumstances." *Perdue,* 559 U.S. at 553. Other factors, including the results obtained, can support an enhancement of the base lodestar. *Hensley*, 461 U.S. at 435.

This is an exceptional case in which an enhancement is justified. Plaintiffs changed Kansas law by invalidating an unconstitutional prohibition that criminalized undercover investigations in and reporting on our nation's food supply. And they achieved exceptional results. By securing facial invalidation of the challenged statute, Plaintiffs vindicated not just their own rights but the First Amendment rights of all whistleblowers and media organizations seeking to report on food production in one of the nation's most heavily agricultural states. This success captured attention reflected in regional and national media coverage.[9] This coverage demonstrates that this case was exceptional in comparison to typical federal litigation, in Kansas or elsewhere.

---

[9] *See*, *e.g.*, Roxana Hegeman, *Court: Kansas "Ag-Gag" unconstitutionally bans free speech*, ASSOCIATED PRESS, Jan. 22, 2020, https://apnews.com/b897b5d3ec2364cfd60fc58bd56948f3; Kelsey Piper, *Kansas's ag-gag law has been ruled unconstitutional*, VOX, Jan. 23, 2020, https://www.vox.com/future-perfect/2020/1/23/21078810/kansas-animal-abuse-law-unconstitutional-factory-farming; Cathy Siegner, *Kansas federal judge finds most of the state's*

The exceptional nature of this case is also demonstrated by the few attorneys who are willing to take on this type of litigation. Plaintiffs' legal team are the only lawyers to have filed challenges to any state Ag-Gag laws. Few plaintiffs' attorneys are willing to take on litigation for politically unpopular activists on contingency without the opportunity of obtaining an enhancement. *See* Vokins Decl., ¶13. Thus, it is particularly difficult to find local counsel who are willing to challenge legislative acts meant to protect agribusiness and punish animal rights activists. *Id*. Awarding fee enhancements in cases such as this one ensures that meritorious cases will be brought to enforce important constitutional rights, despite the risks involved. The potential for such an enhancement in the event of complete success ensures that civil rights plaintiffs will not face substantial difficulty in finding counsel.

---

*'ag-gag' law unconstitutional*, FOOD DIVE, Jan. 28, 2020, https://www.fooddive.com/news/kansas-federal-judge-finds-most-of-states-ag-gag-law-unconstitutional/571180/; Jane Wolfe, *Court Strikes Down Unconstitutional Kansas 'Ag Gag' Law*, LADY FREETHINKER, Jan. 27, 2020, https://ladyfreethinker.org/court-rules-law-criminalizing-factory-farm-videos-and-photographs-unconstitutional/; Dan Flynn, *Kansas becomes 4th state with unconstitutional "ag-gag" law*; FOOD SAFETY NEWS, Jan. 29, 2020, https://www.foodsafetynews.com/2020/01/kansas-becomes-4th-state-with-unconstitutional-ag-gag-law/; Charlotte Pointing, *The Oldest 'Ag-Gag' Law in the U.S. Ruled Unconstitutional*, LIVE KINDLY, Feb. 3, 2020, https://www.livekindly.co/oldest-ag-gag-law-unconstitutional/; Nicole Axworthy, *Kansas Court Deems America's Oldest Ag-Gag Law Unconstitutional*, VEG NEWS, Feb. 5, 2020, https://vegnews.com/2020/2/kansas-court-deems-america-s-oldest-ag-gag-law-unconstitutional; Jacqui Fatka, *Oldest 'ag-gag' law struck down*, FEEDSTUFFS, Feb. 12, 2020, https://www.feedstuffs.com/news/oldest-ag-gag-law-struck-down; Todd Neeley, *Kansas 'Ag-Gag' Law Permanently Blocked*, PROGRESSIVE FARMER, Apr. 6, 2020, https://www.dtnpf.com/agriculture/web/ag/news/article/2020/04/06/animal-rights-groups-receive-kansas; Erica Shaffer, *Federal court strikes down Kansas 'ag-gag' law*, MEAT+POULTRY, Jan. 27, 2020, https://www.meatpoultry.com/articles/22531-federal-court-strikes-down-kansas-ag-gag-law; Associated Press, *Court permanently bans enforcement of 'ag-gag' law*, ASSOCIATED PRESS, Apr. 3, 2020, https://apnews.com/e5a3a2be0e2d6db40cba10ccea52d8e; Brook Duer and Audry Thompson, *Animal Welfare: Federal Court Strikes Down Kansas Agricultural Protection Law*, PENN STATE AGRICULTURAL LAW BLOG, Feb. 3, 2020, http://www.pennstateaglaw.com/2020/02/agricultural-law-weekly-reviewjanuary.html; Martina Barash, *Kansas 'Ag Gag' Law Unconstitutionally Limits Speech, Court Says*, BLOOMBERG LAW, Jan. 23, 2020, https://news.bloomberglaw.com/us-law-week/kansas-ag-gag-law-unconstitutionally-limits-speech-court-says.

Based on the foregoing, Plaintiffs request a 10% enhancement of the attorneys' fees for attorneys Chen, Strugar, Marceau, Muraskin, and Eberly, for the merits portion of this litigation only. Not only is such enhancement appropriate under the circumstances but it is also necessary to attract skilled practitioners to important civil rights cases like this one. These five attorneys each have specialized experience in this area. With very minor exceptions,[10] they have been counsel in every case challenging state Ag-Gag laws, including the challenge to Utah Code § 76-6-112 in *Animal Legal Def. Fund v. Herbert*, 263 F. Supp. 3d 1193 (D. Utah 2017), the challenge to Idaho Code § 18-7042 in *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018), the challenge to North Carolina General Statutes § 99A-2 in *PETA, Inc. v. Stein*, 737 F. App'x 122 (4th Cir. 2018), the challenge to § 47-1827 at issue in this matter, and the challenge to Arkansas Code § 16-118-113 in *Animal Legal Def. Fund  v. Vaught*, Case 4:19-cv-00442-JM (E.D. Ark. 2019). By litigating the only other cases that directly implicated the issues in this action, these attorneys brought specialized expertise to this litigation that was unavailable not just in the Kansas City, Kansas legal market, but also anywhere else. With that experience, Plaintiffs were able to litigate this case to resolution expending far fewer hours in the litigation than other counsel would have been forced to spend, as well as far fewer hours than were spent in litigating the Utah and Idaho cases to resolution.

In addition to their experience in litigating challenges to substantially similar laws in other states, Messrs. Chen, Marceau, Strugar, and Muraskin are each experienced First Amendment

---

[10] Chen did not directly represent the Plaintiffs in the *Stein* case, but acted as a consultant to the legal team prior to filing and also submitted, along with other constitutional law experts, an amicus curiae brief in support of the Plaintiffs in the Fourth Circuit. Chen Decl., ¶12; Eberly did not participate in the Utah case and joined the team in the Idaho case when it was on appeal in the Ninth Circuit. Eberly Decl., ¶5. Muraskin did not participate in the Idaho Ag-Gag case and represented amicus Center for Food Safety in the Utah Ag-Gag case. Muraskin Decl., ¶14.

litigators. Chen Decl., ¶12; Marceau Decl., ¶5; Strugar Decl., ¶¶2-3; Muraskin Decl., ¶¶13-15. Messrs. Chen and Marceau are also the leading scholars on the issues presented in this lawsuit. They authored the leading law review article on the interplay of developing Supreme Court precedent on the First Amendment's application to lies, which was the central legal issue in this challenge, as well as the leading article on the free speech implications of audiovisual recording implicated by Ag-Gag laws. Messrs. Chen and Marceau have been regularly invited to present their work at, among other conferences and CLEs, an annual free speech conference hosted at Yale Law School. *See* Chen Decl., ¶9; Marceau Decl., ¶¶5-6.

Mr. Strugar is the former Director of Litigation for People for the Ethical Treatment of Animals, where his practice focused on the intersection of the First Amendment and animal law and advocacy. His private practice focuses on matters that involve First Amendment, government transparency, and related interests for animal rights and other social movements. He has represented clients on First Amendment and other constitutional issues in state and federal courts in California, New York, Mississippi, Ohio, Virginia, Illinois, North Carolina, Idaho, Utah, Wyoming, and Kansas, as well as in the Ninth and Third Circuit Courts of Appeal and the United States Supreme Court. Strugar Decl., ¶¶2-6.

Mr. Muraskin is the Litigation Director of the Food Project at Public Justice, where he engages in public interest litigation exclusively relating to industrial animal agriculture, which involves a substantial amount of First Amendment litigation. He is currently the lead counsel in the cases challenging the constitutionality of Ag-Gag laws in North Carolina and Arkansas. Furthermore, he served as lead counsel in a challenge to the Wyoming Data Trespass law, which operates in a manner highly similar to the other Ag-Gag laws in that it deters lawful investigative conduct. *See W. Watersheds Project v. Michael*, 869 F.3d 1189 (10th Cir. 2017); *W. Watersheds*

*Project v. Michael*, 353 F. Supp. 3d 1176 (D. Wyo. 2018). For his work on this important matter, he was awarded the National Press Photographers Association's 2019 First Amendment Award. Muraskin Decl., ¶¶2, 12, 14.

Although less experienced, Ms. Eberly has been engaged in Ag-Gag litigation for the past three years of her time as a staff attorney with the ALDF, and such litigation has occupied the most substantial part of her work. Eberly Decl., ¶¶5-6.

| Attorney | Lodestar before Enhancement | Lodestar plus 10% enhancement |
|----------|------------------------------|-------------------------------|
| Alan Chen (Univ. of Denver) | $88,800 | $97,680 |
| Matthew Strugar (Private public interest firm) | $20,440 | $22,484 |
| Justin Marceau (Univ. of Denver) | $10,400 | $11,440 |
| David Muraskin (Public Justice) | $4810 | $5291 |
| Kelsey Eberly (ALDF) | $36,492.50 | $40,141.75 |

## IV.    Plaintiffs are Entitled to Fees for Paralegal and Law Student Work in this Litigation

Under § 1988, the Court may also award separate fees for services conducted by paralegals and student law clerks, as long as those costs are not already reflected in the overhead that is built into the lawyers' rates. *Ramos*, 713 F.2d at 558-59; *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (fees for paralegals and law clerks should be determined by "multiplying reasonable hours by reasonable rates to reach a 'lodestar' amount."). A total of two paralegals and three law students worked for Plaintiffs in this case, but Plaintiffs seek compensation for only one of those paralegals, and two of those students.[11] The paralegal is employed by local counsel's law firm and her work is typically billed out separately to clients.

---

[11] Plaintiffs have completely written off the 4.5 hours of time for paralegal, Russell Howze, from the Center for Food Safety, whose total amount billed would have been $562.50 and 40 hours of time for University of Denver law student Laura Martinez, whose total amount billed would have been $5000. Chen Decl., ¶22.

Moss Decl., ¶10. The law clerks were students of Chen's, who does not have a firm and therefore does not typically bill out students' time in other litigation matters. Chen Decl., ¶23. Moss and Chen have reviewed the hours of the paralegal and law students, respectively, and have determined that they are reasonable. Moss Decl., ¶10; Chen Decl., ¶23. Plaintiffs seek compensation in the following amounts for that work.

| Paralegals/Law Clerks | Hours | Hourly rate | Total |
| --- | --- | --- | --- |
| Jennifer Schlemmer (paralegal for local counsel) | 3.7 | $125 | $462.50 |
| Jennifer Regier (University of Denver law student) | 4 | $125 | $500 |
| Richard Barahona (University of Denver law student) | 20.3 | $125 | $2537.50 |
| **TOTAL** | | | **$3500.00** |

## V.  Plaintiffs Are Entitled to Fees for Litigating This Motion

Plaintiffs are also entitled to recover for attorneys' fees for the time spent preparing this fee motion. *See Love*, 620 F.2d at 237. For work on this motion, Plaintiffs seek fees for the three lawyers primarily responsible for negotiation, research, and drafting—Alan Chen, Matthew Strugar, and Kelsey Eberly—at hourly rates of $600, $400, and $275, respectively. Chen Decl., ¶28; Strugar Decl., ¶¶8-9; Eberly Decl., ¶11. As with counsel's hours spent litigating the merits of this case, these figures represent the exercise of billing discretion, excluding time spent preparing declarations in support of this motion, as well as time spent by other Plaintiffs' attorneys' reviewing this draft.

Furthermore, Plaintiffs attempted to avoid the fees incurred by bringing this motion by presenting the State with its lodestar to date through obtaining the summary judgment decision and offering to settle or stipulate to a negotiated amount. Chen Decl., ¶20. The parties were unable to come to an agreed amount. *Id*. Plaintiffs do not seek the requested lodestar enhancement for

time spent litigating the fee issue. As set forth in the following chart, Plaintiffs have incurred

$11,705 in fees to date on this motion. Chen Decl., ¶27; Strugar Decl., ¶¶8-9; Eberly Decl., ¶11.

| Attorney | Raw Hours | Adjusted Hours | Rate | Lodestar |
|---|---|---|---|---|
| Alan Chen (Univ. of Denver) (fees) | 25.6 | 15.9 | $600 | $9540 |
| Matthew Strugar (Private public interest firm) (fees) | 2.8 | 2.8 | $400 | $1120 |
| Kelsey Eberly (ALDF) (fees) | 4.2 | 3.8 | $275 | $1045 |
| **TOTAL** | | | | **$11,705** |

Counsel will document the time they spend on the reply briefing and apprise the Court with

the updated lodestar in its reply brief.

## VI.    Plaintiffs Are Entitled to Recover Their Reasonable Expenses Under § 1988.

Along with attorneys' fees, a prevailing party in a civil rights action is normally entitled to

expenses under 42 U.S.C. § 1988 "if such expenses are usually billed in addition to the attorney's

hourly rate." *Case*, 157 F.3d at 1257. Plaintiffs and their counsel incurred the following expenses:

travel expenses for Mr. Chen for participation in the initial scheduling conference ($514.81) (paid

for by Plaintiff ALDF), Chen Decl., ¶28 & Attachment 6; travel expenses for Ms. Eberly for a

meeting with clients in Kansas ($289.11) (paid for by Plaintiff ALDF), Eberly Decl., ¶12 &

Attachments 4; notary fees and mailing costs ($131.90) (paid for by Plaintiff ALDF), Eberly Decl.,

¶12 & Attachments 3; and Federal Express shipping charges ($45.10) (paid for by local counsel's

firm, Foley & Mansfield, PLLP). Moss Decl., ¶11, & Attachment 3.

As the Tenth Circuit has observed, "[w]hile only those items listed under section 1920 may

be awarded as costs, other out-of-pocket expenses incurred during litigation may be awarded as

attorneys' fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable. *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995). The costs that Plaintiffs seek reimbursement for are all expenses usually billed to a client and therefore presumptively recoverable. 42 U.S.C. § 1988(b). Courts in this district have recognized that recoverable expenses under § 1988 can include reasonable travel expenses, *Wirtz v. Kansas Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1209 (D. Kan. 2005) ("The court agrees with the plaintiff that travel is an expense that is usually charged to the client. As such, the court has the discretion to award it to the prevailing party."). Plaintiff ALDF therefore seeks reimbursement for the reasonable travel expenses of Mr. Chen and Ms. Eberly. Chen Decl., ¶28 & Attachment 6; Eberly Decl., ¶12 & Attachment 4. Other courts have authorized reimbursement for other litigation related expenses, including notary fees, *Anderson v. City of New York*, 132 F. Supp. 2d 239, 247 (S.D.N.Y. 2001), and mailing costs. *Erickson v. City of Topeka, Kansas*, 239 F. Supp. 2d 1202, 1212 (D. Kan. 2002). Plaintiffs also seek reimbursement for these expenses. Moss Decl., ¶11 & Attachment 3; Eberly Decl., ¶12 & Attachment 3. The Court should award these expenses in full.

## Conclusion

It is essential that Plaintiffs' counsel be fully compensated where, as here, they have prevailed in vindicating an important constitutional right and are entitled to recover attorneys' fees and costs as a matter of law. Without complete compensation, competent attorneys cannot and will not take cases that involve such a high risk of complete non-recovery.

For the foregoing reasons, Plaintiffs respectfully request that the Court award Plaintiffs' counsel the following fees and costs, as summarized in the following chart:

| Attorney | Adjusted Hours | Rate | Lodestar before Enhancement | Total claimed amount |
|---|---|---|---|---|
| Alan Chen (Univ. of Denver) (merits) | 148 | $600 | $88,800 | $97,680 |
| Alan Chen (Univ. of Denver) (fees) | 15.9 | $600 | $9540 | $9540 |
| Matthew Strugar (Private public interest firm) (merits) | 51.1 | $400 | $20,440 | $22,484 |
| Matthew Strugar (Private public interest firm) (fees) | 2.8 | $400 | $1120 | $1120 |
| Justin Marceau (Univ. of Denver) | 26 | $400 | $10,400 | $11,440 |
| David Muraskin (Public Justice) | 14.8 | $325 | $4810 | $5291 |
| Kelsey Eberly (ALDF) (merits) | 132.7 | $275 | $36,492.50 | $40,141.75 |
| Kelsey Eberly (ALDF) (fees) | 3.8 | $275 | $1045 | $1045 |
| Amanda Howell (ALDF) | 51.7 | $325 | $16,802.50 | $16,802.50 |
| Michael Moss (local counsel) | 50 | $250 | $12,500 | $12,500 |
| Alene Anello (ALDF) | 4.8 | $250 | $1200 | $1200 |
| **TOTAL** | | | | **$219,244.25** |

Attorneys' Fees for work on merits = **$219,244.25**

Merits Paralegal and Law Clerk Fees = **$3500.00**

Expenses = **$977.32**

Attorneys' Fees for work on Attorneys' Fee Motion (to date) = **$11,705**

**Grand Total to Date** (excluding Bill of Costs) = **$235,426.57**

Plaintiffs will notify the Defendants and the Court about any additional attorneys' fees incurred in reviewing the Defendants' response and preparing their reply brief, and intend to seek compensation for that attorney time as well.

Dated this 6th day of May, 2020

  /s/ Michael D. Moss
Michael D. Moss, KS Bar #22624
Foley & Mansfield, P.L.L.P.
10740 Nall Avenue, Suite 242

Overland Park, KS 66211
913-232-8767
913-800-7238 (fax)
mmoss@foleymansfield.com

Alan K. Chen (*Pro Hac Vice*)
University of Denver Sturm College of Law
(for identification only)
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6283
achen@law.du.edu

Justin Marceau (*Pro Hac Vice*)
Of Counsel, Animal Legal Defense Fund
University of Denver Sturm College of Law
(for identification only)
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6449
jmarceau@law.du.edu

Matthew Liebman
Kelsey Eberly
Amanda Howell
(*Pro Hac Vice*)
Animal Legal Defense Fund
525 East Cotati Avenue Cotati, CA 94931
(707) 795-2533
mliebman@aldf.org
keberly@aldf.org
ahowell@aldf.org

Matthew Strugar (*Pro Hac Vice*)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(323) 696-2299
(213) 252-0091 (fax)
matthew@matthewstrugar.com

David S. Muraskin (*Pro Hac Vice*)
Public Justice, P.C.
1620 L St. NW, Suite 630
Washington, DC 20036

(202) 861-5245
(202) 232-7203 (fax)
dmuraskin@publicjustice.net

George A. Kimbrell (*Pro Hac Vice*)
917 SW Oak St., Suite 300
Portland, OR 97205
(971) 271-7372
(971) 271-7374 (fax)
gkimbrell@centerforfoodsafety.org

Counsel for Plaintiffs

**PLAINTIFFS' INDEX OF EXHIBITS**

In compliance with Local Rule 7.6(b), Plaintiffs provide this Index of Exhibits to their Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Costs.

Exhibit A, Declaration of Alan K. Chen in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit B, Declaration of Matthew Strugar in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit C, Declaration of Justin Marceau in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit D, Declaration of David Muraskin in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit E, Declaration of Kelsey Eberly in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit F, Declaration of Michael Moss in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit G, Declaration of Amanda Howell in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit H, Declaration of Alene Anello in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit I, Declaration of Tai J. Vokins in Support of Motion for an Award of Attorneys' Fees and Costs

**Certificate of Service**

I hereby certify that on this date, I electronically filed the with the Clerk of Court the following documents:

Plaintiffs' Memorandum in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit A, Declaration of Alan K. Chen in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit B, Declaration of Matthew Strugar in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit C, Declaration of Justin Marceau in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit D, Declaration of David Muraskin in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit E, Declaration of Kelsey Eberly in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit F, Declaration of Michael Moss in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit G, Declaration of Amanda Howell in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit H, Declaration of Alene Anello in Support of Motion for an Award of Attorneys' Fees and Costs

Exhibit I, Declaration of Tai J. Vokins in Support of Motion for an Award of Attorneys' Fees and Costs

by using the CM/ECF system.

All participants in this case are registered CM/ECF users and will served by the CM/ECF system.

Date: May 6, 2020

/s/ Michael D. Moss