# Exhibit 1

# Defendant's Suggested Deletions to Time Shown on Reprint of Plaintiff Counsels' Time Entries

Key:     Yellow – Time not claimed by Plaintiffs
         Green – Billing judgment (including duplication), Block Billing and Vagueness adjustments
         Blue – Duplicative meetings and conferences
         Gray – Unreimbursable travel
         Teal – Paralegal or support staff work
         Dark Gray – Party's responses to discovery
         Red – Attorney fees for attorney fees

Alan Chen, from Doc. 79-1
Attachment 1

| Date | Total Hrs | Billed | Itemized |
|------|-----------|--------|----------|
| 24-Aug-18 | 0.1 | 0.1 | Research Governor as proper Ex Parte Young defendant in 10th Circuit |
| 27-Aug-18 | 0.7 | 0.7 | Review Kansas Ag Gag statute; review Iowa complaint; read background facts from web site about other undercover animal investigations |
| 27-Aug-18 | 0.2 | 0.2 | Review Local Rules, District of Kansas, re filing rules |
| 28-Aug-18 | 2.5 | 2.5 | Review and edit first draft of Complaint |
| 30-Aug-18 | 0.2 | 0.2 | Review and respond to Strugar email w questions about Complaint draft |
| 7-Sep-18 | 0.3 | 0.3 | Review statutory language and respond to Liebman email w questions about Complaint draft |
| 10-Sep-18 | 2.5 | 2.5 | Review AG Opinion; draft agenda for conference call |
| 26-Sep-18 | 0.8 | 0.8 | Review statute and write up memo on possible legal theories for challenging each section; research Kansas restitution statutes |
| 23-Oct-18 | 1.5 | 1.5 | Conference call with legal team on approach to structuring complaint, tactics |
| 24-Oct-18 | 2 | 2 | Work on redraft and edits to complaint |
| 25-Oct-18 | 4.5 | 4.5 | Work on redraft and edits to complaint |
| 26-Oct-18 | 2 | 2 | Work on redraft and edits to complaint |
| 27-Oct-18 | 1.5 | 1.5 | Work on redraft and edits to complaint |
| 13-Nov-18 | 0.2 | 0.2 | Email correspondence with Liebman and Marceau re [Potential Additional Client] standing issues |
| 13-Nov-18 | 1 | 1 | Review edits by Muraskin and Strugar to draft Complaint; add new edits |
| 13-Nov-18 | 0.7 | 0.7 | Review edits by Muraskin and Strugar to draft Complaint; add new edits |
| 14-Nov-18 | 0.7 | 0.7 | Finalize edits; draft cover memo for email to team |
| 15-Nov-18 | 0.3 | 0.3 | Discussion with Marceau re [Potential Additional Client} developments |
| 15-Nov-18 | 0.5 | 0.5 | Conference call on how to proceed post-[Potential Additional Client} |

| 16-Nov-18 | 1 | 1 | Comprehensive edit of complaint to remove [Potential Additional Client} and refine allegations re: standing |
| 16-Nov-18 | 0.2 | 0.2 | Various email correspondence regarding securing of local counsel |
| 19-Nov-18 | 0.3 | 0.3 | Conf call with Howell and potential cooperating attorney |
| 16-Jan-19 | 0.5 | 0.5 | Legal research to find authority to support motion to strike jury demand |
| 17-Jan-19 | 1 | 1 | Legal research to find additional authority from 10th Circuit to support motion to strike jury demand |
| 17-Jan-19 | 1 | 1 | Edit Strugar draft motion to strike jury demand |
| 20-Jan-19 | 0.1 | 0.1 | Email exchange with Moss re local rules |
| 21-Jan-19 | 0.1 | 0.1 | Final edits on motion to strike jury demand |
| 23-Jan-19 | 0.1 | 0.1 | Review initial scheduling order |
| 24-Jan-19 | 0.1 | 0.1 | Email correspondence re plan for handling Rule 26 conf, initial disclosures, and scheduling conference |
| 25-Jan-19 | 0.2 | 0.2 | Preliminary review of Answer; email correspondence re scheduling Rule 26 conference |
| 28-Jan-19 | 0.1 | 0.1 | Email correspondence scheduling Rule 26 conference |
| 29-Jan-19 | 0.1 | 0.1 | Review response to motion to strike and email team re possible reply |
| 30-Jan-19 | 0.5 | 0.5 | Draft reply to Defs' response to motion to strike |
| 31-Jan-19 | 0.1 | 0.1 | Final edits to reply |
| 6-Feb-19 | 0.1 | 0.1 | Research on Magistrate O'Hara's record in anticipation of pretrial process; email to setup conf call before Rule 26 Conference |
| 6-Feb-19 | 0.3 | 0.3 | Initial review of Defendants' draft of report for planning conference |
| 7-Feb-19 | 1 | 1 | Continued review of Defendants' draft and writing up notes for approach to Rule 26 Conference; email correspondence with JM and MS re same |
| 8-Feb-19 | 0.5 | 0.5 | Draft correspondence to opposing counsel re Plfs position on pretrial planning and discovery |
| 8-Feb-19 | 0.3 | 0.3 | Quick legal research on Kansas Const. Speech and Debate Clause; discussion via email with |

| | | | cocounsel |
|---|---|---|---|
| 8-Feb-19 | 0.5 | 0.5 | Preparation for Rule 26 conference, including reviewing complaint, notes, and correspondence |
| 8-Feb-19 | 0.4 | 0.4 | Telephonic Rule 26 Conference with Art Chalmers, MS, MM, and JM |
| 8-Feb-19 | 0.2 | 0.2 | Discussion with JM re: issues arising during Rule 26 Conference |
| 12-Feb-19 | 0.1 | 0.1 | Email to team summarizing Rule 26 Conference |
| 12-Feb-19 | 0.5 | 0.5 | Work on revisions to Parties' Joint Report on Planning Conference |
| 13-Feb-19 | 0.5 | 0.5 | Final Plfs' revisions to Parties' Joint Report on Planning Conference |
| 15-Feb-19 | 0.2 | 0.2 | Review Defs changes to Joint Report and enter changes; email correspondence with Def counsel |
| 18-Feb-19 | 0.1 | 0.1 | Finalize Joint Report and submit to court |
| 18-Feb-19 | 0.1 | 0.1 | Look over draft Initial Disclosures |
| 18-Feb-19 | 0.1 | 0.1 | Email correspondence with Moss re any relevant local rules re Initial Disclosures |
| 20-Feb-19 | 0.5 | 0.5 | Review and edit draft Initial Disclosures; email correspondence requesting any relevant documents to be identified. |
| 21-Feb-19 | 0.2 | 0.2 | Email correspondence with co-counsel re disclosures; finalize disclosures |
| 28-Feb-19 | 0.3 | 0.3 | Email correspondence with co-counsel re opposing counsel's objections to initial disclosures |
| 28-Feb-19 | 0.3 | 0.3 | Review documents in preparation for Rule 16 conference |
| 1-Mar-19 | 4.5 | 2.2 | Land and air travel to Kansas City for Rule 16 Conference (drive from home to airport; flight to KC; Lyft to courthouse) |
| 1-Mar-19 | 0.8 | 0.8 | Rule 16 Conference |
| 1-Mar-19 | 0.2 | 0.2 | Confer with Michael Moss after Rule 16 Conference |
| 1-Mar-19 | 4.5 | 2.3 | Land and air travel to back to Denver after Rule 16 Conference (Lyft from courthouse to KC airport; flight to Denver; drive home from airport) |
| 4-Mar-19 | 0.2 | 0.2 | Review and edit M Moss draft memo to legal team re Rule 16 Conference |
| 5-Mar-19 | 0.5 | 0.5 | Review Complaint and Draft Settlement Proposal re Ancillary Provisions of Kansas Ag |

| | | | Gag statute |
|---|---|---|---|
| 6-Mar-19 | 0.1 | 0.1 | Email correspondence with G Kimbrell re CFS Initial Disclosure supplement |
| 6-Mar-19 | 1.5 | 1.5 | Review Initial Disclosure objections; read Defs cases; conduct independent legal research re 30(b)(6) witnesses testifying at trial |
| 7-Mar-19 | 0.3 | 0.3 | Email correspondence coordinating team on discovery responses |
| 7-Mar-19 | 0.4 | 0.4 | Review comments and edit Partial Settlement Proposal; review Complaint and statute |
| 8-Mar-19 | 0.2 | 0.2 | Finalize Partial Settlement Proposal |
| 12-Mar-19 | 0.4 | 0.4 | TC with K Eberly re compliance w Supplemental Initial Disclosures and Disco Requests |
| 12-Mar-19 | 0.1 | 0.1 | Email correspondence with co-counsel re discovery compliance |
| 12-Mar-19 | 0.5 | 0.5 | Legal research re discovery issues ("personnel" knowledge, sanctions, etc.) |
| 13-Mar-19 | 0.2 | 0.2 | Email correspondence re supplemental disclosures; prepare notice of service |
| 14-Mar-19 | 1.5 | 1.5 | Begin reviewing Defs Document Production; review for compliance, take notes on substance for SJ record |
| 15-Mar-19 | 0.2 | 0.2 | Review notes and draft email correspondence to opposing counsel re deficiencies in Defs Initial Doc production |
| 20-Mar-19 | 0.5 | 0.5 | Review and annotate Mancia v. Mayflower Textile Servs per court's directions |
| 20-Mar-19 | 0.3 | 0.3 | Begin reviewing Defs Rogs, RFPs, RFAs |
| 20-Mar-19 | 0.5 | 0.5 | TC with K Eberly Re discovery |
| 22-Mar-19 | 0.1 | 0.1 | Email correspondence re discovery requests with K Eberly |
| 22-Mar-19 | 0.1 | 0.1 | Draft email to opposing counsel requesting clarification on discovery requests |
| 27-Mar-19 | 0.1 | 0.1 | Email correspondence re possible protective order |
| 3-Apr-19 | 0.3 | 0.3 | Email correspondence with K Eberly re discovery compliance, protective order, objections, and request for extension |
| 3-Apr-19 | 0.2 | 0.2 | Review potentially objectionable definition of tangible/intangible harm in RFA #6 and compare to other language |
| 3-Apr-19 | 0.1 | 0.1 | Draft email requesting 2 week extension for discovery responses. |

| 6-Apr-19 | 0.7 | 0.7 | Review L Martinez research memo; read cases; edit memo; draft email to legal team re possible evidentiary issue with 30(b)(6) witnesses |
|---|---|---|---|
| 6-Apr-19 | 1.6 | 1.6 | Review and take notes on Defs Initial Disclosures (after supplements were provided) |
| 7-Apr-19 | 1.5 | 1.5 | Review and take notes on Defs Initial Disclosures (after supplements were provided) |
| 8-Apr-19 | 0.2 | 0.2 | Review draft protective order |
| 8-Apr-19 | 0.7 | 0.7 | Review and edit draft Responses to RFPs and RFAs |
| 9-Apr-19 | 0.3 | 0.3 | Review local rules and model PO to compare to our draft PO; email correspondence discussing same |
| 9-Apr-19 1.3 | 1.3 | 1.3 | Review and edit draft Responses to Rogs; draft inserts re legislative history docs and motive |
| 10-Apr-19 | 0.1 | 0.1 | Review Kellan Smith memo on 30(b)(6) witness testimony/admissibility |
| 10-Apr-19 | 0.3 | 0.3 | TC w Eberly preparing for discovery call with opposing counsel |
| 10-Apr-19 | 0.3 | 0.3 | TC w Eberly & Chambers re discovery issues |
| 10-Apr-19 | 0.2 | 0.2 | TC w Eberly following up on call with Chambers; develop plan for follow up |
| 11-Apr-19 | 0.1 | 0.1 | Review Eberly redraft of PO using Court's model with our modifications |
| 12-Apr-19 | 0.1 | 0.1 | Review Muraskin changes to PO |
| 13-Apr-19 | 0.1 | 0.1 | Final review of Eberly edits to proposed PO |
| 17-Apr-19 | 0.2 | 0.2 | Multiple email correspondence with K Eberly re discovery compliance |
| 18-Apr-19 | 0.5 | 0.5 | 18-Apr-19 0.5 0.5 TC w Eberly and Moss re responses to discovery, objections |
| 19-Apr-19 | 2.4 | 2.4 | Comprehensive review, edit, and supplementation of all discovery responses including additional statements in support of leg motive |
| 22-Apr-19 | 0.3 | 0.3 | Handle final details of discovery responses, including email correspondence with Moss and Eberly |
| 30-Apr-19 | 0.5 | 0.5 | Review Defs' objections to discovery responses and KE draft response letter |
| 1-May-19 | 0.5 | 0.5 | TC w Eberly, Muraskin, Moss re responses to Defs' objections to discovery responses |
| 1-May-19 | 0.1 | 0.1 | TC w Moss re concerns about scope of objections |

| 1-May-19 | 1.5 | 1.5 | Review case law relied on in Defs Objections |
|---|---|---|---|
| 2-May-19 | 0.6 | 0.6 | Review case law relied on in Defs Objections |
| 3-May-19 | 1.4 | 1.4 | Do substantial redraft of response letter on Defs Objections |
| 3-May-19 | 0.6 | 0.6 | Additional legal research re response to Defs Objections |
| 3-May-19 | 0.8 | 0.8 | TC w Eberly, Muraskin, Moss re responses to Defs' objections to discovery responses |
| 3-May-19 | 0.3 | 0.3 | Final Proof of Response Letter |
| 9-May-19 | 0.8 | 0.8 | Review Eberly memo re discovery and Utah discovery requests and responses; email correspondence regarding what discovery to propound |
| 13-May-19 | 0.1 | 0.1 | Review Chalmers response to Plfs response to Defs discovery objections |
| 14-May-19 | 0.4 | 0.4 | Review, edit, and comment on draft ROGs and RFPs to serve on Defendants |
| 16-May-19 | 0.3 | 0.3 | Email discussion re supplemental disclosures and whether to add witnesses |
| 17-May-19 | 0.1 | 0.1 | TC w Eberly re supplemental disclosures |
| 17-May-19 | 0.1 | 0.1 | Final proof of supplemental disclosures |
| 23-May-19 | 0.4 | 0.4 | Review draft supplemental responses to Defs discovery in light of Defs objections and our response via email; email correspondence with Eberly, Moss, Strugar, and Muraskin re same |
| 24-May-19 | 0.1 | 0.1 | Final proof of supplemental responses |
| 12-Jun-19 | 0.1 | 0.1 | Email to Opposing Cousnel re plans for moving forward with PTO |
| 19-Jun-19 | 0.5 | 0.5 | Begin work on draft PTO |
| 21-Jun-19 | 0.5 | 0.5 | Preliminary Review of Defs Discovery responses |
| 24-Jun-19 | 2.5 | 1.5 | Continue work on draft PTO |
| 25-Jun-19 | 1 | 1 | Continue work on draft PTO & email correspondence with legal team re issues |
| 26-Jun-19 | 0.5 | 0.5 | Email correspondence re discovery issues and re theory of the case regarding subsection c |
| 26-Jun-19 | 0.6 | 0.6 | TC w Eberly re PTO revisions and supplementing discovery responses |
| 27-Jun-19 | 0.1 | 0.1 | Review of Plaintiffs' Second Supplemental Disclosures |
| 29-Jun-19 | 0.3 | 0.3 | Review of redrafted PTO |
| 3-Jul-19 | 0.5 | 0.5 | Review in more detail changes to draft PTO |

| 7-Jul-19 | 0.6 | 0.6 | Review of Defs' proposed PTO and compare to Plfs version in preparation for conference call with opposing counsel |
| 7-Jul-19 | 0.4 | 0.4 | Legal research re authentication and admissibility of documents in record |
| 7-Jul-19 | 0.2 | 0.2 | Draft email to Eberly with notes in preparation for planning call |
| 8-Jul-19 | 0.4 | 0.4 | TC with Eberly re approach to conference call with opposing counsel |
| 8-Jul-19 | 0.5 | 0.5 | Review draft PTOs, Complaint, and discovery responses in preparation for conf call with opposing counsel |
| 8-Jul-19 | 0.2 | 0.2 | Conf call with Art Chalmers and Eberly re resolving disputes regarding PTO |
| 8-Jul-19 | 0.1 | 0.1 | Follow up TC with Eberly to discuss how to proceed |
| 8-Jul-19 | 0.1 | 0.1 | Review Defs language re stipulations to authenticity of documents & email correspondence re same |
| 9-Jul-19 | 0.5 | 0.5 | Continue review of Defs stipulations language, cross check against our exhibits, and review Eberly's suggestions for additional fact contentions in PTO |
| 10-Jul-19 | 0.2 | 0.2 | Edit Eberly's redraft of PTO; review Complaint for websites and other sources for possible stipulation proposals |
| 24-Jul-19 | 0.2 | 0.2 | Conf call with Strugar, Eberly, and Moss re preparation for PT Conference |
| 25-Jul-19 | 0.5 | 0.5 | Prepare for PT Conference - review notes from scheduling hearing; review PTO; read local rules on SJ practice; review statutory provisions and AG Opinion |
| 25-Jul-19 | 0.4 | 0.4 | Telephonic PT Conference with Mag Judge O'Hara, Moss & Chalmers |
| 25-Jul-19 | 0.3 | 0.3 | Write up notes and combine with Moss's notes from PT Conference |
| 28-Jul-19 | 0.3 | 0.3 | Conf call with Eberly, Strugar, Moss re plans and work divisions for revised PTO and settlement letter |
| 29-Jul-19 | 1 | 1 | Review complaint, discovery responses, and PTO to sort out Defs positions on "intent to damage the enterprise" provisions for settlement proposal |
| 29-Jul-19 | 0.5 | 0.5 | Review and annotate Defs Brief ISO MSJ for briefing and for settlement proposal |

| | | | |
|---|---|---|---|
| 29-Jul-19 | 0.7 | 0.7 | Begin drafting settlement proposal letter |
| 30-Jul-19 | 0.3 | 0.3 | Review Barahona research. Edit draft settlement proposal letter |
| 31-Jul-19 | 0.3 | 0.3 | Review Magistrate edits, Chalmers edits, and Eberly edits to PTO |
| 31-Jul-19 | 0.1 | 0.1 | Email correspondence re draft settlement proposal |
| 31-Jul-19 | 0.1 | 0.1 | Review final edits from Chalmers to PTO |
| 31-Jul-19 | 0.1 | 0.1 | Final review and edits of settlement draft and email correspondence to legal team |
| 2-Aug-19 | 0.1 | 0.1 | Email correspondence with co-counsel re settlement proposal draft |
| 4-Aug-19 | 0.1 | 0.1 | Draft extension motion re Plfs response to Defs MSJ |
| 5-Aug-19 | 0.1 | 0.1 | Final revisions to settlement proposal; email correspondence re client approval |
| 8-Aug-19 | 0.1 | 0.1 | Final revisions to settlement proposal after team review |
| 9-Aug-19 | 0.3 | 0.3 | Review States' response to settlement proposal and review statutory provision and 1990 KS AG opinion |
| 9-Aug-19 | 0.3 | 0.3 | Conf call with Eberly & Strugar to discuss State's response |
| 12-Aug-19 | 1 | 1 | Draft reply letter to State's response -review statute's language and 1990 KS statute opinion |
| 14-Aug-19 | 0.3 | 0.3 | Edit draft reply letter, compile attys fees, and email correspondence re same |
| 15-Aug-19 | 0.1 | 0.1 | Final edits and email correspondence to team |
| 19-Aug-19 | 2 | 2 | Conf call with Eberly & Strugar to discuss State's division of labor on SJ motion and response |
| 2-Sep-19 | 0.4 | 0.4 | Review Defs SUF and Eberly's responses and add my comments |
| 2-Sep-19 | 1 | 1 | Outline Defs legal arguments and our responses. |
| 3-Sep-19 | 6 | 6 | Begin drafting Plfs Brief in Opposition to Defs MSJ |
| 4-Sep-19 | 3.3 | 3.3 | Continue drafting Plfs Brief in Opposition to Defs MSJ |
| 4-Sep-19 | 1 | 1 | Continue drafting Plfs Brief in Opposition to Defs MSJ |
| 5-Sep-19 | 1.5 | 1.5 | Continue drafting and editing Plfs Brief in Opposition to Defs MSJ |
| 5-Sep-19 | 0.1 | 0.1 | Draft Plfs Motion for SJ |

| 8-Sep-19 | 0.3 | 0.3 | Legal research re Judge Vratil's FA Standing decisions |
| 8-Sep-19 | 0.4 | 0.4 | Review and incorporate Eberly edits and comments to Plfs Brief in Opposition to Defs MSJ |
| 8-Sep-19 | 3.6 | 2.6 | Review Eberly edits and comments to Plfs Brief in Opposition to Defs MSJ and do additional editing, reorganizing, and new drafting |
| 8-Sep-19 | 0.3 | 0.3 | Begin drafting Plfs Brief ISO Plfs MSJ |
| 9-Sep-19 | 2 | 2 | Draft Plfs Brief ISO MSJ |
| 9-Sep-19 | 0.5 | 0.5 | Additional edits to Plfs Brief in Opp to Defs MSJ and email correspondenc re same |
| 9-Sep-19 | 2 | 2 | Draft Plfs Brief ISO MSJ |
| 9-Sep-19 | 0.3 | 0.3 | Review and make suggestions for Walden Affidavit |
| 9-Sep-19 | 0.9 | 0.9 | Draft Plfs Brief ISO MSJ |
| 10-Sep-19 | 0.1 | 0.1 | TC w Eberly re plan for brief editing, exhibits, production |
| 10-Sep-19 | 0.5 | 0.5 | Review Eberly edits on Brief ISO MSJ; review affidavits |
| 12-Sep-19 | 3.5 | 3.5 | Review and incorporate edits; do redraft of sections of Brief in Opp to Defs MSJ |
| 12-Sep-19 | 0.5 | 0.5 | Review and incorporate edits; do redraft of sections of Brief ISO Plfs MSJ |
| 13-Sep-19 | 0.1 | 0.1 | TC w Eberly re plan for final edits, compliation fo appendix, etc. |
| 15-Sep-19 | 2.5 | 2.5 | Review and incorporate edits; do redraft of sections of Brief in Opp to Defs MSJ and Brief ISO Plfs MSJ |
| 15-Sep-19 | 4 | 3 | Review and incorporate edits; do redraft of sections of Brief in Opp to Defs MSJ and Brief ISO Plfs MSJ |
| 15-Sep-19 | 0.2 | 0.2 | TC w Eberly re plan for final edits, appendix, cite checking, proofing, and filing |
| 16-Sep-19 | 0.3 | 0.3 | Begin cite checks on both briefs |
| 16-Sep-19 | 2.5 | 2.5 | Cite checking both briefs |
| 16-Sep-19 | 0.8 | 0.8 | Cite checking both briefs |
| 16-Sep-19 | 1.5 | 1.5 | Finish cite checking Brief in Opp to Defs MSJ |
| 16-Sep-19 | 0.1 | 0.1 | TC w Eberly re remaining tasks/division of labor |
| 16-Sep-19 | 1 | 1 | Final proofs and cross-checking briefs |

| 16-Oct-19 | 1 | 1 | Read Defs' combined brief and UF response and begin annotating and organizing reply brief |
| 17-Oct-19 | 0.7 | 0.7 | TC w Eberly & Strugar to discuss arguments and work division for reply brief |
| 18-Oct-19 | 0.3 | 0.3 | Initial legal research on public forum doctrine's inapplicability to private property |
| 18-Oct-19 | 1.2 | 1.2 | Continue legal research on public forum doctrine's inapplicability to private property and draft reply brief section |
| 20-Oct-19 | 0.8 | 0.8 | Draft clear summary of different statutory provisions for framing in reply brief |
| 22-Oct-19 | 1.7 | 1.7 | Review past research on personal knowledge of affiant and discovery disclosures; conduct additional research on admissibility of witness testimony on SJ |
| 23-Oct-19 | 1.7 | 1.7 | Edit fact section of reply brief and begin drafting standing argument |
| 23-Oct-19 | 0.3 | 0.3 | TC w Eberly re reply brief, legal research, and strategy |
| 23-Oct-19 t | 1.5 | 1.5 | Additional work editing brief and drafting new language to insert into draft |
| 26-Oct-19 | 0.7 | 0.7 | Final read through of Defs brief to make sure we are responding to all important args |
| 27-Oct-19 | 4.5 | 3.5 | Edit brief after comments from co-counsel |
| 28-Oct-19 | 3.8 | 1.8 | Final edits, cite check entire brief, and final proofread |
| 28-Oct-19 | 0.1 | 0.1 | Email correspondence with co-counsel re filing details |
| 2-Dec-19 | 0.1 | 0.1 | Look up local rule re supplemental authorities; email team |
| 2-Dec-19 | 0.5 | 0.5 | Read court's decision on MTD and granting PI in ALDF v. Reynolds |
| 8-Dec-19 | 1.2 | 1.2 | Review Reynolds opinion and draft Rule 7.1 letter and annotate to corresponding brief pages |
| 9-Dec-19 | 0.2 | 0.2 | Email re local rules and TC with Clerk's office re non-local counsel signing 7.1 letter; coordinate with MM's staff for filing |
| 22-Jan-20 | 0.8 | 0.8 | Read and annotate court's summary judgment opinion and order |
| 23-Jan-20 | 0.3 | 0.3 | Research FRCP and local rules, consult with co-counsel |
| 23-Jan-20 | 0.8 | 0.8 | Draft Motion to Amend Judgment and supporting materials |

| 6-Feb-20 | 0.2 | 0.2 | Read Defs Opposition to M to Amend Jdgmt and local rule re timing of reply brief |
| 6-Feb-20 | 0.4 | 0.4 | TC w MS, KE, & AA re reply to Defs' Opposition |
| 18-Feb-20 | 0.2 | 0.2 | Review draft reply brief in support of motion to alter or amend judgment |
| 18-Feb-20 | 1.5 | 1.5 | Review case law on facial challenges and injunctions, incl Citizens United, Doe v. Albuquerque; Marie v. Mosier |
| 18-Feb-20 | 1 | 1 | Reorganize and edit reply brief; add new sections |
| 19-Feb-20 | 0.4 | 0.4 | Additional edits to reply brief; circulate to Muraskin, Marceau, Strugar |
| 20-Feb-20 | 1 | 1 | Additional research on case law for reply brief |
| 20-Feb-20 | 1.5 | 1.5 | Final edits and substantive changes to reply brief |

Attachment 2 to Doc. 79-1

| 3-Jan-20 | 0.2 | 0.2 | Email correspondence with team re attorneys fees and absence of injunctive order |
| 24-Jan-20 | 0.1 | 0.1 | Draft shell of Motion for Attys Fees; email team for hours |
| 24-Jan-20 | 0.1 | 0.1 | Email correspondence with team re attys fee rates and strategy for memo in support |
| 27-Jan-20 | 0.4 | 0.4 | Research 10th Cir. & D. Kan. cases awarding attorneys fees re awarding out of market rates |
| 27-Jan-20 | 0.1 | 0.1 | Review Kansas Bar Association 2017 Economics of Law Practice Report to find KC, KS market rates |
| 2-Feb-20 | 2 | 2 | Review time sheets for all attorneys re consistency and exercising billing judgment |
| 11-Feb-20 | 0.1 | 0 | Email to Art Chalmers initiating consultation on fees pursuant to Local Rule 54.2 |
| 12-Feb-20 | 0.5 | 0.5 | Draft email to Chalmers summarizing fees and justifications for amount requested |
| 13-Feb-20 | 0.2 | 0.1 | Edit fee proposal draft and share with team |
| 18-Feb-20 | 0.1 | 0.1 | Email correspondence with Chalmers & Liebman on fees, contract disclosure |
| 20-Feb-20 | 0.1 0 | 0 | Draft joint extension motion for fee negotiation |
| 24-Feb-20 | 0.7 | 0.7 | Review all attorneys, paralegals, and students time sheets for privileged or confidential materials |
| 25-Feb-20 | 0.5 | 0.5 | Final preparation of time sheets and contract for delivery to A. Chalmers |

| 25-Feb-20 | 0.8 | 0.8 | Additional review of all materials for any confidential or privileged information |
|-----------|-----|-----|------------------------------------------------------------------------------------|
| 24-Mar-20 | 0.1 | 0 | Email correspondence w Chalmers re: status of fee negotiations |
| 25-Mar-20 | 0.1 | 0.1 | Review Chalmers email objecting to specific portions of fee request |
| 1-Apr-20 | 0.1 | 0 | Email correspondence with Chalmers re agreed extension motion |
| 2-Apr-20 | 0.1 | 0 | Write up research assignments for R. Barahona re fees brief |
| 24-Apr-20 | 1 | 1 | Prepare detailed outline for memorandum in support of motion for attorneys' fees |
| 25-Apr-20 | 0.5 | 0.5 | Finish outline for fees brief |
| 25-Apr-20 | 0.5 | 0.5 | Begin drafting fees brief |
| 25-Apr-20 | 0.3 | 0.3 | Legal research re attorneys fees decisions by Judge Vratil |
| 26-Apr-20 | 3 | 2.2 | Draft rates and hours portions of attorneys fees brief |
| 28-Apr-20 | 2 | 1.2 | Draft rates and hours and enhancement portions of attorneys fees brief |
| 29-Apr-20 | 1.5 | 1.5 | Draft and edit hours portion of attorneys fees brief |
| 29-Apr-20 | 1 | 1 | Edits to entire attorneys' fees brief |
| 3-May-20 | 1 | 0 | Legal research re travel expenses and travel time |
| 4-May-20 | 6 | 0 | Review all declarations and ensure accuracy of records; review all time sheet to exercise additional billing judgment; correspondence with co-counsel re same |
| 5-May-20 | 1.5 | 1 | Final legal research on costs under 1920 and expenses under 1988; review D. of Kansas Bill of Costs Handbook |
| 5-May-20 | 1 | 1 | Final edits and proof read of Memorandum ISO Fees |

Richard Barahona, from Doc. 79-1
Attachment 3

| Date | Hours | HRS billed | Description of Research |
|------|-------|-----------|------------------------|
| 6/30/2019 | 1.5 | 1.5 | Read an email from Professor Alan Chen about a researh assignment regarding standing and the 1st amendment. Used Westlaw to research cases in the District of Kansas and 10th Circuit regarding standing based on |
| 7/2/2019 | 3 | 2 | Used Westlaw to research cases in the District of Kansas and 10th Circuit regarding standing based on the 1st amendment. Took written notes. |
| 7/3/2019 | 1.75 | 1.5 | Used Westlaw to research cases on standing based on the 1st amendment. Compiled my notes into a word document and summarized each case. |
| 7/4/2019 | 0.25 | 0.2 | Wrote an email to Professor Alan Chen regarding my compiled research on 1st Amendment standing in Kansas and the 10th Circuit. |
| 7/29/2019 | 1.75 | 1.5 | Read an email from Professor Alan Chen about whether (1) an official opinion by the Kansas Attorney General is binding and (2) the Kansas definition of compensatory damages. Researched these question on Google and Westlaw. Compiled an email regarding my research and |
| 9/5/2019 | 1.75 | 1.6 | Read an email from Professor Alan Chen about an argument by the defendants regarding Supreme Court case Havens. Researched the question of whether the Havens case holding regarding standing only applied to damages claims. Sent a clarifying email to Professor Alan Chen. |
| 4/11/2020*** | 3.5 | 2.5 | Researched several questions posed by Professor Chen using Westlaw. The research was on case law coming from the District Court of Kansas and the 10th Circuit. The questions included the follow: whether attorney fees returned should be lower for the |

14

| | | | |
|---|---|---|---|
| | | | plaintiff attorneys not in a law firm because they do not have the same overhead, whether a preexisting contract between a nonprofit and an attorney that establishes an hourly rate should affect what hourly rate can be recovered under Section 1988. |
| 4/12/2020 | 5 | 3 | Continued the research and note-taking from April 11th. After I was finished, I synthesized my work into an email and sent this to Professor |
| 5/1/2020 | 1.5 | 1.5 | Received assignment from Professor Chen, researched several more questions on Westlaw. This included: whether courts should defer to the prevailing party on the amount of hours requested for lawyers fees compensation, whether given the nature of contigency fees, if churning by civil rights attorneys is regarded as highly unlikely, whether billing judgment is an important component of 1988 cases, whether the government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response, and if there is authority for the idea that travel time for an attorney can be awarded under Section 1988 and that travel expenses can be included as a cost under 28 U.S.C. § 1920. All was researched for caselaw under the District Kansas and 10th Circuit. |
| 5/2/2020 | 2.5 | 2.5 | Same work as the day before, trying to finalize research |
| 5/3/2020 | 0.75 | 0.5 | More research into questions from 5/1, began synthesizing my research into a single email to Professor Chen |
| 5/4/2020 | 3 | 2 | Conducting more research into questions posed by Professor Chen (from 5/1), synthesized questions into an email, revised the email for |

\*\*\* The hours bill edits first appear in Doc. 79-1. They were not proposed during the parties' consultation.

Jennifer Regier, from Doc. 79-1
Attachment 4

| Date | Hours | HRS billed | Description of Research |
|------|-------|-----------|-------------------------|
| 4/18/2019 | | 2.25 | Search for public statements made by lawmakers or lobbyists while Senate Bill 414 was being debated. |
| 4/14/2019 | | 1.75 | Search for public statements made by lawmakers or lobbyists while Senate Bill 414 was being debated. |

Matthew Struger, from Doc. 79-2

Attachment 1

| Date | Hours | HRS billed | Description |
|------|-------|------------|-------------|
| 8/28/2018 | 4.10 | 3.10 | Review and edit draft complaint; review and respond to edits and comments from AC, JG & GW; correspond with [Potential Additional Client] re: allegations and comments; correspond with litigation team re: same |
| 9/4/2018 | 0.60 | 0.60 | Review Muraskin and additional [Potential Additional Client] comments to draft complaint; respond to JG at [Potential Additional Client] re: questions and comments |
| 9/26/2018 | 0.50 | 0.50 | Review Chen memo on legal theories; prepare for conference call with team on scope of challenge and next steps |
| 9/26/2018 | 0.80 | 0.80 | Call w/ litigation team re: legal theories, timing, division of labor, and potential plaintiffs |
| 9/26/2018 | .20 | .20 | Call w/ GW at [Potential Additional Client] re: [Potential Additional Client]'s standing allegation and potential involvement |
| 10/31/2018 | 1.00 | 1.00 | Receive and review new draft of the complaint; make edits and comments; recirculate. |
| 11/7/2018 | 0.40 | 0.40 | Call w/ [Potential Additional Client] re: allegations and participation |
| 11/14/2018 | 0.30 | 0.30 | Call w/ potential local counsel Eric Playter; email to team re: same |
| 11/14/2018 | 0.30 | 0.30 | Review latest draft of the complaint from Alan and related email |
| 11/14/2018 | 0.40 | 0.40 | Call w/ JG re: [Potential Additional Client]'s participation and new developments |
| 11/14/2018 | 0.40 | 0.40 | Call w/ JG and JM re: [Potential Additional Client]'s participation and new developments |
| 11/15/2018 | 0.20 | 0.20 | Call w/ ML re: plaintiffs and filing plan |
| 11/16/2018 | 0.10 | 0.10 | Email introducing Eric Playter to team and discussing timing |
| 11/29/2018 | 0.30 | 0.30 | Review pro hac requirements; send to team with instructions for compiling and deadlines |
| 11/29/2018 | 0.50 | 0.50 | Put together pro hac application (including tracking down admission dates for more than 10 courts) |
| 11/29/2018 | 1.40 | 0.70 | Review latest draft of complaint; revise and recirculate |
| 11/30/2018 | 0.20 | 0.20 | Review Muraskin edits to complaint; email |

| | | | |
|---|---|---|---|
| | | | with ALDF and broader team re same |
| 12/2/2018 | 2.00 | 1.00 | Another review pass of the complaint; email to team with tasks for Tuesday filing |
| 1/14/2019 | 0.30 | 0.30 | Receive and review state's Answer and jury demand; compose email to team with thoughts and proposed strategy on each |
| 1/15/2019 | 1.20 | 1.20 | Draft motion to strike jury demand; email Alan with draft and thoughts re same |
| 1/18/2019 | 0.10 | 0.10 | Receive and review draft of motion to strike jury demand; make edits; recirculate |
| 1/28/2019 | 0.10 | 0.10 | Receive and review state's response to motion to strike jury demand |
| 1/30/2019 | 0.10 | 0.10 | Receive and review draft reply to motion to strike jury demand; respond to team with thoughts and suggested edits |
| 2/7/2019 | 0.20 | 0.20 | Receive and review emails from AC re: discovery and Rule 26 conference; respond to same and locate discovery from other cases to circulate |
| 2/8/2019 | 0.10 | 0.10 | Emails in advance of Rule 26 conference call |
| 2/9/2019 | 0.40 | 0.40 | Participate in Rule 26 conference call |
| 2/20/2019 | 0.20 | 0.20 | Receive email from AC re: initial disclosures along with draft; review same and respond |
| 3/4/2019 | 0.20 | 0.20 | Receive summary of scheduling conference and substantive issues; email to team in response re timing and strategy |
| 3/5/2019 | 0.10 | 0.10 | Review draft of proposed partial settlement proposal; respond re: same |
| 3/11/2019 | 0.20 | 0.20 | Receive email from AC re: discovery; review Iowa and Utah files for discovery requests; forward same to AC with thoughts on discovery in this action |
| 3/12/2019 | 0.10 | 0.10 | Call w/ KB re: Shy38 document production for supp initial disclosures |
| 3/13/2019 | 1.40 | 1.40 | Review and prepare supplemental initial disclosure production; serve same; coordinate with MM on notice of service |
| 5/3/2019 | 2.20 | 2.20 | Review lengthy email chain about discovery responses and objections, read relevant case law, and review draft response letter, and provide comments to KE, AC, DM, and MM. |
| 5/3/2019 | 0.80 | 0.80 | Call w/ AC, KE, and MM re: discovery response letter |
| 5/8/2019 | 0.50 | 0.50 | Review KE memo re: discovery; review Utah discovery; respond to KE, AC, and MM re same |

| 5/9/2019 | 0.20 | 0.20 | Review emails from AC and KE re: affirmative discovery |
|---|---|---|---|
| 5/10/2019 | 0.20 | 0.20 | Call w/ KE re affirmative discovery |
| 5/10/2019 | 0.80 | 0.80 | Draft RFPs and circulate |
| 5/13/2019 | 0.40 | 0.40 | Receive and review Eberly comments and edits to draft interrogatories; revise same and recirculate |
| 5/13/2019 | 0.20 | 0.20 | Receive and review draft RFPs to defendants; mark up same and circulate |
| 5/17/2019 | 0.10 | 0.10 | Review draft supplement to initial disclosures and emails re: same; circulate suggestion |
| 6/13/2019 | 0.30 | 0.30 | Receive and review state's responses to discovery requests; email Chambers re: missing pages; receive corrected version |
| 7/1/2019 | 0.60 | 0.00 | Review and edit draft pretrial order |
| 7/24/2019 | 0.20 | 0.20 | Call w/ AC, KE, and MM re: final pretrial conference |
| 7/28/2019 | 1.20 | 1.20 | Review State's 55 page, approx. 16,000 word brief in support of its MSJ |
| 7/28/2019 | 0.30 | 0.30 | Call w/ AC, KE, and MM re: potential settlement, extension, and state's MSJ |
| 7/30/2019 | 0.30 | 0.30 | Review Alan's draft settlement proposal; respond to team re: same |
| 8/8/2019 | 0.20 | 0.20 | Review state's response to the settlement proposal |
| 8/9/2019 | 0.30 | 0.30 | Call w/ AC and KE re settlement proposal |
| 8/12/2019 | 0.20 | 0.20 | Review Alan's settlement response letter |
| 8/15/2019 | 0.20 | 0.20 | Review revised settlement letter |
| 8/19/2019 | 0.30 | 0.30 | Call w/ AC and KE re: MSJ briefing plan and division of labor |
| 8/23/2019 | 0.50 | 0.50 | Review state's statement of facts in MSJ; receive, review, and compare KE's draft response; comment on same and return |
| 9/5/2019 | 0.40 | 0.40 | Review KE drafts of response to state's statement of material facts and our affirmative statement of material facts |
| 9/9/2019 | 1.70 | 1.70 | Review draft of opposition brief to state's MSJ |
| 10/16/2019 | 1.00 | 1.00 | Receive and review state's opposition to our MSJ |
| 10/16/2019 | 0.80 | 0.80 | Call w/ AC and KE re: state's MSJ reply / opposition to our MSJ; strategize; divide labor |
| 10/18/2019 | 2.70 | 1.70 | Research and drafting related to reply briefing on First Amendment issues |
| 10/21/2019 | 2.40 | 2.40 | Research and drafting related to reply briefing on First Amendment issues |

| 10/22/2019 | 4.90 | 2.90 | Research and drafting on First Amendment issues; editing passes of same; circulate to AC and KE with cover letter |
| 10/28/2019 | 1.60 | 1.60 | Receive, review, and edit reply on MSJ; recirculate to AC and KE |
| 1/23/2020 | 0.80 | 0.80 | Review MSJ ruling |
| 1/23/2020 | 0.10 | 0.10 | Email with team re: attorneys fees deadline and lack of an injunction |
| 2/6/2020 | 0.40 | 0.40 | Receive and review opposition to motion for injunction |
| 2/6/2020 | 0.40 | 0.40 | Call w/ KE , AA, and AC re: theories and division of labor on reply to motion for injunction |
| 2/8/2020 | 3.30 | 3.30 | Research and outlining of section for reply on remedy brief; pull all of defendant's cases, research each, read Citizens United and Doe v. Albuquerque |
| 2/9/2020 | 3.20 | 3.20 | Researching and drafting section of reply on remedy brief (introduction; facial versus as applied timing and merits; approx 1,200 words) |
| 2/10/2020 | 2.80 | 2.80 | Continue research and drafting reply on remedy (distinguishing authority; power of the AG; need for an injunction) and exchange emails with KE and AC re same |
| 2/11/2020 | 2.00 | 2.00 | Review KE's draft section of remedy brief; incorpoate my sections; initial pass of entire version and draft to make things work together |
| 2/14/2020 | 0.50 | 0.50 | Editing pass of remedy brief; circulate same to team |

Attachment 2 to Doc. 79-2

| 3/25/2020 | | 0.20 | Receive and review opposing counsel's objections to attorneys' fees; email with KE and AC re same |
| 3/30/2020 | | 0.50 | Prepare declaration ISO attorneys fees motion |
| 4/30/2020 | | 2.10 | Receive, review, and edit draft brief ISO attorneys' fees motion |

Justin Marceau, from Doc. 79-3
Attachment 1

| Date | Hours | HRS *** billed | Itemized |
|------|-------|----------------|----------|
| 20-Aug-18 | 2 | 2 | Initial Study of KS statutory regime in detail, review prior Ag Gag |
| 23-Aug-18 | 3.5 | 3.5 | Review initial draft of complaint |
| 24-Aug-18 | 2.5 | 2.5 | Standing and sovereign immunity research, send emails and make calls to coordinate lead counsel position for this case. Settle on AC |
| 29-Aug-18 | 1.5 | 1.5 | Review Local Rules, review complaints filed in other jurisdictions |
| 29-Aug-18 | 3.5 | 2.5 | Review Complaint and make suggestiosn to AC re speech claims |
| 4-Sep-18 | 2 | 2 | Review edited complaint and proivde comments on DM's edits by |
| 26-Sep-18 | 1 | 1 | Litigation team call, prep re the same, particularly as to [Potential |
| 7-Nov-18 | 0.5 | 0 | Call with [Potential Additional Client] attorneys re potential |
| 14-Nov-18 | 2 | 0 | Call with [Potential Additional Client] developments. Call to ML re |
| 15-Nov-20 | 2 | 2 | Final review of complaint and emails re: concerns about complaint |
| 6-Dec-18 | 0.5 | 0.5 | Prepare PHV forms |
| 15-Jan-19 | 0.5 | 0.5 | Review answer and jury request, emails and discussion with team re: |
| 20-Mar-19 | 3.5 | 3.5 | Review defendant discovery; review discovery rules, talk to AC re |
| 10-Apr-19 | 1.5 | 0 | Defs initial disclosures review |
| 7-Sep-19 | 2.5 | 2.5 | Review correspondenc re settlement and draft of oppo brief to SJ |
| 17-Oct-20 | 1.5 | 1.5 | Research re public forum doctrine disagreement; review co-counsel |
| 22-Jan-10 | 0.5 | 0.5 | Review Court's SJ decision |

*** The hours bill edits first appear in Doc. 79-3. They were not proposed during the pre-plaintiffs' motion discussions.

David S. Muraskin, from Doc. 79-4

Attachment 1

| Date | Hours | HRS billed | Activity/Description |
|------|-------|-----------|----------------------|
| 11/1/2018 | | 0.60 | Complaint<br>Edit severability memo (0.6) |
| 11/2/2018 | | 0.90 | Complaint<br>Edit Kansas severability memo (0.9) |
| 11/6/2018 | | 0.40 | Complaint<br>edit Kansas severability memo (0.4) |
| 11/7/2018 | | 0.80 | Complaint<br>Edit KS severability memo |
| 11/29/2018 | | 1.00 | Complaint<br>Work on complaint |
| 11/30/2018 | | 1.60 | Complaint<br>Edit complaint (1.6); |
| 3/5/2019 | | 0.70 | Discovery<br>Edit memo to state on settlement |
| 4/1/2019 | | 0.50 | Discovery<br>Edit protective order |
| 4/12/2019 | | 0.50 | Discovery<br>Edit protective order |
| 5/1/2019 | | 2.30 | Discovery<br>Edit discovery letter to respond to |
| 8/1/2019 | | 0.60 | Settlement<br>Settlement issues |
| 8/15/2019 | | 0.30 | Settlement<br>Work on settlement issues |
| 9/12/2019 | | 2.10 | Draft<br>Edit and comment on Opposition to Motion for Summary Judgment and |
| 10/24/2019 | | 1.80 | Draft<br>Edit reply in support of Motion for |
| 10/28/2019 | | 0.30 | Correspondence<br>Email on Kansas Ag Gag reply |
| 1/22/2020 | | 0.40 | Review<br>review MSJ opinion |

Kelsey R. Kberly, from Doc. 79-5
Attachment 1

| Date | Hours | HRS billed*** | Description |
|---|---|---|---|
| 12-Mar-19 | 0.3 | 0.3 | Drafting supplement to Initial Disclosures |
| 12-Mar-19 | 0.5 | 0.5 | Corresponding with co-counsel and co-plaintiffs re initial disclosure supplement |
| 12-Mar-19 | 0.2 | 0.2 | Corresponding with co-plaintiffs re: supplementing Initial Disclosures |
| 12-Mar-19 | 0.5 | 0.5 | Call w/ Alan to discuss Supplement to Initial Disclosures and State's discovery requests |
| 13-Mar-19 | 0.5 | 0.5 | Organizing Supp to Initial Disclosures (production) for Shy |
| 18-Mar-19 | 0.4 | 0.4 | Reviewing State's discovery requests |
| 18-Mar-19 | 0.2 | 0.2 | Corresponding with ALDF General Counsel re: State's discovery requests |
| 18-Mar-19 | 0.6 | 0 | Researching responses to Interrogatories |
| 18-Mar-19 | 1 | 0 | Researching discovery requests and standards |
| 18-Mar-19 | 0.3 | 0.3 | Corresponding with co-counsel re: State's discovery requests |
| 18-Mar-19 | 0.2 | 0.2 | Starting initial draft of responses to ROGs |
| 18-Mar-19 | 0.2 | 0 | Contact KS atty re disco response samples |
| 19-Mar-19 | 0.7 | 0.7 | Discussing ROGs with GC |
| 20-Mar-19 | 0.5 | 0.5 | Discussing ROG responses with co-counsel |
| 20-Mar-19 | 0.4 | 0.4 | Drafting ROG responses |
| 20-Mar-19 | 0.4 | 0.4 | Drafting ROG responses |
| 21-Mar-19 | 0.5 | 0.5 | Conducting research and gathering info to answer interrogatories |
| 21-Mar-19 | 0.5 | 0.5 | Drafting responses to ROGs |
| 28-Mar-19 | 0.9 | 0.9 | Drafting ROG responses |
| 28-Mar-19 | 0.9 | 0.9 | Drafting ROG responses |
| 28-Mar-19 | 1.3 | 1.3 | Drafting ROG responses |
| 28-Mar-19 | 0.8 | 0.8 | Drafting ROG responses |
| 28-Mar-19 | 0.7 | 0.7 | Corresponding with fellow plaintiffs re discovery responses |
| 29-Mar-19 | 1.1 | 1.1 | Drafting ROG responses |
| 1-Apr-19 | 1 | 0 | Drafting proposed Stipulated Protective Order |
| 1-Apr-19 | 0.5 | 0.5 | Drafting ROG responses |
| 1-Apr-19 | 0.4 | 0 | Drafting ROG responses |
| 1-Apr-19 | 0.2 | 0.2 | Drafting responses to RFAs |
| 1-Apr-19 | 1.2 | 1.2 | Drafting responses to RFAs |
| 1-Apr-19 | 0.2 | 0.2 | Drafting responses to RFAs |
| 1-Apr-19 | 0.6 | 0.6 | Conferring with client re discovery responses |
| 2-Apr-19 | 0.4 | 0.4 | Revising draft Protective Order |

| 2-Apr-19 | 0.7 | 0.7 | Revising ROGs and RFAs and sending to co-counsel for review. |
|---|---|---|---|
| 2-Apr-19 | 0.4 | 0.4 | Drafting responses to RFPs |
| 2-Apr-19 | 0.2 | 0.2 | Revising draft Protective Order |
| 2-Apr-19 | 0.5 | 0.5 | Drafting RFP responses and sending to co-counsel for review |
| 2-Apr-19 | 0.3 | 0.3 | Revising ROG responses |
| 3-Apr-19 | 0.2 | 0.2 | Emailing co-plaintiffs re discovery responses |
| 3-Apr-19 | 0.4 | 0.4 | Conferring with team re discovery responses |
| 8-Apr-19 | 0.9 | 0.9 | Reading memo and conducting research re discovery/evidentiary issue |
| 8-Apr-19 | 0.3 | 0.3 | Revising draft Protective Order and sending to group for review |
| 8-Apr-19 | 0.1 | 0.1 | Corresponding with counsel re discovery responses and records review |
| 9-Apr-19 | 0.7 | 0.7 | Reviewing and discussing Protective Order with co-counsel |
| 9-Apr-19 | 0.1 | 0.1 | Sent draft Protective Order to Opp Counsel |
| 10-Apr-19 | 0.3 | 0.3 | Call Opp Counsel re discovery issues |
| 11-Apr-19 | 0.6 | 0.6 | Discuss Protective Order with co-counsel |
| 17-Apr-19 | 0.2 | 0.2 | Sending ROG responses to clients and counsel for review |
| 17-Apr-19 | 0.4 | 0.4 | Revising draft RFP responses and sending RFP and RFA responses to co- counsel for review |
| 17-Apr-19 | 0.7 | 0.7 | Revising RFA responses |
| 17-Apr-19 | 0.2 | 0.2 | Sending ROG responses to ALDF witnesses |
| 17-Apr-19 | 1.5 | 1.5 | Revising ROG responses |
| 18-Apr-19 | 0.2 | 0.2 | Corresponding with ALDF staff re discovery requests |
| 18-Apr-19 | 0.8 | 0.8 | Revising ROG responses |
| 18-Apr-19 | 0.6 | 0.6 | Phone call with counsel re discovery responses |
| 18-Apr-19 | 0.8 | 0.8 | Revising ROGs and sending to co-counsel for next review |
| 18-Apr-19 | 0.2 | 0.2 | Emailing with ALDF staff re ROG responses |
| 18-Apr-19 | 1.6 | 1.6 | Revising ROG responses |
| 19-Apr-19 | 0.2 | 0.2 | Talking with client re ROG responses |
| 19-Apr-19 | 0.4 | 0.4 | Organizing docs for Monday production |
| 19-Apr-19 | 0.1 | 0.1 | Corresponding with clients re ROG responses |
| 19-Apr-19 | 0.2 | 0.2 | Sending ROG verification pages to clients and arranging phone calls |
| 19-Apr-19 | 0.5 | 0.5 | Editing ROG responses based on client feedback and resending to clients |
| 19-Apr-19 | 0.4 | 0.4 | Finalizing ROG responses and sending to clients |
| 19-Apr-19 | 0.2 | 0.2 | Revising RFA and RFP responses |

| 19-Apr-19 | 0.2 | 0.2 | Organizing documents for production |
| 20-Apr-19 | 0.4 | 0.4 | Discussing ROG responses with client |
| 21-Apr-19 | 0.2 | 0.2 | Organizing docs for production |
| 21-Apr-19 | 0.1 | 0.1 | Sending docs to counsel for bates stamping |
| 21-Apr-19 | 0.2 | 0.2 | Finalizing responses to RFPs and RFAs |
| 21-Apr-19 | 0.3 | 0.3 | Revising ROG responses and sending question to co-counsel |
| 21-Apr-19 | 0.3 | 0.3 | Revising ROG responses |
| 22-Apr-19 | 0.5 | 0.5 | Proofing ROG responses and emailing to team to coordinate service |
| 22-Apr-19 | 0.5 | 0.5 | Proofing RFA and RFP responses |
| 22-Apr-19 | 1.3 | 1.3 | Finalizing and proofing ROG responses |
| 29-Apr-19 | 0.8 | 0.8 | Reviewing Defendants' email re discovery responses and conferring with co-counsel |
| 30-Apr-19 | 0.9 | 0.9 | Preparing response to Defendants' discovery dispute email |
| 30-Apr-19 | 1.4 | 1.4 | Preparing response to Defendants' discovery dispute email |
| 30-Apr-19 | 0.2 | 0.2 | Conferring with plaintiffs re discovery dispute email and response |
| 30-Apr-19 | 0.5 | 0 | Responding to Defendants' discovery dispute email |
| 30-Apr-19 | 2.2 | 2.2 | Working on response to Defendants' discovery dispute email |
| 1-May-19 | 0.4 | 0.4 | Conferring with ALDF staff re discovery responses |
| 1-May-19 | 0.9 | 0.9 | Revising letter to Defendants re discovery responses |
| 1-May-19 | 0.5 | 0.5 | Revising letter to Defendants in response to discovery email |
| 1-May-19 | 0.7 | 0.7 | Talking with co-counsel re discovery email response |
| 3-May-19 | 0.6 | 0.6 | Revising letter to Defendants re discovery email |
| 3-May-19 | 0.8 | 0.8 | Conferring with co-counsel to finalize response to Defendants' discovery email |
| 3-May-19 | 0.6 | 0.6 | Revising letter to defendants |
| 3-May-19 | 0.4 | 0.4 | Revising letter to Defendants re discovery responses, and emailing co- counsel |
| 3-May-19 | 0.3 | 0.3 | Emailing with co-counsel re response to discovery email |
| 6-May-19 | 0.4 | 0.4 | Reviewing Defendants' Answer |
| 6-May-19 | 0.8 | 0.8 | Reviewing Defendants Answer for possible discovery requests |
| 6-May-19 | 0.9 | 0 | Researching authentication in 10th Circuit and |

| | | | |
|---|---|---|---|
| | | | emailing co-counsel about same |
| 13-May-19 | 0.6 | 0.6 | Editing RFPs to Defendants |
| 13-May-19 | 1.2 | 1.2 | Drafting ROGs to Def's and sending to co-counsel for review |
| 14-May-19 | 0.4 | 0.4 | Finalizing ROGs and RFPs |
| 14-May-19 | 0.2 | 0.2 | Editing ROGs and RFPs and recirculating to counsel |
| 15-May-19 | 0.4 | 0.4 | Emailing co-counsel re Supplementing Rule 26 disclosures |
| 16-May-19 | 0.6 | 0.6 | Working on ROG supplement |
| 16-May-19 | 0.6 | 0.6 | Emailing plaintiffs re ROG and Rule 26 Disclosure supplements |
| 16-May-19 | 0.2 | 0.2 | Drafting supplement to Rule 26 disclosures |
| 17-May-19 | 0.3 | 0.3 | Call with co-counsel to discuss Rule 26 and ROG supplements |
| 17-May-19 | 0.4 | 0.4 | Finalizing Supplement to Initial Disclosures |
| 20-May-19 | 1.1 | 0 | Drafting Supplement to ROG responses |
| 20-May-19 | 0.4 | 0.4 | Drafting ROG supplement and sending to co-counsel for review |
| 20-May-19 | 0.8 | 0.8 | Drafting ROG supplement |
| 6-Jun-19 | 0.4 | 0 | Reading local rule and model Pretrial Order (PTO), consulting with co-counsel about it |
| 26-Jun-19 | 1 | 1 | Reviewing Defendants' discovery responses and emailing counsel re: same |
| 26-Jun-19 | 0.6 | 0.6 | Discussing upcoming tasks and PTO with co-counsel |
| 26-Jun-19 | 0.4 | 0.4 | Reviewing document for possible production ahead of 6/28 deadline; emailing counsel re: same |
| 27-Jun-19 | 0.8 | 0 | Revising PTO |
| 27-Jun-19 | 0.9 | 0.9 | Revising draft PTO |
| 27-Jun-19 | 0.7 | 0.7 | Finalizing ROG supplement and sending to ALDF witness for review and verification |
| 27-Jun-19 | 0.8 | 0.8 | Revising PTO |
| 27-Jun-19 | 0.7 | 0.7 | Drafting second supplement to ROG 3 response |
| 28-Jun-19 | 0.9 | 0.9 | Revising draft PTO |
| 28-Jun-19 | 1.3 | 1.3 | Revising draft PTO |
| 28-Jun-19 | 0.5 | 0.5 | Finalizing Supp ROG response and sent to counsel for service |
| 28-Jun-19 | 0.6 | 0 | Revising draft PTO |
| 1-Jul-19 | 1.4 | 1.4 | Organizing docs to authenticate via PTO |
| 1-Jul-19 | 0.4 | 0.4 | Emailing co-counsel and plaintiffs re |

| | | | authenticating docs for PTO |
|---|---|---|---|
| 1-Jul-19 | 0.4 | 0 | Revising draft PTO |
| 2-Jul-19 | 0.7 | 0.7 | Finalizing PTO and sending to team for final approval |
| 3-Jul-19 | 0.2 | 0.2 | Set call with opp counsel re PTO |
| 5-Jul-19 | 0.3 | 0.3 | Reviewing Opp counsel's rewrite of PTO and emailing co-counsel re same |
| 8-Jul-19 | 0.5 | 0.5 | Talking with co-counsel re PTO phone call |
| 9-Jul-19 | 0.5 | 0.5 | Continue review of Defs stipulations language, cross check against our exhibits, and review Eberly's suggestions for additional fact contentions in PTO |
| 10-Jul-19 | 0.2 | 0.2 | Edit Eberly's redraft of PTO; review Complaint for websites and other sources for possible stipulation proposals |
| 24-Jul-19 | 0.2 | 0.2 | Conferring with team on final pretrial conference |
| 28-Jul-19 | 0.3 | 0.3 | Conferring with team on settlement, extension and Defendants' MSJ |
| 31-Jul-19 | 0.4 | 0.4 | Respond to Defendants' revised PTO |
| 31-Jul-19 | 0.8 | 0.8 | Send edits to Alan on draft settlement proposal |
| 31-Jul-19 | 1.3 | 1.3 | Drafting affidavit for Shy 38 |
| 31-Jul-19 | 0.7 | 0.7 | Editing draft settlement proposal |
| 1-Aug-19 | 0.3 | 0.3 | Emailing with ALDF team re: settlement |
| 3-Aug-19 | 7 | 3.5 | *Travel to Kansas City for client meeting with Shy 38 and Hope Sanctuary* |
| 4-Aug-19 | 0.8 | 0.4 | *Travel from KCK to Lawrence, Kansas for client meeting with Shy 38* |
| 4-Aug-19 | 1.5 | 0.7 | *Client meeting with Shy 38* |
| 4-Aug-19 | 1 | 0.5 | *Travel from Lawrence, Kansas to airport after client meeting* |
| 4-Aug-19 | 7 | 3.5 | *Travel home after client meeting* |
| 8-Aug-19 | 0.4 | 0.4 | Discussing settlement with Shy 38 |
| 8-Aug-19 | 0.3 | 0.3 | Discussing settlement with Hope Sanctuary |
| 12-Aug-19 | 0.4 | 0.4 | Discussing settlement proposal with co-counsel |
| 12-Aug-19 | 0.7 | 0.7 | Drafting affidavit for Hope Sanctuary |
| 12-Aug-19 | 0.2 | 0.2 | Emailing ALDF team re: settlement counter proposal |
| 19-Aug-19 | 0.5 | 0.5 | Discussing MSJ strategy |
| 20-Aug-19 | 0.6 | 0.6 | Drafting reply to Def's SUF |
| 20-Aug-19 | 0.9 | 0.9 | Drafting response to Def's Statement of Fact (SUF) |
| 21-Aug-19 | 0.8 | 0.8 | Drafting response to D's SUF |
| 21-Aug-19 | 1.1 | 1.1 | Drafting response to D's SUF |

| 23-Aug-19 | 0.5 | 0.5 | Emailing with co-counsel and plaintiffs re: MSJ briefing and settlement proposal |
| 23-Aug-19 | 1.4 | 1.4 | Drafting Plaintiffs' SUF and sending to co-counsel for review |
| 23-Aug-19 | 1.4 | 1.4 | Drafting Plaintiffs' SUF |
| 23-Aug-19 | 1 | 1 | Drafting Plaintiffs' SUF for MSJ |
| 3-Sep-19 | 0.6 | 0.6 | Drafting SUF for MSJ |
| 3-Sep-19 | 1.5 | 1.5 | Revised our SUF and our response to Def's SUF |
| 5-Sep-19 | 0.4 | 0.4 | Editing draft Opp to Def's MSJ |
| 5-Sep-19 | 0.7 | 0.7 | Reviewing draft Opp to D's MSJ |
| 6-Sep-19 | 0.6 | 0.6 | Revising Opp to D's MSJ and sending back to counsel |
| 6-Sep-19 | 2.1 | 2.1 | Revising Opp to D's MSJ |
| 9-Sep-19 | 0.2 | 0.2 | Finalizing Hope Sanctuary affidavit |
| 9-Sep-19 | 1.2 | 1.2 | Drafting ALDF aff ISO MSJ |
| 9-Sep-19 | 0.5 | 0.5 | Updating ALDF affidavit |
| 9-Sep-19 | 0.6 | 0.6 | Revising draft Opp to D's MSJ |
| 9-Sep-19 | 0.6 | 0.6 | Reviewing CFS doc production and pulling exhibits for CFS aff |
| 10-Sep-19 | 0.4 | 0.4 | Editing draft Mem ISO MSJ |
| 10-Sep-19 | 1 | 1 | Revising draft Memo ISO MSJ |
| 10-Sep-19 | 0.9 | 0.9 | Revising draft Memo ISO MSJ |
| 10-Sep-19 | 0.2 | 0.2 | Revising ALDF affidavit |
| 11-Sep-19 | 3.6 | 3.6 | Preparing exhibits for Appendi |
| 12-Sep-19 | 0.6 | 0.6 | Collecting and sending to co-counsel and paralegal materials for Plaintiffs' Appendix for MSJ |
| 13-Sep-19 | 6 | 6 | Revising Opp to MSJ |
| 15-Sep-19 | 0.9 | 0.9 | Reviewing edited MSJ briefs and talking with co-counsel |
| 15-Sep-19 | 0.8 | 0.8 | Revising Memo ISO MSJ |
| 16-Sep-19 | 2.7 | 2.7 | Proofing and cite-checking Pltfs' Memo ISO MSJ |
| 16-Sep-19 | 2.1 | 2.1 | Proofing and cite-checking Opp to D's MSJ |
| 16-Sep-19 | 2.6 | 2.6 | Finalizing MSJ briefs |
| 18-Oct-19 | 2.1 | 2.1 | Reviewing D's Opp/Reply to MSJ and concentrating on facts section |
| 21-Oct-19 | 0.3 | 0 | Emailing co-counsel re: Reply |
| 21-Oct-19 | 1.9 | 1.9 | Drafting response to Def's Response to our SUF |
| 21-Oct-19 | 1.4 | 1.4 | Drafting response to D's Response to our SUF |
| 21-Oct-19 | 1.6 | 1.6 | Responding to D's MSJ (facts) |
| 22-Oct-19 | 0.2 | 0.2 | Corresponding with counsel re: MSJ Reply |
| 23-Oct-19 | 1.3 | 1.3 | Revising draft MSJ Reply |

| | | | |
|---|---|---|---|
| 23-Oct-19 | 0.5 | 0.5 | Discussing MSJ Reply with co-counsel |
| 23-Oct-19 | 0.3 | 0.3 | Reviewing MSJ draft and providing comments |
| 28-Oct-19 | 0.3 | 0.3 | Finishing review of MSJ Reply and sending back to co-counsel |
| 28-Oct-19 | 2.1 | 2.1 | Reviewing Reply ISO MSJ |
| 9-Dec-19 | 0.3 | 0.3 | Editing letter re: Supp Authority |
| 22-Jan-20 | 0.8 | 0 | Reading decision and conferring with team about it |
| 23-Jan-20 | 0.2 | 0.2 | Reviewing and editing draft Motion to Alter Judgment and proposed order and emailing back to co-counsel |
| 6-Feb-20 | 0.3 | 0.3 | Read D's Opp to Mtn to amend judgment and emailed co-counsel re: same |
| 6-Feb-20 | 0.4 | 0.4 | Phone call w/ co-counsel to discuss D's Opp to our Motion to Alter Judgment and plan for the Reply |
| 7-Feb-20 | 0.3 | 0.3 | Starting draft of Reply ISO motion to alter judgment |
| 10-Feb-20 | 0.7 | 0.7 | Drafting Reply ISO Motion to Alter Judgment |
| 10-Feb-20 | 0.5 | 0.5 | Drafting Reply ISO Motion to Alter Judgment |
| 11-Feb-20 | 0.7 | 0.7 | Drafting Reply ISO Motion to Alter Judgment |
| 14-Feb-20 | 0.4 | 0.4 | Editing Reply ISO Motion to Alter Judgment |
| 17-Feb-20 | 0.2 | 0.2 | Reviewing and responding to emails re: Reply ISO Mot to Alter |
| 3-Apr-20 | 0.3 | 0 | Reviewing Court's order sustaining motion to amend judgment and conferring with co-counsel re: same |

*** The hours bill edits first appear in Doc. 79-5. They were not proposed during the pre-plaintiffs' motion discussions.

Attachment 2, from Doc. 79-5.

| Date | Hours | HRS billed | Description |
|---|---|---|---|
| 24-Jan-20 | 0.3 | 0.3 | Conferring with team about fee petition |
| 17-Feb-20 | 0.2 | 0 | Reviewing and responding to emails re: Reply ISO Mot to Alter Judgment and |
| 20-Feb-20 | 0.1 | 0 | Reviewing email correspondence re: joint motion for an extension for attys fees |
| 24-Feb-20 | 0.1 | 0.1 | Reviewing and responding to emails from co-counsel re: attys fees questions |
| 25-Mar-20 | 0.2 | 0.2 | Reviewing emails from opp counsel and emailing w/ co-counsel re: attys fees |
| 2-Apr-20 | 0.1 | 0 | Emailing co-counsel re: next steps in |
| 3-Apr-20 | 0.1 | 0.1 | Emailing KS atty re: declaration for attys |

| 9-Apr-20 | 0.2 | 0.2 | Reviewing and emailing with co-counsel |
|---|---|---|---|
| 16-Apr-20 | 0.1 | 0.1 | Emailing ALDF paralegal and co-counsel re:atty fee declarations for motion |
| 16-Apr-20 | 0.2 | 0.2 | Kelsey Emailing ALDF paralegal re: next steps in |
| 24-Apr-20 | 0.6 | 0.6 | Editing draft declaration ISO motion for |
| 27-Apr-20 | 0.1 | 0.1 | Finalizing draft decl ISO motion for attys fees and sending to co-counsel for review |
| 1-May-20 | 1.9 | 1.9 | Editing Motion for Attys Fees and Costs |

Michael D. Moss, from Doc. 79-6

Attachment 1

| Date | Hours | HRS billed | Narrative |
|------|-------|------------|-----------|
| 12/9/2019 | 0.20 | | Examine final version of letter to the court regarding supplementing the memorandum in support of plaintiffs' motion for summary judgment in the Kansas Ag-Gag case with recent court order in the Iowa Ag-Gag case; Coordinate the finalization and filing of the letter. |
| 10/29/2019 | 0.40 | | Review, finalize, and electronically file plaintiffs' reply memorandum in support of their motion for summary judgment in the Kansas Ag-Gag case. |
| 10/24/2019 | 0.50 | | Prepare chart of challenged provisions of Kansas statute for use in plaintiffs' reply brief in support of their motion for summary judgment in the Kansas Ag Gag case. |
| 10/24/2019 | 0.50 | | Review Iowa federal court order striking down the Iowa Ag-Gag law for use in evaluation of draft reply in support of plaintiffs' summary judgment in the Kansas Ag-Gag case. |
| 10/24/2019 | 1.30 | | Examine defendant's response to plaintiffs' motion for summary judgment and reply in support of defendants' motion for summary judgment in the Kansas Ag Gag case. |
| 10/24/2019 | 1.50 | | Review and analyze draft plaintiffs' reply memorandum in support of their motion for summary judgment in the Kansas Ag Gag case, with proposed revisions |
| 10/17/2019 | 0.20 | | Examine Kansas federal court local rules for formatting limitations applicable to plaintiffs' reply brief in support of motion for summary judgment in the Kansas Ag Gag case and coordinate with co-counsel. |
| 9/20/2019 | 0.10 | | Examine defendants' motion for extension of time to file reply briefs on outstanding motions for summary judgment in the Kansas Ag-Gag case. |
| 9/16/2019 | 1.00 | | Review, revise, finalize and file plaintiffs' motion for summary judgment and suggestions in opposition to defendants' motion for summary judgment in the Kansas Ag-Gag case. |
| 9/16/2019 | 0.40 | | Draft and file motion for leave to file a |

| | | | |
|---|---|---|---|
| | | | response in opposition to defendants' motion for summary judgment in excess of page limitations in the Kansas Ag-Gag case. |
| 9/13/2019 | 0.10 | | Review original affidavit of plaintiff Shy 38 for summary judgment briefs in the Kansas Ag Gag case. |
| 9/12/2019 | 2.50 | | Review the draft of plaintiffs' memorandum in opposition to defendants' motion for summary judgment and the draft of plaintiffs' memorandum in support of plaintiff's own motion for summary judgment in the Kansas Ag-Gag case. |
| 9/9/2019 | 0.70 | | Review working draft of plaintiffs' brief in opposition to defendants' motion for summary judgment in the Kansas Ag Gag case. |
| 8/15/2019 | 0.20 | | Examine plaintiffs' final reply regarding settlement proposal in the Kansas Ag-Gag case. |
| 8/13/2019 | 0.20 | | Review revisions to draft of plaintiff's settlement proposal clarification letter for the Kansas Ag-Gag case. |
| 8/8/2019 | 0.20 | | Email and phone correspondence with Hope Sanctuary and with co-counsel regarding plaintiffs' settlement proposal in the Kansas Ag-Gag case. |
| 8/8/2019 | 0.20 | | Examine letter from defense counsel requesting clarification of plaintiffs' settlement proposal in the Kansas Ag-Gag case. |
| 8/7/2019 | 0.10 | | Phone and email correspondence to owner of plaintiff Hope Sanctuary concerning proposed settlement agreement in the Kansas Ag-Gag case. |
| 8/6/2019 | 0.20 | | Evaluate and correct error in the filing of plaintiffs' motion for extension of time to file a response to defendants' motion for summary judgment in the Kansas Ag-Gag case. |
| 8/6/2019 | 0.10 | | Review draft of and propose minor revisions to draft of plaintiffs' motion for extension of time to file a response to defendants' motion for summary judgment in the Kansas Ag-Gag case. |
| 7/31/2019 | 0.30 | | Examine plaintiff's draft settlement proposal in the Kansas Ag Gag case |
| 7/31/2019 | 0.10 | | Email correspondence from defense counsel regarding proposed revisions to pretrial order in the Kansas Ag Gag case. |

| | | | |
|---|---|---|---|
| 7/29/2019 | 0.40 | | Conference call with co-counsel for plaintiffs regarding strategy for moving forward in the Kansas Ag-Gag case. |
| 7/25/2019 | 0.10 | | Examine the court's revisions to the parties' draft proposed pretrial order in the Kansas Ag Gag case. |
| 7/25/2019 | 0.50 | | Examine defendants' motion for summary judgment in the Kansas Ag Gag case. |
| 7/25/2019 | 0.10 | | Examine defendant's proposed revisions to the draft pretrial order in the Kansas Ag Gag case. |
| 7/25/2019 | 0.50 | | Attend pretrial conference by phone in the Kansas Ag-Gag case. |
| 7/25/2019 | 0.50 | | Draft summary of issues addressed in the pretrial conference from counsel's perspective for the Kansas Ag-Gag case. |
| 7/24/2019 | 0.20 | | Conference call with Cambria Martin of Hope Sanctuary regarding status update for the Kansas Ag-Gag case. |
| 7/24/2019 | 0.30 | | Conference call with co-counsel for plaintiffs regarding issues for upcoming pretrial conference in the Kansas Ag-Gag case. |
| 7/22/2019 | 0.10 | | Email correspondence with Cambria Martin of Hope Sanctuary regarding status of the Kansas Ag-Gag case. |
| 7/22/2019 | 0.10 | | Review final joint proposed pretrial order submitted to the court in the Kansas Ag Gag case. |
| 7/3/2019 | 0.10 | | Email correspondence with co-counsel for plaintiffs regarding upcoming pretrial conference in the Kansas Ag Gag case. |
| 7/1/2019 | 0.20 | | Examine revised draft pretrial order in the Kansas Ag Gag case. |
| 6/28/2019 | 0.20 | | Review final version of plaintiffs' second supplemental interrogatory answers in the Kansas Ag Gag case. |
| 6/27/2019 | 0.20 | | Correspondence among co-counsel for plaintiffs regarding strategy for potentially dismissing a portion of the complaint and supplementing discovery responses for the Kansas Ag Gag case. |
| 6/20/2019 | 0.10 | | Review letter from defense counsel with verifications for defendants' answers to interrogatories in the Kansas Ag Gag case and forward to co-counsel. |
| 6/13/2019 | 0.40 | | Examine defendants' answers to interrogatories in the Kansas Ag-Gag case. |

| 5/29/2019 | 0.20 | | Finalize plaintiffs' supplemental interrogatory answers in the Kansas Ag-Gag case. |
|---|---|---|---|
| 5/23/2019 | 0.20 | | Examine new revisions to plaintiffs' draft supplemental responses to interrogatories in the Kansas Ag-Gag case. |
| 5/17/2019 | 0.10 | | Finalize plaintiffs' second supplemental initial disclosures in the Kansas Ag-Gag case. |
| 5/15/2019 | 0.10 | | Finalize plaintiffs' first four sets of discovery requests to defendants in the Kansas Ag-Gag case. |
| 5/14/2019 | 0.20 | | Review local federal court rules regarding interrogatories and production requests for the Kansas Ag-Gag case, and advise co-counsel of the same. |
| 5/13/2019 | 0.10 | | Examine draft of plaintiffs' interrogatories to defendants in the Kansas Ag-Gag case. |
| 5/13/2019 | 0.20 | | Examine correspondence from counsel for defendants regarding discovery dispute in the Kansas Ag-Gag case. |
| 5/13/2019 | 0.20 | | Examine draft of plaitniffs' requests for production to defendants in the Kansas Ag-Gag case. |
| 5/3/2019 | 0.80 | | Conference call with co-counsel regarding plaintiffs' proposed response to defendants' golden rule letter for the Kansas Ag-Gag case. |
| 5/3/2019 | 0.50 | | Assess and formulate suggested wording for objections within drafts of plaintiffs' supplemental and amended responses to interrogatories in the Kansas Ag-Gag case. |
| 5/3/2019 | 0.30 | | Examine drafts of letter in response to defendants' golden rule letter regarding plaintiffs' interrogatory answers in the Kansas Ag-Gag case. |
| 5/1/2019 | 0.50 | | Advise co-counsel regarding discovery dispute and potential amended interrogatory answers in accordance with Kansas federal case law and the admonishments of Judge O'Hara for the Kansas Ag-Gag case. |
| 5/1/2019 | 0.60 | | Further examine Kansas federal case law regarding discovery objections for the Kansas Ag-Gag case. |
| 5/1/2019 | 0.80 | | Conference calls among plaintiffs' counsel regarding discovery dispute in the Kansas Ag-Gag case. |
| 4/30/2019 | 1.60 | | Examine Kansas federal court case law regarding discovery objections for preparation |

| | | | |
|---|---|---|---|
| | | | of a response to defendants' golden rule letter or amending plaintiffs' discovery responses in the Kansas Ag-Gag case. |
| 4/30/2019 | 1.50 | | Examine defendants' lengthy golden rule letter response to plaintiffs' answers to interrogatories, cases cited therein, and plaintiffs' proposed response to disputed discovery items in the Kansas Ag-Gag case. |
| 4/22/2019 | 0.10 | | Draft letter to defense counsel to accompany verification pages for discovery responses from plaintiffs Hope Sanctuary and Shy 38. |
| 4/22/2019 | 0.20 | | Meeting with owner of Hope Sanctuary to finalize verification page for plaintiffs' answers to interrogatories in the Kansas Ag Gag case |
| 4/22/2019 | 0.10 | | Phone conference with Cambria Martin regarding Hope Sanctuary's verification of discovery responses in the Kansas Ag Gag case. |
| 4/21/2019 | 0.30 | | Coordinate document production efforts and verifications for discovery responses with co-counsel in the Kansas Ag-Gag case. |
| 4/19/2019 | 0.10 | | Email correspondence with clients to coordinate obtaining signed and notarized verifications to discovery responses in the Kansas Ag-Gag case. |
| 4/19/2019 | 0.30 | | Examine the further revised objections included in plaintiffs' draft discovery responses in the Kansas Ag-Gag case. |
| 4/19/2019 | 1.50 | | Prepare plaintiffs' documents for production to defendants in the Kansas Ag Gag case. |
| 4/18/2019 | 0.30 | | Examine plaintiffs' newly revised draft answers to interrogatories in the Kansas Ag-Gag case. |
| 4/18/2019 | 0.10 | | Review interpretations of local rule concerning verifications of discovery responses for the Kansas Ag Gag case. |
| 4/18/2019 | 0.60 | | Phone conference with co-counsel regarding plaintiffs' discovery responses in the Kansas Ag Gag case. |
| 4/18/2019 | 0.70 | | Further review federal cases regarding sanctionable discovery practice for preparation of plaintiffs' discovery responses in the Kansas Ag Gag case and advise co-counsel of the same. |
| 4/17/2019 | 0.60 | | Examine for editing plaintiffs' draft responses to interrogatories, request for production, and request for admissions in the Kansas Ag Gag case. |
| 4/15/2019 | 0.20 | | Review revised proposed protective order in |

| | | | |
|---|---|---|---|
| | | | the Kansas Ag-Gag case. |
| 4/3/2019 | 0.10 | | Review Kansas rules regarding stipulated extensions for discovery responses for the Kansas Ag-Gag case and advise co-counsel regarding the same. |
| 4/3/2019 | 0.10 | | Review plaintiffs' draft request for extension of time to respond to defendants' discovery and clarifications for certain discovery requests for the Kansas Ag Gag case. |
| 3/18/2019 | 0.40 | | Examine case law that Judge O'Hara advised counsel to read concerning the required discovery procedure to be followed in the Kansas Ag-Gag case and advise co-counsel. |
| 3/13/2019 | 0.10 | | Review plaintiffs' supplemental initial Rule 26 disclosures in the Kansas Ag-Gag case. |
| 3/8/2019 | 0.30 | | Examine defendants' first discovery requests to plaintiffs in the Kansas Ag-Gag case. |
| 3/5/2019 | 0.30 | | Review draft of plaintiffs' partial settlement proposal in the Kansas Ag-Gag case. |
| 3/1/2019 | 0.80 | | Review notes and prepare summary and impressions of the initial scheduling conference in the Kansas Ag Gag case. |
| 3/1/2019 | 2.50 | | Attend initial scheduling conference at the Kansas City, Kansas federal courthouse in the Kansas Ag-Gag case, including drive time, discussion of the case with co-counsel. |
| 2/28/2019 | 0.50 | | Review pleadings and initial disclosures in preparation for upcoming status conference in the Kansas Ag-Gag case. |
| 2/27/2019 | 0.30 | | Examine defendants' objections to plaintiffs' Rule 26 initial disclosures in the Kansas Ag-Gag case and discuss the same with co-counsel. |
| 2/22/2019 | 0.20 | | Examine final report of the parties planning conference for the Kansas Ag-Gag case. |
| 2/22/2019 | 0.20 | | Examine plaintiffs' final Rule 26 initial disclosures in the Kansas Ag-Gag case and arrange filing of certificate of service. |
| 2/21/2019 | 0.10 | | Examine defendants' rule 26 initial disclosures in the Kansas Ag-Gag case. |
| 2/21/2019 | 0.20 | | Advise co-counsel as to local practice and procedures regarding initial disclosures and the upcoming case management conference in the Kansas Ag-Gag case. |
| 2/21/2019 | 0.20 | | Review Kansas federal court local rules regarding Rule 26 initial disclosures for the Kansas Ag-Gag case. |

| | | | |
|---|---|---|---|
| 2/20/2019 | 0.10 | | Email correspondence from the court and with co-counsel regarding upcoming status conference in the Kansas Ag-Gag case. |
| 2/19/2019 | 0.10 | | Participate with co-counsel in planning for preparation of initial disclosures in the Kansas Ag-Gag case. |
| 2/8/2019 | 0.20 | | Examine email correspondence between the parties regarding Rule 26 conference and preliminary draft conference report in the Kansas Ag-Gag case. |
| 2/8/2019 | 0.50 | | Attend Rule 26 conference by phone in the Kansas Ag-Gag case. |
| 2/7/2019 | 0.20 | | Develop positions and strategy for potential discovery and other items for to be addressed in the Rule 26 conference with co-counsel. |
| 2/1/2019 | 0.10 | | Examine court order granting plaintiffs' motion to strike defendants' jury demand in the Kansas Ag-Gag case. |
| 1/31/2019 | 0.20 | | Finalize and file plaintiffs' reply in support of their motion to strike defendants' jury demand in the Kansas Ag-Gag case. |
| 1/30/2019 | 0.10 | | Examine for editing the draft reply in support of motion to strike defendants' jury trial demand in the Kansas Ag-Gag case. |
| 1/28/2019 | 0.20 | | Examine defendants' opposition to plaintiffs' motion to strike jury demand in the Kansas Ag-Gag case. |
| 1/23/2019 | 0.10 | | Examine initial order setting scheduling conference in the Kansas Ag-Gag case. |
| 1/22/2019 | 0.20 | | Finalize motion to strike defendants' jury demand in the Kansas Ag-Gag case and arrange filing. |
| 1/18/2019 | 0.20 | | Review local rule for filings by pro hac attorneys requiring local attorney signature for the Kansas Ag-Gag case. |
| 1/18/2019 | 0.20 | | Examine draft motion to strike defendants' jury trial demand in the Kansas Ag-Gag case. |
| 1/14/2019 | 0.20 | | Examine defendants' answer to the complaint in the Kansas Ag-Gag case, demand for jury trial, and designation of place of trial. |
| 1/14/2019 | 0.20 | | Develop strategy for moving to strike defendants' jury trial demand and filing motion for summary judgment in the Kansas Ag-Gag case. |
| 1/14/2019 | 0.10 | | Examine Kansas federal court rules regarding defendants' counter designation of place of |

| | | | trial for the Kansas Ag-Gag case. |
|---|---|---|---|
| 1/9/2019 | 0.50 | | Examine order from Iowa federal court granting ALDF's motion for summary judgment in its challenge to the Iowa Ag-Gag law for guidance in ALDF's challenge to the Kansas law. |
| 1/2/2019 | 0.20 | | Finalize and file proofs of service on the defendants in the Kansas Ag-Gag case. |
| 12/28/2018 | 0.30 | | Review and ensure compliance with federal rules and affidavit requirement for returns of service by Federal Express, advise co-counsel regarding the proof of service. |
| 12/27/2018 | 0.10 | | Advise ALDF with regard to proofs of service and due date for responses to potential motions to dismiss in the Kansas Ag-Gage case. |
| 12/26/2018 | 0.80 | | Examine clerk's order granting defendants additional time to file a responsive pleading, advise co-counsel regarding timing for defendants' potential motion to dismiss and potential deadlines for plaintiffs' response; examine federal and local district court rules regarding calculating deadlines; draft returns of service on defendants with affidavit. |
| 12/21/2018 | 0.20 | | Provide status update to all co-counsel regarding status of service on defendants. |
| 12/17/2018 | 0.30 | | ==Finalize additional pro hac application in the Kansas Ag-Gag case==, prepare other required documents, prepare the same for filing; further investigate and evaluate status of service on the governor. |
| 12/14/2018 | 0.60 | | Evaluate potential irregulairty concerning return receipt delivery to the Kansas Governor; investigate the address and identity of the person who signed for the delivery; review legal standards pertaining to method of service under Kansas and federal law. |
| 12/14/2018 | 0.30 | | ==Draft pro hac vice motions for additional co-counsel, prepare additional required documents, prepare pro hac vice materials for filing.== |
| 12/14/2018 | 0.30 | | Develop and coordinate strategy for addressing potential irregularity with service on th Governor, consider potential substitution of plaintiff in light of change of governor, and other forward strategy for the Kansas Ag-Gag |

| | | | lawsuit. |
|---|---|---|---|
| 12/12/2018 | 0.30 | | Review and process additional pro hac vice application materials for co-counsel in the Kansas Ag-Gag case; assess information concerning judicial temperament. |
| 12/11/2018 | 0.40 | | Examine partial Federal Express delivery receipts for service of process on defendants in the Kansas Ag-Gag case; develop strategy for obtaining full signature return receipts for return of service filings; correspond with co-counsel regarding additional necessary pro hac vice applications. |
| 12/6/2018 | 0.20 | | Prepare additional pro hac vice application; email correspondence with the court clerk regarding electronic filings; review orders granting several pro hac vice applications. |
| 12/5/2018 | 0.30 | | Prepare additional pro hac vice motions. |
| 12/4/2018 | 3.50 | | Review and prepare exhibits to the complaint; review additional grammar and citation revisions to the complaint; further draft pro hac vice motions and gather supporting forms and documentation; coordinate filing of the complaint and ancillary documents; communications with the court clerk regarding issuance of summonses. |
| 12/3/2018 | 6.30 | | Propose additional revisions to draft complaint and review revisions of other co-counsel; draft civil cover sheet, prepare designation of place of trial, prepare corporate disclosure statement, draft proposed summonses to defendants, prepare pro hac vice applications for multiple counsel, prepare checklists for case filing; review federal and local procedural rules for case filing and service; correspond with co-counsel regarding strategy, filings, pro hac vice applications and attachments, press releases, etc.; check citations in the draft complaint and find support for missing citations. |
| 12/1/2018 | 0.50 | | Review the draft complaint for the Kansas Ag-Gag case, make proposed revisions, and communicate the same with co-counsel. |

Jennifer Schlemmer from Doc. 79-6
Attachment 2

| Date | Hours | HRS billed | Description |
|---|---|---|---|
| 9/16/2019 | | | *Prepare numerous revisions to table of contents/appendix of exhibits to the MSJ and* |
| 9/13/2019 | | | *Telephone conference with K. Eberly re: documents received via sharefile and their* |
| 12/3/2018 | | | *Numerous emails and conferences to discuss representation and marketing strategyN* |
| 9/16/2019 | 1.5 | | *Prepare numerous revisions to table of contents/appendix of exhibits to the MSJ and change placement of bates-label and fix errors in the MSJ exhibits as requested by K. Eberly.* |
| 9/13/2019 | 2.2 | | *Prepare table of contents/appendix of exhibits to the MSJ and bates-label MSJ exhibits as requested by K. Eberly.\*\*\** |

\*\*\* Ms. Schlemmer's hour first appear in Doc. 79-6. They were not included during the pre-plaintiffs' motion discussions.

Amanda Howell from Doc. 79-7

Attachment 1

| Date | Hours | HRS billed*** | Description |
|---|---|---|---|
| 8-May-18 | 2.9 | 2.9 | research, drafting complaint (KS ag-gag) |
| 9-May-18 | 4.2 | 4.2 | research legislative history and drafting complaint |
| 10-May-18 | 3.9 | 3.9 | edits and research for complaint |
| 11-May-18 | 1.6 | 1.6 | outline, prep for call, analyze next steps with Director of Litigation |
| 14-May-18 | 3.6 | 0 | edits to complaint |
| 15-May-18 | 1.5 | 1.5 | edits to complaint |
| 16-May-18 | 3.4 | 1.4 | edits to complaint |
| 4-Jun-18 | 2.5 | 0 | edits to complaint |
| 5-Jun-18 | 1.1 | 1.1 | edit and re-draft complaint |
| 6-Jun-18 | 4.8 | 0 | edit and re-draft complaint |
| 7-Jun-18 | 4.9 | 2.5 | edit and re-draft complaint |
| 12-Jun-18 | 2.9 | 0 | edits to complaint |
| 19-Jun-18 | 4.4 | 2 | draft and edit complaint |
| 29-Jun-18 | 4.3 | 2.3 | edit complaint, incorporate Kelsey Eberly (KE) suggestions |
| 3-Jul-18 | 1.6 | 1.6 | call with KE to discuss complaint; edits to complaint |
| 5-Jul-18 | 4.4 | 2.4 | edits to complaint |
| 25-Jul-18 | 0.9 | 0.9 | final edits to complaint, circulate |
| 23-Aug-18 | 0.3 | 0.3 | edits to complaint |
| 5-Sep-18 | 3.5 | 3.5 | review complaint, edit |
| 26-Sep-18 | 0.7 | 0 | reviewing Strugar agreement |
| 26-Sep-18 | 0.5 | 0.5 | drafting agreements |
| 26-Sep-18 | 1.3 | 1.3 | prep and call re: strategy, next steps, complaint edits |
| 10-Oct-18 | 1 | 0 | drafting agreements |
| 11-Oct-18 | 0.4 | 0.4 | prep and call with potential local counsel |
| 29-Oct-18 | 0.7 | 0.7 | review/edit draft complaint |
| 15-Nov-18 | 0.8 | 0.8 | prep and call with co-counsel |
| 16-Nov-18 | 0.5 | 0.5 | call with tai re: local counsel |
| 19-Nov-18 | 0.8 | 0.8 | contact with co-counsel |
| 19-Nov-18 | 1 | 1 | prep and call with plaintiff, contact with add'l prospective plaintiff |
| 19-Nov-18 | 0.5 | 0.5 | prep and call with co-counsel and potential local counsel |
| 20-Nov-18 | 0.6 | 0.6 | contact with co-counsel and file review re: potential plaintiffs |
| 20-Nov-18 | 0.7 | 0.7 | contact co-counsel re: hope sanctuary |

|  |  |  | (potential plaintiff) |
| 20-Nov-18 | 0.8 | 0.8 | prep and call with potential plaintiff Hope Sanctuary |
| 21-Nov-18 | 0.5 | 0.5 | prep and call with potential local counsel |
| 26-Nov-18 | 0.5 | 0.5 | prep and call with Shy 38 |
| 28-Nov-18 | 2.5 | 2.5 | prep and call with Mike Moss (local counsel) |
| 3-Dec-18 | 0.5 | 0.5 | final edits to complaint |
| 22-Mar-19 | 1.2 | 1.2 | prep and call re discovery |
| 8-Apr-19 | 5.8 | 5.8 | doc identification search for discovery responses |

*** The hours bill edits first appear in Doc. 79-7. They were not proposed during the pre-plaintiffs' motion discussions

Alene Anello, from Doc. 79-8
Attachment 1

| Date | Hours | HRS billed | Description |
|---|---|---|---|
| 3-Dec-18 | 4.8 | 4.8 | reviewing/bluebooking complaint |

Exhibit 2

UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF KANSAS


| | | |
|---|---|---|
| ANIMAL LEGAL DEFENSE FUND, | ) | |
| CENTER FOR FOOD SAFETY, SHY 38, | ) | |
| INC., and HOPE SANCTUARY, | ) | Case No.:  18-CV02657 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAURA KELLY, in her official capacity | ) | |
| As Governor of Kansas, and DEREK | ) | |
| SCHMIDT, in his official capacity as | ) | |
| Attorney General of Kansas, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF ANTHONY F. RUPP</u>

Anthony F. Rupp, under penalty of perjury, declares and states as follows:

The Attorney General's office has asked me to review the file in *ALDF, et al v. Kelly, et al.*, Case

No. 18-CV-02657 for the purpose of offering an opinion on the reasonableness of the plaintiffs'

attorneys' fee request under 42 U.S.C. 1988. I offer my opinion, recognizing that any decision

regarding the allowance and amount of attorneys' fees ultimately rests with the District Court.

### *My Background and Qualifications*

1.      I offer this opinion based on my knowledge, education, training and experience. I

attach a Curriculum Vitae as Appendix A.

2.      I am a full-time trial attorney admitted in Kansas (1983) and Missouri (1989). I am

familiar with civil rights actions having represented cities, counties and state agencies, including

universities, in such actions.  My work in this area has been recognized in "Best Lawyers in

America" as I was named the 2020 "Lawyer of the Year" in Municipal Law-Kansas City (Kansas). I have received the same recognition several times previously.

3. In addition, I represent plaintiffs and defendants in complex business litigation, doctors, hospitals and attorneys in malpractice litigation, and employers in employment litigation. I have tried court and jury trials in state and federal courts throughout Kansas and Missouri. I have argued appeals in state and federal courts.

4. I am proud to have been recognized by the Johnson County Bar Association in 2008 as only the third recipient of the Honorable Earl E. O'Connor Civility Award. The award, which recognizes professionalism, honor, integrity, preparation and advocacy, is named in honor of the former Chief Judge of the United States District Court for the District of Kansas, as this Court is well aware. It was my pleasure to get to know Judge O'Connor when I was a law clerk in the adjoining chambers (Judge Saffels), and to have tried four lawsuits before Judge O'Connor.

5. I serve as the Partner-in-Charge of Foulston's Overland Park office and a member of the firm's governing five-member Executive Committee.

6. My undergraduate and law degrees were at Creighton University (undergraduate, cum laude, 1979, law, magna cum laude, 1983) where I served on the Law Review. Thereafter, I served as a law clerk to the Hon Dale Saffels in the United States District Court for the District of Kansas from 1983-85. I joined Shughart Thomson & Kilroy, P.C. as an associate in 1985, becoming a member in 1990. Shughart Thomson merged with Polsinelli in 2009. I practiced with Polsinelli until the summer of 2013, when I moved to Foulston Siefkin LLP.

### *Is This an Unpopular Cause?*

7. The litigation challenged the constitutionality of a Kansas statute, K.S.A. 47-1826 et seq, the farm animal and field crop and research facilities protection act.

8.     The plaintiffs suggest that it can be difficult to find representation for politically unpopular causes. I do not share that opinion under the facts present here.

9.     The farm animal and research facilities protection act has not been at the forefront of Kansas statutes since its enactment 30 years ago in 1990. It appears the statute has never been enforced against any person. I am not aware of this statute being a substantial campaign issue in any contested elections– including during the current election season following the District Court opinion. While there has been some media coverage of the opinion, I would expect there to be some coverage of any federal court order regarding the constitutionality of a statute.

10.    In my observation, Kansas attorneys are not shy about bringing civil rights lawsuits on politically charged issues from abortion to school finance to state and local executive orders and municipal ordinances. Had this been a politically charged issue, I would not have expected Kansas parties or attorneys to wait 30 years to bring a challenge. That this case may involve some publicity is likely to serve as an incentive for an attorney to take the case, rather than the opposite.

11.    I see no citation of this statute in any Kansas state or federal lawsuit on Westlaw prior to the filing of this case. I have seen no evidence that any Kansas parties unsuccessfully attempted to retain Kansas counsel to prosecute this matter.

12.    I have seen no evidence that plaintiffs failed in any attempt to retain Kansas counsel to prosecute this matter.

### *Hourly Rates*

13.    I have reviewed the requested attorney fees to determine my opinion of market rates in the relevant market suggested by the plaintiffs (Kansas City, Kansas).

14.    In my opinion, the proposed hourly rate of Mr. Moss as local counsel of $250 is reasonable and within the market range for his years of experience.

15.     Based on their years of experience of four and six years respectively, Ms. Eberly and Ms. Anello likely would be associates at Mr. Moss's firm and would likely have a lower hourly rate than that of Mr. Moss. Likewise, law students working at the law school would likely have a lower hourly rate than proposed.

16.     Professor Chen is qualified and accomplished. Plaintiffs propose a $600 hourly rate for him. Professor Chen and I have similar years of experience. My standard hourly rate in 2020 is $425. My hourly rate is within the market range. My opinion is that Professor Chen's market rate in Kansas City, Kansas would be closer to $425 than to $600.

17.     In my opinion, Kansas City, Kansas market rates of lawyers of comparable skill and experience and for paralegal and law student time would fall within the market range if their rates were modified as follows: An hourly rate of $450 for Chen, $400 for Struger, $225 for Eberly, $250 for Moss, $125 for paralegal time and $100 for the law student time.

### *The amount of time expended*

18.     Once the reasonable hourly rate has been determined, a factor to be considered is whether the tasks being billed would normally be billed to a paying client. I review the amount of time expended as a senior partner in a private law firm would review the reports of subordinate attorneys for purposes of billing a paying client. The courts have stated that not all hours expended in litigation are normally billed to a client and that an applicant should exercise billing judgment as to the number of hours worked.

19.     I have reviewed the time entries globally and specifically to form an opinion on whether the hours billed would normally be billed to a client.

20.     The first circumstance that I looked at was the litigation itself. The Litigation focused on narrow legal issues. The facts cited in the summary judgment motions do not appear to be based on discovery but rather information known before the lawsuit was filed.

21.     There was no summary judgment hearing and no trial. There were no depositions taken.

22.     The defense was capably handled primarily by one attorney in the Attorney General's office without outside counsel.

23.     Members of the plaintiffs' trial team had brought similar lawsuits in other states, so there should have been efficiencies. Nevertheless, plaintiffs seek attorney fees and expenses totaling for 10 different billers totaling $235,426.57. This amount appears excessive.

24.     Plaintiffs assert that "only three of those lawyers (Chen, Struger, and Eberly) were primarily responsible as lead counsel." (Doc. 79, p. 9 of 29).

25.     The use of 10 billers under these circumstances appears to have resulted in duplication and inefficiency.[1] A billing partner typically would not want to bill a client in full for bringing 10 lawyers up to speed about a matter, multiple sets of eyes reviewing a matter, and for generalized background and training of young lawyers and law school students.

26.     Under the totality of circumstances described above – including narrow legal issues based on facts known before the lawsuit was filed and a defense team of one– most law partners would exercise the reasonable billing judgment to reduce the number of billers.

---

[1] The use of 10 or more billers is not per se duplicative. The rush of deadlines in a complex case, the time necessary to prepare for trial or to research novel issues, the response to extensive discovery requests and other circumstances may lead to the need for all hands-on deck. That does not appear to be the case here.

27.     I would be comfortable as a billing attorney exercising the billing judgment to bill for multiple billers, but only the time of the three "lead" attorneys (Chen, Struger and Eberly) local counsel Moss, paralegal Schlemmer and a joint category of "law student" time.

### Conclusion

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct based on information known to me.


_/s/ Anthony F. Rupp_
Anthony F. Rupp



# FOULSTON
### ATTORNEYS AT LAW



## ANTHONY "TONY" F. RUPP
PARTNER

KANSAS CITY OFFICE
32 Corporate Woods
9225 Indian Creek Parkway, Suite 600
Overland Park, KS 66210-2000

T: 913.253.2127
F: 866.889.9276

trupp@foulston.com

## PROFILE

Tony Rupp is the partner-in-charge of the Kansas City office. He is a trial attorney whose practice includes representation of universities, corporations, hospitals, municipalities, and trucking companies. Tony joined the firm in 2013 after practicing at Shughart Thomson & Kilroy and Polsinelli, P.C.

Mr. Rupp's efforts were recognized in 2008 by the Johnson County Bar Association, which named him the third recipient of the Honorable Earl E. O'Connor Civility Award recognizing professionalism, honor, integrity, preparation, and advocacy.

Based on his work on behalf of municipalities he was recognized by *Best Lawyers*® as the 2020 Municipal Law "Lawyer of the Year," the 2018 Personal Injury Litigation - Defendants "Lawyer of the Year," the 2013, 2016, and 2019 Litigation – Municipal "Lawyer of the Year," and the 2017 Medical Malpractice Law – Defendants "Lawyer of the Year," all for Kansas City, Kansas. Mr. Rupp enjoys Martindale-Hubbell Law Directory's highest "AV" rating for lawyers and is listed in *Chambers USA* as a leading general commercial litigation attorney in the United States. He was selected by his peers for inclusion in the *Missouri & Kansas Super Lawyers*® list and *The Best Lawyers in America*© for the areas of commercial litigation and other categories as well.

## Education

- Creighton University School of Law (J.D., 1983)
  magna cum laude; Assistant Editor - *Creighton Law Review*
- Creighton University (BA, 1979)
  cum laude

## Admissions

- Kansas (1983)
- Missouri (1989)



## PRACTICE AREAS

- Litigation & Disputes
- Healthcare
- Professional Malpractice
- Trade Secret & Noncompete Litigation
- Governmental Liability

## INDUSTRIES

- Healthcare

## COMMUNITY INVOLVEMENT

- Overland Park Chamber of Commerce
  - Board of Directors
  - Co-Chair, Public Policy and Advocacy Committee

## RELEVANT EXPERIENCE

Prosecuted and defended corporations and executives in trade secrets cases in multiple jurisdictions.

Defended class action lawsuits, including cases under state and federal antitrust laws.

Represented corporations and individuals in fiduciary duty and other shareholder lawsuits.

Defended doctors, attorneys, accountants and other professionals in litigation in Kansas and Missouri.

Tried multiple jury and court trials in state and federal courts in Kansas and Missouri. Argued appeals in Kansas and Missouri and in the federal courts. Extensive experience in arbitration and mediation. Law clerk to the Hon. Dale Saffels, U.S. District Court, Kansas, 1983-85 Polsinelli, P.C. (previously Shughart Thomson & Kilroy, P.C.) 1985-2013, becoming a partner in 1990

## PROFESSIONAL MEMBERSHIPS, AFFILIATIONS, AND HONORS

- Recognized by *Best Lawyers®* as the 2013, 2016, and 2019 Kansas City, Kansas Litigation - Municipal "Lawyer of the Year," 2017 Medical Malpractice Law - Defendants Kansas City, Kansas "Lawyer of the Year," 2018 Kansas City, Kansas Personal Injury Litigation - Defendants "Lawyer of the Year," and 2020 Municipal Law Kansas City, Kansas "Lawyer of the Year"
- Selected by peers for inclusion in *The Best Lawyers in America©* in the areas of Commercial Litigation, Litigation - Municipal, Medical Malpractice Law - Defendants, Municipal Law, and Personal

# FOULSTON
## ATTORNEYS AT LAW

Injury Litigation - Defendants, 2007-2020

- Selected for inclusion in *Missouri & Kansas Super Lawyers*® List, 2005-2018 (a Thomson Reuters business)
- Identified by Chambers USA as a leading lawyer in the United States for Litigation: General Commercial, 2007-2020
- American Bar Association
- Kansas Bar Association
- Johnson County Bar Association , Charitable Foundation, Fellow; Charitable Foundation, Former Trustee; The Earl E. O'Connor Civility Award Recipient (2008)
- The Missouri Bar
- Kansas Bar Foundation Fellow
- Kansas Association of Defense Counsel , Former President; William Kahrs Distinguished Service Award (KADC's highest award)
- Defense Research Institute , Former Kansas State Representative
- Kansas City Metropolitan Bar Association

## PRESENTATIONS

**2015**

- All the Ethics News That'll Fit in 50 Minutes (Foulston Siefkin LLP, Ethics Seminar for Corporate Counsel)
- Current Issues in Health Care Litigation (Foulston Siefkin LLP, Kansas City Health Law Institute)

## PUBLICATIONS

**2014**

- Analyzing a Trade Secret Case in Kansas
  -The Journal of the Kansas Bar Association

**1982**

- Eighth Circuit Survey, Criminal Law
  -Creighton Law Review 893

## ISSUE ALERTS

**2020**

- Coronavirus: State of Missouri Issues Stay-at-Home Order

Exhibit 3

## UNITED STATES DISTRCT COURT
## FOR THE DISTRICT OF KANSAS

ANIMAL LEGAL DEFENSE FUND,    )
CENTER FOR FOOD SAFETY, SHY 38,    )
INC., and HOPE SANCTUARY,    )    Case No.:  18-CV02657
   )
            Plaintiffs,    )
   )
v.    )
   )
LAURA KELLY, in her official capacity    )
As Governor of Kansas, and DEREK    )
SCHMIDT, in his official capacity as    )
Attorney General of Kansas,    )
   )
            Defendants.    )

## **DECLARATION OF ARTHUR S. CHALMERS**

I, Arthur S. Chalmers, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am an employee of the Kansas Attorney General Derek Schmidt. My position is Assistant Attorney General, Trial Counsel, Complex Tort Defense Unit. I have had this position since January 2019. Before then I practiced law in Wichita, Kansas, starting in 1981.

2.     I make this Declaration from my personal knowledge.

3.     I am a United States citizen, over 18 years of age, and a resident of the State of Kansas.

4.      I have represented Kansas Attorney General Derek Schmidt in this captioned litigation. I am the only attorney who provided legal services in the defense of General Schmidt. To the best of my recollection, I had the assistance of an intern law student who helped collect some small parts of the legislative history pertaining to the Kansas farm animal and research facilities protection act. I have also been assisted by paralegal/secretaries with clerical tasks. I feel this staffing was appropriate given the relative lack of complexity of the facts and limited number of legal issues in this case.

5.      Attachment A to this declaration is a timeline of the major events in this litigation.

6.      It was apparent from, the outset of this litigation, that the only facts which needed to be developed were (a) whether one or more of the plaintiffs were threatened with prosecution under the Farm Animal and Research Facilities Act, (b) if any plaintiff was or would suffer an injury-in-fact needed to support organizational or enterprise standing, and (c) any "facts," separate from the language of the act, showing that the act was intended to impair any of the plaintiff's freedom of speech rights. Plaintiffs' answers to written discovery verified that no deposition discovery was needed on these subjects.

7.      A copy of Plaintiffs' responses to requests for admission, supplemental answers to interrogatories and requests for production are attachment B to this declaration.

8.      No depositions were taken in this case.

9.     Much of the written discovery issued to plaintiffs concerned their claim to an enterprise "injury-in-fact." While defendants' discovery asked for evidence of injury from the challenged Kansas statutes, plaintiffs responded to the discovery by describing and dumping hundreds documents relating to plaintiffs non-Kansas activities and refusing to breakout the alleged injury from the Kansas statute. Attachment B, at pp. 1-101. The hundreds of pages of documents that plaintiffs say their attorneys were required to review for production and responses to interrogatories, Plaintiffs' Br. at 3, were supposedly related to organizational standing, an issue plaintiffs lost on summary judgment.

10.     The parties spent more time on discovery because plaintiffs raised invalid objections to some of defendants' written discovery. This had to be resolved by exchanges of email and a telephone conference. Ultimately, plaintiffs provided supplemental answers to interrogatories. See attachment B, at pp. 54-101.

11.     The dialog or consultation between the parties pursuant to D. Kan. 54.2(d)(2) was not substantial. Plaintiffs made a demand. Defendants asked to review time records and fee contracts. Plaintiffs provided these, with the exception of any fee contract between Mr. Moss and plaintiffs. Defendants provided a list of possible issues about plaintiffs' fee demand and then provided a proposed fee with detailed explanation. Plaintiffs then declared impasse.

12.     A copy of a fee contract with some of plaintiffs' attorneys concerning this litigation is attachment C.

13.     Some of the information filed with the Memorandum in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses was not provided during the parties' consultation. Plaintiffs have appeared to have also reduced some time from what they had demanded in the parties' consultation. But the separation now between the parties is pretty much the same comparing the fees and expenses plaintiffs demanded before the filing of the Memorandum (when time added for fees to ligate their fee demand and to prepare a reply in support of their motion to alter and amend excluded), and defendants' proposed fee/expense award provided to plaintiffs before they filed the Memorandum.

14.     I prepared attachment D from the plaintiffs' time records produced during the conferring period. The attachment roughly summarizes time spent by plaintiffs' counsel, as reported in their records, on categories of the proceedings. For example, the records show counsel for the plaintiffs spent 146.6 hours preparing the Complaint in this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 27, 2020.

*s/ Arthur S. Chalmers*
Arthur S. Chalmers

# *ALDF et al. v. Kelly et al.*, No. 18-2657
# Timeline of certain proceedings and events

| | |
|---|---|
| 12/4/2018 | Complaint filed (Doc 1) |
| 1/22/2019 | Plaintiffs' Motion to Strike Jury Trial Demand (Doc 24) |
| 1/31/2019 | Plaintiffs' Reply in Support of Motion to Strike (Doc 27) |
| 2/22/2019 | Def. Rule 26 Disclosures (Doc 30 [notice]) |
| 2/27/2019 | Plaintiffs' Rule 26 Disclosures (Doc 30 [notice]) |
| 3/1/2019 | Scheduling Conference with Magistrate, in KCK (Doc 32) <br> Attended by Attorneys Moss and Chen for plaintiffs and Attorney Chalmers for defendants |
| 3/13/2019 | Plaintiffs' Supplemental Rule 26 Disclosures (Doc 36 [notice]) |
| 4/22/2019 | Plaintiffs' responses to defendants written discovery (Doc 38 [notice]) |
| 5/15/2019 | Plaintiffs' written discovery is served on defendants (Doc 39 [notice]) |
| 5/17/2019 | Plaintiffs' Second Supplemental Rule 26 Disclosures (Doc 40 [notice]) |
| 5/20/2019 | Def. Supplemental Rule 26 Disclosures (Doc 41 [notice]) |
| 5/29/2019 | Plaintiffs' supp/amended responses to defendants' interrogatories (Doc 42 [notice]) |
| 6/28/2019 | Plaintiffs' second supp/amended responses to defendants' interrogatories (Doc 44 [notice]) |
| 7/25/2019 | Defendants' motion for summary judgment (Doc 46) |
| 7/25/2019 | Final Pretrial Conference (by AT&T conference line (Doc 48) <br> Participating Attorneys Moss and Chen for plaintiffs and Attorney Chalmers for defendants (Doc 49) |
| 9/16/2019 | Plaintiffs' motion for summary judgment (Doc 53) and response to Defendants' motion for summary judgment (Doc 55) |
| 10/15/2019 | Defendants' response and reply regarding cross-motions for summary judgment (Doc 60) |
| 10/29/2019 | Plaintiffs' reply regarding motion for summary judgment (Doc 61) |
| 1/22/2020 | Court's Order granting and denying each cross-motion in part (Doc 63) |
| 1/24/2020 | Plaintiffs' motion to alter and amend (Doc 65) |
| 2/6/2020 | Defendants' response to plaintiffs' motion to alter and amend (Doc 67) |
| 2/20/2020 | Plaintiffs' reply in support of plaintiffs' motion to alter and amend (Doc 68) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ANIMAL LEGAL DEFENSE FUND,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-2657-KHV-JPO** |
| | ) | |
| **LAURA KELLY,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. Rules of Civ. P. 26 and 33, Plaintiffs Animal Legal Defense Fund ("ALDF"), Center for Food Safety ("CFS"), Shy 38, Inc. ("Shy") and Hope Sanctuary ("Hope") hereby object and respond to Defendants Laura Kelly and Derek Schmidt's ("Defendants") First Set of Interrogatories, as follows:

## RESERVATION OF RIGHTS AND
## INTERPRETATION OF DEFINITIONS, TERMS, AND SCOPE

1.     These responses and objections to Defendants' First Set of Interrogatories (collectively, the "Responses") are based upon Plaintiffs' reasonable investigation to date, knowledge, and belief. These Responses are given without prejudice to subsequent revision, supplementation, or withdrawal based upon any information, evidence, and/or document that may later be discovered or determined.

2.     These Responses were prepared based upon Plaintiffs' good faith interpretation and understanding of the Definitions and individual Interrogatories and are subject to correction for inadvertent errors or omissions, if any.

3.     Plaintiffs reserve the right to refer to, to conduct discovery with reference to, or

1

to offer into evidence at the time of trial, any and all facts, evidence, documents, and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these Responses.

4.      Plaintiffs make these Responses without conceding the materiality, admissibility, or relevance of the Responses. Plaintiffs reserve all objections to the use or admissibility of these Responses. All such objections may be interposed by Plaintiffs at the time of trial, motion, or as otherwise required by the Rules or by order of this Court.

5.      These Responses are made purely for the purposes of this action.

6.      Insofar as a response by Plaintiffs may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular Response only.

7.      Based on Plaintiffs' consultations with counsel for Defendants, these Responses incorporate and are provided using the following interpretations of certain Definitions and terms.

      a.   Plaintiffs construe Defendants' definition of "You" as excluding Plaintiffs' attorneys. These Responses will provide non-privileged, non-attorney work product responsive information within Plaintiffs' possession, custody, or control.

      b.   Plaintiffs construe Defendants' definition of "Document" as excluding documents constituting or containing information protected by the attorney-client privilege or the attorney work product doctrine.

      c.   Plaintiffs construe the term "personnel knowledge" as "personal knowledge," understand this as a typo.

**Attachment B 00002**

8.      While Defendants' Interrogatories are propounded to all Plaintiffs collectively, certain Interrogatories are specific to certain Plaintiffs (*see, i.e.*, Interrogatories Nos. 2-3, 5, specific to Plaintiff ALDF). Interrogatories specific to certain Plaintiffs are responded to only on behalf of those specific Plaintiffs; other Plaintiffs do not represent herein that they possess the information necessary to answer those Interrogatories that are not relevant to them. In contrast, Interrogatories directed to all Plaintiffs, or Interrogatories which are not specific to any particular Plaintiff, are here responded to on behalf of all Plaintiffs.

## INTERROGATORIES

INTERROGATORY NO. 1:

Identify the current articles of incorporation, trust documents, or articles of association of each plaintiff which is a 501(c)(3) organization (as those terms are employed for qualification as a 501(c)(3) organization) and identify the current business formation document(s) for each plaintiff, if any, which is not a 501(c)(3) organization.

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Subject to and without waiving the foregoing objection, Plaintiffs respond as follows:

Plaintiff ALDF is a 501(c)(3) organization whose articles of incorporation can be found at ALDF0960 – 0965.

Plaintiff CFS is a 501(c)(3) organization whose articles of incorporation can be found at CFS0154 – 0156.

Plaintiff Shy is a 501(c)(3) organization whose articles of incorporation can be found at SHY093 – 095.

Plaintiff Hope is a 501(c)(3) organization whose certificate of incorporation can be found at HOPE021.

**Attachment B 00004**

INTERROGATORY NO. 2:

State the principal and material facts supporting your allegations that Plaintiff ALDF has the capacity and current intention to conduct specified "undercover investigations" but for the KFAFCRF, as referenced in whole or part in the Complaint, ¶¶ 3, 21, 76, 89 & 110, and identify (a) all persons with personnel knowledge of some or all such facts (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the attorney-client privilege, the attorney work product doctrine, and the First Amendment privilege. Specifically, some of the facts demonstrating Plaintiff ALDF's capacity and current intention to conduct undercover investigations are contained in and/or constitute attorney-client privileged communications and other documents subject to that privilege, or attorney work product, including drafts and internal memoranda. Moreover, because information and documents responsive to this interrogatory contain the names and contact information of ALDF members and donors, Plaintiff ALDF reserves the right to redact and withhold such names and information pursuant to its First Amendment associational privilege. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Plaintiffs reserve the right to delay disclosure of such information and documents until the court enters a Stipulated Protective Order in this matter. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to

5

an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Plaintiffs also object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiff ALDF to identify persons whose knowledge is tangential, at most, to ALDF's standing, is minor and duplicative of other identified individuals' broader knowledge, and is not reasonably necessary to test ALDF's standing to bring this suit. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this Interrogatory. Finally, this Interrogatory is overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to ALDF's capacity and intention to conduct undercover investigations, and which are duplicative of other identified documents' contents. Plaintiffs will identify any non-privileged documents containing substantial information responsive to this Interrogatory that are the result of a reasonable and proportionate search. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

Plaintiff ALDF has the capacity to conduct the types of undercover investigations detailed in its Complaint, and would do so but for the Kansas Ag-Gag law (codified at Kansas Statutes Annotated, 47-1825 to 47-1828, additionally enforced through Kansas Statutes Annotated 21-6604) (hereafter, "Kansas Ag-Gag law"). ALDF possess the funds, infrastructure, expertise, and

Attachment B 00006

personnel necessary to plan, direct, and receive the results of an undercover investigation in Kansas, as well as to share information obtained from such an investigation with the public. First, ALDF has dedicated funds that it has reserved for use in conducting undercover investigations, which include funds that would cover an investigation in Kansas, if the state's Ag-Gag law were to be struck down. Even were ALDF to use its dedicated funds to pursue another investigation in another state, ALDF possesses sufficient funds to retain an investigator to complete an investigation in Kansas. Second, ALDF has personnel with the expertise and institutional tools necessary to successfully carry out such investigations, who have been tasked with overseeing ALDF's undercover investigations. Specifically, ALDF's Chief Programs Officer, Mark Walden, provides strategic direction for ALDF's undercover investigations, and has been charged with aiding the organization in fulfilling its mission-driven objectives by pursuing undercover investigations in a variety of states and locations to uncover animal cruelty and support the organization's advocacy efforts.  ALDF's Chief Operating Officer, Janiec Gutierrez, helps execute investigations by retaining and liaising with the investigating entity or investigator, and handling all logistical matters relating to the investigation, including receiving the investigative footage and compensating the investigator.

ALDF's capacity to conduct the undercover investigations it describes in the Complaint is further confirmed by its track record of pursuing such investigations. ALDF-retained undercover investigators have carried out undercover investigations of animal facilities around the country, including locations that would meet the definition of an "animal facility" under Kansas Statutes section 47-1826(b). These include ALDF's 2016 investigation of a Nebraska pig breeding operation owned by The Maschhoffs, the nation's third-largest pig producer and a Hormel Foods supplier. ALDF's investigator obtained employment at The Maschhoffs facility and, over the

**Attachment B 00007**

course of several months, documented horrendous animal mistreatment, including long-term neglect and lack of appropriate veterinary care. The investigation revealed pigs suffering for days or weeks with grossly prolapsed rectums, intestinal ruptures, large open wounds, and bloody baseball-sized ruptured cysts. Pigs were denied food for long periods of time, and a botched "euthanasia" resulted in a mother pig slowly dying after being shot in the head multiple times over the course of several minutes.

To take another example, in 2015 ALDF conducted an investigation of a Carthage, Texas-based Tyson Foods chicken slaughterhouse. Again, ALDF's investigator obtained employment at the slaughterhouse and, over the course of several months, documented the atrocious conditions suffered by the birds and workers inside the plant. The investigation showed birds treated like trash, left to suffocate by the hundreds on overcrowded conveyor belts and discarded, still alive, in heaps of dead and dying chickens, feathers, and filth. And it documented the injuries and illnesses the investigator endured working on the chicken-hanging line, including carpal tunnel syndrome from attempting to hang 35 live birds a minute, eye infections from the chicken feces, dirt, dust, and dander that got into her eyes because of inadequate "protective" gear provided by Tyson, and extreme heat abrasion on her arms, which caused a painful, red rash.

Plaintiff ALDF also has the current intention to conduct the types of undercover investigations detailed in its Complaint, but for the credible threat of criminal prosecution for violating the Kansas Ag-Gag law. This intention is a factor of the great need for undercover investigations to pursue ALDF's advocacy and fulfill its mission of protecting the lives and advancing the interests of animals through the legal system, coupled with ALDF's specific interest in Kansas as a site for such investigations.

First, as detailed at length in its Complaint, ALDF actively seeks out and uses the information and footage gained through its own and others' investigations to further its work. ALDF's investigation of The Maschhoffs, for example, spurred countless communications efforts to engage and educate ALDF's members and supporters, and the broader public, about the suffering of pigs sourced for Hormel Foods' pork products. It also provided evidence ALDF used in a civil false advertising lawsuit against Hormel Foods. Similarly, the information ALDF gained through its Tyson chicken slaughterhouse investigation resulted in the filing of complaints—concerning the treatment of chickens, food safety, worker protection, and false corporate statements—with several federal and state agencies, as well as sustained efforts to engage ALDF's audiences about the suffering of chickens and mistreatment of workers in Tyson facilities like the one ALDF investigated.

Second, as detailed in the Complaint, ALDF has the specific desire to conduct an investigation in Kansas, for several reasons. Kansas is a major locus of animal agriculture: the fifth largest animal agriculture producer in the United States, and among the country's largest producers of pigs and cows. At the same time, ALDF has reason to believe, from the scores of undercover investigations in other states, that an investigation of an animal facility in Kansas would be likely to reveal unsafe, inhumane, and otherwise immoral or illegal practices. Yet animal agriculture and animal research facilities in Kansas have been shielded from public view for nearly thirty years, because of the Ag-Gag law. Thus, the need for ALDF and others to gain access to Kansas facilities to gather information about them is particularly acute.

In sum, ALDF has the desire, and everything at its disposal necessary, to conduct an undercover investigation of a factory farm, slaughterhouse, animal research facility, or other "animal facility" in Kansas. But because of its reasonable fear of criminal prosecution for violating

the Kansas Ag-Gag law, ALDF is thwarted from carrying out the investigation it has the capacity and intention to complete.

Persons with knowledge of these facts are:

- Mark Walden, ALDF's Chief Programs Officer, who possesses knowledge about ALDF's capacity and current intention to conduct undercover investigations. Mr. Walden's business address is 525 E. Cotati Avenue, Cotati, California, 94931. His business telephone number is 707-795-2533 ext. 1021.

- Janiec Gutierrez, ALDF's Chief Operating Officer, who possesses knowledge about ALDF's capacity to conduct undercover investigations. Ms. Gutierrez's business address is 525 E. Cotati Avenue, Cotati, California, 94931. Her business telephone number is 707-795-2533 ext. 1022.

- Elizabeth Putsché, ALDF's Associate Director of Communications, who possesses knowledge about ALDF's current intention to conduct undercover investigations, specifically, related to ALDF's use of undercover investigations in its Communications work. Ms. Putsché's business address is 525 E. Cotati Avenue, Cotati, California, 94931. Her business telephone number is 707-795-2533 ext. 1029.

Plaintiff ALDF provides the above contact information in the interest of fully responding to this Interrogatory, but notes that it should be contacted through its undersigned counsel, Alan K. Chen, c/o University of Denver Sturm College of Law, 2255 E. Evans Avenue, Denver, CO 80209, (303) 871-6283.

Documents that constitute, describe or report ALDF's capacity and current intention to conduct undercover investigations include:

10

- A contract pertaining to a grant awarded to ALDF for the period between Oct. 15, 2018 and Oct. 15, 2020, for work including pursuing undercover investigations.[1]

- Animal Protection Laws of Kansas 2018 (ALDF0983 – 0986)

- The Animals' Advocate Vl. 35 Issue 3 Fall 2016 (ALDF0299 – 0306)

- ALDF website, About Us, In the News, 2016 Highlights (ALDF0630 – 0659, at 0649)

- ALDF Press Release, Investigation Reveals Cruelty and Neglect at Hormel Foods' Pig Supplier, May 25, 2016 (ALDF0660 – 0664)

- Letter from ALDF to Illinois Attorney General Lisa Madigan, May 25, 2016 (ALDF0261 – 0285)

- Letter from ALDF to Nebraska Attorney General Doug Peterson, May 25, 2016 (ALDF0286 – 0298)

- Email from ALDF Publicist to ALDF Staff, ALDF in the News: Undercover Investigation Edition, May 31, 2016 (ALDF0966 – 0982)

- Meatingplace.com, Maschhoffs respond to pig abuse video, May 30, 2016 (ALDF0702 – 0706)

- Meatingplace.com, Hormel suspends supplier amid pig abuse investigation, May 26, 2016 (ALDF0987 – 0991)

- Meatingplace.com, Hormel, Maschhoffs launch probes after hog farm video release, Jan. 31, 2017 (ALDF0992 – 0995)

- The Animals' Advocate Vl. 36 Issue 3 Fall 2017, ALDF0307 – 0314

---

[1] Plaintiffs will produce this document upon the Court's entering of a stipulated Protective Order.

- ALDF website, Legally Brief: Behind Closed Doors, Beneath the Law, June 6, 2016 (ALDF0681 – 0685)

- ALDF website, Challenging Hormel's Deceptive Advertising Practices: Natural Choice (ALDF0358 – 0363)

- ALDF in the News Weekly Report 2-10-17 (ALDF0441 – 0449, at 0449)

- ALDF Blog, Stopping Cruel High-Speed Pig Slaughter, Apr. 5, 2018 (ALDF0752 – 0758)

- ALDF Blog, HIMP: Inherently Cruel for Pigs (ALDF0584 – 0589, at 0586)

- ALDF Press Release, Animal Legal Defense Fund Files Complaint with USDA against Airedale Terrier Puppy Mill in New Mexico, Feb. 29, 2016 (ALDF0324 – 0328)

- ALDF website, Undercover Video: Deplorable Conditions at New Mexico Puppy Mill (ALDF0740 – 0742)

- ALDF website, Legally Brief: Neuter the Puppy Mills, Apr. 5, 2016 (ALDF0686 – 0693)

- ALDF Press Release, Undercover Investigation Documents Tysons' Cruel, Illegal Treatment of Chickens, Sept. 14, 2015 (ALDF0909 – 0914)

- ALDF website, Complaints Filed After Tyson Foods Undercover Investigation (ALDF0409 – 0415)

- Letter from ALDF to Carl Mayes, USDA Food Safety and Inspection Service, Sept. 14, 2015 (ALDF002 – 0039)

- Letter from ALDF to Hon. Mary Jo White, Securities & Exchange Commission (SEC), Sept. 14, 2015 (ALDF0875 – 0902)

12

- Letter from ALDF to Hon. Matthew Denn, Delaware Attorney General, Sept. 14, 2015 (ALDF0072 – 0083)

- Letter from ALDF to Sec. of Labor David Michaels, Sept. 14, 2015 (ALDF0085 – 0180)

- ALDF News, Tyson, Repeat OSHA Violator, Gives its Workers Lip Service Instead of Safer Conditions, Nov. 4, 2015 (ALDF0903 – 0908)

- ALDF website, About Us, In the News, 2015 Highlights, ALDF0652 – 0653

- Letter from ALDF to Hon. Mary Jo White, SEC, Sept. 19, 2016 (ALDF0040 – 0052)

- ALDF Press Release, ALDF Urges Securities and Exchange Commission to Expedite Investigation of Tyson Foods, Jan. 8, 2017 (ALDF0337 – 0340)

- Letter from ALDF to Mary Engle, Federal Trade Commission (FTC), Nov. 27, 2013 and Second Addendum to Complaint *ALDF v. Tyson Foods, Inc.* (ALDF0780 – 0810)

- Letter from ALDF to Mary Engle, FTC, Apr. 15, 2013 (ALDF0811 – 0820)

- Letter to David Vladeck, Director, FTC Bureau of Consumer Protection, and accompanying Complaint to FTC, Jan. 22, 2013 (ALDF0821 – 0864)

- ALDF blog, Tyson Foods and a Culture of Cruelty, Nov. 27, 2013 (ALDF0865 – 0874)

13

INTERROGATORY NO. 3:

Describe the undercover investigations that Plaintiff ALDF has the present intent to conduct with sufficient detail for the Court to determine whether and how the investigations would violate the KFAFCRF, and identify (a) all persons with personnel knowledge of some or all the facts described (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, some of the facts relating to the undercover investigations that Plaintiff ALDF has the present intent to conduct are contained in and/or constitute attorney-client privileged communications and other documents subject to that privilege, or attorney work product, including drafts and internal memoranda. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Plaintiffs reserve the right to delay disclosure of such information and documents until the court enters a Stipulated Protective Order in this matter. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Plaintiffs also object to Defendants' definition of "Identify", with

14

respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiff ALDF to identify persons whose knowledge is tangential, at most, to ALDF's standing, is minor and duplicative of other identified individuals' broader knowledge, and is not reasonably necessary to test ALDF's standing to bring this suit. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this interrogatory. This interrogatory is also overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to the undercover investigations that Plaintiff ALDF has the intention to conduct, and which are duplicative of other identified documents' contents. Plaintiffs will identify any non-privileged documents containing substantial information responsive to this Interrogatory that are the result of a reasonable and proportionate search. Finally, Plaintiffs object to this interrogatory because it calls for a legal conclusion. Whether and how the investigations described in Plaintiffs' Complaint and detailed further in these responses would violate the Kansas Ag-Gag law is a question of the application of the statute, not the proper subject of an interrogatory. Plaintiffs will describe Plaintiff ALDF's investigative activities, but omit improper legal arguments. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

As detailed in Plaintiffs' Complaint, section (c)(4) of the Ag-Gag law makes it a crime for any person to "enter an animal facility to take pictures by photograph, video camera or by any other means" without "effective consent" of the owner and with the intent of "damaging the

**Attachment B 00015**

enterprise." K.S.A. § 47-1827(c)(4). Consent is rendered ineffective if "induced by . . . deception." K.S.A. § 47-1826(e)(1). The investigation Plaintiff ALDF desires to carry out in Kansas would follow an established protocol. ALDF would retain a qualified investigator to obtain photographic and/or video footage documenting the conditions inside a Kansas factory farm, slaughterhouse, or other animal facility. Working with the investigating entity, a target would be identified, and the investigator, or an investigator hired by the investigating entity ALDF retained, would go about gaining access to the facility, mostly likely by applying for and securing employment at the facility. In order to secure such employment, or otherwise to gain access to the non-public parts of the animal facility, the investigator would be forced to conceal his or her true motive for applying for the job or trying to gain access. The investigator would either lie through omission—by concealing his or her affiliation with ALDF—or, if necessary, directly, by denying that she was being sent by an animal rights organization, a commonly-asked question in the application process for animal agriculture facility positions. Once the investigator gained access to the facility, as directed by ALDF she would go about documenting the conditions therein by "tak[ing] pictures by photograph, video camera or by any other means." Again without telling her employer, the investigator would perform all the duties of her job while concealing a hidden camera worn on her clothing and operated with no or virtually no effort (so as not to interfere with the investigator's ability to safely and competently perform the tasks required of the position).

Although ALDF cannot predict the exact trajectory of the investigation it would conduct in Kansas but for the Ag-Gag law, in going about collecting investigative footage undetected inside an animal facility, several scenarios are plausible, as detailed in Plaintiffs' Complaint. First, an ALDF-retained investigator could temporarily "exercise control" over a specific room or section of a facility by, if he had such supervisory or other authority, temporarily closing off a part of the

16

facility, so as not to be observed photographing the conditions. K.S.A. § 47-1827(b). Or he could "remain concealed" by hiding behind a door or wall for the time needed to take a photograph or capture something on video, in order to record the activity undetected. K.S.A. § 47-1827(c)(2). Finally, it is likely that ALDF's investigator would be on notice that his investigative activity was forbidden by the facility's owners. K.S.A. 47-1827(d)(1). The facility could have notices posted forbidding nonconsensual access, photography, or video recording, putting the investigator on notice that he should leave.

ALDF's investigation in Kansas would be aimed at gaining an unvarnished look into what goes on at the factory farm, slaughterhouse, or other animal facility. ALDF would direct its investigating entity to document any illegal and unethical practices happening at the facility, with the specific goal of exposing to public view animal cruelty, unsafe working conditions, food safety violations, and other misconduct discovered therein. ALDF would pursue its investigation knowing full well that such exposure might lead to boycotts, lost business, a plant closure, or other harm to investigated entity's or its affiliates' reputations resulting from the adverse publicity, which foreseeably may cause economic harm to the enterprise.

Persons with knowledge of these facts are:

- Mark Walden, who possesses knowledge about the types of investigative activities in which ALDF-retained investigators engage or are likely to engage when conducting an undercover investigation for ALDF;

- Janiec Gutierrez, who possesses knowledge about the logistics of ALDF-funded undercover investigations.

Attachment B 00017

Documents that constitute, describe or report the undercover investigations ALDF has the present intent to conduct are listed in response to Plaintiffs' response to Interrogatory No. 2, and are incorporated herein.

**Attachment B 00018**

INTERROGATORY NO. 4:

Describe, again with sufficient detail for the Court to determine whether and how the investigations would violate the KFAFCRF, all the differences between the undercover investigations described in your preceding interrogatory answer and "types of investigative activity" for which you seek a declaration in paragraph 110 of the Complaint, and identify (a) all persons with personnel knowledge of some or all the facts described (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, some of the facts relating to the undercover investigations that Plaintiff ALDF has the present intent to conduct are contained in and/or constitute attorney-client privileged communications and other documents subject to that privilege, or attorney work product, including drafts and internal memoranda. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Plaintiffs reserve the right to delay disclosure of such information and documents until the court enters a Stipulated Protective Order in this matter. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate

19

the claims and defenses at issue. Plaintiffs also object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiff ALDF to identify persons whose knowledge is tangential, at most, to ALDF's standing, is minor and duplicative of other identified individuals' broader knowledge, and is not reasonably necessary to test ALDF's standing to bring this suit. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this Interrogatory. This interrogatory is also overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to Plaintiff ALDF's undercover investigations, and which are duplicative of other identified documents' contents. Plaintiffs will identify any non-privileged documents containing substantial information responsive to this Interrogatory that are the result of a reasonable and proportionate search. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

The investigative activities described in Plaintiffs' response to Interrogatory No. 3, and described in their Complaint, are the same ones about which they seek a declaration pursuant to paragraph 110 of their Complaint; there are no differences. That said, Plaintiffs cannot predict and describe every minor permutation of how the conduct of an investigator, in the course of an investigation, might be construed as violating the "damage" provision, K.S.A. 47-1827(a), the "control" provision, K.S.A. 47-1827(b), the "concealed" provision, K.S.A. 47-1827(c)(2), or the "enter[ing] or remain[ing]" despite "notice" provision, K.S.A. 47-1827(d)(1). Plaintiffs can more

Attachment B 00020

accurately describe what the investigative activities described in their response to Interrogatory No. 3 and in their Complaint do *not* include: causing actual *physical* damage to animal facilities; exercising actual and ongoing physical control over an entire agricultural facility; physically concealing themselves until after an agricultural facility is closed for business *or* otherwise physically concealing themselves in order to be able to do actual *physical* damage; entering and remaining on the premises of an agricultural facility and refusing to leave after being specifically and directly instructed to do so. The alternative relief Plaintiffs seek with regard to these provisions is detailed it in their Partial Settlement Proposal, submitted to Defendants March 8, 2019.

The person with knowledge of these facts is:

- Mark Walden, who possesses knowledge about the types of investigative activities in which ALDF-retained investigators engage or are likely to engage when conducting an undercover investigation for ALDF.

Aside from the documents listed in Plaintiffs' response to Interrogatory No. 2, Plaintiffs have not identified any further documents that constitute, describe or report the above-described facts.

21

INTERROGATORY NO. 5:

State the principal and material facts supporting your allegations that Plaintiff ALDF's intended role in the "undercover investigations" referenced in the Complaint would be a violation by it, as opposed to other persons, of the KFAFCRF, and identify (a) all persons with personnel knowledge of some or all such facts (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, some of the facts relating to how Plaintiff ALDF conducts undercover investigations are contained in and/or constitute attorney-client privileged communications and other documents subject to that privilege, or attorney work product, including drafts and internal memoranda. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Plaintiffs reserve the right to delay disclosure of such information and documents until the court enters a Stipulated Protective Order in this matter. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Plaintiffs also object to Defendants' definition of "Identify", with respect to

22

a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiff ALDF to identify persons whose knowledge is tangential, at most, to ALDF's standing, is minor and duplicative of other identified individuals' broader knowledge, and is not reasonably necessary to test ALDF's standing to bring this suit. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this interrogatory. This interrogatory is also overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to the undercover investigations that Plaintiff ALDF has the intention to conduct, and which are duplicative of other identified documents' contents. Plaintiffs will identify any non-privileged documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search. Finally, Plaintiffs object to this interrogatory because it calls for a legal conclusion. Whether and how ALDF's conduct would create liability under the Kansas Ag-Gag law is a question of the application and enforcement of the statute, not the proper subject of an interrogatory. Plaintiffs will describe Plaintiff ALDF's role in conducting undercover investigations, but omit improper legal arguments. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

As described in Plaintiffs' Complaint, ALDF participates in undercover investigations. Specifically, it contracts with investigators and investigative entities, and directs them to obtain photographs and video footage from inside factory farms, slaughterhouses, and other animal

Attachment B 00023

facilities. In fulfilling their contractual obligations toward ALDF, the investigators may apply for jobs at such facilities and conceal their investigatory motives. At ALDF's direction, the investigators record video and take photos, and, upon completion of the investigation, return the photos and video footage to ALDF. ALDF then, as planned, publicizes the documented evidence of animal cruelty and other illegal, immoral, and unsafe practices or conditions, and otherwise uses the video footage in furtherance of its mission-driven advocacy, causing foreseeable economic harm to the investigated facility and associated businesses in the form of boycotts, lost business, plant closures, and other reputational injuries as a result of the public's foreseeable and understandable reaction to learning of the illegal, immoral, and unsafe practices and conditions. If ALDF pursued such an investigation in Kansas, it would reasonably fear prosecution under the Kansas Ag-Gag law because of its role facilitating, funding, supporting, and directing the conduct described herein.

Furthermore, the Kansas Ag-Gag law specifically contemplates criminal liability for organizations as well as individuals, as it may be enforced against any "person" who violates the Act and defines person to include "any individual, state agency, corporation, association, nonprofit corporation, joint stock company, firm, trust, partnership, two or more persons having a joint or common interest or other legal entity."

Persons with knowledge of these facts are:

- Mark Walden, who possesses knowledge about the types of investigative activities in which ALDF-retained investigators engage or are likely to engage when conducting an undercover investigation for ALDF;

- Janiec Gutierrez, who possesses knowledge about the logistics of ALDF-funded undercover investigations.

Attachment B 00024

Documents that constitute, describe or report Plaintiff ALDF's role in conducting and directing undercover investigations are listed in Plaintiffs' response to Interrogatory No. 2, and are incorporated herein.

**Attachment B 00025**

INTERROGATORY NO. 6:

Identify all persons or entities which have been charged and/or prosecuted for violation of the KFAFCRF and identify all documents or tangible things that constitute, describe or report such charge(s) or prosecution(s) (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, information as to persons or entities charged under the Kansas Ag-Gag statute is publicly available and as equally (or more) accessible to Defendants as it is to Plaintiffs. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

Plaintiffs are not aware of any persons or entities which have been charged and/or prosecuted for violation of the Kansas Ag-Gag statute.

**Attachment B 00026**

INTERROGATORY NO. 7:

State the principal and material facts supporting your allegations in the Complaint that the KFAFCRF is intended to suppress speech that is negative to the animal research and animal agriculture industries, and identify (a) all persons with personnel knowledge of some or all the facts described (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, some of the facts demonstrating the Kansas Ag-Gag law's speech-suppressing motive are contained in communications and other documents protected by and subject to the attorney-client privilege, or in documents that constitute or include attorney work product, such as drafts of Plaintiffs' complaint. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, this interrogatory is overly broad and unduly burdensome in seeking information that is publicly available, including in news reports, and equally as accessible to Defendants as it is to Plaintiffs. Plaintiffs further object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Plaintiffs also object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have already

27

identified by Bates numbers or otherwise, is overly burdensome and unnecessary to investigate the claims and defenses at issue. Moreover, this interrogatory is overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to the speech-suppressing motive of the Kansas Ag-Gag law, and which are duplicative of other identified documents' contents. Plaintiffs will identify any non-privileged documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

Information in and documents attached to Plaintiffs' Complaint, and materials produced by Defendants, contain the principal and material facts supporting Plaintiffs' allegation that the Kansas Ag-Gag law is intended to suppress speech that is negative to the animal research and animal agriculture industries. *See* Complaint, ¶ 63-69.

Specifically, in Attachment 9 to the Minutes of the Senate Committee on Agriculture meeting held on March 23, 1990, provided by Senator Montgomery (see AG000056) (hereafter, "the Minutes"), there is an Associated Press article entitled "Animal Rights Debate Invades The Barnyard." The article contains a quote from Steve Kopperud, executive director of the Animal Industry Foundation, which is labeled as a "pro-agriculture" group, in which he says, of the "animal rights movement", "It is well-funded.  It is well-organized. It's a European import.  And it's coming to Kansas." AG000101. It is a reasonable inference that the Kansas legislators relied on this statement in enacting the Ag-Gag law.

Also in Attachment 9 to the Minutes (see AG000056), there is an article entitled "Animal rights groups plan ongoing national strategy," by Larry Westfield, Washington editor of Drovers Journal, a beef industry publication, dated July 13, 1989. In the article, Westfield specifically

Attachment B 00028

references Plaintiff Animal Legal Defense Fund, stating: "There are now several groups that sponsor legal defense funds for animals. One is the Animal Legal Defense Fund, a nationwide network of 250 attorneys. ALDF has fought hot-iron face-branding of dairy cows, veal calf confinement and the patenting of genetically altered farm animals." AG000102. The article goes on to state that "But right now the animal rights movement seems to be growing in numbers, clout, zeal, sophistication and willingness to fight livestock producers." *Id.* It is a reasonable inference that the Kansas legislators relied on this statement in enacting the Ag-Gag law.

In Attachment 11 to the Minutes (see AG000056), there is an article by Karen McMillan in Beef Today, a beef industry publication, dated March 1990. In the article, the author urges the beef industry to treat the animal rights groups seriously, including the following statements: "all the [animal-protection] groups have two things in common: plenty of money, and agendas that will have a big impact on the cattle industry in the '90s" and "But many of these people are well spoken and skilled at getting their points out to the general public." AG0000107. In this same article, the author describes actions of the group, People for the Ethical Treatment of Animals (PETA), as follows: "PETA's main goal is to tell as many people as possible that 'eating animals is bad for the whole ecosystem.' Education plays the key role here. PETA distributes videotapes showing pigs castrated and ear-notched without anesthesia, and pigs in farrowing crates and slaughterhouses, and asks whether this is an ethical society and whether we can endure this treatment." AG0000107. It is a reasonable inference that the Kansas legislators relied on these statements in enacting the Ag-Gag law.

The following documents are attached to the Minutes of the Senate Agriculture Committee meeting held on February 22, 2012 (hereafter, "the 2012 Minutes"),  produced by the Defendants

Attachment B 00029

(AG000202 – 204) as part of the legislative history of Senate Bill 414, introduced by the Kansas legislature in 2012:

- Attachment 1 to the 2012 Minutes is the written testimony of Dr. Bill Brown, Animal Health Commissioner, Division of Animal Health, Kansas Department of Agriculture, who described SB 214 as, among other things, "Specifying that consent induced by fraud, deception or duress, such as lying on a job application to gain access to a farm or ranch, will not be considered effective consent under the Farm Animal and Research Facilities Protection Act." AG000206

- An unattributed document entitled "Animal Health Bill Information," which states that the Ag-Gag law is "being amended to specify that 'effective consent' shall not be deemed to include consent induced by fraud, deception, or duress (SB414, Page 27, Section 41 e(1))," and goes on to state: "In some states, animal rights activists with an anti-agriculture agenda have lied on job applications in order to gain access to farms or ranches and take undercover video, some of which is believed to be staged. This amendment is a tool that can be used against people using fraud to gain access to farms." AG000208

A statement from the Kansas Livestock Association, dated February 22, 2012, in support of SB 414, that appears to be an attachment to an unidentified legislative report, stating that: "The change to exclude 'fraud, deception, or duress' from the definition of 'effective consent' clarifies that animal rights activists concealing their identity or lying on a job application cannot avail themselves to the defense that they were given permission to work on or enter the facility." AG000266

Attachment B 00030

A statement from the Kansas Pork Association, dated February 22, 2012, in support of SB 414, that appears to be an attachment to an unidentified legislative report, stating that: "We believe this amendment strengthens our statutes protecting farmers from those willing to falsify records in order to gain access to farms or ranches." AG000267

A statement from the Kansas Soybean Association, dated Summer 2012, describing S Sub for HB 2596 (the House version of SB 414) as clarifying "that anyone fraudulently entering a farm is liable for illegally taking photographs or videos or for damaging property. . ." Available at https://kansassoybeans.org/wp-content/uploads/2013/04/kssoy-assn-newsletter-summer12.pdf

A statement from the Kansas Rural Center, dated May 11, 2012, describing S Sub for HB 2596 (the House version of SB 414) as amending the Kansas Ag-Gag statute "to make it easier to charge persons for taking unauthorized pictures of confined animal operations." Available at http://old.kansasruralcenter.org/archive2.html#120511

An article titled "Senate Bill steps on hog, dog interests" by Tim Carpenter in the Topeka Capital-Journal online, dated February 22, 2012, describing SB 414 as follows: "In addition, the legislation would take a swipe at environmental activists who engage in deception, such as lying on a job application, to gain access to farm or ranch operations." Available at https://www.cjonline.com/article/20120222/NEWS/302229750

It is a reasonable inference that the Kansas legislators relied on each of these statements in enacting the Ag-Gag law.

Persons with knowledge of these facts include:

- Senator Montgomery and other members of the Kansas state legislature who served when the challenged Kansas Ag-Gag statute was originally debated and adopted, and subsequently amended in 2012, who may have information related

to the reasons and purposes for which the statute or any amendments were enacted. Plaintiffs do not currently possess the names, addresses, and telephone numbers of each of these legislators.

- Former Kansas Governor Mike Hayden, who may have information related to the reasons and purposes for which the statute, Kansas Ag-Gag statute was enacted. Plaintiffs do not currently possess the address or telephone number of former Governor Hayden.

- The specific organizations and individuals mentioned in the above response, whose addresses and telephone numbers are unknown to Plaintiffs.

Documents that constitute, describe or report these facts include:

- Plaintiffs' Complaint, Exhibit B, *Animal rights group protests at med center*, THE HUTCHINSON NEWS (May 1, 1989).

- Plaintiffs' Complaint, Exhibit C, *Law Aims to Curb Attacks by Animal-Rights Militants*, ORLANDO SENTINEL (May 14, 1990).

- Plaintiffs' Complaint, Exhibit D, '*Puppy Mill' Dogs Jam Midwest Shelters*, PHILADELPHIA INQUIRER (July 1990).

- Plaintiffs' Complaint, Exhibit E, *Kansas Farmers Wary of Animal Rights Movement*, THE WICHITA EAGLE (Jan. 22, 1989).

- Documents produced by Defendants, including AG000056; AG000101-02; AG000107; AG0000206; AG0000208; AG000266-67.

**Attachment B 00032**

INTERROGATORY NO. 8:

If different from your answer to the preceding interrogatory, state the principal and material facts supporting your allegation in paragraph 97 of the Complaint that:

It [the KFAFCRF] was enacted with the legislative motive of eliminating undercover, employment-based investigations by animal rights groups into animal research facilities and other industries that use animals, including factory farms and other agricultural production facilities in order to protect those industries and prevent the public backlash that follows when the industry's true practices are exposed,

and identify (a) all persons with personnel knowledge of some or all the facts described (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, some of the facts demonstrating the Kansas Ag-Gag law's speech-suppressing motive are contained in communications and other documents protected by and subject to the attorney-client privilege, or in documents that constitute or include attorney work product, such as drafts of Plaintiffs' complaint. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, this interrogatory is overly broad and unduly burdensome in seeking information that is publicly available, including in news reports, and equally as accessible to Defendants as it is to Plaintiffs. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

Attachment B 00033

There are no differences between the facts supporting Plaintiffs' allegation that the Kansas Ag-Gag law is intended to suppress speech that is negative to the animal research and animal agriculture industries, and those supporting paragraph 97 of the Complaint. Plaintiffs reference and hereby incorporate their response to Interrogatory No. 7.

**Attachment B 00034**

INTERROGATORY NO. 9:

Identify the legislators and the trade groups which you believe advocated for the KFAFCRF "specifically because it would silence animal protection organizations," Complaint ¶ 68, and identify (a) all persons with personnel knowledge such legislators and trade groups expressed that objective (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report the facts which support your belief (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, discussions of the legislators and trade groups who Plaintiffs believe advocated for the Kansas Ag-Gag law in order to silence animal protection organizations are contained in documents protected by and subject to the attorney-client privilege, or in documents that constitute or include attorney work product, such as drafts of Plaintiffs' complaint. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, this interrogatory is unduly burdensome in seeking information that is more easily accessible and available to Defendants than it is to Plaintiffs. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

Trade groups: Kansas Farm Bureau; Kansas Livestock Association; Kansas Pork Association; the Animal Industry Foundation.

Legislators: Senator Montgomery.

Persons with knowledge of these facts include:

- Senator Montgomery and other members of the Kansas state legislature who

35

served when the challenged Kansas Ag-Gag statute was originally debated and adopted, and subsequently amended in 2012, who may have information related to the reasons and purposes for which the statute or any amendments were enacted. Plaintiffs do not currently possess the names, addresses, and telephone numbers of each of these legislators.

- Former Kansas Governor Mike Hayden, who may have information related to the reasons and purposes for which the statute, Kansas Ag-Gag statute was enacted. Plaintiffs do not currently possess the address or telephone number of former Governor Hayden.

- Kansas Farm Bureau, whose address and telephone number is unknown to Plaintiffs.

- Kansas Livestock Association, whose address and telephone number is unknown to Plaintiffs.

- Kansas Pork Association, whose address and telephone number is unknown to Plaintiffs.

- Animal Industry Foundation, whose address and telephone number is unknown to Plaintiffs.

Documents that constitute, describe or report these facts are listed in Plaintiffs' Response to Interrogatory No. 7, and incorporated herein.

Attachment B 00036

INTERROGATORY NO. 10:

Separately for each Plaintiff, itemize the expenses incurred by the Plaintiff because of the KFAFCRF by nature, date and amount, and identify all documents or tangible things that tend to prove, describe or report all or part of your itemizations.

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs are not seeking damages related to funds expended because of the Kansas Ag-Gag law. Plaintiffs have alleged, and need only show, that they have devoted organizational resources to countering the Kansas Ag-Gag law. An itemized list of expenses is unnecessary and irrelevant in light of ample evidence of Plaintiffs' resource expenditures. Plaintiffs further object to this Interrogatory as overly broad and unduly burdensome in proportion to its utility because, even if such itemized expenses were relevant, this interrogatory asks Plaintiffs to identify (and itemize) not only the expenses themselves, but "all" documents that "tend to prove, describe *or* report all *or* part" of those expenses. On its face, then, this interrogatory seeks documents with only a tangential relationship to those expenses. Furthermore, this interrogatory seeks documents which will necessarily be duplicative of other identified documents' contents. Plaintiffs further object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Plaintiffs will identify (by Bates number) any non-privileged documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search. Finally, Plaintiffs object to this interrogatory

Attachment B 00037

as seeking documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, documents "describing" or "reporting" expenses related to Plaintiffs' Ag-Gag advocacy, including related to Kansas, contain information protected by and subject to the attorney-client privilege, and attorney work product, such as attorneys' comments on the accuracy of advocacy materials. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

*For Plaintiff ALDF:*

For at least the past seven years, ALDF has devoted substantial organizational resources to countless activities in order to combat Ag-Gag laws around the country, including in Kansas. ALDF staff have engaged in numerous activities to publicize and support the organization's legal, legislative, and public advocacy against Ag-Gag, in a variety of settings and to a number of audiences. These activities include researching, drafting, editing, and disseminating numerous communications pieces, such as press releases, blogs, action alerts, donor communications, newsletters, social media posts, brochures, pamphlets, and other materials (*see*, i.e., ALDF0184 – 0185; ALDF0198 – 0210; ALDF0215 – 0220; ALDF0221 – 0222; ALDF0252 – 0255; ALDF0299 – 0306; ALDF0307 – 0314; ALDF0379 – 0385; ALDF0478 – 0480; ALDF0675 – 0680; ALDF0681 – 0685; ALDF0764 – 0769; ALDF0915 – 0919; ALDF0996 – 0998; ALDF0999 – 1000; ALDF1001 – 1006; ALDF1007 – 1009; ALDF1010 – 1012). Activities also include attorneys and staff speaking to audiences at conferences, symposia, law student events, and ALDF member and supporter events (*see*, i.e., ALDF0211 – 0214; ALDF0694 – 0697; ALDF1010 – 1012; ALDF1013; ALDF1014 – 1015; ALDF1016 – 1020; ALDF1021 – 1050). Further, ALDF's Animal Law Program has provided Ag-Gag-related resources, content, CLEs, and other programming to legal audiences including attorneys, paralegals, judges, law students and to lay

38

audiences (*see*, i.e., ALDF0060 – 0071; ALDF0186 – 0197; ALDF0743 – 747; ALDF1059 – 1063; ALDF1064 – 1068). Each of these activities has required the expenditure of financial resources, and thus, such resources are far too numerous to fairly be itemized with any degree of specificity.

At a minimum, ALDF expenses on these activities include: dozens of hours of paid staff time; payments to communications and operations vendors and contractors, such as designers and direct mail vendors; payments for printing and production of brochures, pamphlets, placards, and other collateral; travel and related costs for events; server upkeep and overhead; and operating expenses (including use of technology platforms to create, communicate about, and publish all of the above-described content). Examples of such expenses include:

- Payments of at least $4,000 for brochures related to the Ag-Gag Laws from 2015 to the present (*see, i.e.*, ALDF0184 – 0185; ALDF0221 – 0222; ALDF1051).

- Payments of roughly $520 for Ag-Gag-related Occasional Cards (*see* ALDF1055 – 1056; ALDF1057 – 1058).

- A May 2018 payment of roughly $405 for an Ag-Gag display image/caption (*see* ALDF1052 – 1054[2]).

- A grant of roughly $135 to a student group at the University of Texas for a talk on Ag-Gag, March 6, 2015.

- A grant of roughly $152 to a student group at American University for a talk on Criminalizing Free Speech & the Animal Rights Movement, April 8, 2015.

- A grant of roughly $300 to a student group at Harvard University for a talk on Ag-Gag, Nov. 20, 2015.

---

[2] Document redacted to protect personal identifying information.

- A grant of roughly $180 to a student group at Loyola Chicago for a talk on Ag-Gag, Oct. 5, 2016.

- A grant of roughly $178 to a student group at Brigham Young University for a talk by an Ag-Gag plaintiff on Mar. 26, 2019.

*For Plaintiff CFS:*

For at least the past six years, CFS has devoted substantial organizational resources to organizational activities in order to combat Ag-Gag laws around the country, including in Kansas. As part of CFS's Animal Factories Reform program, one of the organization's flagship program areas, CFS staff have engaged in numerous activities to publicize and support the organization's legal, policy, and outreach advocacy against Ag-Gag laws. These activities include researching, drafting, editing, and disseminating communication documents, such as reports (*see, e.g.,* CFS-0070-0110), press releases (*see, e.g.,* CFS-0005-0006; CFS-0008-36); blogs (*see, e.g.,* CFS-0001-0004; CFS-0038-40; CFS-0151-152), social media posts (*see, e.g.,* CFS-0135-0138), and action alerts (*see, e.g.,* CFS-0041-44). CFS uses investigative information about animal welfare and food safety as part of this program and these documents. Activities have also concluded attorneys and staff speaking to audiences at conferences and law school events and classes. These activities have required the expenditure of financial resources, which are too numerous and intertwined with Animal Factory Reform work to be itemized with any degree of specificity. At a minimum, CFS expenses on these activities include: dozens of hours of salaried or hourly staff time; payments to communications and operation vendors and contractors, such as designers; server upkeep and overhead, and operating expenses (including use of technology platforms to create, communicate about, and publish all of the above-described content).

Plaintiffs Shy and Hope do not allege that they have expended any resources because of the

40

Kansas Ag-Gag law.

**Attachment B 00041**

INTERROGATORY NO. 11:

If different from your answer to the preceding interrogatory, state the principal and material facts, separately for each Plaintiff, which quantify any alleged consequent drain on the Plaintiff's resources from the KFAFCRF, and identify all documents or tangible things that tend to prove, describe or report such facts.

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, in that it asks Plaintiffs to identify "all" documents that "tend to prove, describe *or* report" facts related to Plaintiffs' expenditures of resources. This interrogatory thus seeks documents with minimal relevance to Plaintiffs' expenditures, and which are duplicative of other identified documents' contents. Plaintiffs further object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Plaintiffs will identify any non-privileged documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search. Finally, Plaintiffs object to this interrogatory as seeking documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, documents "describing" the drain on Plaintiffs' resources contain information protected by and subject to the attorney-client privilege, and attorney work product, such as drafts of Plaintiffs' Complaint in this case and other Ag-Gag actions. Finally, Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant

42

Attachment B 00042

harm to one or more Plaintiffs. Plaintiffs reserve the right to delay disclosure of such information and documents until the court enters a Stipulated Protective Order in this matter. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

Plaintiffs' response to Interrogatory No. 10 quantifies, to the degree feasible and reasonable in proportion to the needs of the case, the drain on their respective resources caused by the Kansas Ag-Gag law. Plaintiffs have not identified any further facts to provide in response to this interrogatory.

**Attachment B 00043**

INTERROGATORY NO. 12:

Separately for each of the requests for admission which were not unconditionally admitted, state the principal and material facts supporting your denial or partial denial, and identify (a) all persons with personnel knowledge of some or all such facts (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the attorney-client privilege and the attorney work product doctrine. Specifically, some facts supporting Plaintiffs' denials are contained in and/or constitute attorney-client privileged communications and other documents subject to that privilege, or attorney work product, including drafts and internal memoranda. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Plaintiffs reserve the right to delay disclosure of such information and documents until the court enters a Stipulated Protective Order in this matter. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Plaintiffs also object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced

44

and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiffs to identify persons whose knowledge is tangential, minor, and/or duplicative of other identified individuals' broader knowledge. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this interrogatory. Finally, this interrogatory is overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to the underlying facts, and which are duplicative of other identified documents' contents. Plaintiffs will identify any non-privileged documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search. Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

*Request for Admission No. 5*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. The persons with knowledge of these facts are:

- Mark Walden, who possesses knowledge about the types of investigative activities in which ALDF-retained investigators engage or are likely to engage when conducting an undercover investigation for ALDF;

- Janiec Gutierrez, who possesses knowledge about the logistics of ALDF-funded undercover investigations.

Aside from documents listed in Plaintiffs' response to Interrogatory No. 2 detailing Plaintiff ALDF's role in conducting and directing undercover investigations, Plaintiffs have

identified no further documents that constitute, describe or report the facts supporting Plaintiffs' denial of the Request.

*Request for Admission No. 6*

The basis for Plaintiffs' qualified admission to this Request is provided in Plaintiffs' response to this Request for Admission. The person with knowledge of the facts substantiating Plaintiffs' qualified admission is:

- Mark Walden, who possesses knowledge about the reasonably foreseeable economic consequences and harms that flow from the types of undercover investigations ALDF conducts.

In addition to documents listed in Plaintiffs' response to Interrogatory No. 2 detailing the investigations and investigative activities in which Plaintiff ALDF has engaged and has the intent to engage, the following documents constitute, describe or report other facts supporting Plaintiffs' qualified admission of the Request.

- Meatingplace.com, Hormel suspends supplier amid pig abuse investigation, May 26, 2016 (ALDF0987 – 0991).

- Meatingplace.com, Tyson terminates grower depicted in activist video, Aug. 27, 2015 (ALDF1069 – 1072).

- Consumer Perceptions of Livestock Products and Animal Welfare, Purdue University, 2013 (ALDF1073 – 1094).

*Request for Admission No. 17*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Other than Defendants Governor Laura Kelly and Attorney General Derek Schmidt,

Plaintiffs can, at present, identify no person with knowledge of these facts. Plaintiffs have identified no non-privileged documents that constitute, describe or report these facts.

*Request for Admission No. 18*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Other than Defendants Governor Laura Kelly and Attorney General Derek Schmidt, Plaintiffs can, at present, identify no person with knowledge of these facts. Plaintiffs have identified no non-privileged documents that constitute, describe or report these facts.

*Request for Admission No. 19*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Other than Defendant Attorney General Derek Schmidt, Plaintiffs can, at present, identify no person with knowledge of these facts. Plaintiffs have identified no non-privileged documents that constitute, describe or report these facts.

*Request for Admission No. 20*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Other than Defendant Governor Laura Kelly, Plaintiffs can, at present, identify no person with knowledge of these facts. Plaintiffs have identified no non-privileged documents that constitute, describe or report these facts.

*Request for Admission No. 21*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Plaintiffs can, at present, identify no person with knowledge of these facts. Other than the documents produced by the Defendants bates stamped AG000055 to AG000381 themselves, Plaintiffs have identified no documents that constitute, describe or report these facts.

*Request for Admission No. 22*

47

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Plaintiffs can, at present, identify no person with knowledge of these facts. Other than the documents produced by the Defendants bates stamped AG000055 to AG000381 themselves, Plaintiffs have identified no documents that constitute, describe or report these facts.

*Request for Admission No. 23*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Plaintiffs can, at present, identify no person with knowledge of these facts. Other than the documents produced by the Defendants bates stamped AG000055 to AG000381 themselves, Plaintiffs have identified no documents that constitute, describe or report these facts.

**Dated**:  April 22, 2019

_/s/ Michael D. Moss_____
Michael D. Moss, KS Bar #22624
Foley & Mansfield, P.L.L.P.
8575 W. 110th Street, Suite 306
Overland Park, KS 66210
913-232-8767
913-800-7238 (fax)
mmoss@foleymansfield.com

_/s/ Alan K. Chen_____
Alan K. Chen (*Pro Hac Vice*)
University of Denver Sturm College of Law
(for identification only)
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6283
achen@law.du.edu

*Counsel for Plaintiffs*

**Attachment B 00048**

STATE OF *California*      )
                          ) ss:    Animal Legal Defense Fund, *et. al.* v. Laura Kelly, *et. al.*,
                          )        Case No. 18-2657-KHV-JPO
COUNTY OF *Santa Clara* )

     Mark Walden, for Animal Legal Defense Fund, of lawful age, being first duly sworn upon oath, deposes and states:

That I am the an officer or agent of Plaintiff Animal Legal Defense Fund in the above and foregoing action; that I have read the answers to interrogatories and know the contents thereof; that I have answered the foregoing interrogatories; and that all of the facts and statements therein contained are true and correct to the best of my knowledge and belief.

_____
Mark Walden
Chief Programs Officer, Animal Legal Defense
Fund

SUBSCRIBED AND SWORN to before me this 20th day of *April*, 2019

_____
Notary Public

My Commission Expires:
12/16/2022

PAUL ELLIOTT
Comm. #2271368
Notary Public·California
Santa Clara County
Comm. Expires Dec 16, 2022

**Attachment B 00049**

STATE OF _California_ )
                              ) ss:   Animal Legal Defense Fund, *et. al.* v. Laura Kelly, *et. al.*,
                              )       Case No. 18-2657-KHV-JPO
COUNTY OF _San Francisco_ )

Rebecca Spector, for Center for Food Safety, of lawful age, being first duly sworn upon oath, deposes and states:

That I am the an officer or agent of Plaintiff Center for Food Safety in the above and foregoing action; that I have read the answers to interrogatories and know the contents thereof; that I have answered the foregoing interrogatories; and that all of the facts and statements therein contained are true and correct to the best of my knowledge and belief.

_Rebecca Spector_
Rebecca Spector
West Coast Director, Center for Food Safety

SUBSCRIBED AND SWORN to before me this 22 day of _April_ , 2019

_Anthony Montero_
Notary Public

My Commission Expires:
_8/13/2019_

**Attachment B 00050**

**ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Francisco

On April 22, 2019 before me, **ANTHONY MONTERO**, a notary public, personally appeared **REBECCA A SPECTOR**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (SEAL)


ANTHONY MONTERO
COMM. # 2119757
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Aug. 13, 2019
S101   S101

**Attachment B 00051**

STATE OF          )
                   ) ss:    *Animal Legal Defense Fund, et. al.* v. *Laura Kelly, et. al.*,
                   )        Case No. 18-2657-KHV-JPO
COUNTY OF *Leavenworth* )

       Kris Taylor, Shy 38, Inc., of lawful age, being first duly sworn upon oath, deposes and states:

That I am the an officer or agent of Plaintiff Shy 38, Inc. in the above and foregoing action; that I have read the answers to interrogatories and know the contents thereof; that I have answered the foregoing interrogatories; and that all of the facts and statements therein contained are true and correct to the best of my knowledge and belief.

                                Kris Taylor
                                Founder, Shy 38, Inc.

SUBSCRIBED AND SWORN to before me this 19th day of *April* , 2019

                      Notary Public

My Commission Expires:
    *12-01-2022*



STATE OF           )
                         ) ss:    Animal Legal Defense Fund, *et. al.* v. Laura Kelly, *et. al.*,
                         )        Case No. 18-2657-KHV-JPO
COUNTY OF Johnson    )

        Cambria Martin, for Hope Sanctuary, of lawful age, being first duly sworn upon oath, deposes and states:

That I am the an officer or agent of Plaintiff Hope Sanctuary in the above and foregoing action; that I have read the answers to interrogatories and know the contents thereof; that I have answered the foregoing interrogatories; and that all of the facts and statements therein contained are true and correct to the best of my knowledge and belief.

                                  Cambria Martin
                                  President and Founder, Hope Sanctuary

SUBSCRIBED AND SWORN to before me this 22ⁿᵈ day of April      , 2019

                           Notary Public

My Commission Expires:
06/15/2020

<div style="border:2px solid">AMANDA ECK
My Appointment Expires
June 15, 2020</div>

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **ANIMAL LEGAL DEFENSE** | ) | |
| **FUND,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-2657-KHV-JPO** |
| | ) | |
| **LAURA KELLY,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF
### INTERROGATORIES

Pursuant to Fed. Rules of Civ. P. 26 and 33, Plaintiffs Animal Legal Defense Fund ("ALDF"), Center for Food Safety ("CFS"), Shy 38, Inc. ("Shy") and Hope Sanctuary ("Hope") hereby supplement their objections and responses to Defendants Laura Kelly and Derek Schmidt's ("Defendants") First Set of Interrogatories, as follows:

### RESERVATION OF RIGHTS AND
### INTERPRETATION OF DEFINITIONS, TERMS, AND SCOPE

1.      These responses and objections to Defendants' First Set of Interrogatories (collectively, the "Responses") are based upon Plaintiffs' reasonable investigation to date, knowledge, and belief. These Responses are given without prejudice to subsequent revision, supplementation, or withdrawal based upon any information, evidence, and/or document that may later be discovered or determined.

2.      These Responses were prepared based upon Plaintiffs' good faith interpretation and understanding of the Definitions and individual Interrogatories and are subject to correction for inadvertent errors or omissions, if any.

1

3.      Plaintiffs reserve the right to refer to, to conduct discovery with reference to, or to offer into evidence at the time of trial, any and all facts, evidence, documents, and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these Responses.

4.      Plaintiffs make these Responses without conceding the materiality, admissibility, or relevance of the Responses. Plaintiffs reserve all objections to the use or admissibility of these Responses. All such objections may be interposed by Plaintiffs at the time of trial, motion, or as otherwise required by the Rules or by order of this Court.

5.      These Responses are made purely for the purposes of this action.

6.      Insofar as a response by Plaintiffs may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular Response only.

7.      Based on Plaintiffs' consultations with counsel for Defendants, these Responses incorporate and are provided using the following interpretations of certain Definitions and terms.

   a.   Plaintiffs construe Defendants' definition of "Document" as excluding documents constituting or containing information protected by the attorney-client privilege or the attorney work product doctrine.

   b.   Plaintiffs construe the term "personnel knowledge" as "personal knowledge," understand this as a typo.

8.      While Defendants' Interrogatories are propounded to all Plaintiffs collectively, certain Interrogatories are specific to certain Plaintiffs (*see, i.e.*, Interrogatories Nos. 2-3, 5, specific to Plaintiff ALDF). Interrogatories specific to certain Plaintiffs are responded to only

**Attachment B 00055**

on behalf of those specific Plaintiffs; other Plaintiffs do not represent herein that they possess the information necessary to answer those Interrogatories that are not relevant to them. In contrast, Interrogatories directed to all Plaintiffs, or Interrogatories which are not specific to any particular Plaintiff, are here responded to on behalf of all Plaintiffs.

## **INTERROGATORIES**

INTERROGATORY NO. 1:

   Identify the current articles of incorporation, trust documents, or articles of association of each plaintiff which is a 501(c)(3) organization (as those terms are employed for qualification as a 501(c)(3) organization) and identify the current business formation document(s) for each plaintiff, if any, which is not a 501(c)(3) organization.

ANSWER:

   Plaintiffs object to this interrogatory as follows. Plaintiffs object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the locations and custodians of documents noted in this response. Plaintiffs rest on this objection to withhold this information, but otherwise respond, without objection, as follows:

   Plaintiff ALDF is a 501(c)(3) organization whose articles of incorporation can be found at ALDF0960 – 0965.

   Plaintiff CFS is a 501(c)(3) organization whose articles of incorporation can be found at CFS0154 – 0156.

3

Plaintiff Shy is a 501(c)(3) organization whose articles of incorporation can be found at SHY093 – 095.

Plaintiff Hope is a 501(c)(3) organization whose certificate of incorporation can be found at HOPE021.

**Attachment B 00057**

INTERROGATORY NO. 2:

State the principal and material facts supporting your allegations that Plaintiff ALDF has the capacity and current intention to conduct specified "undercover investigations" but for the KFAFCRF, as referenced in whole or part in the Complaint, ¶¶ 3, 21, 76, 89 & 110, and identify (a) all persons with personnel knowledge of some or all such facts (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents protected by the First Amendment privilege. Specifically, because documents responsive to this interrogatory contain the names and contact information of ALDF members and donors, Plaintiff ALDF will redact and withhold such names and information pursuant to its First Amendment associational privilege. Plaintiffs further object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Specifically, Plaintiff ALDF has identified as responsive a contract pertaining to a grant awarded to it for the period between Oct. 15, 2018 and Oct. 15, 2020, for work including pursuing undercover investigations. Until the court enters a Stipulated Protective Order in this matter, Plaintiff ALDF will withhold disclosure of this document, and any other similar confidential or trade secret information it identifies in the course of its reasonable searches and investigation. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants'

Attachment B 00058

definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Plaintiffs will withhold the home addresses and home telephone numbers of any individuals identified in this response. Plaintiffs also object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the locations and custodians of documents noted in this response. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiff ALDF to identify persons whose knowledge is tangential, at most, to ALDF's standing, is minor and duplicative of other identified individuals' broader knowledge, and is not reasonably necessary to test ALDF's standing to bring this suit. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this Interrogatory, but will not identify "all" persons. Finally, this Interrogatory is overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to ALDF's capacity and intention to conduct undercover investigations, and which are duplicative of other identified documents' contents. Plaintiffs will identify any documents containing substantial information responsive to this Interrogatory that are the result of a reasonable and proportionate search, but will not identify "all" documents. Plaintiffs rest on these objections to withhold the information described above. Plaintiffs otherwise respond, without objection, as follows:

Plaintiff ALDF has the capacity to conduct the types of undercover investigations detailed in its Complaint, and would do so but for the Kansas Ag-Gag law (codified at Kansas Statutes Annotated, 47-1825 to 47-1828, additionally enforced through Kansas Statutes Annotated 21-6604) (hereafter, "Kansas Ag-Gag law"). ALDF possess the funds, infrastructure, expertise, and personnel necessary to plan, direct, and receive the results of an undercover investigation in Kansas, as well as to share information obtained from such an investigation with the public. First, ALDF has dedicated funds that it has reserved for use in conducting undercover investigations, which include funds that would cover an investigation in Kansas, if the state's Ag-Gag law were to be struck down. Even were ALDF to use its dedicated funds to pursue another investigation in another state, ALDF possesses sufficient funds to retain an investigator to complete an investigation in Kansas. Second, ALDF has personnel with the expertise and institutional tools necessary to successfully carry out such investigations, who have been tasked with overseeing ALDF's undercover investigations. Specifically, ALDF's Chief Programs Officer, Mark Walden, provides strategic direction for ALDF's undercover investigations, and has been charged with aiding the organization in fulfilling its mission-driven objectives by pursuing undercover investigations in a variety of states and locations to uncover animal cruelty and support the organization's advocacy efforts. ALDF's Chief Operating Officer, Janiec Gutierrez, helps execute investigations by retaining and liaising with the investigating entity or investigator, and handling all logistical matters relating to the investigation, including receiving the investigative footage and compensating the investigator.

ALDF's capacity to conduct the undercover investigations it describes in the Complaint is further confirmed by its track record of pursuing such investigations. ALDF-retained undercover investigators have carried out undercover investigations of animal facilities around

Attachment B 00060

the country, including locations that would meet the definition of an "animal facility" under Kansas Statutes section 47-1826(b). These include ALDF's 2016 investigation of a Nebraska pig breeding operation owned by The Maschhoffs, the nation's third-largest pig producer and a Hormel Foods supplier. ALDF's investigator obtained employment at The Maschhoffs facility and, over the course of several months, documented horrendous animal mistreatment, including long-term neglect and lack of appropriate veterinary care. The investigation revealed pigs suffering for days or weeks with grossly prolapsed rectums, intestinal ruptures, large open wounds, and bloody baseball-sized ruptured cysts. Pigs were denied food for long periods of time, and a botched "euthanasia" resulted in a mother pig slowly dying after being shot in the head multiple times over the course of several minutes.

To take another example, in 2015 ALDF conducted an investigation of a Carthage, Texas-based Tyson Foods chicken slaughterhouse. Again, ALDF's investigator obtained employment at the slaughterhouse and, over the course of several months, documented the atrocious conditions suffered by the birds and workers inside the plant. The investigation showed birds treated like trash, left to suffocate by the hundreds on overcrowded conveyor belts and discarded, still alive, in heaps of dead and dying chickens, feathers, and filth. And it documented the injuries and illnesses the investigator endured working on the chicken-hanging line, including carpal tunnel syndrome from attempting to hang 35 live birds a minute, eye infections from the chicken feces, dirt, dust, and dander that got into her eyes because of inadequate "protective" gear provided by Tyson, and extreme heat abrasion on her arms, which caused a painful, red rash.

Plaintiff ALDF also has the current intention to conduct the types of undercover investigations detailed in its Complaint, but for the credible threat of criminal prosecution for

Attachment B 00061

violating the Kansas Ag-Gag law. This intention is a factor of the great need for undercover investigations to pursue ALDF's advocacy and fulfill its mission of protecting the lives and advancing the interests of animals through the legal system, coupled with ALDF's specific interest in Kansas as a site for such investigations.

First, as detailed at length in its Complaint, ALDF actively seeks out and uses the information and footage gained through its own and others' investigations to further its work. ALDF's investigation of The Maschhoffs, for example, spurred countless communications efforts to engage and educate ALDF's members and supporters, and the broader public, about the suffering of pigs sourced for Hormel Foods' pork products. It also provided evidence ALDF used in a civil false advertising lawsuit against Hormel Foods. Similarly, the information ALDF gained through its Tyson chicken slaughterhouse investigation resulted in the filing of complaints—concerning the treatment of chickens, food safety, worker protection, and false corporate statements—with several federal and state agencies, as well as sustained efforts to engage ALDF's audiences about the suffering of chickens and mistreatment of workers in Tyson facilities like the one ALDF investigated.

Second, as detailed in the Complaint, ALDF has the specific desire to conduct an investigation in Kansas, for several reasons. Kansas is a major locus of animal agriculture: the fifth largest animal agriculture producer in the United States, and among the country's largest producers of pigs and cows. At the same time, ALDF has reason to believe, from the scores of undercover investigations in other states, that an investigation of an animal facility in Kansas would be likely to reveal unsafe, inhumane, and otherwise immoral or illegal practices. Yet animal agriculture and animal research facilities in Kansas have been shielded from public view

Attachment B 00062

for nearly thirty years, because of the Ag-Gag law. Thus, the need for ALDF and others to gain access to Kansas facilities to gather information about them is particularly acute.

In sum, ALDF has the desire, and everything at its disposal necessary, to conduct an undercover investigation of a factory farm, slaughterhouse, animal research facility, or other "animal facility" in Kansas. But because of its reasonable fear of criminal prosecution for violating the Kansas Ag-Gag law, ALDF is thwarted from carrying out the investigation it has the capacity and intention to complete.

Persons with knowledge of these facts are:

- Mark Walden, ALDF's Chief Programs Officer, who possesses knowledge about ALDF's capacity and current intention to conduct undercover investigations. Mr. Walden's business address is 525 E. Cotati Avenue, Cotati, California, 94931. His business telephone number is 707-795-2533 ext. 1021.

- Janiec Gutierrez, ALDF's Chief Operating Officer, who possesses knowledge about ALDF's capacity to conduct undercover investigations. Ms. Gutierrez's business address is 525 E. Cotati Avenue, Cotati, California, 94931. Her business telephone number is 707-795-2533 ext. 1022.

- Elizabeth Putsché, ALDF's Associate Director of Communications, who possesses knowledge about ALDF's current intention to conduct undercover investigations, specifically, related to ALDF's use of undercover investigations in its Communications work. Ms. Putsché's business address is 525 E. Cotati Avenue, Cotati, California, 94931. Her business telephone number is 707-795-2533 ext. 1029.

10

**Attachment B 00063**

- Carter Dillard, ALDF's Senior Policy Advisor, who possesses knowledge about ALDF's past investigations, including its 2015 investigation of a Tyson Foods chicken slaughterhouse and 2016 investigation of The Maschhoffs pig breeding facility. Mr. Dillard's business address is 525 E. Cotati Avenue, Cotati, California, 94931. His business telephone number is 707-795-2533 ext. 1036.

Plaintiff ALDF provides the above contact information in the interest of fully responding to this Interrogatory, but notes that it should be contacted through its undersigned counsel, Alan K. Chen, c/o University of Denver Sturm College of Law, 2255 E. Evans Avenue, Denver, CO 80209, (303) 871-6283.

Documents that constitute, describe or report ALDF's capacity and current intention to conduct undercover investigations include:

- A contract pertaining to a grant awarded to ALDF for the period between Oct. 15, 2018 and Oct. 15, 2020, for work including pursuing undercover investigations.[1]

- Animal Protection Laws of Kansas 2018 (ALDF0983 – 0986)

- The Animals' Advocate Vl. 35 Issue 3 Fall 2016 (ALDF0299 – 0306)

- ALDF website, About Us, In the News, 2016 Highlights (ALDF0630 – 0659, at 0649)

- ALDF Press Release, Investigation Reveals Cruelty and Neglect at Hormel Foods' Pig Supplier, May 25, 2016 (ALDF0660 – 0664)

- Letter from ALDF to Illinois Attorney General Lisa Madigan, May 25, 2016 (ALDF0261 – 0285)

---

[1] Plaintiffs will produce this document upon the Court's entering of a stipulated Protective Order.

Attachment B 00064

- Letter from ALDF to Nebraska Attorney General Doug Peterson, May 25, 2016 (ALDF0286 – 0298)

- Email from ALDF Publicist to ALDF Staff, ALDF in the News: Undercover Investigation Edition, May 31, 2016 (ALDF0966 – 0982)

- Meatingplace.com, Maschhoffs respond to pig abuse video, May 30, 2016 (ALDF0702 – 0706)

- Meatingplace.com, Hormel suspends supplier amid pig abuse investigation, May 26, 2016 (ALDF0987 – 0991)

- Meatingplace.com, Hormel, Maschhoffs launch probes after hog farm video release, Jan. 31, 2017 (ALDF0992 – 0995)

- The Animals' Advocate Vl. 36 Issue 3 Fall 2017, ALDF0307 – 0314

- ALDF website, Legally Brief: Behind Closed Doors, Beneath the Law, June 6, 2016 (ALDF0681 – 0685)

- ALDF website, Challenging Hormel's Deceptive Advertising Practices: Natural Choice (ALDF0358 – 0363)

- ALDF in the News Weekly Report 2-10-17 (ALDF0441 – 0449, at 0449)

- ALDF Blog, Stopping Cruel High-Speed Pig Slaughter, Apr. 5, 2018 (ALDF0752 – 0758)

- ALDF Blog, HIMP: Inherently Cruel for Pigs (ALDF0584 – 0589, at 0586)

- ALDF Press Release, Animal Legal Defense Fund Files Complaint with USDA against Airedale Terrier Puppy Mill in New Mexico, Feb. 29, 2016 (ALDF0324 – 0328)

12

**Attachment B 00065**

- ALDF website, Undercover Video: Deplorable Conditions at New Mexico Puppy Mill (ALDF0740 – 0742)

- ALDF website, Legally Brief: Neuter the Puppy Mills, Apr. 5, 2016 (ALDF0686 – 0693)

- ALDF Press Release, Undercover Investigation Documents Tysons' Cruel, Illegal Treatment of Chickens, Sept. 14, 2015 (ALDF0909 – 0914)

- ALDF website, Complaints Filed After Tyson Foods Undercover Investigation (ALDF0409 – 0415)

- Letter from ALDF to Carl Mayes, USDA Food Safety and Inspection Service, Sept. 14, 2015 (ALDF002 – 0039)

- Letter from ALDF to Hon. Mary Jo White, Securities & Exchange Commission (SEC), Sept. 14, 2015 (ALDF0875 – 0902)

- Letter from ALDF to Hon. Matthew Denn, Delaware Attorney General, Sept. 14, 2015 (ALDF0072 – 0083)

- Letter from ALDF to Sec. of Labor David Michaels, Sept. 14, 2015 (ALDF0085 – 0180)

- ALDF News, Tyson, Repeat OSHA Violator, Gives its Workers Lip Service Instead of Safer Conditions, Nov. 4, 2015 (ALDF0903 – 0908)

- ALDF website, About Us, In the News, 2015 Highlights, ALDF0652 – 0653

- Letter from ALDF to Hon. Mary Jo White, SEC, Sept. 19, 2016 (ALDF0040 – 0052)

- ALDF Press Release, ALDF Urges Securities and Exchange Commission to Expedite Investigation of Tyson Foods, Jan. 8, 2017 (ALDF0337 – 0340)

13

**Attachment B 00066**

- Letter from ALDF to Mary Engle, Federal Trade Commission (FTC), Nov. 27, 2013 and Second Addendum to Complaint *ALDF v. Tyson Foods, Inc.* (ALDF0780 – 0810)

- Letter from ALDF to Mary Engle, FTC, Apr. 15, 2013 (ALDF0811 – 0820)

- Letter to David Vladeck, Director, FTC Bureau of Consumer Protection, and accompanying Complaint to FTC, Jan. 22, 2013 (ALDF0821 – 0864)

- ALDF blog, Tyson Foods and a Culture of Cruelty, Nov. 27, 2013 (ALDF0865 – 0874)

INTERROGATORY NO. 3:

Describe the undercover investigations that Plaintiff ALDF has the present intent to conduct with sufficient detail for the Court to determine whether and how the investigations would violate the KFAFCRF, and identify (a) all persons with personnel knowledge of some or all the facts described (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Specifically, Plaintiff ALDF has identified as responsive a contract pertaining to a grant awarded to it for the period between Oct. 15, 2018 and Oct. 15, 2020, for work including pursuing undercover investigations. Until the court enters a Stipulated Protective Order in this matter, Plaintiff ALDF will withhold disclosure of this document, and any other similar confidential or trade secret information it identifies in the course of its reasonable searches and investigation. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the home addresses and home telephone numbers of any individuals identified in this response. Plaintiffs further object to Defendants' definition of

15

"Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the locations and custodians of any documents noted in this response. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiff ALDF to identify persons whose knowledge is tangential, at most, to ALDF's standing, is minor and duplicative of other identified individuals' broader knowledge, and is not reasonably necessary to test ALDF's standing to bring this suit. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this interrogatory, but will not identify "all" persons. This interrogatory is also overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to the undercover investigations that Plaintiff ALDF has the intention to conduct, and which are duplicative of other identified documents' contents. Plaintiffs will identify any documents containing substantial information responsive to this Interrogatory that are the result of a reasonable and proportionate search, but will not identify "all" documents. Plaintiffs rest on these objections to withhold the information described above. Plaintiffs otherwise respond, without objection, as follows:

As detailed in Plaintiffs' Complaint, section (c)(4) of the Ag-Gag law makes it a crime for any person to "enter an animal facility to take pictures by photograph, video camera or by any other means" without "effective consent" of the owner and with the intent of "damaging the enterprise." K.S.A. § 47-1827(c)(4). Consent is rendered ineffective if "induced by . . . deception." K.S.A. § 47-1826(e)(1). The investigation Plaintiff ALDF desires to carry out in

Attachment B 00069

Kansas would follow an established protocol. ALDF would retain a qualified investigator to obtain photographic and/or video footage documenting the conditions inside a Kansas factory farm, slaughterhouse, or other animal facility. Working with the investigating entity, a target would be identified, and the investigator, or an investigator hired by the investigating entity ALDF retained, would go about gaining access to the facility, mostly likely by applying for and securing employment at the facility. In order to secure such employment, or otherwise to gain access to the non-public parts of the animal facility, the investigator would be forced to conceal his or her true motive for applying for the job or trying to gain access. The investigator would either lie through omission—by concealing his or her affiliation with ALDF—or, if necessary, directly, by denying that she was being sent by an animal rights organization, a commonly-asked question in the application process for animal agriculture facility positions. Once the investigator gained access to the facility, as directed by ALDF she would go about documenting the conditions therein by "tak[ing] pictures by photograph, video camera or by any other means." Again without telling her employer, the investigator would perform all the duties of her job while concealing a hidden camera worn on her clothing and operated with no or virtually no effort (so as not to interfere with the investigator's ability to safely and competently perform the tasks required of the position).

Although ALDF cannot predict the exact trajectory of the investigation it would conduct in Kansas but for the Ag-Gag law, in going about collecting investigative footage undetected inside an animal facility, several scenarios are plausible, as detailed in Plaintiffs' Complaint. First, an ALDF-retained investigator could temporarily "exercise control" over a specific room or section of a facility by, if he had such supervisory or other authority, temporarily closing off a part of the facility, so as not to be observed photographing the conditions. K.S.A. § 47-1827(b).

Attachment B 00070

Or he could "remain concealed" by hiding behind a door or wall for the time needed to take a photograph or capture something on video, in order to record the activity undetected. K.S.A. § 47-1827(c)(2). Finally, it is likely that ALDF's investigator would be on notice that his investigative activity was forbidden by the facility's owners. K.S.A. 47-1827(d)(1). The facility could have notices posted forbidding nonconsensual access, photography, or video recording, putting the investigator on notice that he should leave.

ALDF's investigation in Kansas would be aimed at gaining an unvarnished look into what goes on at the factory farm, slaughterhouse, or other animal facility. ALDF would direct its investigating entity to document any illegal and unethical practices happening at the facility, with the specific goal of exposing to public view animal cruelty, unsafe working conditions, food safety violations, and other misconduct discovered therein. ALDF would pursue its investigation knowing full well that such exposure might lead to boycotts, lost business, a plant closure, or other harm to investigated entity's or its affiliates' reputations resulting from the adverse publicity, which foreseeably may cause economic harm to the enterprise.

Persons with knowledge of these facts are:

- Mark Walden, who possesses knowledge about the types of investigative activities in which ALDF-retained investigators engage or are likely to engage when conducting an undercover investigation for ALDF;

- Janiec Gutierrez, who possesses knowledge about the logistics of ALDF-funded undercover investigations.

Documents that constitute, describe or report the undercover investigations ALDF has the present intent to conduct are listed in response to Plaintiffs' response to Interrogatory No. 2, and are incorporated herein.

INTERROGATORY NO. 4:

Describe, again with sufficient detail for the Court to determine whether and how the investigations would violate the KFAFCRF, all the differences between the undercover investigations described in your preceding interrogatory answer and "types of investigative activity" for which you seek a declaration in paragraph 110 of the Complaint, and identify (a) all persons with personnel knowledge of some or all the facts described (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Specifically, Plaintiff ALDF has identified as responsive a contract pertaining to a grant awarded to it for the period between Oct. 15, 2018 and Oct. 15, 2020, for work including pursuing undercover investigations. Until the court enters a Stipulated Protective Order in this matter, Plaintiff ALDF will withhold disclosure of this document, and any other similar confidential or trade secret information it identifies in the course of its reasonable searches and investigation. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and

Attachment B 00072

defenses at issue. Thus, Plaintiffs will withhold the home addresses and home telephone numbers of any individuals identified in this response. Plaintiffs also object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the locations and custodians of any documents noted in this response. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiff ALDF to identify persons whose knowledge is tangential, at most, to ALDF's standing, is minor and duplicative of other identified individuals' broader knowledge, and is not reasonably necessary to test ALDF's standing to bring this suit. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this Interrogatory, but will not identify "all" persons. This interrogatory is also overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to Plaintiff ALDF's undercover investigations, and which are duplicative of other identified documents' contents. Plaintiffs will identify any documents containing substantial information responsive to this Interrogatory that are the result of a reasonable and proportionate search, but will not identify "all" documents. Plaintiffs rest on these objections to withhold the information described above. Plaintiffs otherwise respond, without objection, as follows:

The investigative activities described in Plaintiffs' response to Interrogatory No. 3, and described in their Complaint, are the same ones about which they seek a declaration pursuant to paragraph 110 of their Complaint; there are no differences. That said, Plaintiffs cannot predict

**Attachment B 00073**

and describe every minor permutation of how the conduct of an investigator, in the course of an investigation, might be construed as violating the "damage" provision, K.S.A. 47-1827(a), the "control" provision, K.S.A. 47-1827(b), the "concealed" provision, K.S.A. 47-1827(c)(2), or the "enter[ing] or remain[ing]" despite "notice" provision, K.S.A. 47-1827(d)(1). Plaintiffs can more accurately describe what the investigative activities described in their response to Interrogatory No. 3 and in their Complaint do *not* include: causing actual *physical* damage to animal facilities; exercising actual and ongoing physical control over an entire agricultural facility; physically concealing themselves until after an agricultural facility is closed for business *or* otherwise physically concealing themselves in order to be able to do actual *physical* damage; entering and remaining on the premises of an agricultural facility and refusing to leave after being specifically and directly instructed to do so. The alternative relief Plaintiffs seek with regard to these provisions is detailed it in their Partial Settlement Proposal, submitted to Defendants March 8, 2019.

The persons with knowledge of these facts are:

- Mark Walden, who possesses knowledge about the types of investigative activities in which ALDF-retained investigators engage or are likely to engage when conducting an undercover investigation for ALDF.

- Janiec Gutierrez, who possesses knowledge about the logistics of ALDF-funded undercover investigations.

Aside from the documents listed in Plaintiffs' response to Interrogatory No. 2, Plaintiffs have not identified any further documents that constitute, describe or report the above-described facts.

21

INTERROGATORY NO. 5:

State the principal and material facts supporting your allegations that Plaintiff ALDF's intended role in the "undercover investigations" referenced in the Complaint would be a violation by it, as opposed to other persons, of the KFAFCRF, and identify (a) all persons with personnel knowledge of some or all such facts (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Specifically, Plaintiff ALDF has identified as responsive a contract pertaining to a grant awarded to it for the period between Oct. 15, 2018 and Oct. 15, 2020, for work including pursuing undercover investigations. Until the court enters a Stipulated Protective Order in this matter, Plaintiff ALDF will withhold disclosure of this document, and any other similar confidential or trade secret information it identifies in the course of its reasonable searches and investigation. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the home addresses and home telephone numbers of any individuals identified in this response. Plaintiffs also object to Defendants' definition of

Attachment B 00075

"Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the locations and custodians of any documents noted in this response. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiff ALDF to identify persons whose knowledge is tangential, at most, to ALDF's standing, is minor and duplicative of other identified individuals' broader knowledge, and is not reasonably necessary to test ALDF's standing to bring this suit. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this interrogatory, but will not identify "all" persons. This interrogatory is also overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to the undercover investigations that Plaintiff ALDF has the intention to conduct, and which are duplicative of other identified documents' contents. Plaintiffs will identify any documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search, but will not identify "all" documents. Plaintiffs rest on these objections to withhold the information described above. Plaintiffs otherwise respond, without objection, as follows:

As described in Plaintiffs' Complaint, ALDF participates in undercover investigations. Specifically, it contracts with investigators and investigative entities, and directs them to obtain photographs and video footage from inside factory farms, slaughterhouses, and other animal facilities. In fulfilling their contractual obligations toward ALDF, the investigators may apply for jobs at such facilities and conceal their investigatory motives. At ALDF's direction, the

investigators record video and take photos, and, upon completion of the investigation, return the photos and video footage to ALDF. ALDF then, as planned, publicizes the documented evidence of animal cruelty and other illegal, immoral, and unsafe practices or conditions, and otherwise uses the video footage in furtherance of its mission-driven advocacy, causing foreseeable economic harm to the investigated facility and associated businesses in the form of boycotts, lost business, plant closures, and other reputational injuries as a result of the public's foreseeable and understandable reaction to learning of the illegal, immoral, and unsafe practices and conditions. If ALDF pursued such an investigation in Kansas, it would reasonably fear prosecution under the Kansas Ag-Gag law because of its role facilitating, funding, supporting, and directing the conduct described herein.

Furthermore, the Kansas Ag-Gag law specifically contemplates criminal liability for organizations as well as individuals, as it may be enforced against any "person" who violates the Act and defines person to include "any individual, state agency, corporation, association, nonprofit corporation, joint stock company, firm, trust, partnership, two or more persons having a joint or common interest or other legal entity."

Persons with knowledge of these facts are:

- Mark Walden, who possesses knowledge about the types of investigative activities in which ALDF-retained investigators engage or are likely to engage when conducting an undercover investigation for ALDF;

- Janiec Gutierrez, who possesses knowledge about the logistics of ALDF-funded undercover investigations.

- Elizabeth Putsché, who possesses knowledge about the manner in which ALDF publicizes and uses in its advocacy the footage it obtains from its undercover investigations.

Documents that constitute, describe or report Plaintiff ALDF's role in conducting and directing undercover investigations are listed in Plaintiffs' response to Interrogatory No. 2, and are incorporated herein.

**Attachment B 00078**

INTERROGATORY NO. 6:

Identify all persons or entities which have been charged and/or prosecuted for violation of the KFAFCRF and identify all documents or tangible things that constitute, describe or report such charge(s) or prosecution(s) (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs respond as follows:

Plaintiffs are not aware of any persons or entities which have been charged and/or prosecuted for violation of the Kansas Ag-Gag statute.

26

INTERROGATORY NO. 7:

State the principal and material facts supporting your allegations in the Complaint that the KFAFCRF is intended to suppress speech that is negative to the animal research and animal agriculture industries, and identify (a) all persons with personnel knowledge of some or all the facts described (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the home addresses and home telephone numbers of any individuals identified in this response. Plaintiffs also object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have already identified by Bates numbers or otherwise, is overly burdensome and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the locations and custodians of documents noted in this response. Moreover, this interrogatory is overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to the speech-suppressing motive of the Kansas Ag-Gag law, and which are duplicative of other identified documents' contents. Plaintiffs

**Attachment B 00080**

will identify any documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search, but will not identify "all" documents. Plaintiffs rest on these objections to withhold the information described above. Plaintiffs otherwise respond, without objection, as follows:

Information in and documents attached to Plaintiffs' Complaint, and materials produced by Defendants, contain the principal and material facts supporting Plaintiffs' allegation that the Kansas Ag-Gag law is intended to suppress speech that is negative to the animal research and animal agriculture industries. *See* Complaint, ¶ 63-69.

Specifically, in Attachment 9 to the Minutes of the Senate Committee on Agriculture meeting held on March 23, 1990, provided by Senator Montgomery (see AG000056) (hereafter, "the Minutes"), there is an Associated Press article entitled "Animal Rights Debate Invades The Barnyard." The article contains a quote from Steve Kopperud, executive director of the Animal Industry Foundation, which is labeled as a "pro-agriculture" group, in which he says, of the "animal rights movement", "It is well-funded.  It is well-organized. It's a European import.  And it's coming to Kansas." AG000101. It is a reasonable inference that the Kansas legislators relied on this statement in enacting the Ag-Gag law.

Also in Attachment 9 to the Minutes (see AG000056), there is an article entitled "Animal rights groups plan ongoing national strategy," by Larry Westfield, Washington editor of Drovers Journal, a beef industry publication, dated July 13, 1989. In the article, Westfield specifically references Plaintiff Animal Legal Defense Fund, stating: "There are now several groups that sponsor legal defense funds for animals. One is the Animal Legal Defense Fund, a nationwide network of 250 attorneys. ALDF has fought hot-iron face-branding of dairy cows, veal calf confinement and the patenting of genetically altered farm animals." AG000102. The article goes

Attachment B 00081

on to state that "But right now the animal rights movement seems to be growing in numbers, clout, zeal, sophistication and willingness to fight livestock producers." *Id.* It is a reasonable inference that the Kansas legislators relied on this statement in enacting the Ag-Gag law.

In Attachment 11 to the Minutes (see AG000056), there is an article by Karen McMillan in Beef Today, a beef industry publication, dated March 1990. In the article, the author urges the beef industry to treat the animal rights groups seriously, including the following statements: "all the [animal-protection] groups have two things in common: plenty of money, and agendas that will have a big impact on the cattle industry in the '90s" and "But many of these people are well spoken and skilled at getting their points out to the general public." AG0000107. In this same article, the author describes actions of the group, People for the Ethical Treatment of Animals (PETA), as follows: "PETA's main goal is to tell as many people as possible that 'eating animals is bad for the whole ecosystem.' Education plays the key role here. PETA distributes videotapes showing pigs castrated and ear-notched without anesthesia, and pigs in farrowing crates and slaughterhouses, and asks whether this is an ethical society and whether we can endure this treatment." AG0000107. It is a reasonable inference that the Kansas legislators relied on these statements in enacting the Ag-Gag law.

The following documents are attached to the Minutes of the Senate Agriculture Committee meeting held on February 22, 2012 (hereafter, "the 2012 Minutes"), produced by the Defendants (AG000202 – 204) as part of the legislative history of Senate Bill 414, introduced by the Kansas legislature in 2012:

- Attachment 1 to the 2012 Minutes is the written testimony of Dr. Bill Brown, Animal Health Commissioner, Division of Animal Health, Kansas Department of Agriculture, who described SB 214 as, among other things, "Specifying that consent induced by fraud,

Attachment B 00082

deception or duress, such as lying on a job application to gain access to a farm or ranch, will not be considered effective consent under the Farm Animal and Research Facilities Protection Act." AG000206

- An unattributed document entitled "Animal Health Bill Information," which states that the Ag-Gag law is "being amended to specify that 'effective consent' shall not be deemed to include consent induced by fraud, deception, or duress (SB414, Page 27, Section 41 e(1))," and goes on to state: "In some states, animal rights activists with an anti-agriculture agenda have lied on job applications in order to gain access to farms or ranches and take undercover video, some of which is believed to be staged. This amendment is a tool that can be used against people using fraud to gain access to farms." AG000208

A statement from the Kansas Livestock Association, dated February 22, 2012, in support of SB 414, that appears to be an attachment to an unidentified legislative report, stating that: "The change to exclude 'fraud, deception, or duress' from the definition of 'effective consent' clarifies that animal rights activists concealing their identity or lying on a job application cannot avail themselves to the defense that they were given permission to work on or enter the facility." AG000266

A statement from the Kansas Pork Association, dated February 22, 2012, in support of SB 414, that appears to be an attachment to an unidentified legislative report, stating that: "We believe this amendment strengthens our statutes protecting farmers from those willing to falsify records in order to gain access to farms or ranches." AG000267

A statement from the Kansas Soybean Association, dated Summer 2012, describing S Sub for HB 2596 (the House version of SB 414) as clarifying "that anyone fraudulently entering

a farm is liable for illegally taking photographs or videos or for damaging property. . . " Available at https://kansassoybeans.org/wp-content/uploads/2013/04/kssoy-assn-newsletter-summer12.pdf

A statement from the Kansas Rural Center, dated May 11, 2012, describing S Sub for HB 2596 (the House version of SB 414) as amending the Kansas Ag-Gag statute "to make it easier to charge persons for taking unauthorized pictures of confined animal operations." Available at http://old.kansasruralcenter.org/archive2.html#120511

An article titled "Senate Bill steps on hog, dog interests" by Tim Carpenter in the Topeka Capital-Journal online, dated February 22, 2012, describing SB 414 as follows: "In addition, the legislation would take a swipe at environmental activists who engage in deception, such as lying on a job application, to gain access to farm or ranch operations." Available at https://www.cjonline.com/article/20120222/NEWS/302229750

It is a reasonable inference that the Kansas legislators relied on each of these statements in enacting the Ag-Gag law.

Persons with knowledge of these facts include:

- Senator Montgomery and other members of the Kansas state legislature who served when the challenged Kansas Ag-Gag statute was originally debated and adopted, and subsequently amended in 2012, who may have information related to the reasons and purposes for which the statute or any amendments were enacted. Plaintiffs do not currently possess the names, addresses, and telephone numbers of each of these legislators.

- Former Kansas Governor Mike Hayden, who may have information related to the reasons and purposes for which the statute, Kansas Ag-Gag statute was

enacted. Plaintiffs do not currently possess the address or telephone number of former Governor Hayden.

- The specific organizations and individuals mentioned in the above response, whose addresses and telephone numbers are unknown to Plaintiffs.

Documents that constitute, describe or report these facts include:

- Plaintiffs' Complaint, Exhibit B, *Animal rights group protests at med center*, THE HUTCHINSON NEWS (May 1, 1989).

- Plaintiffs' Complaint, Exhibit C, *Law Aims to Curb Attacks by Animal-Rights Militants*, ORLANDO SENTINEL (May 14, 1990).

- Plaintiffs' Complaint, Exhibit D, '*Puppy Mill' Dogs Jam Midwest Shelters*, PHILADELPHIA INQUIRER (July 1990).

- Plaintiffs' Complaint, Exhibit E, *Kansas Farmers Wary of Animal Rights Movement*, THE WICHITA EAGLE (Jan. 22, 1989).

- Documents produced by Defendants, including AG000056; AG000101-02; AG000107; AG0000206; AG0000208; AG000266-67.

**Attachment B 00085**

INTERROGATORY NO. 8:

If different from your answer to the preceding interrogatory, state the principal and material facts supporting your allegation in paragraph 97 of the Complaint that:

It [the KFAFCRF] was enacted with the legislative motive of eliminating undercover, employment-based investigations by animal rights groups into animal research facilities and other industries that use animals, including factory farms and other agricultural production facilities in order to protect those industries and prevent the public backlash that follows when the industry's true practices are exposed,

and identify (a) all persons with personnel knowledge of some or all the facts described (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs respond as follows:

There are no differences between the facts supporting Plaintiffs' allegation that the Kansas Ag-Gag law is intended to suppress speech that is negative to the animal research and animal agriculture industries, and those supporting paragraph 97 of the Complaint. Plaintiffs reference and hereby incorporate their response to Interrogatory No. 7.

33

**Attachment B 00086**

INTERROGATORY NO. 9:

Identify the legislators and the trade groups which you believe advocated for the KFAFCRF "specifically because it would silence animal protection organizations," Complaint ¶ 68, and identify (a) all persons with personnel knowledge such legislators and trade groups expressed that objective (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report the facts which support your belief (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the home addresses and home telephone numbers of any individuals identified in this response. Plaintiffs also object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have already identified by Bates numbers or otherwise, is overly burdensome and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the locations and custodians of any documents noted in this response. Plaintiffs rest on these objections to withhold the information described above. Plaintiffs otherwise respond, without objection, as follows:

34

Trade groups: Kansas Farm Bureau; Kansas Livestock Association; Kansas Pork Association; the Animal Industry Foundation.

Legislators: Senator Montgomery.

Persons with knowledge of these facts include:

- Senator Montgomery and other members of the Kansas state legislature who served when the challenged Kansas Ag-Gag statute was originally debated and adopted, and subsequently amended in 2012, who may have information related to the reasons and purposes for which the statute or any amendments were enacted. Plaintiffs do not currently possess the names, addresses, and telephone numbers of each of these legislators.

- Former Kansas Governor Mike Hayden, who may have information related to the reasons and purposes for which the statute, Kansas Ag-Gag statute was enacted. Plaintiffs do not currently possess the address or telephone number of former Governor Hayden.

- Kansas Farm Bureau, whose address and telephone number is unknown to Plaintiffs.

- Kansas Livestock Association, whose address and telephone number is unknown to Plaintiffs.

- Kansas Pork Association, whose address and telephone number is unknown to Plaintiffs.

- Animal Industry Foundation, whose address and telephone number is unknown to Plaintiffs.

35

Documents that constitute, describe or report these facts are listed in Plaintiffs' Response to Interrogatory No. 7, and incorporated herein.

**Attachment B 00089**

INTERROGATORY NO. 10:

Separately for each Plaintiff, itemize the expenses incurred by the Plaintiff because of the KFAFCRF by nature, date and amount, and identify all documents or tangible things that tend to prove, describe or report all or part of your itemizations.

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs are not seeking damages related to funds expended because of the Kansas Ag-Gag law. Plaintiffs have alleged, and need only show, that they have devoted organizational resources to countering the Kansas Ag-Gag law. An itemized list of expenses is unnecessary and irrelevant in light of ample evidence of Plaintiffs' resource expenditures. Plaintiffs further object to this Interrogatory as overly broad and unduly burdensome in proportion to its utility because, even if such itemized expenses were relevant, this interrogatory asks Plaintiffs to identify (and itemize) not only the expenses themselves, but "all" documents that "tend to prove, describe *or* report all *or* part" of those expenses. On its face, then, this interrogatory seeks documents with only a tangential relationship to those expenses. Furthermore, this interrogatory seeks documents which will necessarily be duplicative of other identified documents' contents. Plaintiffs further object to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Plaintiffs will identify (by Bates number) any documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search, but will withhold the locations and custodians of

documents noted in this response, and will not identify "all" documents. Plaintiffs rest on these objections to withhold the information described above. Plaintiffs otherwise respond, without objection, as follows:

*For Plaintiff ALDF:*

For at least the past seven years, ALDF has devoted substantial organizational resources to countless activities in order to combat Ag-Gag laws around the country, including in Kansas. ALDF staff have engaged in numerous activities to publicize and support the organization's legal, legislative, and public advocacy against Ag-Gag, in a variety of settings and to a number of audiences. These activities include researching, drafting, editing, and disseminating numerous communications pieces, such as press releases, blogs, action alerts, donor communications, newsletters, social media posts, brochures, pamphlets, and other materials (*see*, i.e., ALDF0184 – 0185; ALDF0198 – 0210; ALDF0215 – 0220; ALDF0221 – 0222; ALDF0252 – 0255; ALDF0299 – 0306; ALDF0307 – 0314; ALDF0379 – 0385; ALDF0478 – 0480; ALDF0675 – 0680; ALDF0681 – 0685; ALDF0764 – 0769; ALDF0915 – 0919; ALDF0996 – 0998; ALDF0999 – 1000; ALDF1001 – 1006; ALDF1007 – 1009; ALDF1010 – 1012). Activities also include attorneys and staff speaking to audiences at conferences, symposia, law student events, and ALDF member and supporter events (*see*, i.e., ALDF0211 – 0214; ALDF0694 – 0697; ALDF1010 – 1012; ALDF1013; ALDF1014 – 1015; ALDF1016 – 1020; ALDF1021 – 1050). Further, ALDF's Animal Law Program has provided Ag-Gag-related resources, content, CLEs, and other programming to legal audiences including attorneys, paralegals, judges, law students and to lay audiences (*see*, i.e., ALDF0060 – 0071; ALDF0186 – 0197; ALDF0743 – 747; ALDF1059 – 1063; ALDF1064 – 1068). Each of these activities has required the expenditure of financial resources, and thus, such resources are far too numerous to fairly be itemized with any degree of

specificity.

At a minimum, ALDF expenses on these activities include: dozens of hours of paid staff time; payments to communications and operations vendors and contractors, such as designers and direct mail vendors; payments for printing and production of brochures, pamphlets, placards, and other collateral; travel and related costs for events; server upkeep and overhead; and operating expenses (including use of technology platforms to create, communicate about, and publish all of the above-described content). Examples of such expenses include:

- Payments of at least $4,000 for brochures related to the Ag-Gag Laws from 2015 to the present (*see, i.e.*, ALDF0184 – 0185; ALDF0221 – 0222; ALDF1051).

- Payments of roughly $520 for Ag-Gag-related Occasional Cards (*see* ALDF1055 – 1056; ALDF1057 – 1058).

- A May 2018 payment of roughly $405 for an Ag-Gag display image/caption (*see* ALDF1052 – 1054[2]).

- A grant of roughly $135 to a student group at the University of Texas for a talk on Ag-Gag, March 6, 2015.

- A grant of roughly $152 to a student group at American University for a talk on Criminalizing Free Speech & the Animal Rights Movement, April 8, 2015.

- A grant of roughly $300 to a student group at Harvard University for a talk on Ag-Gag, Nov. 20, 2015.

- A grant of roughly $180 to a student group at Loyola Chicago for a talk on Ag-Gag, Oct. 5, 2016.

---

[2] Document redacted to protect personal identifying information.

- A grant of roughly $178 to a student group at Brigham Young University for a talk by an Ag-Gag plaintiff on Mar. 26, 2019.

*For Plaintiff CFS:*

For at least the past six years, CFS has devoted substantial organizational resources to organizational activities in order to combat Ag-Gag laws around the country, including in Kansas. As part of CFS's Animal Factories Reform program, one of the organization's flagship program areas, CFS staff have engaged in numerous activities to publicize and support the organization's legal, policy, and outreach advocacy against Ag-Gag laws. These activities include researching, drafting, editing, and disseminating communication documents, such as reports (*see, e.g.,* CFS-0070-0110), press releases (*see, e.g.,* CFS-0005-0006; CFS-0008-36); blogs (*see, e.g.,* CFS-0001-0004; CFS-0038-40; CFS-0151-152), social media posts (*see, e.g.,* CFS-0135-0138), and action alerts (*see, e.g.,* CFS-0041-44). CFS uses investigative information about animal welfare and food safety as part of this program and these documents. Activities have also concluded attorneys and staff speaking to audiences at conferences and law school events and classes. These activities have required the expenditure of financial resources, which are too numerous and intertwined with Animal Factory Reform work to be itemized with any degree of specificity. At a minimum, CFS expenses on these activities include: dozens of hours of salaried or hourly staff time; payments to communications and operation vendors and contractors, such as designers; server upkeep and overhead, and operating expenses (including use of technology platforms to create, communicate about, and publish all of the above-described content).

Plaintiffs Shy and Hope do not allege that they have expended any resources because of the Kansas Ag-Gag law.

Attachment B 00093

INTERROGATORY NO. 11:

If different from your answer to the preceding interrogatory, state the principal and material facts, separately for each Plaintiff, which quantify any alleged consequent drain on the Plaintiff's resources from the KFAFCRF, and identify all documents or tangible things that tend to prove, describe or report such facts.

ANSWER:

Plaintiffs respond as follows:

Plaintiffs' response to Interrogatory No. 10 quantifies, to the degree feasible and reasonable in proportion to the needs of the case, the drain on their respective resources caused by the Kansas Ag-Gag law. Plaintiffs reference and hereby incorporate their response to Interrogatory No. 10, and have not identified any further facts to provide in response to this interrogatory.

41

INTERROGATORY NO. 12:

Separately for each of the requests for admission which were not unconditionally admitted, state the principal and material facts supporting your denial or partial denial, and identify (a) all persons with personnel knowledge of some or all such facts (stating for each such person the subjects of their personnel knowledge) and (b) all documents or tangible things that constitute, describe or report such facts (excluding documents prepared at the direction of or by your counsel).

ANSWER:

Plaintiffs object to this interrogatory as follows. Plaintiffs object to this interrogatory as seeking information and documents that constitute or contain trade secrets or other confidential information which, disclosed, would cause significant harm to one or more Plaintiffs. Specifically, Plaintiff ALDF has identified as responsive to at least one of Defendants' Requests for Admission a contract pertaining to a grant awarded to it for the period between Oct. 15, 2018 and Oct. 15, 2020, for work including pursuing undercover investigations. Until the court enters a Stipulated Protective Order in this matter, Plaintiff ALDF will withhold disclosure of this document, and any other similar confidential or trade secret information it identifies in the course of its reasonable searches and investigation. Plaintiffs further object to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs object to Defendants' definition of "Identify", with respect to an individual person, as overbroad, unduly burdensome, and irrelevant, in that seeking the home addresses and home telephone numbers of individuals identified in this response is overly intrusive and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the home addresses and home telephone numbers of any individuals identified in this response. Plaintiffs also object

42

to Defendants' definition of "Identify", with respect to a document, as overbroad, unduly burdensome, and irrelevant, in that seeking the location and custodian of documents Plaintiffs have herein produced and identified by Bates numbers is overly burdensome and unnecessary to investigate the claims and defenses at issue. Thus, Plaintiffs will withhold the locations and custodians of documents noted in this response. Further, this interrogatory is unduly burdensome and overbroad in seeking information about "all" persons with knowledge of "some…such facts," because it asks Plaintiffs to identify persons whose knowledge is tangential, minor, and/or duplicative of other identified individuals' broader knowledge. Plaintiffs will identify those individuals who possess substantial, non-derivative, non-duplicative knowledge responsive to this interrogatory, but will not identify "all" persons. Finally, this interrogatory is overly broad and unduly burdensome in seeking "all" documents "that constitute, describe *or* report such facts," because it seeks documents with minimal relevance to the underlying facts, and which are duplicative of other identified documents' contents. Plaintiffs will identify any documents containing substantial information responsive to this interrogatory that are the result of a reasonable and proportionate search, but will not identify "all" documents. Plaintiffs rest on these objections to withhold the information described above. Plaintiffs otherwise respond, without objection, as follows:

*Request for Admission No. 5*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. The persons with knowledge of these facts are:

- Mark Walden, who possesses knowledge about the types of investigative activities in which ALDF-retained investigators engage or are likely to engage when conducting an undercover investigation for ALDF;

43

- Janiec Gutierrez, who possesses knowledge about the logistics of ALDF-funded undercover investigations.

- Elizabeth Putsché, who possesses knowledge about the manner in which ALDF publicizes and uses in its advocacy the footage it obtains from its undercover investigations.

Aside from documents listed in Plaintiffs' response to Interrogatory No. 2 detailing Plaintiff ALDF's role in conducting and directing undercover investigations, Plaintiffs have identified no further documents that constitute, describe or report the facts supporting Plaintiffs' denial of the Request.

*Request for Admission No. 6*

The basis for Plaintiffs' qualified admission to this Request is provided in Plaintiffs' response to this Request for Admission. The person with knowledge of the facts substantiating Plaintiffs' qualified admission is:

- Mark Walden, who possesses knowledge about the reasonably foreseeable economic consequences and harms that flow from the types of undercover investigations ALDF conducts.

In addition to documents listed in Plaintiffs' response to Interrogatory No. 2 detailing the investigations and investigative activities in which Plaintiff ALDF has engaged and has the intent to engage, the following documents constitute, describe or report other facts supporting Plaintiffs' qualified admission of the Request.

- Meatingplace.com, Hormel suspends supplier amid pig abuse investigation, May 26, 2016 (ALDF0987 – 0991).

- Meatingplace.com, Tyson terminates grower depicted in activist video, Aug. 27,

Attachment B 00097

2015 (ALDF1069 – 1072).

- Consumer Perceptions of Livestock Products and Animal Welfare, Purdue University, 2013 (ALDF1073 – 1094).

*Request for Admission No. 17*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Other than Defendants Governor Laura Kelly and Attorney General Derek Schmidt, Plaintiffs can, at present, identify no person with knowledge of these facts. Plaintiffs have identified no documents that constitute, describe or report these facts.

*Request for Admission No. 18*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Other than Defendants Governor Laura Kelly and Attorney General Derek Schmidt, Plaintiffs can, at present, identify no person with knowledge of these facts. Plaintiffs have identified no documents that constitute, describe or report these facts.

*Request for Admission No. 19*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Other than Defendant Attorney General Derek Schmidt, Plaintiffs can, at present, identify no person with knowledge of these facts. Plaintiffs have identified no documents that constitute, describe or report these facts.

*Request for Admission No. 20*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Other than Defendant Governor Laura Kelly, Plaintiffs can, at present, identify no person with knowledge of these facts. Plaintiffs have identified no documents that constitute, describe or report these facts.

45

*Request for Admission No. 21*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Plaintiffs can, at present, identify no person with knowledge of these facts. Other than the documents produced by the Defendants bates stamped AG000055 to AG000381 themselves, Plaintiffs have identified no documents that constitute, describe or report these facts.

*Request for Admission No. 22*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Plaintiffs can, at present, identify no person with knowledge of these facts. Other than the documents produced by the Defendants bates stamped AG000055 to AG000381 themselves, Plaintiffs have identified no documents that constitute, describe or report these facts.

*Request for Admission No. 23*

The facts supporting Plaintiffs' denial are stated in Plaintiffs' response to this Request for Admission. Plaintiffs can, at present, identify no person with knowledge of these facts. Other than the documents produced by the Defendants bates stamped AG000055 to AG000381 themselves, Plaintiffs have identified no documents that constitute, describe or report these facts.

**Attachment B 00099**

**Dated**:  May 29, 2019

   /s/ Michael D. Moss
Michael D. Moss, KS Bar #22624
Foley & Mansfield, P.L.L.P.
8575 W. 110th Street, Suite 306
Overland Park, KS 66210
913-232-8767
913-800-7238 (fax)
mmoss@foleymansfield.com

   /s/ Alan K. Chen
Alan K. Chen (*Pro Hac Vice)*
University of Denver Sturm College of Law
(for identification only)
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6283
achen@law.du.edu

*Counsel for Plaintiffs*

**Attachment B 00100**

STATE OF *California* )
                     ) ss:    Animal Legal Defense Fund, *et. al.* v. Laura Kelly, *et. al.*,
                     )       Case No. 18-2657-KHV-JPO
COUNTY OF *Santa Clara* )

       Mark Walden, for Animal Legal Defense Fund, of lawful age, being first duly sworn upon oath, deposes and states:

That I am the an officer or agent of Plaintiff Animal Legal Defense Fund in the above and foregoing action; that I have read the supplemental responses to the interrogatories and know the contents thereof; that I have answered the foregoing interrogatories; and that all of the facts and statements therein contained are true and correct to the best of my knowledge and belief.

_____
Mark Walden
Chief Programs Officer, Animal Legal Defense
Fund

SUBSCRIBED AND SWORN to before me this 25th day of May , 2019

_____
Notary Public

My Commission Expires:
Dec. 16, 2022

PAUL ELLIOTT
Comm. #2271368
Notary Public · California
Santa Clara County
Comm. Expires Dec 16, 2022

**Attachment B 00101**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ANIMAL LEGAL DEFENSE FUND,** *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 18-2657-KHV-JPO** |
| **LAURA KELLY,** *et al.*, | ) ) | |
| **Defendants.** | ) ) ) | |

### PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Fed. Rules of Civ. P. 26 and 36, Plaintiffs Animal Legal Defense Fund ("ALDF"), Center for Food Safety ("CFS"), Shy 38, Inc. ("Shy") and Hope Sanctuary ("Hope") hereby object and respond to Defendants Laura Kelly and Derek Schmidt's ("Defendants") First Set of Requests for Admission, as follows:

### <u>RESERVATION OF RIGHTS</u>

1.      These responses and objections to Defendants' First Set of Requests for Admission (collectively, the "RFA Responses") are based upon Plaintiffs' reasonable investigation to date, knowledge, and belief. These RFA Responses are given without prejudice to subsequent revision, supplementation, or withdrawal based upon any information, evidence, and/or document that may later be discovered or determined.

2.      These RFA Responses were prepared based upon Plaintiffs' good faith interpretation and understanding of the individual Requests and are subject to correction for inadvertent errors or omissions, if any.

3.      Plaintiffs reserve the right to refer to, to conduct discovery with reference to, or

to offer into evidence at the time of trial, any and all facts, evidence, documents, and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these RFA Responses.

4.      Plaintiffs make these RFA Responses without conceding the materiality, admissibility, or relevance of the RFA Responses. Plaintiffs reserve all objections to the use or admissibility of these RFA Responses. All such objections may be interposed by Plaintiffs at the time of trial, motion, or as otherwise required by the Rules or by order of this Court.

5.      These RFA Responses are made purely for the purposes of this action.

6.      Insofar as a response by Plaintiffs may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular RFA Response only.

**<u>REQUESTS FOR ADMISSION</u>**

1.  ALDF is legally incorporated as not-for-profit or non-profit corporation.

    __X_ Admitted

    _____ Denied

2.  CFS is legally incorporated as not-for-profit or non-profit corporation.

    __X_ Admitted

    _____ Denied

3.  Shy is legally incorporated as not-for-profit or non-profit corporation.

    __X_ Admitted

    _____ Denied

4.  Hope is legally incorporated as not-for-profit or non-profit corporation.

    __X_ Admitted

**Attachment B 00103**

_____ Denied

5. As they are corporations, Plaintiffs cannot "enter an animal facility," or "remain
   concealed in" or fail to "depart" from an "animal facility" as the quoted terms are
   used in the KFAFCRF.

Plaintiffs object to this Request on the grounds that it improperly calls for a legal
conclusion. Whether and how Plaintiffs' conduct would give rise to liability under K.S.A. §§ 47-
1825 to 47-1828, additionally enforced through K.S.A. § 21-6604 (hereafter, the "Kansas Ag-Gag
law"), is a question of the application of the statute, not the proper subject of a Request for
Admission. Subject to and without waiving the foregoing objection, Plaintiffs deny this request.
As explained in Plaintiffs' Response to Defendants' Interrogatory No. 5, Plaintiff ALDF directs
undercover investigations. Its agents engage in activities, such as entering animal facilities (at
ALDF's request), that would or could run afoul of the Kansas Ag-Gag law, if ALDF were to
engage in those activities in Kansas. Furthermore, the Kansas Ag-Gag law specifically
contemplates criminal liability for organizations as well as individuals, as it may be enforced
against any "person" who violates the Act and defines person to include "any individual, state
agency, corporation, association, nonprofit corporation, joint stock company, firm, trust,
partnership, two or more persons having a joint or common interest or other legal entity."  In
addition, it is within the State of Kansas's power to interpret and enforce these provisions of the
Ag-Gag law, and to that extent the Plaintiffs lack knowledge about how Kansas will choose to
enforce the law.  For these reasons, ALDF has not pursued such an investigation in Kansas, out of
reasonable fear of prosecution under the state's Ag-Gag law.

6. None of the Plaintiffs intend to or have plans to cause physical or tangible damage to
   any "animal facility," "animal," "research facility," or "field crop product that is

grown in the context of a product development program" as the quoted terms are used in the KFAFCRF [this excludes damage to reputation, goodwill, lost profits and other intangible damages].

Plaintiffs object to this Request on the grounds that the phrases "tangible damage" and "intangible damages" are vague and ambiguous; even purely economic harms may be considered "tangible" in the sense that they are specific and quantifiable. For this reason, Plaintiffs state that the following response specifically incorporates, and is given in reliance on, the definition of "tangible" and distinction with "intangible" damage provided by counsel for Defendants via email on April 4, 2019: "Tangible is intended to have its common meaning: touchable, palpable, tactile, material, physical, real, substantial, corporeal, solid or concrete. For example, tangible damage includes the taking of property from its owner, even if the property is not physically damaged. By contrast, lost profits or loss of good will are not a 'tangible' damage…[The] request is intended to narrow the allegations in the suit to clarify that plaintiffs' concern is reasonably expected reputational damage <u>alone</u> by their activities (perhaps resulting in lost profit or diminished consumer/customer goodwill) is sufficient basis for assertion (or reasonable worry) that the intended undercover operations satisfy the specific intent element ("intent to damage enterprise") in the KFAFCRF." Subject to this clarification, without waiving the foregoing objection, Plaintiffs admit this request.

7. None of the Plaintiffs intend or have plans, nor would they, to intentionally violate a criminal law in Kansas; and they have stated the same in their Complaint, ¶ 81, filed in this litigation.

    __X_ Admitted

    ____ Denied

8. The undercover investigations described in the Complaint would not violate 18 U.S.C.A. § 43.

    __X_ Admitted

    ____ Denied

9. ALDF is not presently being charged with or prosecuted for violation (actual or alleged) of the provisions of the KFAFCRF.

    __X_ Admitted

    ____ Denied

10. ALDF has never been charged with or prosecuted for violation (actual or alleged) of the provisions of the KFAFCRF.

    __X_ Admitted

    ____ Denied

11. ALDF has never been threatened with charge(s) or prosecution for violation (actual or alleged) of the provisions of the KFAFCRF.

    __X_ Admitted

    ____ Denied

12. CFS does not allege that it, its employees or agents will engage in any of the conduct which ALDF has asserted in the Complaint would violate or may violate the KFAFCRF.

    __X_ Admitted

    ____ Denied

13. Shy does not allege that it, its employees or agents will engage in any of the conduct which ALDF has asserted in the Complaint would violate or may violate the

KFAFCRF.

    __X_ Admitted

    _____ Denied

14. Hope does not allege that it, its employees or agents will engage in any of the conduct

    which ALDF has asserted in the Complaint would violate or may violate the

    KFAFCRF.

    __X_ Admitted

    _____ Denied

15. Plaintiffs do not seek damages or any remedy at law from the Defendants in this

    litigation.

    __X_ Admitted

    _____ Denied

16. Governor Laura Kelly and Attorney General Derek Schmidt are sued solely in their

    official capacities in this litigation.

    __X_ Admitted

    _____ Denied

17. Neither Governor Laura Kelly, nor Attorney General Derek Schmidt, in their official

    capacities, can bring an action to recover damages under K.S.A. 2018 Supp. § 47-

    1828.

Plaintiffs object to this Request on the grounds that it improperly calls for a legal

conclusion. Whether Defendants, in their official capacities, could bring an action under K.S.A. §

47-1828 is a question of the application of the statute and the Defendants' legal authority, not the

proper subject of a Request for Admission. Subject to and without waiving the foregoing objection,

**Attachment B 00107**

Plaintiffs state that they have identified no non-privileged, non-attorney work product information that would allow them to admit or deny this request.

18. Neither Governor Laura Kelly, nor Attorney General Derek Schmidt, in their official capacities, can prohibit a person who has been damaged by reason of a violation of the KFAFCRF from bring an action to recover damages under K.S.A. 2018 Supp. § 47-1828.

Plaintiffs object to this Request on the grounds that it improperly calls for a legal conclusion. The scope of Defendants' authority to enforce the Kansas Ag-Gag statute is a question of the application of the statute and their legal authority, not the proper subject of a Request for Admission. Subject to and without waiving the foregoing objection, Plaintiffs deny this request. If Defendant Derek Schmidt, in his official capacity as Attorney General of Kansas, were to issue an official Attorney General Opinion that included an authoritative construction of certain sections of the Kansas Ag-Gag law, as described in Plaintiffs' Partial Settlement Proposal, stating the precise circumstances under which the law could and could not be applied (and expressly superseding any overlapping or inconsistent parts of Attorney General Opinion No. 90-72 (1990)), this would have the practical effect of prohibiting a person who has been damaged by reason of a violation of the Ag-Gag law from bringing an action to recover damages under K.S.A. § 47-1828 if that action was predicated on an impermissible construction of the Ag-Gag statute, according to the official Attorney General Opinion.

19. The Kansas attorney general has no authority to conduct an action for recovery of damages under K.S.A. 2018 Supp. § 47-1828.[1]

---

[1] *See Dreyer v. Siler*, 180 Kan. 765, 308 P.2d 12 (1957).

Plaintiffs object to this Request on the grounds that it improperly calls for a legal conclusion. The Kansas attorney general's authority to conduct an action for recovery of damages under K.S.A. § 47-1828 is a question of law, not the proper subject of a Request for Admission. Subject to and without waiving the foregoing objection, Plaintiffs state that they have identified no non-privileged, non-attorney work product information that would allow them to admit or deny this request.

20. Governor Laura Kelly, in her official capacity, has generalized responsibility to enforce state law, but no specific obligation or right to enforce or supervise the enforcement of the terms of the KFAFCRF.

Plaintiffs object to this Request on the grounds that it improperly calls for a legal conclusion. Governor Kelly's obligation or right to enforce or supervise the enforcement of the Kansas Ag-Gag law is a question of law, not the proper subject of a Request for Admission. Subject to and without waiving the foregoing objection, Plaintiffs state that they have identified no non-privileged, non-attorney work product information that would allow them to admit or deny this request.

21. The documents produced by the defendants bates stamped AG000055 to AG000381 are true and accurate copies of the minutes of the Kansas legislature's committee hearings and attachments to the minutes concerning the KFAFCRF as it was initially considered by the legislature or subsequently amended.

Plaintiffs object to this Request on the grounds that the information necessary to answer it lies in the sole possession of Defendants, and is unknown to Plaintiffs. While Plaintiffs possess no information suggesting that the documents produced by the Defendants bates stamped AG000055 to AG000381 are anything other than what Defendants claim them to be, having no personal

knowledge of these facts, Plaintiffs can neither admit nor deny anything regarding the nature of the documents.

22. The documents produced by the defendants bates stamped AG000055 to AG000381 are "public records" within the meaning of that phrase in Fed. R. Evid. 803(8) [This does not ask for an admission concerning the admissibility of any hearsay within hearsay, see Fed. R. Evid. 805.]

Plaintiffs object to this Request on the grounds that it improperly calls for a legal conclusion. Whether the documents constitute "public records" under FRE 803(8) is a question of the application of the statute to the particular documents. Plaintiffs further object to this Request on the grounds that information about the nature of the documents lies in the sole possession of Defendants, and is unknown to Plaintiffs. Thus, Plaintiffs can neither admit nor deny anything regarding the nature of the documents.

23. The documents produced by the defendants bates stamped AG000055 to AG000381 are sufficiently authenticated by Plaintiffs' response to the previous requests for admission such that they may be accepted into evidence at trial and considered in connection with any motion for summary judgment, subject only to exclusion for non-foundational objections like irrelevance, immateriality, multiple hearsay.

Plaintiffs object to this Request on the grounds that the information necessary to answer it lies in the sole possession of Defendants. Subject to and without waiving the foregoing objection, Plaintiffs deny this request. As stated in their responses to Requests Nos. 21 and 22, having no personal knowledge of the documents produced by the Defendants and bates stamped AG000055 to AG000381, Plaintiffs cannot authenticate those documents.

**Dated**:  April 22, 2019

_/s/ Michael D. Moss_____
Michael D. Moss, KS Bar #22624
Foley & Mansfield, P.L.L.P.
8575 W. 110th Street, Suite 306
Overland Park, KS 66210
913-232-8767
913-800-7238 (fax)
mmoss@foleymansfield.com

_/s/ Alan K. Chen_____
Alan K. Chen (*Pro Hac Vice*)
University of Denver Sturm College of Law
(for identification only)
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6283
achen@law.du.edu

*Counsel for Plaintiffs*

**Attachment B 00111**

November 29, 2018

Justin Marceau                                    Animal Legal Defense Fund
University of Denver                              525 East Cotati Avenue
Sturm College of Law                             Cotati, CA 94931
2255 E. Evans Avenue                             (707) 795-2533
Denver, CO 80208
(303) 871-6449
jmarceau@law.du.edu

Alan Chen
University of Denver
Sturm College of Law
2255 E. Evans Avenue Denver, CO 80208
(303) 871-6283
achen@law.du.edu

Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(323) 696-2299
matthew@matthewstrugar.com

## CLIENT ENGAGEMENT AGREEMENT FOR LEGAL REPRESENTATION

### SCOPE OF REPRESENTATION

1.  The Animal Legal Defense Fund ("ALDF") hereby engages Justin Marceau, Alan Chen, and the Law Office of Matthew Strugar to represent it in a lawsuit challenging Kansas's "Ag-gag" law, Kansas Statutes Annotated Chapter 47-1827. Justin Marceau, Alan Chen, and the Law Office of Matthew Strugar ("Strugar") are referred to below as "Counsel." The parties to this retainer agreement are referred to below as the "Parties."

2.  In addition to Counsel's representation of ALDF, ALDF and its co-plaintiffs in this matter, Center for Food Safety ("CFS"), Shy 38, Inc. ("Shy 38"), and Hope Sanctuary ("Hope")

1

(collectively, the "Clients"), are being jointly represented by: ALDF; Strugar; Public Justice ("PJ"); CFS; and Foley & Mansfield ("Foley") (collectively, the "Firms").   That joint representation is the subject of a separate Joint Representation Agreement (Exhibit A). The present engagement agreement between the Parties is consistent with and incorporates terms of the Joint Representation Agreement as specified further below.

3.   ALDF understands that this engagement applies only to proceedings before the U.S. District Court for the District of Kansas, and that Counsel has no obligation to represent ALDF in any subsequent stages of this matter, or in any other legal matter. If an appeal or other subsequent proceedings become necessary, the Parties will discuss whether and on what terms any of Counsel may represent ALDF. If any such services are performed in the absence of a subsequent agreement, but with ALDF's express or implied consent, the terms of this agreement shall continue in effect.

**FEES, COSTS, AND OTHER CHARGES**

4.   In consideration for their representation of ALDF in its challenge to Kansas's Ag-gag statute, ALDF will compensate Counsel at a rate of $150/hour each.

5.   ALDF understands that it alone will be responsible for any fees or costs awarded to the opposing parties, if it misstated or failed to disclose facts to Counsel, and the court award is based upon those misstated or undisclosed facts. ALDF further understands that it alone will be responsible for any fines, penalties, sanctions, or damages imposed by the court because of its failure to appear at a deposition or comply with a court order, or because of a factual misrepresentation on its part.

2

6.   In the event that the court requires the defendant(s) to pay attorneys' fees and costs, ALDF agrees that any such court award of fees and/or costs shall be paid in full directly to the Firms, as agreed among them and as specified in the attached Co-Counsel Agreement (Exhibit B). As noted therein, after recovery of enumerated costs by the Firms, but before recovery of other un-enumerated costs, ALDF will recover the costs paid to Counsel in connection with this Agreement.

7.   After recovery of enumerated and unenumerated costs, Counsel may, together with the other Firms, each recover fees from the fee award or from the fee portion of a settlement agreement in direct proportion to each's lodestar amount based on hours expended at the standard or nominal hourly rates of the attorneys who performed the work. Counsel will subtract from each's lodestar the sum each has already been paid pursuant to this Agreement.

8.   The Parties hereby incorporate and adopt the remaining provisions of the Joint Representation Agreement as to Fees, Costs, and Other Charges (paragraphs 4 to 7).

## CONFIDENTIALITY

9.   The Parties hereby incorporate and adopt paragraph 8 of the Joint Representation Agreement as to Confidentiality.

## POTENTIAL CONFLICTS OF INTEREST

10. The Parties have informed their fellow Firms and Clients as to the existence and material terms of this engagement agreement, and obtained each Client's informed consent to it.

11. ALDF further recognizes that Counsel represent many other clients and it is possible that some of their current or future clients may have disputes or transactions with ALDF. ALDF

acknowledges that, because of the limited nature of Counsel's engagement, Counsel each wish to remain free to undertake matters for other clients in the future.

12. In particular, ALDF agrees that Counsel may accept future matters during the course of this engagement and after the end of their representation of ALDF. First, ALDF acknowledges that Counsel may accept other unrelated matters from parties opposed to it in this engagement, provided that the new matter is not substantially related to the work that they have done or are doing for ALDF. Second, Counsel would be permitted to accept future matters, potentially adverse in interest to ALDF, provided that those matters are not substantially related to the work that they have done or are doing for ALDF.

**PUBLICITY**

13. The Parties hereby incorporate and adopt the provisions of the Joint Representation Agreement as to Publicity (paragraphs 21 to 26).

**ALDF'S RESPONSIBILITIES**

14. The Parties hereby incorporate and adopt the provisions of the Joint Representation Agreement as to the parties' responsibilities as plaintiffs (paragraphs 27 and 28).

**DISCOVERY AND LITIGATION HOLDS**

15. The Parties hereby incorporate and adopt the provisions of the Joint Representation Agreement as to discovery and litigation holds (paragraphs 31 to 33).

**TERMINATION**

4

16. The Parties hereby incorporate and adopt the provisions of the Joint Representation Agreement as to termination (paragraphs 34 and 35).

## RESOLUTION OF DISPUTES

17. In the event of any dispute between or among the Parties, including but not limited to costs and fees disputes, they will meet and confer in a good faith effort to resolve the dispute through negotiation.  If they are unable to resolve the dispute by themselves, the Parties agree to attempt to resolve their dispute through a mediator and/or another mutually agreeable alternative dispute resolution procedure, with the costs of such alternative dispute resolution procedure to be divided equally between the disputing parties. The Parties do not waive their right to sue over a dispute, but agree to participate first in an alternative dispute resolution procedure in a good faith effort to avoid litigation.

Dated: _Nov. 29, 2018_____          _____

Matthew Liebman
Animal Legal Defense Fund

Dated: _____          _____

Justin Marceau

Dated: _____          _____

Alan Chen

5

Dated: Nov 30 2018

Matthew Strugar
LAW OFFICE OF MATTHEW STRUGAR

## EXHIBIT A

## CLIENT ENGAGEMENT AGREEMENT FOR LEGAL REPRESENTATION

Name(s): _____

Address: _____

_____

Telephone Number: _____

Email: _____


## SCOPE OF REPRESENTATION

1.      I, NAME, on behalf of ORGANIZATION, hereby engage the Animal Legal Defense Fund ("ALDF"); the Law Office of Matthew Strugar ("Strugar"); Public Justice ("PJ"); Center for Food Safety ("CFS"); and Foley & Mansfield ("Foley") to represent me in a lawsuit challenging Kansas's "Ag-gag" law, Kansas Statutes Annotated Chapter 47-1827. ALDF, Strugar, PJ, CFS, and Foley are referred to below as the "Firms," and the attorneys assigned by each of the Firms from time to time to work on my case are referred to below, altogether, as "my lawyers." I recognize that I am one of several clients ("clients") who will jointly be represented by my lawyers.

2.      I understand that this engagement applies only to proceedings before the U.S. District Court for the District of Kansas. I also understand that none of the Firms has any obligation to represent me in any subsequent stages of this matter, or in any other legal matter. If an appeal or other subsequent proceedings become necessary, I understand that I will discuss with my lawyers whether and on what terms any of the Firms may represent me. If any such services are

performed in the absence of a subsequent agreement, but with my express or implied consent, the terms of this agreement shall continue in effect.

**FEES, COSTS, AND OTHER CHARGES**

3.        Except as follows and as described in ALDF's separate engagement agreement with Justin Marceau, Alan Chen, and Matthew Strugar, the services of my lawyers and the litigation expenses associated with my lawsuit will be provided free of charge to me. I understand that I alone will be responsible for any fees or costs awarded to the opposing parties if I misstated or failed to disclose facts to my lawyers, and the court award is based upon those misstated or undisclosed facts. I further understand that I alone will be responsible for any fines, penalties, sanctions, or damages imposed by the court because of my failure to appear at a deposition or comply with a court order, or because of a factual misrepresentation on my part.

4.        If my case is successful, the court may require the defendant(s) to pay attorneys' fees and costs. I agree that any such court award of fees and/or costs shall be paid in full directly to the Firms, as agreed among them. I have reviewed the attached Co-Counsel Agreement (Exhibit A) and agree that any award of attorney fees and costs will be allocated according to its terms, and as specified herein.

5.        If, as part of a settlement or consent decree, the defendant(s) agree(s) to pay attorneys' fees and/or costs, I agree that the amount of the settlement or consent decree allocated for fees and/or costs shall be paid in full directly to the Firms, as agreed among them. In addition, if there is a judgment for damages against the defendants, or if there is a monetary settlement in this case, regardless of whether the settlement makes any separate provision for the payment of attorneys' fees or costs, I agree that the full amount of the judgment or settlement shall be paid initially to the Firms on this case, which shall be paid from that judgment or settlement an amount

equal to any unreimbursed costs and attorney's fees, as specified in the Co-Counsel Agreement (Exhibit A). Any net proceeds after such cost and fee recovery shall be paid to the clients in equal share.

6.      I understand that, under current law, defendants in civil rights actions are permitted under some circumstances to condition a settlement offer to me upon the waiver of the right to attorneys' fees and costs. I further understand that it is the duty of my lawyers to convey any settlement offer to me and that it is ultimately my decision whether to accept or reject a settlement offer, even if it includes a fee waiver. In the event that a settlement offer including a fee waiver is presented to me, however, I agree that I will consult with my lawyers prior to accepting or rejecting such offer.

7.      I understand that a formal Offer of Judgment may be made by the defendant(s) at some point in the litigation. In the event that my lawyers recommend that I accept such Offer of Judgment, and I nevertheless reject the Offer of Judgment, I understand and agree that any or all of the Firms may withdraw from the case, subject to court approval. If the Offer is rejected, and I ultimately recover less than the Offer, there is a possibility that the court may order me to pay the post-offer costs of the defendant(s). I understand and agree I alone am responsible for paying such costs, even if my lawyers have continued to represent me despite my decision to reject the Offer of Judgment against their advice.

**CONFIDENTIALITY**

8.      I understand that my lawyers may consult with other staff at their respective Firms, and with various experts in the field who may assist my lawyers in the litigation of my case. I authorize my lawyers to consult with such persons, subject to my lawyers' discretion as to my best interests including the confidentiality of information regarding my case, and to divulge to such

9

persons any privileged information that my lawyers deem necessary and appropriate to divulge under the circumstances.

## POTENTIAL DISAGREEMENTS AMONG CLIENTS

9.      I recognize that I am currently one of several clients who will be jointly represented by my lawyers in this matter. My lawyers have also informed me that they may ultimately represent additional clients in this case. However, my lawyers will not agree to represent any such additional clients without my express written consent.

10.     I have been advised that joint representation in this case can have substantial benefits for me, particularly insofar as it enables me to be represented in an economical manner by experienced counsel with particular expertise on the constitutional and civil rights questions that are raised, and because the overall likelihood of success in this case is increased by joining with other similarly situated individuals.

11.     I understand that when a lawyer represents more than one person in the same case, it presents the potential for a conflict of interest. My lawyers have informed me that, at the present time, they are aware of no actual conflict of interest between me and the other clients.

12.     I nevertheless understand that it is possible that conflicts of interest may arise in the future between me and any other clients that my lawyers represent in this case. Those potential conflicts of interest are explained below. My lawyers have informed me that should they identify others, they will inform me of them promptly and allow me to reconsider this consent. Based on the disclosure of those potential conflicts of interest, I agree that my lawyers may represent the other clients and me in this case.

13.     My lawyers have explained to me that one of the conflicts of interest that can arise when lawyers represent more than one client in a case is that differences of opinion may arise

among the clients on issues of strategy or tactics or on particular positions to be taken. In addition, it is possible that the defendant in this case may make a proposed settlement offer that is contingent upon all of us agreeing to accept the terms of the settlement offer. I agree to give careful consideration to the views of the other clients and to the advice of my lawyers on any such matters, and to attempt in good faith to reach a consensus with the other clients on any such issues, understanding that each of the other clients has agreed to make identical good faith efforts to reach a consensus. I also understand that I am encouraged to obtain independent legal advice in deciding what to do.

14.     In the event an actual conflict of interest does arise, my lawyers agree to inform me promptly of that conflict. I agree that, should such an actual conflict arise, and if my lawyers conclude that they cannot continue the joint representation, my lawyers have my permission to withdraw from their representation of me and to continue to represent the other client or clients in this case. I understand that, in that event, I will have to retain other lawyers or will have to represent myself if I wish to continue as a party in this matter and that any new lawyers would be required to become acquainted with the case in a shorter period of time than that enjoyed by the other lawyers in the case. Should that situation arise, my lawyers will cooperate with me and with any new attorney I may appoint in order to help minimize any disruption resulting from the change in how I am represented. I also agree not to assert any conflict of interest or to seek to disqualify my lawyers on that or any other basis, even though an adverse relationship may develop between me and the other clients.

15.     I understand that, in performing legal services for more than one client in a case, lawyers may receive confidential information from each client. I also understand that, while my communications with my lawyers are subject to the attorney-client privilege in the context of any

11

claims by third parties, any communications between me and my lawyers are not privileged in the context of a dispute among or between the clients represented by my lawyers in this case. I further understand that information I provide that is relevant to the case may be shared with the other clients. I agree that I will not take the position that the fact that my lawyers have received confidential information from me is a basis for disqualifying any of my lawyers or their respective Firms from representing the other client or clients in this case. I also agree that, should my lawyers withdraw from representing me and continue to represent one or more of the other clients, my lawyers and their respective Firms will be free to take positions adverse to me.

16.     I also understand that if an actual conflict develops between me and another client or clients, my lawyers may not be able to continue representing any of the clients unless all of them consent to our continued representation. For example, if it turns out that one of us has an actual conflict, my lawyers may not be able to continue representing the other clients unless all consent.

17.     My lawyers have informed me that I should feel free to seek independent legal counsel at any time for any purpose, including, but not limited to, with respect to this agreement. I understand that I am also free to seek independent legal counsel on the subject of any potential conflicts of interest which I believe may exist at any time. I acknowledge that I have had the opportunity to speak with independent counsel concerning the possibility of any conflicts that may affect my lawyers' joint representation of the other clients and me as well as the various confirmations, agreements and waivers stated herein.

## POTENTIAL CONFLICTS OF INTEREST WITH OTHER CLIENTS OF THE FIRMS

18.     I further recognize that my lawyers and their Firms represent many other clients and it is possible that some of their current or future clients may have disputes or transactions

12

with me. While the Firms will not represent any other party in this matter, or any other matter substantially related to it, without first obtaining my informed consent, I also recognize that my lawyers do represent the interests of their respective Firms. I consent to that representation and further acknowledge that, because of the limited nature of my lawyers' pro bono engagement for me, they wish to remain free to undertake matters for other clients in the future.

19.     In particular, I agree that the Firms may accept future matters during the course of this engagement and after the end of their representation of me. First, I acknowledge that the Firms may accept other unrelated matters from parties opposed to me in this engagement, provided that the new matter is not substantially related to the work that they have done or are doing for me. Where appropriate, to protect confidences of both sides, the Firms will establish an ethical wall which prohibits my lawyers from working for an opposing party.

20.     Second, the Firms would be permitted to accept future matters, potentially adverse in interest to me, provided that those matters are not substantially related to the work that they have done or are doing for me. Again, where appropriate, the Firms would establish an appropriate screen.

**PUBLICITY**

21.     I authorize the Firms to use my name(s) and any non-privileged information to publicize my case in any manner they deem to be in my interest and in the interest of educating the public about civil liberties and civil rights.

22.     To announce significant developments in the Litigation, I acknowledge that the Firms and my co-clients and I will engage the media through press releases and other statements. ALDF's Communications department will take the lead in drafting the press release(s) for the media.

13

23.     As per best practices for press releases, no more than two quotes will be included in any press release. Releases will be circulated to the Firms for fact-checking and substantive edits. ALDF will give final approval of the press release and will send the final press release to the Firms for posting on their and our respective websites, if they or we so desire.

24.     I acknowledge that I am welcome to insert a quote from my organization prior to posting the final press release. To ensure consistent messaging, however, I agree not to change the substantive content of any press release after it has been approved.

25.     I acknowledge that ALDF's Communications team will handle all press outreach to the media. To avoid "double-pitching" of the news media, I agree not to send the press release to any outlets without prior communication with ALDF. If I or my organization has a particularly strong relationship with a reporter or editor, I will inform ALDF in order to coordinate an outreach strategy.

26.     ALDF's Communications department will make every effort to ensure that I am provided with an opportunity to be interviewed by the press, if I so desire. I will provide ALDF with the name and contact information of a media contact for inclusion on press releases.

## MY RESPONSIBILITIES

27.     My lawyers shall take reasonable steps to keep me informed of work progress and to respond to my inquiries. I agree to provide my lawyers with a full and accurate statement of all relevant facts and to keep my lawyers informed of any developments relating to my case. I will be truthful with my lawyers, cooperate with them, and keep them informed of my address, telephone

14

numbers and email address. I will make myself reasonably available to consult with them at their request. I will also appear at any court appearances, depositions, hearings or other occasions at which my presence is requested by my lawyers. I will assist my lawyers in identifying potential witnesses for my claims. If I do not inform my lawyers of my whereabouts, if I do not keep in communication with them, or if I otherwise do not uphold my responsibilities as set forth in this agreement, I understand that any or all of the Firms may withdraw from representing me. I agree not to communicate with the Court, with other parties to the case or potential parties to the case, or their lawyers, without my lawyers' prior consent.

28.     I understand that communications about this case between myself and my lawyers are typically subject to attorney-client privilege, and that disclosing such communications to anyone else can result in a waiver of privilege and mean that I may be compelled to disclose those and other communications to the defendants in the case we are about to bring. In order to avoid such forced disclosure to our opponents, I agree not to disclose any communications with my lawyers to third parties or to consent to such disclosures, unless otherwise directed by my lawyers.

## DISCOVERY AND LITIGATION HOLDS

29.     I understand that in order to protect my own interests, and to allow my lawyers to represent me effectively, I must preserve all evidence relevant to this matter and in my possession. In particular, I am aware that the defendant(s) in this lawsuit may ask me to testify or produce documents that are relevant to resolving issues in the suit. In this case, such requests are likely

include information relating to my activities related to investigation of, or advocacy related to, agricultural, animal, or farm facilities or practices in Kansas.

30.     I understand that this "litigation hold"—the requirement that I preserve all relevant evidence—covers all documents broadly related to my lawsuit, including electronic and paper documents, emails, voicemail messages, social media posts, photographs, audio and video recordings, diaries, logs, agenda, or any other type of document from any sources including desktop computers, laptop computers, smart phones, and other electronic devices.

31.     I understand that the litigation hold covers documents and other materials dated from the earliest date I became involved in the investigation which led (or will lead) to the lawsuit. I further understand that my obligation to preserve is ongoing and remains throughout the pendency of the lawsuit for all relevant documents now in existence or that may be created.

32.     If I have not already, I will immediately suspend any routine or automated document destruction or data deletion procedures, or any data conversion efforts, currently in effect for covered documents.  I will also discuss the litigation hold with anyone who works or worked with me, for me or assisted me on this matter, regardless of whether or not they are currently named as parties to this action, to ensure that they also preserve all relevant documents and materials.  In particular, I will discuss the litigation hold with all custodians of records, information technology staff, and all other persons within my organization with the ability to take steps to ensure that all covered documents and other materials are segregated and preserved in their original format and in their entirety.

16

33.     Finally, if I have reason to believe that any documents or other materials that should be covered by the hold have been destroyed or otherwise lost or misplaced, I will notify my lawyers immediately.

## TERMINATION

34.     Any or all of the Firms may seek to terminate their involvement in my case (subject to court approval) if (a) my case becomes clearly frivolous, unreasonable or groundless; (b) the representation of my interests requires taking an anti-civil liberties position; (c) the facts of my case are found to be materially and significantly different than I have stated them; (d) I reject an Offer of Judgment after my lawyers recommend that I accept it; (e) I do not inform my lawyers of my whereabouts, or if I do not keep in communication with them; (f) in case of a disagreement among the clients, as set forth above; or (g) it is otherwise allowed by law, the rules of court, or it becomes legally or ethically proper for my lawyers to do so under the applicable rules of professional conduct.

35.     I also understand that I am free at any time to discharge any or all of the Firms from representing me (subject to court approval). However, if I choose to discharge any Firm, that Firm is not under any obligation to find a replacement or to continue representing me.

## ENTIRE AGREEMENT

36.     Except as specified in ALDF's agreement with Justin Marceau, Alan Chen, and Matthew Strugar, this Agreement constitutes the entire contract for legal services between me and the Firms.

17

## RESOLUTION OF DISPUTES

37.      In the event of any dispute between or among the Firms and me, including but not limited to costs and fees disputes, I will meet and confer with the disputing Firm(s) in a good faith effort to resolve the dispute through negotiation.  If we are unable to resolve the dispute by ourselves, we will attempt to resolve the dispute through a mediator and/or another mutually agreeable alternative dispute resolution procedure, with the costs of such alternative dispute resolution procedure to be divided equally between the disputing parties. The Firms and I do not waive our right to sue over a dispute, but agree to participate first in an alternative dispute resolution procedure in a good faith effort to avoid litigation.


By signing below, the Firms and I agree to all of the terms of this agreement.


CLIENT ORGANIZATION


Dated: _____          _____

Name


ANIMAL LEGAL DEFENSE FUND


Dated: _____          _____

18

Matthew Liebman


LAW OFFICE OF MATTHEW STRUGAR


Dated: _____          _____

Matthew Strugar


PUBLIC JUSTICE


Dated: _____          _____

David Muraskin


CENTER FOR FOOD SAFETY


Dated: _____          _____

Rebecca Spector


19

**EXHIBIT B**

**CO-COUNSEL AGREEMENT**

This co-counsel agreement (the "Agreement") is entered into on this _____ day of

_____, 2018, by the Animal Legal Defense Fund ("ALDF"), Justin Marceau, Alan Chen,

the Law Office of Matthew Strugar, Public Justice ("PJ"), Center for Food Safety ("CFS"), and

Foley & Mansfield ("Foley") (the "Parties"). This Agreement and its terms are privileged and

confidential, except as to the clients who are the subject of this representation. The Parties

hereby agree as follows:

I.     MATTER AND REPRESENTATIONS INVOLVED

The Parties will serve as co-counsel to ALDF, CFS, Shy 38, Inc., and Hope Sanctuary

("Clients"), for the purpose of invalidating Kansas's "Ag-gag" law, Kansas Statutes Annotated

Chapter 47-1827 (the "Litigation").

The Clients in this matter have entered, or are anticipated will enter, agreements for legal

representation using a single form (the "Client Engagement Agreement").  This Agreement is

subject to the terms and conditions of the Client Engagement Agreement.   Any of the Parties

may enter into additional agreements with one or more of the Clients in this matter, provided that

(i) the other Parties are notified, in advance, of the substantive terms of any such agreements, and

(ii) no provision of any such agreement will serve to limit or impair any Client's rights or

interests as established in the Client Engagement Agreement. The Parties acknowledge that

20

ALDF has separately entered into an agreement for representation by Justin Marceau, Alan Chen, and the Law Office of Matthew Strugar, an agreement about which the Parties and Clients have been informed and to which they consent.

## II.   INTERESTS, COOPERATION, AND PRIVILEGE

The Parties and their Clients have common interests in litigating against a common adversary (or adversaries) on the same or similar issues, have an interest in sharing their work product and the fruit of their trial preparation efforts, and have no intention of disclosing their work product and the fruit of their trial preparation efforts to the common adversary or adversaries.

To the extent consistent with their ethical duties to their Clients, the Parties agree to work cooperatively in preparing, filing, and prosecuting the Litigation. To the extent appropriate and consistent with the best interests of the Clients, the Parties agree to share with each other work product and other documents of particular significance to the issues in the Litigation.

The Parties agree that they will abide by all applicable professional and ethical responsibilities throughout the course of the Litigation.

Given the overlapping and common interests of the Parties in pursuing the Litigation, it is their intent and understanding that all written and oral communications among and between them regarding the Litigation are covered by the attorney work-product, joint prosecution, common interest, and attorney-client privileges.

21

III.   DECISIONMAKING AND CO-COUNSEL FUNCTIONS

    A.    The Parties will refer to each other as "co-counsel" with respect to this matter. All documents that pertain to this matter that are submitted to courts on behalf of the Client(s) will list Foley and the lawyers associated with the Parties as co-counsel.

    B.    The Parties agree to share primary control over the representation of the Client(s) and will endeavor to make all significant procedural and substantive decisions by consensus.

    C.    While all Parties will share in the work of the Litigation, Foley will also serve as the local counsel for out-of-state parties, responsible for ensuring that all documents filed in the case are properly formatted and filed in accordance with applicable local rules. All parties understand and agree to adhere to the Kansas Rules of Professional Conduct and the requirements of local counsel to fully and actively participate in proceedings as laid out in Kansas Supreme Court Rule 116.

    D.    Except where impossible, each Party will notify the others promptly of all significant developments and consult in advance about any significant decisions attendant to those developments. The Parties agree to work diligently to see to it that all others are fully informed at all times about the status of the case and the courses of action that are being followed.

22

E.     In particular, drafts of all papers that may be filed with the court will be circulated among the Parties for comment within a reasonable time period in advance of filing. Significant meetings or discussions with the opposing party(s) or others will be discussed in advance among the Parties. The Parties agree that Foley will serve as primary contact with opposing counsel. Taking the lead in communications with opposing counsel and serving as primary contact is intended to facilitate the ease of those communications, but does not change the shared nature and consensus seeking decision-making process of the Parties.

F.     The Parties are authorized to perform matters ancillary to the representation of the Client(s) without obtaining the prior signature or permission of the others. Briefs, motions, and other formal legal documents submitted to courts or administrative tribunals or agencies on behalf of the Client(s) are not ancillary.

IV.  PRESS AND PUBLICITY

A.     To announce significant developments in the Litigation, the Parties agree that they will engage the media through press releases and other statements. ALDF's Communications department will take the lead in drafting the press release(s) for the media.

B.     As per best practices for press releases, no more than two quotes will be included in any press release. Releases will be circulated to the Parties for fact-checking

23

and substantive edits. ALDF will give final approval of the press release and will send the final press release to the Parties for posting on their websites, if they so desire.

C.    The Parties are welcome to insert a quote from their organization prior to posting the final press release. To ensure consistent messaging, however, the Parties agree not to change the substantive content of any press release after it has been approved.

D.    ALDF's Communications team will handle all press outreach to the media. To avoid "double-pitching" of the news media the Parties agree not to send the press release to any outlets without prior communication with ALDF. If any Party has a particularly strong relationship with a reporter or editor, it will inform ALDF in order to coordinate an outreach strategy.

E.    ALDF's Communications department will make every effort to ensure all Parties are provided with an opportunity to be interviewed by the press, if they so desire. The Parties will provide ALDF with the name and contact information of a media contact for inclusion on press releases.

V.    ALLOCATION AND RECOVERY OF COSTS AND FEES

Any recovery of fees or costs, whether through a court-ordered award or through settlement, shall first be allocated to cover "enumerated costs." "Enumerated costs" mean the following out-of-pocket costs related to the litigation:  filing fees, transcript costs, deposition

fees, and expert witness fees. The Parties, excluding PJ and Foley, agree to share the enumerated costs in equal share.  The Parties will consult each other before significant enumerated costs are undertaken.

Enumerated costs do not include, and the Parties will not reimburse each other for, hourly payments to retained counsel, travel expenses, computer-based research, or in-house expenses such as staff overtime, per-page charges for photocopying or faxing, or telephone charges.

After recovery of enumerated costs, and after ALDF has recovered costs paid to retained counsel as described in Part I, remaining fees or costs recovered shall then be allocated to cover other costs paid by each Party separately.  If the total amount recovered as fees and costs does not cover all costs, the recovered funds shall be allocated (after enumerated costs are paid, and after ALDF has recovered costs paid to retained counsel) among the Parties in proportion to the percentage of costs other than enumerated costs paid separately by each Party.  Once all costs have been recouped, each Party shall each recover fees from the fee award or from the fee portion of a settlement agreement in direct proportion to each Party's lodestar amount based on hours expended at the standard or nominal hourly rates of the attorneys who performed the work. Parties who have been paid hourly as retained counsel during the course of the litigation will subtract the sum each has already recovered from his or her lodestar. Any net proceeds after such cost and fee recovery shall be paid to the clients in equal share.

25

The Clients shall be jointly liable for any fees or costs awarded in favor of opposing parties, except where the award is based on misconduct by a Party or one of the Clients, in which case the responsible Party or Client shall be solely liable for associated fees or costs.

VII.    AGREEMENT TERMINATION

This Agreement commences on the date first written below, and continues until the Litigation is terminated (including payment of attorney's fees and costs), or until canceled in writing, whichever date is earlier.  The termination of this Agreement, except for cause, shall in no way affect the Parties' rights to compensation as described above.

VIII.   COMPLETE INTEGRATION; AUTHORITY TO BIND

This Agreement contains the entire agreement among the Parties regarding their joint representation of the Client(s) and prosecution of the Litigation.  It shall be binding upon the Parties and their respective legal representatives and successors; each signatory below represents that he or she has the authority to bind his or her respective Party to the terms of this Agreement. This Agreement shall not be modified except by written agreement signed by representatives of all Clients and Counsel.

CLIENT

Dated: _____          _____
                                      Name


                                      Animal Legal Defense Fund

Dated: _____          _____
                                      Matthew Liebman
                                      Director of Litigation

Dated: _____          _____
                                       Justin Marceau



Dated: _____          _____
                                       Alan Chen



                                       Law Office of Matthew Strugar

Dated: _____          _____
                                       Matthew Strugar



                                       Public Justice

Dated: _____          _____
                                       David Muraskin
                                       Food Project Staff Attorney



                                       Center for Food Safety

Dated: _____          _____
                                       George Kimbrell
                                       Legal Director



                                       Foley & Mansfield

Dated: _____          _____
                                       Michael D. Moss
                                       Attorney - Of Counsel

Attachment D

| | | | Moss | Chen | Struger | Marceau | Muraski | Howell | Eberly | Anello | Regier | Barahona |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Complaint and pro hac prep. | | | 7.8 | 23.8 | 12.9 | 21 | 5.3 | 71 | | 4.8 | | |
| Settlement nego | | | 0.9 | 2.2 | 1.5 | 2.5 | 1.6 | | 3.9 | | | |
| Motion to strike | | | 1.2 | 3.2 | 1.5 | | | | | | | |
| Sched. conf with Magistrate | | | 5.1 | 10.4 | 0.7 | | | | | | | |
| Discovery | | | 15.7 | 29.2 | 7.7 | 5.5 | 3.3 | 7 | 57 | | 4 | |
| Final pretrial and order prep | | | 1.9 | 12.2 | 0.8 | | | | 11.6 | | | 6.75 |
| Motions for SJ | | | 10.1 | 64.1 | 18.3 | 2 | 4.6 | | 52.1 | | | 3.5 |
| Misc and other | | | 9.6 | 11.9 | 1.4 | | | | 5.6 | | | 4.75 |
| | totals | | 52.3 | 157 | 44.8 | 31 | 14.8 | 78 | 130.2 | 4.8 | 4 | 15 |
| Plaintiff adjustments | | | 50 | 149 | 40 | 26 | 14.8 | 70 | 130.2 | 4.8 | 4 | 15 |
| as initially provided | | | | | | | | | | | | |

1

|  |  |  |  | Totals hrs |
|---|---|---|---|---|
|  |  |  |  |  |
| Complaint and pro hac prep. |  |  |  | 146.6 |
| Settlement nego |  |  |  | 12.6 |
| Motion to strike |  |  |  | 5.9 |
|  |  |  |  |  |
| Sched. conf with Magistrate |  |  |  | 16.2 |
|  |  |  |  |  |
| Discovery |  |  |  | 129.4 |
|  |  |  |  |  |
| Final pretrial and order prep |  |  |  | 33.25 |
|  |  |  |  |  |
| Motions for SJ |  |  |  | 154.7 |
| Misc and other |  |  |  | 33.25 |
|  |  |  |  |  |
|  |  |  | Hours | 531.9 |

Stewart Gollan (Utah Bar No. 12524)
214 East Fifth South Street, Salt Lake City, UT 84103
(801) 328-9531; stewartgollan@utahlegalclinic.com

Justin Marceau (Calif. Bar No. 243479)
2255 E. Evans Avenue, Denver, CO 80208
(303) 871-6449; jmarceau@law.du.edu

Matthew Liebman (Calif. Bar No. 248861)
170 East Cotati Avenue, Cotati, CA 94931
(707) 795-2533, ext. 1028; mliebman@aldf.org

Matthew Strugar (Calif. Bar No. 232951)
2154 W. Sunset Blvd., Los Angeles, CA 90026
(323) 210-2263; matthew-s@petaf.org

(*Pro Hac Vice* applications pending)

Attorneys for Plaintiffs

---

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| **ANIMAL LEGAL DEFENSE FUND, PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, COUNTERPUNCH, AMY MEYER, WILL POTTER, DANIEL HAUFF, JAMES McWILLIAMS, JESSE FRUHWIRTH** | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **CIVIL RIGHTS COMPLAINT** |
| v. | ) ) | Judge: _____ |
| **GARY R. HERBERT**, in his official capacity as Governor of Utah; **JOHN SWALLOW**, in his official capacity as Attorney General of Utah, | ) ) ) ) ) | **CIVIL NO. _____** |
| Defendants. | ) ) | |

The non-profits Animal Legal Defense Fund and People for the Ethical Treatment of Animals, the news journal CounterPunch, local activist Amy Meyer, award-winning author and journalist Will Potter, animal investigation consultant and expert Daniel Hauff, animal agriculture scholar James McWilliams, and local freelance journalist and blogger Jesse Fruhwirth (hereinafter Plaintiffs), bring this Complaint and allege as follows:

### Introduction

1.       This lawsuit challenges Utah's "ag gag" law, Utah Code Ann. § 76-6-112 (West 2012), as unconstitutional.  The law creates the crime of "agricultural operation interference" in an effort to impair the public debate about animal welfare, food safety, and labor issues on modern industrial farms.  In essence, the law criminalizes undercover investigations and videography at slaughterhouses, factory farms, and other agricultural operations, thus "gagging" speech that is critical of industrial animal agriculture.  In doing so, the statute violates the First Amendment, the Supremacy Clause, and the Fourteenth Amendment of the United States Constitution.

2.       Since the early twentieth century, some of America's most storied journalistic endeavors have exposed inhumane and unsafe meat production facilities.  Upton Sinclair became a household name for exposing the unfair labor practices, cruelty to animals, and unsanitary conditions of meat processing plants in the early 1900s, and his exposé led to the enactment of the Federal Meat Inspection Act and the Pure Food and Drug Act.

3.       There is a long and celebrated history of journalists and activists reporting on industrial agriculture conditions so as to spur enforcement, legislative reform, and debate.  The modern day accounts of the meat, dairy, and egg industries are no less compelling than those of a

2

century ago when Sinclair wrote *The Jungle*.[1] *See, e.g.*, Timothy Pachirat, *Every Twelve Seconds* (2011).

4.      In order to silence the undercover investigations and corresponding media coverage that contribute to public debate about animal treatment and food safety, industry executives have made the enactment of factory farm-secrecy statutes, commonly known as "ag gag" laws because they gag speech that is critical of industrial agriculture, a top legislative priority.

5.      Plaintiffs bring this action to prevent the enforcement of Utah's ag gag law, Utah Code Ann. § 76-6-112,[2] which has the effect of criminalizing this historically celebrated and important form of speech.

---

[1] The type of investigations criminalized by the Utah statute, as well as the subsequent media coverage of the investigation, have led to food safety recalls, citations for environmental and labor violations, evidence of health code violations, plant closures, criminal convictions, and civil litigation.  Such investigations have resulted in thousands of news stories in the past year alone.  Recent investigations have revealed numerous instances of cruelty to animals.  For example, one investigation by Plaintiff PETA that was widely covered in the media revealed workers slamming chickens against the wall, ripping their beaks off, twisting their heads off, spitting tobacco in their eyes and mouths, spray-painting their faces, and squeezing their bodies so hard that the birds expelled feces, all while the animals were still alive. People for the Ethical Treatment of Animals, *Thousands of Chickens Tortured by KFC Supplier*, Kentucky Fried Cruelty, http://www.kentuckyfriedcruelty.com/u-pilgrimspride.asp (last visited July 21, 2013).  Another investigation by PETA revealed multiple beatings of pigs with metal rods and workers sticking clothespins into pigs' eyes and faces.  A supervisor was filmed kicking a young pig in the face, abdomen, and genitals to make her move and told the investigator, "You gotta beat on the bitch.  Make her cry."  People for the Ethical Treatment Animals, *Mother Pigs and Piglets Abused by Hormel Supplier*, https://secure.peta.org/site/Advocacy?cmd=display&page=UserAction&id=1131 (last visited July 21, 2013).  Other investigations have led to concerns about meat contamination and food safety issues more generally.

[2] The full text of the statute reads:  76-6-112. Agricultural operation interference -- Penalties.

6.    Notably, these laws criminalize efforts to document criminal behavior in a workplace.  There are federal crimes relating to food safety and animal handling, and the Utah statute unconstitutionally and unwisely prohibits efforts to bring violations of these laws to the attention of the public.

7.    Utah Code Ann. § 76-6-112 limits speech in the form of sound and image production, and it does so in a content-based manner.  The law drastically, if not entirely, limits the production and distribution of politically salient speech regarding industrial agriculture.  The practical effect of the law is to provide preferential treatment to industries at the expense of

---

(1)    As used in this section, "agricultural operation" means private property used for the production of livestock, poultry, livestock products, or poultry products.

(2)    A person is guilty of agricultural operation interference if the person:

    (a)    without consent from the owner of the agricultural operation, or the owner's agent, knowingly or intentionally records an image of, or sound from, the agricultural operation by leaving a recording device on the agricultural operation;

    (b)    obtains access to an agricultural operation under false pretenses;

    (c)

        (i)    applies for employment at an agricultural operation with the intent to record an image of, or sound from, the agricultural operation;

        (ii)    knows, at the time that the person accepts employment at the agricultural operation, that the owner of the agricultural operation prohibits the employee from recording an image of, or sound from, the agricultural operation; and

        (iii)    while employed at, and while present on, the agricultural operation, records an image of, or sound from, the agricultural operation; or

    (d)    without consent from the owner of the operation or the owner's agent, knowingly or intentionally records an image of, or sound from, an agricultural operation while the person is committing criminal trespass, as described in Section 76-6-206, on the agricultural operation.

(3)    A person who commits agricultural operation interference described in Subsection (2)(a) is guilty of a class A misdemeanor.

(4)    A person who commits agricultural operation interference described in Subsection (2)(b), (c), or (d) is guilty of a class B misdemeanor.

4

political speech.  Only one side of the debate regarding food safety, animal welfare, and labor practices is available after the enactment of the law in question in this case.

8.      Specifically, Utah Code Ann. § 76-6-112 is both facially content-based, and predicated on a viewpoint-based legislative purpose.  A law that prohibits the recording of images or sounds during certain activities—be it a political rally, or an unsafe or inhumane workplace—is content discriminatory.  Moreover, the legislative history, detailed below, leaves little doubt that the legislative purpose was to curtail a form of political speech of great public interest.

9.      The purpose and effect of the law, as set forth in detail below, are to (1) stifle political debate about modern animal agriculture by criminalizing the creation of videos or photos from within the industry made without the express consent of the industry, and (2) prevent the public and the government from learning about violations of laws and regulations designed to ensure a safe food supply and to minimize animal cruelty.

10.     Plaintiffs, as parties that conduct these investigations or rely on the investigations for their reporting and research, contribute to an important public debate about mass-produced meat, dairy, and eggs.  The rise of the internet and the increased public interest in safe and ethically produced food have fostered greater awareness of and concern with ongoing abuses by large agricultural enterprises.  The ag gag law has the effect of sheltering industries from scrutiny regarding food safety, animal welfare, and other related concerns.

11.     Moreover, the criminalization of this speech also creates significant obstacles to the enforcement and efficacy of federal laws and is therefore preempted under the Supremacy Clause.  Utah Code Ann. § 76-6-112 criminalizes whistle-blowing speech that is incentivized by

the False Claims Act and other statutory provisions protecting whistle-blowers and regulating the food industry.

12.    In addition, because the law is motivated by animus towards a politically unpopular group—animal protection advocates—it also violates the Fourteenth Amendment.

13.    In short, the Utah law infringes the rights of Plaintiffs and gives the animal agriculture industry a virtual monopoly on the most relevant and probative speech on a topic that is of vital importance to the public, thereby allowing the industry to provide a misleading account of activities in animal operations and hide violations of animal cruelty, labor, environmental, and food safety laws.  Such a sweeping prohibition on speech directly harms the Plaintiffs, both as investigators and conveyors of this information, and effectively removes an entire category of speech from the marketplace of ideas.

14.    Accordingly, Plaintiffs ask this Court for injunctive relief to preserve their right and the right of others to engage in expressive and communicative activity that is of the utmost public concern.

15.    Specifically, Plaintiffs bring this action seeking declaratory and injunctive relief to lift a chill that leads some Plaintiffs to refrain from engaging in protected speech and prevents other Plaintiffs from reporting on these events.  There is an imminent and credible threat of prosecution under statutory provisions that violate Plaintiffs' rights under the United States Constitution.    Utah Code Ann. § 76-6-112 is facially, and as applied to Plaintiffs, unconstitutional for several independent reasons:  (1) it is overbroad because it sweeps within its ambit a substantial amount of core First Amendment protected speech; (2) it discriminates on the basis of the content and viewpoint of particular speech and expressive conduct; (3) it is

preempted by federal laws; and (4) it violates the Equal Protection Clause of the Fourteenth Amendment because it lacks a rational basis and is predicated on animus.

## JURISDICTION AND VENUE

16.     This action arises under the United States Constitution and laws of the United States including 42 U.S.C. § 1983 and § 1988.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and § 1343.

17.     This Court has authority to grant the declaratory and injunctive relief herein requested pursuant to 28 U.S.C. §§ 2201, 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

18.     Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

### PLAINTIFFS

19.     Plaintiff–ANIMAL LEGAL DEFENSE FUND (ALDF) is a national non-profit animal protection organization founded in 1979 that uses education, public outreach, investigations, legislation, and litigation to protect the lives and advance the interests of animals, including those raised for food.  ALDF's work is supported by more than 110,000 members across the country, including in Utah.  ALDF promotes the humane treatment of farmed animals. ALDF and its agents have conducted undercover investigations at animal facilities around the country.  ALDF has concrete plans to conduct an investigation at an animal agricultural operation in Utah but has refrained from doing so out of a reasonable fear of criminal prosecution.  ALDF has identified potential investigation sites, contracted with a private

investigation firm licensed in Utah, obtained employment applications from agricultural operations, and engaged an expert consultant – Plaintiff Daniel Hauff – to advise it on an undercover, employment-based investigation at a factory farm.  In short, ALDF has taken every step possible to prepare for an investigation, stopping just short of violating the statute.  If the ag gag law is declared unconstitutional, ALDF will follow through with its plans to conduct and publicize an undercover investigation at an agricultural operation.  ALDF also uses the results of undercover investigations by other organizations in its outreach and litigation projects; the ag gag law's stifling of that speech hinders ALDF's ability to pursue its organizational mission.

20.    Plaintiff PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS (PETA) is a Virginia non-stock corporation and animal protection charity exempt from taxation pursuant to Section 501(c)(3) of the Internal Revenue Code.  PETA is dedicated to protecting animals from abuse, neglect, and cruelty, and undertakes these efforts through public education, undercover investigations, research, animal rescue, legislation, special events, celebrity involvement, protest campaigns, and lawsuits to enforce laws enacted to protect animals.  A central tenet of PETA's mission is to expose cruelty to farmed animals, educate the public about such cruelty, and encourage people to choose a lifestyle that does not involve or support abuse, neglect, or exploitation of animals.   PETA's first undercover investigation—the 1981 investigation of Dr. Edward Taub's monkey testing laboratory in Silver Spring, Maryland—resulted in the nation's first arrest and criminal conviction of an animal experimenter for cruelty to animals.  PETA has conducted dozens of investigations in the United States over the past three decades, exposing illegal animal abuse and turning the results of each investigation over to appropriate law enforcement and/or regulatory authorities.   It continues to conduct these

investigations to expose further illegal conduct on the part of workers and management personnel.  PETA is also interested and willing to conduct an investigation in Utah but for the threat of criminal prosecution under Utah Code Ann. § 76-6-112.

21.    Plaintiff COUNTERPUNCH is a print and online journal of progressive politics, news, investigative reporting, civil liberties, art, and culture.  CounterPunch's readership is global, with over 5,000 paid subscribers and a web readership of over one million unique visitors per month.  CounterPunch and its writers have received numerous awards.  CounterPunch regularly reports on undercover investigations at factory farms; the following articles illustrate the extensive coverage CounterPunch gives to these investigations:  "Undercover at a Turkey Slaughtering Plant," "Hatchery Horrors," "The Price of Cheap Easter Eggs," "Life on HBO's Factory Hog Farm," "Is Your Child Eating Downer Cows?," "American Beef Supply at Risk," and "Pig Hell at Wal-Mart Supplier."  The ag gag law stifles undercover investigations in Utah and thus suppresses CounterPunch's free press rights and undermines its ability to report thoroughly and accurately on a matter of significant public concern: the ethical and public health implications of modern industrial animal agriculture.  If the ag gag law is declared unconstitutional, CounterPunch will report on the findings of undercover factory farm investigations conducted in Utah.

22.    Plaintiff AMY MEYER is a resident of Salt Lake County, Utah.  Meyer is an animal activist and has in the past engaged in protected First Amendment activities such as protests and demonstrations in an effort to bring public awareness to animal issues, including the treatment of farmed animals.  On February 8, 2013, Meyer was standing on public property adjacent to a slaughterhouse in Draper City, Utah.  While there, she witnessed practices that she

found troubling, including workers pushing what appeared to be a sick cow with a bulldozer. She recorded images of these practices from her vantage point on the adjacent public right-of-way. Although Meyer never entered private property and was simply exercising her rights as protected by the United States Constitution, she was questioned by the Draper City Police and subsequently charged with violating Utah Code Ann. § 76-6-112(4), Agricultural Operation Interference, making her the first and only person in the country to be charged under an ag gag statute. Meyer was criminally charged and retained private counsel. She was subject to court process and mandatory appearances until April 30, 2013, when her case was dismissed without prejudice. Meyer intends to continue her animal activism and has concrete plans to engage in First Amendment activities related to that activism generally and to animal agriculture specifically. Her prior arrest has made her fearful that if she does so, she may be arrested and again criminally charged if she records or is thought to have recorded images of animal agricultural activities—even if she does so while on generally accessible public property. This fear has a real and chilling effect on the exercise of her constitutionally protected rights. If the ag gag law is declared unconstitutional, these fears would be allayed and Meyer could again confidently engage in constitutionally protected free speech.

23. Plaintiff WILL POTTER is an award-winning journalist, author, and public speaker based in Washington, D.C. who is a leading authority on the animal rights and environmental movements. Potter's reporting and commentary have appeared in media outlets including *Rolling Stone*, *Mother Jones*, *The Los Angeles Times*, *The Vermont Law Review,* and *The Washington Post*. Potter has lectured at more than 100 universities and public forums internationally about his work, including Georgetown University, the New York City Bar

Association, and the House of Democracy and Human Rights in Berlin, and he has testified before the U.S. Congress about his reporting.  Potter teaches investigative journalism at the University of Southern Maine.  Potter is the author of *Green is the New Red: An Insider's Account of a Social Movement Under Siege*, which Kirkus Reviews named as one of the best books of 2011 and described as a "shocking exposé" of "remarkable merit."  The book is regularly used in college and graduate school courses on political science, civil rights, and sociology.  Potter also runs the popular website www.greenisthenewred.com, where he reports on issues concerning animals and the environment.  Potter regularly reports on the results of undercover investigations, including the footage shot by Plaintiff Meyer, but the ag gag law limits his access to undercover investigations and hinders his coverage of industrial animal agriculture.  Potter would report the findings of other investigations at animal agricultural operations in Utah, but for the ag gag statute.

24.     Plaintiff DANIEL HAUFF is an animal and human rights activist, consultant, and expert on employment-based undercover investigations at animal agricultural operations.  He is the former Director of Investigations for a major national animal protection organization.  In that capacity, he spent four years working with investigators, facilitating their employment, and overseeing more than a dozen high security undercover investigations across the country at a variety of animal agricultural operations—from pig breeding facilities to high-density egg farms to dairies to slaughterhouses to veal farms.  Each investigation that Hauff oversaw revealed severe animal suffering, either through the gratuitous infliction of animal cruelty or through legal and routine industrial farming practices such as intensive confinement and unanaesthetized mutilations (e.g., beak-searing, horn removal, and castration).  Hauff has facilitated every stage

of undercover investigations, including identifying and scouting locations, hiring investigators, advising investigators in-field on everything from the effective use of surveillance equipment to emergency decision-making, reviewing investigative footage, presenting findings to law enforcement, and serving as a media spokesperson to convey investigative findings to the public. Investigations overseen by Hauff gained national recognition and exposed institutionalized mistreatment of farmed animals, leading to raids on factory farms, rescue of abused and neglected animals, passage of landmark legislation, and major corporate policy changes affecting countless animals. Because of Hauff's extensive expertise in the field, Plaintiff ALDF has engaged him to coordinate an undercover, employment-based investigation in Utah. ALDF would pay Hauff to oversee such an investigation. The existence of the ag gag law, however, prevents Hauff from pursuing this consulting opportunity, for fear of being prosecuted as an accomplice or co-conspirator to "Agricultural Operation Interference." The ag gag statute has thus injured Hauff financially by depriving him of a consulting opportunity, and constitutionally by depriving him of the opportunity to serve as a media spokesperson about a Utah investigation at an agricultural operation. If the ag gag law is declared unconstitutional, Hauff will oversee an employment-based investigation of an agricultural operation in Utah on behalf of ALDF.

25. Plaintiff JAMES MCWILLIAMS is an award-winning professor in the Department of History at Texas State University at San Marcos. McWilliams writes and publishes and lectures nationally at food and vegetarian conferences on the intersection of American history and diet, including the book *A Revolution in Eating: How the Quest for Food Shaped America*, published by Columbia University Press. McWilliams' writing on food, agriculture, and animals has appeared in the *New York Times, Harper's, The Washington Post,*

*The Atlantic, Slate, Forbes, Travel and Leisure, The Los Angeles Times, The International Herald Tribune, The Christian Science Monitor,* and *The Texas Observer.*  McWilliams also runs the popular *Eating Plants* blog*,* where he writes about factory farming, relying in part on undercover investigations.  His current projects include two books.  One, tentatively titled *A Glorious Distance: The Origins of Factory Farming in the United States*, is being published by the Cornell University Press.  The second, tentatively titled *The Modern Savage: Our Unthinking Decision to Eat Animals* (St. Martin's Press), investigates the hidden ethical, environmental, and economic problems with small-scale animal agriculture today.  As a scholar and historian, McWilliams places great importance on access to reliable, accurate, first-hand source materials.  The ag gag law inhibits this access, screening out important and relevant materials that are essential to McWilliams' scholarship, teaching, and national lectures, thus interfering with and undermining his profession.

26.    Plaintiff JESSE FRUHWIRTH is an activist and freelance journalist in Salt Lake City who covers environmental and animal rights topics on a variety of social media outlets.  For five years Fruhwirth was a professional newspaper writer, investigative journalist, and editor at several Utah newspapers, including *Salt Lake City Weekly*.  He was twice named as a finalist for Reporter of the Year by the Society of Professional Journalists Utah Headliner's Chapter.  He has investigated animal rights, repression of activist movements, oil refinery safety, police racial profiling, and local politics.  Fruhwirth's blogs and reporting have a large following and he would report the findings of investigations at animal agricultural operations in Utah, but for the ag gag statute.

**DEFENDANTS**

27.     Defendant GARY R. HERBERT is the Governor of Utah and as such, is the Chief Executive for the state, responsible for ensuring the enforcement of the State's criminal statutes. The Governor is sued in his official capacity.

28.     Defendant JOHN SWALLOW is the Attorney General of Utah and as such, oversees the enforcement of the State's criminal statutes.  The Attorney General is sued in his official capacity.

**FACTUAL BACKGROUND**

**Statutory Overview**

29.     In 2012, Utah adopted House Bill 187, codified at Utah Code Ann. § 76-6-112 (West 2012), which criminalizes "agricultural operation interference."[3]

---

[3] The full text of the statute reads:  76-6-112. Agricultural operation interference -- Penalties.

    (1)     As used in this section, "agricultural operation" means private property used for the production of livestock, poultry, livestock products, or poultry products.

    (2)     A person is guilty of agricultural operation interference if the person:

        (a)     without consent from the owner of the agricultural operation, or the owner's agent, knowingly or intentionally records an image of, or sound from, the agricultural operation by leaving a recording device on the agricultural operation;

        (b)     obtains access to an agricultural operation under false pretenses;

        (c)

            (i)     applies for employment at an agricultural operation with the intent to record an image of, or sound from, the agricultural operation;

            (ii)    knows, at the time that the person accepts employment at the agricultural operation, that the owner of the agricultural operation prohibits the employee from recording an image of, or sound from, the agricultural operation; and

30.    An agricultural operation is any "private property used for the production of livestock, poultry, livestock products, or poultry products."

31.    The statute defines four ways that whistle-blowing activity will be deemed criminal:

a.    Recording an image or sound by "leaving a recording device on the agricultural operation" without consent from the owner, Utah Code Ann. § 76-6-112(2)(a);

b.    Obtaining "access to an agricultural operation under false pretenses," Utah Code Ann. § 76-6-112(2)(b);

c.    Applying for employment "with the intent to record an image of, or sound from, the agricultural operation" while knowing that the operation prohibits such recording and recording an "image of, or sound from, the agricultural operation" while employed, Utah Code Ann. § 76-6-112(c); or

d.    Recording an image or sound without the consent of the owner of the operation while committing criminal trespass, Utah Code Ann. § 76-6-112(d).

32.    Persons violating Utah Code Ann. § 76-6-112(2)(a) face up to a year in jail and up

---

(iii)    while employed at, and while present on, the agricultural operation, records an image of, or sound from, the agricultural operation; or

(d)    without consent from the owner of the operation or the owner's agent, knowingly or intentionally records an image of, or sound from, an agricultural operation while the person is committing criminal trespass, as described in Section 76-6-206, on the agricultural operation.

(3)    A person who commits agricultural operation interference described in Subsection (2)(a) is guilty of a class A misdemeanor.

(4)    A person who commits agricultural operation interference described in Subsection (2)(b), (c), or (d) is guilty of a class B misdemeanor.

15

to $2,500 in fines, the same penalty as would attach to assaulting a police officer.  *See* Utah Code Ann. § 76-5-102.4 (West 2012).  Persons violating other subsections of section 76-6-112 face up to six months in jail and a $1,000 fine.[4]

33.     Under the plain terms of Utah Code Ann. § 76-6-112, no new investigations of the type contemplated by ALDF and PETA and reported on by several of the journalistic Plaintiffs may be conducted in the state of Utah.

34.     Although investigations and their corresponding media coverage are the primary source of whistleblowing activity in this industry, the Utah law makes all such speech effectively impossible.

35.     The threat of criminal liability extends beyond the individual who conducts the investigation and includes non-profit organizations such as PETA and ALDF who support and encourage whistleblowers and investigators who are shining a spotlight on practices in the belief that the public has a right to know what goes on in facilities that produce products for public consumption, as well as individuals such as Daniel Hauff, who support, encourage, and facilitate the recordings.   Indeed, even a journalist who contracted with an investigator to obtain undercover video or photographic images would be a criminal.  Utah Code Ann. § 76-2-202 (West 2012) (accomplice); Utah Code Ann. § 76-4-201 (West 2012) (conspiracy).

36.     These statutes have the effect of criminalizing undercover investigative activities targeting agricultural operations, as well as the planning and assistance of such activity, thereby making the investigations and the journalism surrounding such events virtually impossible.

---

[4] The legislative history suggests that *each* photograph could constitute a separate offense, such that offenders would, in the words of one House representative, "go away to jail for a very long time."

**Statutory Purpose**

37.     Utah Code Ann. § 76-6-112 criminalizes image capture from agricultural operations only if the owner of the facility does not approve of the recording in advance of its production.

38.     The statute does not target images and recordings produced by the owners or others who will portray the agricultural industry in a favorable light.  The purpose and effect of the statute is to prioritize and privilege speech that is favorable to the agricultural industry.

39.     The statute criminalizes the production of only speech that is inconsistent with the goals and economic interests of the agricultural industry.

40.     The statute criminalizes the production of speech that is a matter of considerable public concern.

41.     The statute's legislative history in Utah demonstrates that it was introduced with the explicit intent of silencing or impeding speech by animal protection organizations.

42.     Representative John Mathis, sponsor of the House bill, stated his intent was to stop "national propaganda groups" from using industrial agriculture footage to advance their political agendas, which he called "undoing animal agriculture."

43.     Rep. Mathis explained his motivation for introducing the legislation by expressing his disdain for animal protection organizations, saying that the recordings should be criminalized because they are used "for the advancement of animal rights nationally, which, *in our industry*, we find egregious."

44.   Rep. Mathis further stated that animal protection groups "should not be allowed to continue," and called for legislators to "stand[] up" to the national animal protection groups.

45.   Representative Daniel McCay spoke in support of the House Bill, taking note of "those who are fraudulently accepting employment" and then recording behavior that "they interpret as abuse."  Rep. McCay explained that he supported the bill because "you have to look at [what someone] is trying to accomplish" by taking a recording.

46.   Representative Michael Noel was similarly emphatic in his animus towards Plaintiffs and other animal protection organizations, stating that he was opposed to letting "these groups like PETA and some of these organizations control what we do in this country, a country that feeds the world."  Rep. Noel then referred to anyone who wanted to film an agricultural operation as a "jack wagon."[5]  The legislative history is replete with references to animal protection organizations, which Representative King referred to as "very controversial groups." The legislative history demonstrates a desire to impede the legitimate and recognized mission of these organizations.

47.   Senator David Hinkins, the sponsor of the legislation in the Senate, discussed his support for the legislation by maligning one of the Plaintiffs, saying, among other things, "I'd like to share some things with you on this PETA group and I'm not sure how many of you realize this but they are the People for Ethical Treatment of Animals, an organization known for

---

[5] *Jack wagon* is a slang term for "loser" according to an online slang dictionary. http://www.internetslang.com/JACK_20WAGON-meaning-definition.asp

uncompromising animal rights positions . . . ."  The senator provided a litany of personal, animus-based objections to PETA's lawful activity as a basis for supporting the legislation.[6]

48.     Senator Hinkins was also clear that he viewed the legislation as a means of targeting "the vegetarian people" who "are trying to kill the animal industry."  Senator Hinkins elaborated that in his view the law was necessary because the vegetarian groups are "terrorists" whose viewpoint is not entitled to protection.

49.     One of the primary public voices of support for the Utah statute was the Utah Farm Bureau.  Sterling Brown, from the Utah Farm Bureau, stated that farm investigations "have done more of a disservice than anything positive."

50.     In the House Law Enforcement Committee's review of HB 187, Rep. Mathis described his hope that the bill would undermine the "many groups around the country" that "use propaganda" to "change the way agriculture's done."

51.     The Committee's consideration of the bill also involved distinguishing between protecting the "innocent" people on the one hand, and Plaintiffs like PETA on the other, who legislators attempted to tar as "so-called animal rights terrorists."[7]

52.     During the committee hearings Rep. Mathis stated that the mission of the Plaintiffs was "very misguided" and that the purpose of the bill was to target those groups whose work he deems "egregious."

_____

[6] Senator Hinkins' comments were not directly relevant to the statutory language under review, but he repeatedly denounced People for the Ethical Treatment of Animals by accusing it of making "empty promises . . . to folks who generously offer their hard-earned money to help save animals."

[7] During the committee hearings Rep. Perry demonstrated that his support for the bill was also grounded in animus, explaining that he views undercover investigations as "just another version of domestic terrorism."

53.     Upon information and belief, certain legislators and legislative staff advocated for Utah Code Ann. § 76-6-112 specifically because it would silence animal protection organizations.  Mike Kohler, speaking on behalf of Utah dairy farmers, spoke in support of the bill, explaining that it "will be a good tool to . . . stop some of the conduct nationally that has been causing a problem" for the industry.

54.     On information and belief, Utah's law was based in substantial part on model language drafted and lobbied by the American Legislative Exchange Council (ALEC).

55.     On information and belief, many of the legislative votes in support of Utah's ag gag law came from ALEC members.

56.     Two of the representatives who supported the bill, Rep. Roger Barrus and House Speaker Rep. Rebecca Lockhart, are members of the ALEC Energy, Environment and Agriculture Task Force.

57.     On information and belief, the ALEC Energy, Environment and Agriculture Task Force has repeatedly discussed ways of silencing and diminishing the influence of Plaintiffs through legislation.

58.     The Utah law has the intent and effect of stopping future investigations by Plaintiffs ALDF and PETA into illegal acts by animal agricultural interests, as well as those conducted by investigative journalists.  The law also deprives journalists of footage and information that they would like to distribute to their readers.

59.     On information and belief, there are no other statutes in Utah that target a specific category whistle-blowing or investigative journalism activity.  Undercover investigations of, for example, childcare facilities, nursing homes, and banks are still permitted.

**Investigations and Reporting Generally**

60.     Plaintiff PETA regularly conducts investigations into industrial factory farming facilities and slaughtering operations in the United States.  These investigations are central to the organization's mission and related public interest campaigns.   ALDF has conducted investigations in the past at animal shelters, roadside zoos, and other animal facilities, and intends to pursue an agricultural investigation in Utah.

61.     Plaintiffs Will Potter, CounterPunch, James McWilliams, and Jesse Fruhwirth actively report on agricultural investigations.  Each engages in outreach and reporting that rely on the investigations either explicitly, or as part of their background research.

62.     In order to document actual conditions within agricultural operations, including egregious animal abuses and routine cruelties, PETA and ALDF have used or will use investigators to obtain employment at animal agriculture facilities.

63.     Investigators for PETA and ALDF would or have performed all the duties of a farm laborer while observing and recording any illegal conduct occurring at the facility.

64.     On information and belief, agricultural employers in Utah will inquire about whether a potential employee has any connections to an animal protection organization.

65.     Industry documents for the agricultural field routinely instruct agricultural employers to inquire about affiliations with animal protection organizations.

66.     During their employment, investigators use recording equipment to document violations of applicable laws and regulations, including unsanitary practices, cruelty to animals, pollution, sexual misconduct, labor law violations, and other matters of public importance.

67.     PETA's undercover investigations at factory farms have found workers kicking pigs in the head, spray painting them in the eyes, stomping and throwing chickens and turkeys like footballs, smashing piglets' heads against concrete floors, and beating and sexually assaulting pigs with steel gate rods and hard plastic herding canes.

68.     PETA has used, and ALDF plans to use, the videos and photos of illegal conduct to seek enforcement of civil and criminal laws and regulations, to encourage legislative and industry reform, and to effectuate changes in corporate policies and supply chains.

69.     PETA's 1998 investigation of Belcross Farm, a pig-breeding factory farm in North Carolina, resulted in felony indictments of workers after PETA released hours of video footage that revealed shocking, systematic cruelty from daily beatings of pregnant sows with a wrench and an iron pole to skinning pigs alive and sawing off a conscious animal's legs.  A 2001 PETA investigation of Seaboard Farms, an Oklahoma pig farm, resulted in the first conviction for felony animal cruelty to farmed animals after PETA's investigation showed employees routinely throwing, beating, kicking, and slamming animals against concrete floors and bludgeoning them with metal gate rods and hammers.  PETA's 2008 investigation of the factory farms of Aviagen Turkeys resulted in the first-ever felony indictments for farmed poultry, and first convictions of factory farmers for abusing turkeys.

70.     Undercover investigations have and will continue to result in positive legal outcomes, provide insights into modern factory farming, and contribute immensely to public discourse about the political and ethical dimensions of our food choices.

71.     These recordings are an important part of the marketplace of ideas because they influence public opinion and consumer demand.  A 2012 consumer survey conducted by Purdue

22

University's Department of Agricultural Economics and Department of Animal Sciences found that the public relies on the information gathered and presented by animal protection groups or investigative journalists, more than they rely on industry groups and the government combined.

72.     With the exception of material generated by or done on behalf of the animal agricultural industry, or pro-agriculture speech produced by the State, investigations by journalists or activists and their subsequent coverage in the media provide the primary lens through which the workings of agricultural operations can be seen.

**State Speech Regarding Animal Agriculture**

73.     The silencing of speech critical of factory farming is all the more dangerous in light of the state government's own one-sided, viewpoint-based speech on the issue.

74.     The Utah Department of Agriculture, through its website, speaks one-sidedly in support of industrial agriculture.

75.     The Department's website contains a series of videos produced by the Department entitled "Agriculture 101." The series is "intended to help consumers know more about where their food comes from." The videos cover the production of animal products, such as eggs, pork, beef, and dairy.

76.     One of the videos, "How Utah Eggs Are Produced," promotes the egg industry to consumers as safe and humane.

   a.     The video asserts that Utah eggs are "some of the safest in the country" and that egg-laying hens "are housed in clean, well-lighted, temperature-controlled buildings where their food, water, and comfort are monitored by employees and computers."

23

b.  The video provides a forum for the industry to tout the safety and humaneness of battery cage egg farms, stating that "growers . . . want the public to know that modern egg laying chickens are far healthier and more productive than hens of the past."

c.  One industry representative featured in the video states, "Our care for the birds [is] of the utmost and we do care about taking care of the production birds the best we know how."

d.  The video features footage of egg farms provided by the Utah Egg Marketing Board and the American Egg Board, organizations whose mission is to promote the egg industry.  The video shows pristine white hens in a clean, sterile environment.

e.  The environment depicted and the claims made in the video are a far cry from the inhumane and unhealthy conditions repeatedly exposed by undercover investigations at battery cage facilities throughout the country.

f.  In fact, two states have banned the confinement of hens in battery cages out of concern for the animals' welfare, including California, which is home to nearly 20 million egg-laying hens.

g.  On information and belief, the video inaccurately depicts the reality at many Utah egg farms, and Plaintiffs would engage in protected speech to counter these representations but for the existence of the ag gag law.

77.   Another video in the Department's Agriculture 101 series, entitled "Animal Care in the Hog Industry," promotes the pig industry as safe and humane.

24

a. The video features Dr. Bruce King, the Utah State Veterinarian, who asserts that the pig industry "meet[s] the needs of you, the consumer, while at the same time focusing upon animal welfare."

b. Dr. King further notes that "the Department and industry have a close partnership that assures a safe, wholesome food product with respect for the environment and [that] protects the well-being of animals."  Dr. King asserts that "the vast majority of producers . . . make[] sure [their] hogs are well taken care of."

c. The video provides a forum for industry representatives, who claim that they "take care of [pigs] just as you would a family member."

d. The video promotes the confinement of pregnant pigs in gestation crates, which are typically so small that they prevent the animal from even turning around.  Nine states have banned the confinement of pregnant pigs in gestation crates out of concern for the animals' welfare.  Yet the video claims this extreme confinement provides pigs "greater protection."

e. The video misleadingly claims that "sometimes animals get sick, so farmers use antibiotics to treat the individual sick pigs," when in fact antibiotics are typically used indiscriminately for nontherapeutic purposes on factory farms, which poses significant public health concerns.

f. The environment depicted and the claims made in the video are a far cry from the inhumane and unhealthy conditions repeatedly exposed by undercover investigations at pig breeding facilities throughout the country.

25

g.   These investigations are discounted and Plaintiffs' viewpoint is implicitly maligned by the video, which states that "producers believe consumers may have their own impression of the industry because of negative images distributed by some groups."

h.   On information and belief, the video inaccurately depicts the reality at many Utah pig farms, and Plaintiffs would engage in protected speech to counter these representations but for the existence of the ag gag law.

78.   Another video on the Department's website, entitled "Dairy Animal Care in Utah," promotes the dairy industry as safe and humane.

a.   Like the pro-pig industry video, this pro-dairy industry video features Dr. Bruce King and provides the State's imprimatur on controversial practices that are at the center of debates about cruelty in the animal agriculture industry.

b.   In the video, Dr. King states that "the dairy industry in Utah is run by people who . . . love livestock and they want to do anything in their power to become good stewards—and they are good stewards—of what they oversee."

c.   Dr. King further asserts that "it's of ultimate importance to the dairyman that he produce a high-quality product, and in order to do that, he has to take exceptional care of the production unit—the cow.  She has to be fed properly, she has to be clean and dry and comfortable.  She can be under no stress at all if he wants the ultimate production out of that particular animal."

d.   The video defends the industry practice of tail docking for cows, in which most of a cow's tail is amputated by placing an elastic band on the tail until it simply

falls off.   Alternatively, some facilities use a pliers-like device called an "emasculator," which crushes the tail.   The American Veterinary Medical Association discourages the practice, and some states have criminalized it as animal cruelty.   Nevertheless, Dr. King defends the practice, claiming it is "done to guarantee a good wholesome product to you and me and the consumer."

e.   The video also defends the dehorning of cows, which is typically done without anesthesia, claiming it is done for the protection of animals.

f.   Dr. King also asserts that those in the industry "don't do things to cause any unnecessary stress or any unnecessary pain in reference to these cows."

g.   The claims made in the video are a far cry from the illegal, inhumane, and unhealthy conditions repeatedly exposed by undercover investigations at dairy facilities throughout the country.

h.   On information and belief, the video inaccurately depicts the reality at many Utah dairy farms, and Plaintiffs would engage in protected speech to counter these representations but for the existence of the ag gag law.

79.   The Department's website has a section entitled "Links of Interest" that purports to "facilitate a flow of information to help Utah consumers understand the broad issues surrounding agriculture."   *Learn About Agriculture*, Utah Dep't Agric. & Food (2013), http://ag.utah.gov/learn/index.html.  Yet the links are clearly biased in favor of industrial animal agriculture.  Among the "links of interest" are the following:

a.   A link to the website of the Animal Agriculture Alliance, an industry-

supported organization that vociferously opposes Plaintiffs and their campaigns, claims factory farming is a "myth," and aggressively promotes ag gag legislation nationwide. The Animal Agriculture Alliance is described on the Department's website as "a positive and informed voice communicating reliable, science-based information on key agricultural topics ranging from animal welfare to biotechnology to environmental impacts."

b.     A link to a misleading and inaccurate story in Beef Magazine that maligns Plaintiff PETA;

c.     An egg industry rebuttal to a Salt Lake Tribune article about animal welfare concerns in egg-production methods;

d.     A link to a third-party site called "I Love Farmers," which features articles endorsing industrial animal agriculture and disparaging animal protection organizations as "extremists" and peddlers of "propaganda." One posting on I Love Farmers, entitled "Onward to Official Beefiness," claims that opponents of animal agriculture believe meat is "unjust, for reasons they think they believe to be true but in reality have made up to challenge authority and feel good about their lack of conviction in their personal lives." The posting further asserts that "those who don't eat beef [are] part of a religion and, yes, their ideology could even be labeled a cult. They believe in their crusade to end animal production for food just as Muslims in Jihad [sic] believe America is Satan."

28

e.    In short, the State's own website provides information and links to information that can fairly be characterized as a hyperbolic attack on animal protection organizations and advocates.

80.    Certainly the Department of Agriculture is free to promote agriculture; indeed, that is part of its purpose.  But for the government to speak in favor of one side of an issue of significant public concern, while at the same time passing legislation to silence the other side of the debate, violates the core principles that animate the First Amendment.

**Investigative Interests**

81.    Plaintiffs ALDF and PETA have the goal and organizational purpose of producing speech that shows the other side of industrial agriculture.

82.    PETA and ALDF have a specific interest in agricultural investigations in Utah.

83.    Plaintiffs' missions are best served by demonstrating that meat, dairy, eggs, and related products are produced in a similar manner industry-wide, across the United States, which requires the ability to access a diverse array of states and not just a select few.

84.    The inability to conduct undercover investigations in Utah allows agricultural enterprises in Utah to claim that they are treating their animals in a way that is different than what is shown in the videos obtained by Plaintiffs from other states.  Food safety, labor, and animal welfare issues are uniquely hidden from public scrutiny because of the Utah ag gag law.

85.    ALDF has been researching potential targets for an undercover investigation in Utah.

86.    ALDF has concrete plans to conduct one or more investigations in Utah.

87.     Specifically, ALDF has conducted research and identified facilities that warrant an investigation.

88.     ALDF specifically allocated money from their budget to fund investigations, including in Utah.

89.     ALDF obtained conditional approval for an investigation in Utah from its executive director.  Once they are assured that the investigations will not result in criminal prosecutions, ALDF is ready to undertake investigations in Utah.

90.     ALDF has hired one or more private investigators to conduct investigations in Utah.

91.     ALDF has had an investigator gather applications from potential employers in Utah that ALDF has determined would be suitable subjects of an investigation.

92.     ALDF agreed to hire Daniel Hauff, a national expert in obtaining access to agricultural operations for undercover investigations.  Hauff will coordinate ALDF's Utah investigation.

93.     The investigations planned by ALDF would violate the ag gag statute, Utah Code Ann. § 76-6-112 (West 2012).  ALDF would instruct its investigator to take photos and videos to document the conditions inside the facility, without the permission or consent of the owner, in violation of § 76-6-112(c).  ALDF would instruct its investigator not to disclose their affiliation with animal protection organizations, in violation of § 76-6-112(b).

94.     ALDF has done everything required to conduct an investigation in Utah short of violating the statute.

95.     PETA similarly has a strong interest and desire in an agricultural investigation in Utah.  PETA is committed to doing an investigation in Utah and has the resources, capability, and experience to successfully conduct such an investigation.  PETA would instruct their investigators to take photos and videos to document illegal conduct inside the facility, without the permission or consent of the owner, and their investigators would not to disclose their affiliation with animal protection organizations.  As such, PETA and their investigators would face the threat of prosecution under Utah Code Ann. § 76-6-112(b) and (c).

96.     Plaintiffs believe that prosecutors in Utah intend to enforce Utah Code Ann. § 76-6-112, as evidenced by Plaintiff Meyer's prosecution under the statute.

97.     The more successful the undercover investigations by Plaintiffs, the more likely the animal welfare and food safety issues are to achieve substantial media attention, and the more likely it is that they will be prosecuted under Utah Code Ann. § 76-6-112.

98.     Despite the existence of a concrete plan to investigate one or more facilities in Utah by ALDF and PETA, because of the high likelihood of prosecution under Utah Code Ann. § 76-6-112, they cannot engage in their investigative activities without fear of prosecution.

99.     Realistically, there is no investigation strategy that would meaningfully reveal the conditions inside animal production facilities without violating the statute.

**Reporter and Scholarly Interests**

100.    Plaintiffs CounterPunch, Will Potter, and Jesse Fruhwirth are publishers or journalists committed to covering the images and stories that emerge from undercover investigations of agricultural operations.

31

101.   Plaintiff James McWilliams is a historian and scholar who lectures across the country, blogs, and teaches courses on the ethics of food.  He relies on undercover investigations for his research, teaching, and presentations.

102.   Each of the above mentioned media and scholarly plaintiffs have covered issues relating to labor, the environment, food safety, or animal welfare.

103.   Each such Plaintiff is concerned with animal welfare and food safety across the entire nation and will attest that they would report on any investigations done in Utah.  Local journalist Jesse Fruhwirth is uniquely interested in issues surrounding animal welfare and environmental impact in his state and would cover any investigations conducted in Utah.

104.   The harm to the media and academic plaintiffs is no less than the harm to the animal protection plaintiffs.  The media and academic plaintiffs are committed to a transparent and free-flowing exchange of ideas regarding issues of food safety and animal welfare, and the ag gag law directly impedes their ability to report on these stories by stymieing undercover investigations in the state.

**Fear of Arrest or Prosecution for Lawful Conduct**

105.   Plaintiff Amy Meyer has a well-founded fear that she will be arrested and prosecuted for lawful conduct based on an overzealous enforcement of the ag gag law.

106.   Plaintiff Amy Meyer has regularly participated in protest and free speech activities related to animal welfare, including activities conducted at or near animal agriculture operations.

107.   Meyer was charged with violating the ag gag law for filming an agricultural operation from a public easement.

108.    Although the charges were dismissed, albeit without prejudice, she missed work, suffered considerable stress, and is fearful to engage in constitutionally protected speech activities.

109.    Meyer's lawful speech activities have been chilled as a result of the ag gag law.

## CLAIMS FOR RELIEF

### Declaratory Relief

110.    An actual and immediate controversy exists between Plaintiffs and Defendants. Plaintiffs contend that the challenged statute is unconstitutional.  Defendants believe the statute is constitutional.

111.    Plaintiffs are therefore entitled to a declaration of rights with respect to this controversy.   Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law.

### Injunctive Relief

112.    Plaintiffs are entitled to an injunction.  Defendants are acting and threatening to act under color of state law to deprive Plaintiffs of their constitutional rights.  Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a result of the existence, operation, enforcement, and threat of enforcement of the challenged statute.  Plaintiffs have no plain, adequate, or speedy remedy at law.  Plaintiffs are refraining from constitutionally protected activities solely for fear of prosecution under the statute.

## FIRST CAUSE OF ACTION

### (First Amendment: Overbreadth)

113.    Plaintiffs incorporate by reference all allegations contained in the above paragraphs.

114.    The act of image capture—the recording of images or sound—is not only a necessary predicate to certain speech, it is speech itself.

115.    A statute that prohibits substantially more speech than the First Amendment permits is unconstitutionally overbroad even though the State could lawfully punish some of the conduct targeted by the statute.  *See United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010).

116.    Even if the State may be able to lawfully limit the creation of certain recordings on an agricultural operation, Utah Code Ann. § 76-6-112 (West 2012) regulates substantially more speech than the First Amendment permits.

117.    Specifically, the ag gag law targets a wide range of politically salient speech, including speech regarding animal welfare, worker safety, and food safety, and speech exposing illegal conduct on the part of industrial agriculture operations.

118.    The ag gag law criminalizes not just the protected speech of Plaintiffs, but of any person or group that would seek to investigate an "agricultural operation" in a similar manner, including employees, local journalists, or any person merely concerned about the conditions under which food is processed.

119.    The law also sweeps within its reach activities by labor organizations who seek to investigate labor conditions and conduct organizing activities.

120.    The law would also criminalize undercover investigations by federal officers, or those acting on behalf of federal authorities, for the purpose of enforcing federal food safety laws.

121.    Because the ag gag law categorizes so much protected speech as "criminal," it is unconstitutionally overbroad.

122.    Plaintiffs are entitled to prospective relief enjoining Defendants from enforcing the ag gag law.

123.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the ag gag law is unconstitutionally overbroad and unenforceable in any situation.

## SECOND CAUSE OF ACTION

### (First Amendment: Content & Viewpoint Based Discrimination)

124.    Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

125.    The most important function of the First Amendment is to protect against laws that target certain messages or speech because of their "ideas, subject matter, or content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95–96 (1972).

126.    "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994).

127.    Even if the speech in question is not generally protected speech—for example, if the speech in question is merely cast as trespassing—the State still may not make a content based

distinction. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 380 (1992).  That is to say, content-based distinctions are impermissible even for speech that is generally unprotected.

128.   By its plain text, the ag gag statute is an explicit content-based regulation.  It singles out recording the activities of agricultural operations for special, discriminatory treatment.

129.   In addition, the legislative history of the statute, including statements made by the law's sponsors, make clear that the purpose of the ag gag statute was and is to interfere with and suppress the message of national animal protection groups.  Legislators were targeting the speech activities of certain individuals for discriminatory treatment.

130.   The law singles out speech about agricultural activities and limits the ability of activists and journalists to engage in the political speech that is of the utmost public concern.

131.   The State has not limited the ability to engage in whistleblowing activity in other highly regulated or important industries, including medical providers, defense contractors, banks, or childcare providers.

132.   By singling out the agricultural industry for protection against political speech that may be harmful to its profits, the ag gag law must be treated as a content- and viewpoint-based regulation.  In practice, the law ensures that only one side of the debate on food safety and animal welfare is raised.

133.   The ag gag statute, as a content- and viewpoint-based regulation that is neither justified by a compelling interest nor narrowly tailored, violates Plaintiffs' First Amendment rights.

134.    Plaintiffs are entitled to prospective relief from the Defendants to remedy the deprivations suffered as a result of the violations of their First Amendment rights.

135.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the ag gag law is unconstitutional and unenforceable in any situation.

## THIRD CAUSE OF ACTION

### (Article VI, § 2: Supremacy Clause: Preemption)

136.    Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

137.    Article VI, paragraph 2, of the United States Constitution provides, "the Laws of the United States . . . shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

138.    State laws that conflict with or frustrate the purposes of federal laws are preempted.

139.    A state law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983).

140.    The operation, existence, and enforcement of the ag gag law, Utah Code Ann. § 76-6-112, violates the Supremacy Clause because it conflicts with federal law by undermining the objectives of a federal statute.

141.    Because one of the core purposes of the False Claims Act, 31 U.S.C. §§ 3729, 3730 (2006), is to provide incentives and protections for private persons to surreptitiously uncover fraud against the federal government, Utah Code Ann. § 76-6-112 is preempted.[8]

142.    In Utah there is at least one slaughterhouse that has a contract with the federal government to provide meat for the National School Lunch Program and other food assistance programs.

143.    On information and belief, some of the agricultural operations in Utah are subject to federal inspection.

144.    Utah Code Ann. § 76-6-112 drastically undermines the federal goal of discovering fraud against the federal government by criminalizing the very conduct that has produced at least one False Claims Act case in the agricultural industry.[9]

145.    Plaintiffs are entitled to a judgment declaring that Utah Code Ann. § 76-6-112 is preempted.  Such a declaration is appropriate and necessary in order to determine the rights and obligations of the parties.

---

[8]The Utah legislature considered and explicitly rejected an amendment to the bill that would have avoided preemption concerns.  Specifically, Senator Hinkins proposed an amendment specifying that one is not guilty of the offense "if the person is authorized by law to record an image of, or sound from the ag operation."

[9] For example, in 2008 an undercover investigation of a California slaughterhouse resulted in gruesome images of inhumane treatment of cows.  The investigation resulted in the president of the slaughterhouse admitting that his company had produced hamburger from sick cows and sold the product to the federal government for the National School Lunch Program.  The case spurred a False Claims Act prosecution resulting in a $497 million judgment.  *See* Linda Chiem, *Slaughterhouse Owners Hit With $500M Judgment In FCA Case*, Law360 (Nov. 16, 2012), http://www.law360.com/articles/394827/slaughterhouse-owners-hit-with-500m-judgment-in-fca-case.

146.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the ag gag law is unconstitutional.

## FOURTH CAUSE OF ACTION

### (Fourteenth Amendment:  Equal Protection & Due Process)

147.    Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

148.    The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

149.    When a statue is enacted based on improper motives, including animus towards a particular group of people, the equal protection and due process clauses of the Fourteenth Amendment are violated.  *See, e.g.*, *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973) ("If the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest.").

150.    Utah Code Ann. § 76-6-112 targets animal protection groups and serves no rational, non-animus based purpose.  The legislative history is replete with derogatory statements about Plaintiffs and their political beliefs.

151.    Plaintiffs are entitled to prospective relief from the Defendants to remedy the Equal Protection and Due Process violations.

152.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the ag gag law is unconstitutional.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request an order and judgment:

153.    Declaring that the challenged statute violates the United States Constitution on its

face and as applied to Plaintiffs;

154.    Permanently enjoining Defendants from enforcing the challenged statute;

155.    Striking down the challenged statute in its entirety;

156.    Awarding the Plaintiffs reasonable attorneys' fees and costs; and

157.    Awarding any such relief as the Court may deem just and proper.


Dated this 22nd Day of July, 2013

/S/ Stewart Gollan
_____
Stewart Gollan
Utah Legal Clinic
214 East Fifth South Street
Salt Lake City, Utah 84103
(801) 328-9531
stewartgollan@utahlegalclinic.com

Professor Justin Marceau, (*Pro Hac Vice
application pending*)
Of Counsel, Animal Legal Defense Fund
University of Denver
Sturm College of Law
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6449
jmarceau@law.du.edu

Matthew Liebman, (*Pro Hac Vice application pending*)
Animal Legal Defense Fund
170 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533, ext. 1028
mliebman@aldf.org

Matthew Strugar (*Pro Hac Vice application pending)*
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
(323) 210-2263
matthew-s@petaf.org

Attorneys for Plaintiffs

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

TO ORDER COPIES OF ANY DOCUMENTS LISTED BELOW, CALL WESTLAW
COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

**This docket is current through 03/30/2018**

**Current Date:** 5/27/2020
**Source:**             U.S. District Court, District of Utah (Central)

| | |
|---|---|
| **Court:** | U.S. District Court, District of Utah (Central) |
| **Case Title:** | Animal Legal Defense Fund et al v. Herbert et al |
| **Case:** | 2:13-CV-00679 |
| **Judge:** | Judge Robert J. Shelby |
| **Date Filed:** | 07/22/2013 |
| **Date Closed/Terminated:** | 07/07/2017 |
| **Case Status:** | CLOSED |

**SYNOPSIS INFORMATION**

| | |
|---|---|
| **Allegations:** | An action to declare Utah's "ag gag" law to be unconstitutional and to prevent its enforcement for it has the effect of criminalizing a historically celebrated and important form of speech. |
| **Damages:** | Declaratory and injunctive relief, fees, and costs. |

**COMPLAINT (MANUALLY RETRIEVED)**          Original Image of this Document (PDF)

**CASE INFORMATION**

| | |
|---|---|
| **Case Number:** | 2:13CV00679 |
| **Jury Demand:** | Defendant |
| **Nature of Suit:** | Other Statutes: Constitutionality of State Statutes (950) |
| **Key Nature of Suit:** | Other Federal Statutes; Constitutionality of State Statutes (340.35) |
| **Jurisdiction:** | Federal Question |
| **Cause:** | 42 USC 1983 Civil Rights Act |

**PARTICIPANT INFORMATION**

| Animal Legal Defense Fund |
|---|

| | |
|---|---|
| **Type:** | Plaintiff |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Attorney:** | Alan K. Chen |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE RM 455E<br>DENVER, CO 80208 |
| **Attorney Phone:** | 303-871-6283 |
| **Email Address:** | achen@law.du.edu |
| **Attorney:** | Christopher Berry |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANIMAL LEGAL DEFENSE FUND |
| **Attorney Address:** | 170 E COTATI AVE<br>COTATI, CA 94931 |
| **Attorney Phone:** | 707-795-2533 |
| **Email Address:** | cberry@aldf.org |
| **Attorney:** | Justin F. Marceau |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE<br>DENVER, CO 80208-0600 |
| **Attorney Phone:** | 617-256-9073 |
| **Email Address:** | jmarceau@law.du.edu |
| **Attorney:** | Matthew Liebman |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANIMAL LEGAL DEFENSE FUND |
| **Attorney Address:** | 525 E COTATI AVE<br>COTATI, CA 94931 |
| **Attorney Phone:** | 707-795-2533 |
| **Email Address:** | mliebman@aldf.org |
| **Attorney:** | Matthew D. Strugar |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | LAW OFFICE OF MATTHEW STRUGAR |
| **Attorney Address:** | 3435 WILSHIRE BLVD STE 2910<br>LOS ANGELES, CA 90010 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthew@matthewstrugar.com |
| **Attorney:** | Stewart W. Gollan |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Firm Name:** | RICKS & GOLLAN PLLC |
| **Attorney Address:** | 75 E 400 S STE 201<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-413-3406 |
| **Email Address:** | sgollanlaw@gmail.com |
| **Attorney:** | Edward T. Ramey |
| **Status:** | PRO HAC VICE |
| **Attorney Terminated:** | TERMINATED: 07/07/2017 |
| **Firm Name:** | HEIZER PAUL GRUESKIN LLP |
| **Attorney Address:** | 2401 15TH ST STE 300<br>DENVER, CO 80202 |
| **Attorney Phone:** | 303-376-3712 |

## People for the Ethical Treatment of Animals

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Alan K. Chen |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE RM 455E<br>DENVER, CO 80208 |
| **Attorney Phone:** | 303-871-6283 |
| **Email Address:** | achen@law.du.edu |
| **Attorney:** | Matthew D. Strugar |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | LAW OFFICE OF MATTHEW STRUGAR |
| **Attorney Address:** | 3435 WILSHIRE BLVD STE 2910<br>LOS ANGELES, CA 90010 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthew@matthewstrugar.com |
| **Attorney:** | Stewart W. Gollan |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | RICKS & GOLLAN PLLC |
| **Attorney Address:** | 75 E 400 S STE 201<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-413-3406 |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Email Address:** | sgollanlaw@gmail.com |
| **Attorney:** | Edward T. Ramey |
| **Status:** | PRO HAC VICE |
| **Attorney Terminated:** | TERMINATED: 07/07/2017 |
| **Firm Name:** | HEIZER PAUL GRUESKIN LLP |
| **Attorney Address:** | 2401 15TH ST STE 300<br>DENVER, CO 80202 |
| **Attorney Phone:** | 303-376-3712 |

## Counterpunch

| | |
|---|---|
| **Type:** | Plaintiff |
| **Party Terminated:** | TERMINATED: 08/08/2014 |
| **Attorney:** | Alan K. Chen |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE RM 455E<br>DENVER, CO 80208 |
| **Attorney Phone:** | 303-871-6283 |
| **Email Address:** | achen@law.du.edu |
| **Attorney:** | Stewart W. Gollan |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | RICKS & GOLLAN PLLC |
| **Attorney Address:** | 75 E 400 S STE 201<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-413-3406 |
| **Email Address:** | sgollanlaw@gmail.com |
| **Attorney:** | Edward T. Ramey |
| **Status:** | PRO HAC VICE |
| **Attorney Terminated:** | TERMINATED: 07/07/2017 |
| **Firm Name:** | HEIZER PAUL GRUESKIN LLP |
| **Attorney Address:** | 2401 15TH ST STE 300<br>DENVER, CO 80202 |
| **Attorney Phone:** | 303-376-3712 |

## Amy Meyer

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Alan K. Chen |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE RM 455E<br>DENVER, CO 80208 |
| **Attorney Phone:** | 303-871-6283 |
| **Email Address:** | achen@law.du.edu |
| **Attorney:** | Matthew D. Strugar |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | LAW OFFICE OF MATTHEW STRUGAR |
| **Attorney Address:** | 3435 WILSHIRE BLVD STE 2910<br>LOS ANGELES, CA 90010 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthew@matthewstrugar.com |
| **Attorney:** | Stewart W. Gollan |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | RICKS & GOLLAN PLLC |
| **Attorney Address:** | 75 E 400 S STE 201<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-413-3406 |
| **Email Address:** | sgollanlaw@gmail.com |
| **Attorney:** | Edward T. Ramey |
| **Status:** | PRO HAC VICE |
| **Attorney Terminated:** | TERMINATED: 07/07/2017 |
| **Firm Name:** | HEIZER PAUL GRUESKIN LLP |
| **Attorney Address:** | 2401 15TH ST STE 300<br>DENVER, CO 80202 |
| **Attorney Phone:** | 303-376-3712 |

## Will Potter

| | |
|---|---|
| **Type:** | Plaintiff |
| **Party Terminated:** | TERMINATED: 08/08/2014 |
| **Attorney:** | Alan K. Chen |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE RM 455E<br>DENVER, CO 80208 |
| **Attorney Phone:** | 303-871-6283 |
| **Email Address:** | achen@law.du.edu |
| **Attorney:** | Stewart W. Gollan |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | RICKS & GOLLAN PLLC |
| **Attorney Address:** | 75 E 400 S STE 201<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-413-3406 |
| **Email Address:** | sgollanlaw@gmail.com |
| **Attorney:** | Edward T. Ramey |
| **Status:** | PRO HAC VICE |
| **Attorney Terminated:** | TERMINATED: 07/07/2017 |
| **Firm Name:** | HEIZER PAUL GRUESKIN LLP |
| **Attorney Address:** | 2401 15TH ST STE 300<br>DENVER, CO 80202 |
| **Attorney Phone:** | 303-376-3712 |

## Daniel Hauff

| | |
|---|---|
| **Type:** | Plaintiff |
| **Party Terminated:** | TERMINATED: 01/29/2016 |
| **Attorney:** | Alan K. Chen |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE RM 455E<br>DENVER, CO 80208 |
| **Attorney Phone:** | 303-871-6283 |
| **Email Address:** | achen@law.du.edu |
| **Attorney:** | Christopher Berry |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANIMAL LEGAL DEFENSE FUND |
| **Attorney Address:** | 170 E COTATI AVE<br>COTATI, CA 94931 |
| **Attorney Phone:** | 707-795-2533 |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Email Address:** | cberry@aldf.org |
| **Attorney:** | Justin F. Marceau |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE DENVER, CO 80208-0600 |
| **Attorney Phone:** | 617-256-9073 |
| **Email Address:** | jmarceau@law.du.edu |
| **Attorney:** | Matthew Liebman |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANIMAL LEGAL DEFENSE FUND |
| **Attorney Address:** | 525 E COTATI AVE COTATI, CA 94931 |
| **Attorney Phone:** | 707-795-2533 |
| **Email Address:** | mliebman@aldf.org |
| **Attorney:** | Stewart W. Gollan |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | RICKS & GOLLAN PLLC |
| **Attorney Address:** | 75 E 400 S STE 201 SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-413-3406 |
| **Email Address:** | sgollanlaw@gmail.com |
| **Attorney:** | Edward T. Ramey |
| **Status:** | PRO HAC VICE |
| **Attorney Terminated:** | TERMINATED: 07/07/2017 |
| **Firm Name:** | HEIZER PAUL GRUESKIN LLP |
| **Attorney Address:** | 2401 15TH ST STE 300 DENVER, CO 80202 |
| **Attorney Phone:** | 303-376-3712 |

## James McWilliams

| | |
|---|---|
| **Type:** | Plaintiff |
| **Party Terminated:** | TERMINATED: 08/08/2014 |
| **Attorney:** | Alan K. Chen |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE RM 455E<br>DENVER, CO 80208 |
| **Attorney Phone:** | 303-871-6283 |
| **Email Address:** | achen@law.du.edu |
| **Attorney:** | Stewart W. Gollan |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | RICKS & GOLLAN PLLC |
| **Attorney Address:** | 75 E 400 S STE 201<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-413-3406 |
| **Email Address:** | sgollanlaw@gmail.com |
| **Attorney:** | Edward T. Ramey |
| **Status:** | PRO HAC VICE |
| **Attorney Terminated:** | TERMINATED: 07/07/2017 |
| **Firm Name:** | HEIZER PAUL GRUESKIN LLP |
| **Attorney Address:** | 2401 15TH ST STE 300<br>DENVER, CO 80202 |
| **Attorney Phone:** | 303-376-3712 |

---

### Jesse Fruhwirth

| | |
|---|---|
| **Type:** | Plaintiff |
| **Party Terminated:** | TERMINATED: 08/08/2014 |
| **Attorney:** | Alan K. Chen |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | UNIVERSITY OF DENVER STURM COLLEGE OF LAW |
| **Attorney Address:** | 2255 E EVANS AVE RM 455E<br>DENVER, CO 80208 |
| **Attorney Phone:** | 303-871-6283 |
| **Email Address:** | achen@law.du.edu |
| **Attorney:** | Stewart W. Gollan |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | RICKS & GOLLAN PLLC |
| **Attorney Address:** | 75 E 400 S STE 201<br>SALT LAKE CITY, UT 84111 |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Attorney Phone:** | 801-413-3406 |
| **Email Address:** | sgollanlaw@gmail.com |
| **Attorney:** | Edward T. Ramey |
| **Status:** | PRO HAC VICE |
| **Attorney Terminated:** | TERMINATED: 07/07/2017 |
| **Firm Name:** | HEIZER PAUL GRUESKIN LLP |
| **Attorney Address:** | 2401 15TH ST STE 300<br>DENVER, CO 80202 |
| **Attorney Phone:** | 303-376-3712 |

## Utah Farm Bureau Federation

| | |
|---|---|
| **Type:** | Movant |
| **Attorney:** | Billie J. Siddoway |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | DEISS LAW PC |
| **Attorney Address:** | 10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101 |
| **Attorney Phone:** | 801-433-0226 |
| **Email Address:** | bsiddoway@deisslaw.com |

## US Poultry and Egg Association

| | |
|---|---|
| **Type:** | Movant |
| **Attorney:** | George W. Pratt |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | JONES WALDO HOLBROOK & MCDONOUGH |
| **Attorney Address:** | 170 S MAIN ST STE 1500<br>SALT LAKE CITY, UT 84101 |
| **Attorney Phone:** | 801-521-3200 |
| **Email Address:** | gpratt@joneswaldo.com |

## Gary R. Herbert

| | |
|---|---|
| **Party Description:** | in his official capacity as Governor of Utah |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Type:** | Defendant |
| **Attorney:** | Darin B. Goff |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856) LITIGATION UNIT 160 E 300 S 6TH FL PO BOX 140856 SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:** | 801-366-0100 |
| **Email Address:** | dgoff@agutah.gov |
| **Attorney:** | David N. Wolf |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856) LITIGATION UNIT 160 E 300 S 6TH FL PO BOX 140856 SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:** | 801-366-0100 |
| **Email Address:** | dnwolf@agutah.gov |
| **Attorney:** | Kyle J. Kaiser |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856) LITIGATION UNIT 160 E 300 S 6TH FL PO BOX 140856 SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:** | 801-366-0100 |
| **Email Address:** | kkaiser@agutah.gov |
| **Attorney:** | Daniel R. Widdison |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Attorney Terminated:** | TERMINATED: 06/16/2015 |
| **Attorney Address:** | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856) LITIGATION UNIT 160 E 300 S 6TH FL PO BOX 140856 SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:** | 801-366-0100 |
| **Email Address:** | dwiddison@agutah.gov |

## John Swallow

| | |
|---|---|
| **Party Description:** | in his official capacity as Attorney General of Utah |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Type:** | Defendant |
| **Party Terminated:** | TERMINATED: 01/10/2014 |
| **Attorney:** | Kyle J. Kaiser |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856) LITIGATION UNIT 160 E 300 S 6TH FL PO BOX 140856 SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:** | 801-366-0100 |
| **Email Address:** | kkaiser@agutah.gov |
| **Attorney:** | Daniel R. Widdison |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Attorney Terminated:** | TERMINATED: 06/16/2015 |
| **Attorney Address:** | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856) LITIGATION UNIT 160 E 300 S 6TH FL PO BOX 140856 SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:** | 801-366-0100 |
| **Email Address:** | dwiddison@agutah.gov |

## Sean D. Reyes

| | |
|---|---|
| **Party Description:** | in his official capacity as Attorney General of Utah |
| **Type:** | Defendant |
| **Attorney:** | Darin B. Goff |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856) LITIGATION UNIT 160 E 300 S 6TH FL PO BOX 140856 SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:** | 801-366-0100 |
| **Email Address:** | dgoff@agutah.gov |
| **Attorney:** | David N. Wolf |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856) LITIGATION UNIT 160 E 300 S 6TH FL |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

|                        |                                                                                                                        |
|------------------------|------------------------------------------------------------------------------------------------------------------------|
|                        | PO BOX 140856<br>SALT LAKE CITY, UT 84114-0856                                                                          |
| **Attorney Phone:**    | 801-366-0100                                                                                                            |
| **Email Address:**     | dnwolf@agutah.gov                                                                                                       |
| **Attorney:**          | Kyle J. Kaiser                                                                                                          |
| **Status:**            | LEAD ATTORNEY; ATTORNEY TO BE NOTICED                                                                                  |
| **Attorney Address:**  | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856)<br>LITIGATION UNIT<br>160 E 300 S 6TH FL<br>PO BOX 140856<br>SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:**    | 801-366-0100                                                                                                            |
| **Email Address:**     | kkaiser@agutah.gov                                                                                                      |
| **Attorney:**          | Daniel R. Widdison                                                                                                     |
| **Status:**            | ATTORNEY TO BE NOTICED                                                                                                 |
| **Attorney Terminated:** | TERMINATED: 06/16/2015                                                                                               |
| **Attorney Address:**  | UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856)<br>LITIGATION UNIT<br>160 E 300 S 6TH FL<br>PO BOX 140856<br>SALT LAKE CITY, UT 84114-0856 |
| **Attorney Phone:**    | 801-366-0100                                                                                                            |
| **Email Address:**     | dwiddison@agutah.gov                                                                                                   |

## Reporters Committee for Freedom of the Press

|                        |                                                                |
|------------------------|----------------------------------------------------------------|
| **Type:**              | Amicus                                                          |
| **Attorney:**          | Bruce D. Brown                                                  |
| **Status:**            | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED            |
| **Firm Name:**         | REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS                    |
| **Attorney Address:**  | 1101 WILSON BLVD STE 1100<br>ARLINGTON, VA 22209               |
| **Attorney Phone:**    | 703-807-2101                                                    |
| **Email Address:**     | bbrown@rcfp.org                                                 |
| **Attorney:**          | Gregg P. Leslie                                                 |
| **Status:**            | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED            |
| **Firm Name:**         | REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS                    |
| **Attorney Address:**  | 1101 WILSON BLVD STE 1100<br>ARLINGTON, VA 22209               |
| **Attorney Phone:**    | 703-807-2102                                                    |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Email Address:** | gleslie@rcfp.org |
| **Attorney:** | Jeffrey J. Hunt |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | PARR BROWN GEE & LOVELESS |
| **Attorney Address:** | 101 S 200 E STE 700<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-532-7840 |
| **Email Address:** | jhunt@parrbrown.com |
| **Attorney:** | Bryan S. Johansen |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | PARR BROWN GEE & LOVELESS |
| **Attorney Address:** | 101 S 200 E STE 700<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-532-7840 |
| **Email Address:** | bjohansen@parrbrown.com |

## Center for Food Safety

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Cristina R. Stella |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANIMAL LEGAL DEFENSE FUND |
| **Attorney Address:** | 525 E COTATI AVE<br>COTATI, CA 94931 |
| **Attorney Phone:** | 707-795-2533 |
| **Email Address:** | cstella@aldf.org |
| **Attorney:** | Kathleen Weron Toth |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | MANNING CURTIS BRADSHAW & BEDNAR PLLC |
| **Attorney Address:** | 136 E SOUTH TEMPLE STE 1300<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-363-5678 |
| **Email Address:** | ktoth@mc2b.com |
| **Attorney:** | Paige M. Tomaselli |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | CENTER FOR FOOD SAFETY |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

303 SACRAMENTO ST 2ND FL
SAN FRANCISCO, CA 94111

**Attorney Phone:**          415-826-2770

**Email Address:**          ptomaselli@centerforfoodsafety.org

## Public Justice

**Type:**          Amicus

**Attorney:**          David S. Muraskin

**Status:**          LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED

**Firm Name:**          PUBLIC JUSTICE PC

**Attorney Address:**          1620 L ST NW STE 630
WASHINGTON, DC 20036

**Attorney Phone:**          202-861-5245

**Email Address:**          dmuraskin@publicjustice.net

## Healthy Food Action

**Type:**          Amicus

## Food and Water Watch

**Type:**          Amicus

## Government Accountability Project

**Type:**          Amicus

**Attorney:**          L. Monte Sleight

**Status:**          LEAD ATTORNEY; ATTORNEY TO BE NOTICED

**Firm Name:**          LUNDELL & LOFGREN

**Attorney Address:**          1218 W SOUTH JORDAN PKWY
SALT LAKE CITY, UT 84095

**Attorney Phone:**          801-532-4663

**Email Address:**          sleight@llutahlaw.com

**Attorney:**          Sarah L. Nash

**Status:**          LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Attorney Address:** | GOVERNMENT ACCOUNTABILITY PROJECT<br>1612 K ST NW STE 1100<br>WASHINGTON, DC 20006 |
| **Attorney Phone:** | 202-457-0034 |
| **Email Address:** | sarahn@whistleblower.org |

## Erwin Chemerinsky

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Deepak Gupta |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | GUPTA WESSLER PLLC |
| **Attorney Address:** | 1735 20TH ST NW<br>WASHINGTON, DC 20009 |
| **Attorney Phone:** | 202-888-1741 |
| **Email Address:** | deepak@guptawessler.com |
| **Attorney:** | Erik Strindberg |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | STRINDBERG & SCHOLNICK LLC |
| **Attorney Address:** | PLAZA 721<br>675 E 2100 S STE 350<br>SALT LAKE CITY, UT 84106 |
| **Attorney Phone:** | 801-359-4169 |
| **Email Address:** | erik@utahjobjustice.com |

## Susannah W. Pollvogt

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Thomas N. Thompson |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | 312 S 500 E # 4<br>SALT LAKE CITY, UT 84102 |
| **Attorney Phone:** | 435-714-9406 |
| **Email Address:** | tomtriffid@gmail.com |
| **Attorney:** | Susannah W. Pollvogt |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | 1945 W MAPLE ST<br>FAYETTEVILLE, AR 72701 |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Attorney Phone:** | 802-461-7817 |
| **Email Address:** | pollvogt@uark.edu |

## Center for Constitutional Rights

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | R. Shane Johnson |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | R. SHANE JOHNSON, PLLC |
| **Attorney Address:** | 75 E 400 S STE 201<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-671-3446 |
| **Email Address:** | shane@utahdefense.com |
| **Attorney:** | Shayana Kadidal |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | CENTER FOR CONSTITUTIONAL RIGHTS<br>666 BROADWAY FLR 7<br>NEW YORK, NY 10012 |
| **Attorney Phone:** | 212-614-6438 |
| **Email Address:** | kadidal@ccrjustice.org |

## Animal Agriculture Alliance

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | John G. Dillard |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | OLSSON FRANK WEEDA TERMAN MATZ PC |
| **Attorney Address:** | 600 NEW HAMPSHIRE AVE NW STE 500<br>WASHINGTON, DC 20037 |
| **Attorney Phone:** | 202-789-1212 |
| **Email Address:** | jdillard@ofwlaw.com |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Attorney:** | Noah M. Hoagland |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | SUITTER AXLAND<br>8 E BROADWAY STE 200<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-532-7300 |
| **Email Address:** | nhoagland@sautah.com |

## Protect the Harvest

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | John G. Dillard |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | OLSSON FRANK WEEDA TERMAN MATZ PC |
| **Attorney Address:** | 600 NEW HAMPSHIRE AVE NW STE 500<br>WASHINGTON, DC 20037 |
| **Attorney Phone:** | 202-789-1212 |
| **Email Address:** | jdillard@ofwlaw.com |
| **Attorney:** | Noah M. Hoagland |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | SUITTER AXLAND<br>8 E BROADWAY STE 200<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-532-7300 |
| **Email Address:** | nhoagland@sautah.com |

## State Agricultural and Rural Leaders

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | John G. Dillard |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | OLSSON FRANK WEEDA TERMAN MATZ PC |
| **Attorney Address:** | 600 NEW HAMPSHIRE AVE NW STE 500<br>WASHINGTON, DC 20037 |
| **Attorney Phone:** | 202-789-1212 |
| **Email Address:** | jdillard@ofwlaw.com |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | |
|---|---|
| **Attorney:** | Noah M. Hoagland |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | SUITTER AXLAND<br>8 E BROADWAY STE 200<br>SALT LAKE CITY, UT 84111 |
| **Attorney Phone:** | 801-532-7300 |
| **Email Address:** | nhoagland@sautah.com |

**CALENDAR INFORMATION**
View Calendar Information

**DOCKET PROCEEDINGS (228)**

| Entry #: | Date: | Description: |
|---|---|---|
| 227 | 03/29/2018 | ORDER Withdrawing 207 Motion View Add to request for Attorney's Fees and Costs. The Parties entered into a conditional settlement 222 resolving the fee issue, conditioned on funding the settlement. The Parties then filed a Joint Notice, alerting the Court that the settlement was funded, and a check presented to local counsel for Plaintiffs on 2/22/2018. Accordingly, because the request for a court determination of Plaintiffs' costs and fees is moot, and pursuant to the parties' agreed terms in the conditional settlement, Plaintiffs' 207 Motion for an Award of Attorney's Fees and Costs is WITHDRAWN. Signed by Judge Robert J. Shelby on 3/29/18. (dla) (Entered: 03/29/2018) |
| 226 | 03/29/2018 | NOTICE of Settlement Payment View Add to request by Gary R. Herbert, Sean D. Reyes re 207 Plaintiff's MOTION for Attorney Fees and Memorandum in Support |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

|   |   | (Attachments: # 1 Text of Proposed Order) (Kaiser, Kyle) (Entered: 03/29/2018) |   |
|---|---|---|---|
| 225 | 11/21/2017 | Modification of Docket: Error: Notice of Settlement filed as a Motion. Correction: Terminated Motion and corrected filing event re 222 Joint NOTICE of Settlement and Memorandum in Support . (jds) (Entered: 11/21/2017) | Send Runner to Court |
| 224 | 11/20/2017 | ORDER granting 223 Motion for Extension of Time to File Response/Reply re 207 Plaintiff's MOTION for Attorney Fees and Memorandum in Support. Responses due by 3/19/2018. Signed by Judge Robert J. Shelby on 11/20/2017. (jds) (Entered: 11/20/2017) | View Add to request |
| 223 | 11/17/2017 | Joint MOTION for Extension of Time to File Response/Reply as to 207 Plaintiff's MOTION for Attorney Fees and Memorandum in Support and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Text of Proposed Order)(Gollan, Stewart) (Entered: 11/17/2017) | View Add to request |
| 222 | 11/17/2017 | Joint NOTICE MOTION of Settlement and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Gollan, Stewart) Modified event type on 11/21/2017 (jds). (Entered: 11/17/2017) | View Add to request |

| 221 | 11/03/2017 | ORDER granting 220 Motion for Extension of Time to File Response/Reply re 207 Plaintiff's MOTION for Attorney Fees. Responses due by 11/17/2017. Signed by Judge Robert J. Shelby on 11/3/2017. (jds) (Entered: 11/03/2017) | View Add to request |
|-----|-----|-----|-----|
| 220 | 11/03/2017 | MOTION for Extension of Time to File Response/Reply as to 207 Plaintiff's MOTION for Attorney Fees and Memorandum in Support (Unopposed) filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Kaiser, Kyle) (Entered: 11/03/2017) | View Add to request |
| 219 | 10/23/2017 | ORDER granting 218 Motion for Extension of Time to File Response/Reply re 207 Plaintiff's MOTION for Attorney Fees. Responses due by 11/3/2017. Signed by Judge Robert J. Shelby on 10/23/2017. (jds) (Entered: 10/23/2017) | View Add to request |
| 218 | 10/20/2017 | MOTION for Extension of Time to File Response/Reply as to 207 Plaintiff's MOTION for Attorney Fees and Memorandum in Support (Unopposed) filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Kaiser, Kyle) (Entered: 10/20/2017) | View Add to request |
| 217 | 09/19/2017 | ORDER granting 216 Motion for Extension of Time to File Response/Reply re 207 Plaintiff's MOTION for Attorney Fees. | View Add to request |

Responses due by 10/20/2017.
Signed by Judge Robert J.
Shelby on 9/19/2017. (jds)
(Entered: 09/19/2017)

| 216 | 09/19/2017 | MOTION for Extension of Time to File Response/Reply as to 207 Plaintiff's MOTION for Attorney Fees and Memorandum in Support (Unopposed) filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Kaiser, Kyle) (Entered: 09/19/2017) | View Add to request |
|---|---|---|---|
| 215 | 09/07/2017 | ORDER granting 214 Motion for Extension of Time to File Response/Reply re 207 Plaintiff's MOTION for Attorney Fees. Responses due by 9/20/2017. Signed by Judge Robert J. Shelby on 9/6/2017. (jds) (Entered: 09/07/2017) | View Add to request |
| 214 | 09/06/2017 | MOTION for Extension of Time to Respond to Plaintiffs' Motion for an Award of Attorney's Fees and Costs filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order [Purposed] Order Granting Non-Opposed Motion for Extension of Time)(Goff, Darin) Modified event type on 9/7/2017 (jds). (Entered: 09/06/2017) | View Add to request |
| 213 | 08/25/2017 | ORDER granting 212 Motion for Extension of Time to File Response/Reply re 207 Plaintiff's MOTION for Attorney Fees. Responses due by 9/6/2017. Signed by Judge Robert J. Shelby on 8/25/2017. (jds) | View Add to request |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

(Entered: 08/25/2017)

| | | | |
|---|---|---|---|
| 212 | 08/25/2017 | Stipulated MOTION for Extension of Time to File Response/Reply as to 207 Plaintiff's MOTION for Attorney Fees and Memorandum in Support filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Goff, Darin) (Entered: 08/25/2017) | View Add to request |
| 211 | 08/01/2017 | ORDER granting 208 Motion for Extension of Time to File a Notice of Appeal. The State has until September 6, 2017 to file a Notice of Appeal; granting 209 Motion for Extension of Time to File Response/Reply re 207 Plaintiff's MOTION for Attorney Fees. Responses due by 8/28/2017. Signed by Judge Robert J. Shelby on 8/1/2017. (jds) (Entered: 08/01/2017) | View Add to request |
| 210 | 07/27/2017 | Modification of Docket: Error: Incorrect motion type used. Correction: Changed Motion from "Extension of Time" to "Extension of Time to file Response/Reply" and linked to the correct motion re 209 MOTION for Extension of Time to File Response/Reply re 207 Plaintiff's MOTION for Attorney Fees. All corrections have been made by the court, no further action needed from filer. (jds) (Entered: 07/27/2017) | Send Runner to Court |
| 209 | 07/26/2017 | Stipulated MOTION for Extension of Time to Respond re 207 Plaintiff's MOTION for Attorney Fees filed by | View Add to request |

Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Goff, Darin) Modified event type and docket entry relationship on 7/27/2017 (jds). (Entered: 07/26/2017)

| 208 | 07/26/2017 | Ex Parte (Not Sealed) MOTION for Extension of Time to File a Notice of Appeal filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Goff, Darin) (Entered: 07/26/2017) | View Add to request |

| 207 | 07/21/2017 | Plaintiff's MOTION for Attorney Fees and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Declaration of Matthew Strugar, # 2 Declaration of Matthew Liebman, # 3 Declaration of Justin Marceau, # 4 Declaration of Alan Chen, # 5 Declaration of Stewart Gollan, # 6 Declaration of Erik Strindberg, # 7 Plaintiffs' Bill of Costs, # 8 Certificate of Service)(Strugar, Matthew) (Entered: 07/21/2017) | View Add to request |

| 206 | 07/07/2017 | CLERK'S JUDGMENT in favor of Animal Legal Defense Fund, People for the Ethical Treatment of Animals, Amy Meyer and against Gary R. Herbert, Sean D. Reyes, the Court finding that Utah Code 76-6-112 is unconstitutional, failing strict scrutiny - CASE CLOSED. Signed by ALT, Deputy Clerk. Magistrate Judge Evelyn J. | View Add to request |

Furse no longer assigned to case (alt) (Entered: 07/07/2017)

| 205 | 07/07/2017 | MEMORANDUM DECISION AND ORDER granting 106 Motion for Summary Judgment; denying 116 Sealed Motion for Summary Judgment. Signed by Judge Robert J. Shelby on 7/7/17 (alt) (Entered: 07/07/2017) | View Add to request |

| 204 | 02/15/2017 | NOTICE of SUPPLEMENTAL AUTHORITY by Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals re 106 Plaintiff's MOTION for Summary Judgment (Attachments: # 1 Exhibit A - Ninth Circuit Order in Washington v. Trump) (Strugar, Matthew) (Entered: 02/15/2017) | View Add to request |

| 203 | 11/18/2016 | NOTICE of SUPPLEMENTAL AUTHORITY by Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals re 201 Order,,, (Strugar, Matthew) (Entered: 11/18/2016) | View Add to request |

| 202 | 11/18/2016 | NOTICE OF FILING of Supplemental Brief re 201 Order,,, filed by Defendants Gary R. Herbert, Sean D. Reyes. (Kaiser, Kyle) (Entered: 11/18/2016) | View Add to request |

| 201 | 11/10/2016 | ORDER - The court orders the parties to submit supplemental briefing that addresses the following question: What is the definition of false pretenses as used in Utah Code Ann. § 76-6-112(2)(b)? In answering | View Add to request |

this question, the parties may wish to address: whether the statute incorporates common law definitions of the tort of false pretenses; whether false pretenses requires that the falsity result in actual harm; whether false pretenses includes a materiality or causality requirement; whether this question should be certified to the Utah Supreme Court; and/or examples of situations that would and would not satisfy section (b) of the statute. Each partys supplemental brief may not exceed ten pages and must be submitted by November 18, 2016. Signed by Judge Robert J. Shelby on 11/10/2016. (las) (Entered: 11/10/2016)

| 199 | 11/02/2016 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of CROSS-MOTIONS FOR SUMMARY JUDGMENT held on OCTOBER 25, 2016 before Judge ROBERT J. SHELBY. Court Reporter/Transcriber RAYMOND P. FENLON, Telephone number (801) 809-4634. NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at | View Add to request |

www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/23/2016. Redacted Transcript Deadline set for 12/5/2016. Release of Transcript Restriction set for 1/31/2017. (jds) Modified on 1/31/2017 by removing restricted text (las). (Entered: 11/02/2016)

| 198 | 10/25/2016 | Minute Entry for proceedings held before Judge Robert J. Shelby: Motion Hearing held on 10/25/2016 re: 106 Plaintiff's MOTION for Summary Judgment filed by Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals, 116 SEALED MOTION for Summary Judgment filed by Sean D. Reyes, Gary R. Herbert. The court hears oral argument and takes the matters under advisement. Cnsl may file a brief, within 10 day from the hearing date, to address the issue of severability of the statute. Attorney for Plaintiff: Matthew Liebman, Justin Marceau, Matthew Stugar, | Send Runner to Court |

|     |            | Stewart Gollan, Attorney for Defendant: Kyle Kaiser, Darin Goff. Court Reporter: Ray Fenlon.(mjm) (Entered: 10/26/2016) | |
| --- | --- | --- | --- |
| 197 | 10/25/2016 | Mail 196 sent to Susannah W. Pollvogt - Returned as undeliverable - No such number - no new address available. (kpf) (Entered: 10/25/2016) | View Add to request |
| 196 | 10/11/2016 | ORDER granting 190 Motion for Admission Pro Hac Vice of Susannah W. Pollvogt for Susannah W. Pollvogt. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov Signed by Judge Robert J. Shelby on 10/10/2016. (jds) (Entered: 10/11/2016) | View Add to request |
| 195 | 09/30/2016 | NOTICE of SUPPLEMENTAL AUTHORITY by Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals re 106 Plaintiff's MOTION for Summary Judgment, 154 Memorandum in Opposition to Motion,, (Strugar, Matthew) (Entered: 09/30/2016) | View Add to request |
| 194 | 08/19/2016 | RESPONSE to Motion re 185 MOTION to File Amicus Brief by U.S. Poultry & Egg Association, Inc. and Memorandum in Support , 183 MOTION for Leave to File Amicue Curiae Brief and Memorandum in Support , 179 MOTION to File Amicus Brief by Animal Agriculture Alliance, Protect the Harvest, and State | View Add to request |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

|   |   | Argicultural and Rural Leaders and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Strugar, Matthew) (Entered: 08/19/2016) |   |
|---|---|---|---|
| 193 | 08/19/2016 | Supplemental Response BRIEF re 147 MOTION to File Amicus Brief by Susannah W. Pollvogt and Memorandum in Support , 136 Brief, 131 Brief, 149 Brief, 124 Brief, 123 Brief filed by Defendants Gary R. Herbert, Sean D. Reyes. (Kaiser, Kyle) (Entered: 08/19/2016) | View Add to request |
| 192 | 08/11/2016 | Amended MEMORANDUM in Support re 116 SEALED MOTION for Summary Judgment filed by Movant US Poultry and Egg Association. (Pratt, George) (Entered: 08/11/2016) | View Add to request |
| 191 | 08/04/2016 | Amici Curiae BRIEF filed by Amicus Parties Animal Agriculture Alliance, Protect the Harvest, State Agricultural and Rural Leaders. (Hoagland, Noah) (Entered: 08/04/2016) | View Add to request |
| 190 | 08/03/2016 | MOTION for Admission Pro Hac Vice of Susannah W. Pollvogt, Registration fee $ 250, receipt number 1088-2534192, Fee Status: PAID. filed by Amicus Susannah W. Pollvogt. (jds) (Entered: 08/03/2016) | View Add to request |
| 189 | 08/03/2016 | AMICUS BRIEF in Support of Defendants' Motion for Summary Judgment filed by Movant Utah Farm Bureau | View Add to request |

|  |  | Federation. (Siddoway, Billie) (Entered: 08/03/2016) |  |
|---|---|---|---|
| 188 | 08/03/2016 | ORDER granting 183 Motion for Leave to File Amicus Curiae Briefs filed by Utah Farm Bureau Federation; granting 185 Motions for Leave to File Amicus Curiae Briefs filed by U.S. Poultry & Egg Association. Signed by Judge Robert J. Shelby on 8/3/2016. (jds) (Entered: 08/03/2016) | View Add to request |
| 187 | 08/03/2016 | ORDER granting 179 Motion to File Amicus Brief by Animal Agriculture Alliance, Protect the Harvest, and State Argicultural and Rural Leaders Signed by Judge Robert J. Shelby on 8/3/2016. (jds) (Entered: 08/03/2016) | View Add to request |
| 186 | 08/03/2016 | ORDER granting 184 Motion for Admission Pro Hac Vice of John G. Dillard for Animal Agriculture Alliance,John G. Dillard for Protect the Harvest,John G. Dillard for State Agricultural and Rural Leaders. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov Signed by Judge Robert J. Shelby on 8/3/2016. (jds) (Entered: 08/03/2016) | View Add to request |
| 185 | 08/03/2016 | MOTION to File Amicus Brief by U.S. Poultry & Egg Association, Inc. and Memorandum in Support filed by Movant US Poultry and Egg Association. Motions referred to Evelyn J. | View Add to request |

Furse. Attorney George W. Pratt
added to party US Poultry and
Egg Association(pty:mov)(Pratt,
George) (Entered: 08/03/2016)

184   08/03/2016   MOTION for Admission Pro Hac   View Add to request
Vice of John Garfield Dillard ,
Registration fee $ 250, receipt
number 1088-2566200, filed by
Movants Animal Agriculture
Alliance, Protect the Harvest,
State Agricultural and Rural
Leaders. (Attachments: # 1
Exhibit A - Application, # 2
Exhibit B - ECF Registration
Form, # 3 Text of Proposed
Order)(Hoagland, Noah)
(Entered: 08/03/2016)

183   08/03/2016   MOTION for Leave to File   View Add to request
Amicue Curiae Brief and
Memorandum in Support filed by
Movant Utah Farm Bureau
Federation. (Attachments: # 1
Exhibit Proposed Amicus Brief,
# 2 Text of Proposed Order)
Motions referred to Evelyn J.
Furse. Attorney Billie J.
Siddoway added to party Utah
Farm Bureau
Federation(pty:mov)(Siddoway,
Billie) (Entered: 08/03/2016)

| | | | |
|---|---|---|---|
| 182 | 08/02/2016 | Error in Motion text, Document to be refiled. MOTION for Admission Pro Hac Vice of Susannah W. Pollvogt , Registration fee $ 250, receipt number 1088-2534192, filed by Amicus Susannah W. Pollvogt. (Attachments: # 1 Exhibit Application for Admission Pro Hac Vice, # 2 Exhibit Electronic Filing Form)(Thompson, Thomas) Modified on 8/3/2016 (jds). (Entered: 08/02/2016) | View Add to request |
| 181 | 08/02/2016 | Modification of Docket: re 177 Reply Memorandum/Reply to Response to Motion and 178 Notice of Possible Error. Correction to docket has been made by linking the correct motion 116 to docket entry 177 . Notice of possible error has been handled. (jds) (Entered: 08/02/2016) | Send Runner to Court |
| 180 | 08/02/2016 | CORPORATE DISCLOSURE STATEMENT under FRCP 7.1 filed by Movants Animal Agriculture Alliance, Protect the Harvest, State Agricultural and Rural Leaders. (Hoagland, Noah) (Entered: 08/02/2016) | View Add to request |
| 179 | 08/02/2016 | MOTION to File Amicus Brief by Animal Agriculture Alliance, Protect the Harvest, and State Argicultural and Rural Leaders and Memorandum in Support filed by Movants Animal Agriculture Alliance, Protect the Harvest, State Agricultural and Rural Leaders. (Attachments: # 1 Exhibit Amici Curiae Brief) Motions referred to Evelyn J. Furse. Attorney Noah M. Hoagland added to party Animal | View Add to request |

Agriculture Alliance(pty:mov), Attorney Noah M. Hoagland added to party Protect the Harvest(pty:mov), Attorney Noah M. Hoagland added to party State Agricultural and Rural Leaders(pty:mov)(Hoagland, Noah) (Entered: 08/02/2016)

| | | | |
|---|---|---|---|
| 178 | 08/02/2016 | CLERK'S NOTICE OF POSSIBLE ERROR re 177 Reply Memorandum/Reply re 112 Defendant's MOTION for Summary Judgment. Description of possible error: Redacted Document filed using wrong filing event. Redacted Filings are to be filed using the event Redacted Document found under Other Filings then Other Documents. Filer of document 177 is directed to refile the Redacted Document using the proper filing event. (jds) (Entered: 08/02/2016) | Send Runner to Court |
| 177 | 08/01/2016 | REPLY to Response to Motion re 116 SEALED MOTION for Summary Judgment. filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Kaiser, Kyle) Modified docket entry relationship on 8/2/2016 (jds). (Entered: 08/01/2016) | View Add to request |
| 176 | 08/01/2016 | REPLY to Response to Motion re 106 Plaintiff's MOTION for Summary Judgment filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Gollan, Stewart) (Entered: 08/01/2016) | View Add to request |
| 175 | 07/28/2016 | ORDER granting 174 Motion for Leave to File an Over-Length Reply | View Add to request |

|  |  | Memorandum in Further Support of Plaintiffs Motion for Summary Judgment. Signed by Judge Robert J. Shelby on 7/28/2016. (jds) (Entered: 07/28/2016) |  |
|---|---|---|---|
| 174 | 07/27/2016 | Plaintiff's MOTION for Leave to File Excess Pages and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Gollan, Stewart) (Entered: 07/27/2016) | View Add to request |
| 173 | 07/13/2016 | **SEALED DOCUMENT** Supplemental Declaration of Matthew Strugar in Support of 171 Sealed Response re 116 Defendants' SEALED MOTION for Summary Judgment filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C - Part 1, # 4 Exhibit C - Part 2, # 5 Exhibit C - Part 3)(jds) (Entered: 07/14/2016) | View Add to request |
| 172 | 07/13/2016 | **SEALED DOCUMENT** Supplemental Declaration of Jeffrey S. Kerr in Support of 171 Sealed Response re 116 Defendants' SEALED MOTION for Summary Judgment filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (jds) (Entered: 07/14/2016) | View Add to request |
| 171 | 07/13/2016 | **SEALED DOCUMENT** Response re 116 Defendants' SEALED MOTION for Summary Judgment filed by Plaintiffs Animal | View Add to request |

|  |  |  |  |
|---|---|---|---|
|  |  | Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (jds) (Entered: 07/14/2016) |  |
| 170 | 07/13/2016 | NOTICE OF CONVENTIONAL FILING of (1) Plaintiffs' Response to Defendants' Motion for Summary Judgment; (2) Supplemental Declaration of Jeffrey Kerr in Opposition to Defendants' Motion for Summary Judgment; (3) Declaration of Matthew Strugar in Opposition to Defendants' Motion for Summary Judgment filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals re 156 Affidavit/Declaration in Opposition to Motion,, 157 Affidavit/Declaration in Opposition to Motion,,, 154 Memorandum in Opposition to Motion,, (Gollan, Stewart) (Entered: 07/13/2016) | View Add to request |
| 169 | 07/12/2016 | ORDER granting 152 MOTION to File Amicus Brief by Susannah W. Pollvogt. Signed by Judge Robert J. Shelby on 6/12/2016. (jds) (Entered: 07/12/2016) | View Add to request |
| 168 | 07/12/2016 | NOTICE of Change of Address by Matthew Liebman (Liebman, Matthew) (Entered: 07/12/2016) | View Add to request |
| 167 | 07/12/2016 | NOTICE OF HEARING ON MOTION re: 116 SEALED MOTION for Summary Judgment, 106 Plaintiff's MOTION for Summary Judgment : (Notice generated by Mary Jane McNamee) Motion Hearing set for 10/25/2016 at 1:30 PM in Rm 7.300 before Judge Robert J. Shelby. (mjm) (Entered: 07/12/2016) | Send Runner to Court |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | | | |
|---|---|---|---|
| 166 | 07/11/2016 | Motions No Longer Referred: 152 MOTION to File Amicus Brief by Susannah W. Pollvogt. District Judge to handle. (man) (Entered: 07/11/2016) | Send Runner to Court |
| 165 | 07/11/2016 | NOTICE of Change of Address by Matthew D. Strugar (Strugar, Matthew) (Entered: 07/11/2016) | View Add to request |
| 164 | 07/11/2016 | ORDER granting 161 Motion for Leave to File to File Supplementary Briefs in Response to Amicus Briefs. Signed by Judge Robert J. Shelby on 7/11/16 (alt) (Entered: 07/11/2016) | View Add to request |
| 163 | 07/11/2016 | ORDER granting 160 Motion for Extension of Time to File Response/Reply re 116 SEALED MOTION for Summary Judgment, 106 Plaintiff's MOTION for Summary Judgment: Reply memoranda due by 8/1/2016. Signed by Judge Robert J. Shelby on 7/11/16 (alt) (Entered: 07/11/2016) | View Add to request |
| 162 | 07/09/2016 | Motions No Longer Referred: 160 Joint MOTION for Extension of Time to File Response/Reply as to 158 Memorandum in Opposition to Motion, 154 Memorandum in Opposition to Motion,, , 161 Joint MOTION for Leave to File Supplementary Briefs in Response to Amicus Briefs (acb) (Entered: 07/09/2016) | Send Runner to Court |
| 161 | 07/08/2016 | Joint MOTION for Leave to File Supplementary Briefs in Response to Amicus Briefs filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of | View Add to request |

|     |            | Proposed Order) Motions referred to Evelyn J. Furse.(Kaiser, Kyle) (Entered: 07/08/2016) | |
| --- | ---------- | --- | --- |
| 160 | 07/08/2016 | Joint MOTION for Extension of Time to File Response/Reply as to 158 Memorandum in Opposition to Motion, 154 Memorandum in Opposition to Motion,, filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Kaiser, Kyle) (Entered: 07/08/2016) | View Add to request |
| 159 | 07/06/2016 | DOCKET TEXT ORDER - Any further Motion(s) to file Amicus Brief(s) must be filed no later than August 2, 2016. The movant must attach a copy of the proposed brief as an exhibit to the Motion to File. No document attached. Signed by Judge Robert J. Shelby on 7/6/2016. (jds) (Entered: 07/06/2016) | Send Runner to Court |
| 158 | 07/01/2016 | Defendant's MEMORANDUM in Opposition re 106 Plaintiff's MOTION for Summary Judgment and Memorandum in Support filed by Defendants Gary R. Herbert, Sean D. Reyes. (Kaiser, Kyle) (Entered: 07/01/2016) | View Add to request |
| 157 | 07/01/2016 | AFFIDAVIT/DECLARATION of Matthew Strugar in Opposition re 112 Defendant's MOTION for Summary Judgment and Memorandum in Support (Redacted; Original filed under seal pursuant to protective order and DUCivR 5-2(e))., 116 SEALED MOTION for Summary Judgment and Memorandum in Support (Redacted Original filed under seal | View Add to request |

|   |   |   |   |
|---|---|---|---|
| | | pursuant to protective order and DUCivR 5-2(e)) filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Exhibit A -(Redacted Original filed under seal pursuant to protective order and DUCivR 5-2(e)), # 2 Exhibit B -(Redacted Original filed under seal pursuant to protective order and DUCivR 5-2(e)), # 3 Exhibit C)(Gollan, Stewart) (Entered: 07/01/2016) | |
| 156 | 07/01/2016 | AFFIDAVIT/DECLARATION of Jeffrey Kerr in Opposition re 112 Defendant's MOTION for Summary Judgment and Memorandum in Support (Redacted; Original filed under seal pursuant to protective order and DUCivR 5-2(e))., 116 SEALED MOTION for Summary Judgment and Memorandum in Support (REDACTED - Original filed under seal pursuant to protective order and DUCivR 5-2(e)) filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Gollan, Stewart) (Entered: 07/01/2016) | View Add to request |
| 155 | 07/01/2016 | AFFIDAVIT/DECLARATION of Carter Dillard in Opposition re 112 Defendant's MOTION for Summary Judgment and Memorandum in Support (Redacted; Original filed under seal pursuant to protective order and DUCivR 5-2(e))., 116 SEALED MOTION for Summary Judgment and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of | View Add to request |

Animals. (Gollan, Stewart)
(Entered: 07/01/2016)

| | | | |
|---|---|---|---|
| 154 | 07/01/2016 | Plaintiff's MEMORANDUM in Opposition re 112 Defendant's MOTION for Summary Judgment and Memorandum in Support (Redacted; Original filed under seal pursuant to protective order and DUCivR 5-2(e))., 116 SEALED MOTION for Summary Judgment and Memorandum in Support (REDACTED -Original filed under seal pursuant to protective order and DUCivR 5-2(e)) filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Gollan, Stewart) (Entered: 07/01/2016) | View Add to request |
| 153 | 06/30/2016 | NOTICE OF DEFICIENCY re 151 MOTION for Admission Pro Hac Vice of Susannah W. Pollvogt, Registration fee $ 250, receipt number 1088-2534192. The document was filed using the courts proper motion template form but the motion template was not completed with the necessary information. The clerk requests the filer of the original document to refile the pleading. When refiling, complete all information on the motion template and verify that the correct party name the pro hac attorney is representing (movant Susannah W. Pollvogt) is in the body of the motion. The filer will use the same receipt number that was used previously so that duplicate payments are not made. The new pleading will receive a new document number on the docket. (jds) (Entered: 06/30/2016) | Send Runner to Court |

| 152 | 06/30/2016 | MOTION to File Amicus Brief by Susannah W. Pollvogt and Memorandum in Support filed by Movant Susannah W. Pollvogt. (Attachments: # 1 Exhibit Amicus Brief of Susannah W. Pollvogt, # 2 Exhibit CV of Susannah W. Pollvogt, # 3 Exhibit ALDF v. Otter (D. Idaho), # 4 Granting Motion of Susannah W. Pollvogt) Motions referred to Evelyn J. Furse.(Thompson, Thomas) (Entered: 06/30/2016) | View Add to request |
| 151 | 06/30/2016 | MOTION for Admission Pro Hac Vice of Susannah W. Pollvogt , Registration fee $ 250, receipt number 1088-2534192, filed by Movant Susannah W. Pollvogt. (Attachments: # 1 Exhibit Application to Appear Pro Hac Vice, # 2 Exhibit Consent to Electronic Filing, # 3 Text of Proposed Order Proposed Order)(Thompson, Thomas) (Entered: 06/30/2016) | View Add to request |
| 150 | 06/28/2016 | Motions No Longer Referred: 147 MOTION to File Amicus Brief by Susannah W. Pollvogt and Memorandum in Support (chambers) (Entered: 06/28/2016) | Send Runner to Court |
| 149 | 06/27/2016 | Amicus Curiae Brief in Support of Plaintiffs' Motion for Summary Judgment BRIEF filed by Movant Center for Constitutional Rights. (Johnson, R.) (Entered: 06/27/2016) | View Add to request |
| 148 | 06/27/2016 | ORDER granting 142 MOTION for Leave to File Amicus Curiae Brief by Movant Center for Constitutional Rights. Signed by Judge Robert J. | View Add to request |

Shelby on 6/27/2016. (jds)
(Entered: 06/27/2016)

| 147 | 06/24/2016 | MOTION to File Amicus Brief by Susannah W. Pollvogt and Memorandum in Support filed by Movant Susannah W. Pollvogt. (Attachments: # 1 Exhibit A. Amicus Brief, # 2 Supplement B. Order Granting Leave To File) Motions referred to Evelyn J. Furse.(Thompson, Thomas) (Entered: 06/24/2016) | View Add to request |
| --- | --- | --- | --- |
| 146 | 06/24/2016 | MOTION for Admission Pro Hac Vice of Susannah W. Pollvogt , Registration fee $ 250, receipt number 1088-2534192, filed by Movant Susannah W. Pollvogt. (Attachments: # 1 Exhibit Exh. A Pollvogt CV, # 2 Exhibit Exh. B.Proposed Order)(Thompson, Thomas) (Entered: 06/24/2016) | View Add to request |
| 145 | 06/24/2016 | ORDER granting 143 Motion for Admission Pro Hac Vice of Shayana Kadidal for Center for Constitutional Rights. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov Signed by Judge Robert J. Shelby on 6/24/16. (jlw) (Entered: 06/24/2016) | View Add to request |
| 144 | 06/24/2016 | ORDER granting 141 Motion for Leave to File Overlength Oppositions to Cross-Motions for Summary Judgment. Signed by Judge Robert J. Shelby on 6/24/16. (jlw) (Entered: 06/24/2016) | View Add to request |
| 143 | 06/23/2016 | MOTION for Admission Pro Hac Vice of Shayana Kadidal , | View Add to request |

Registration fee $ 250, receipt
number 1088-2535329, filed by
Movant Center for Constitutional
Rights. (Attachments: # 1 Text of
Proposed Order Granting
Admission Pro Hac Vice)(Johnson,
R.) (Entered: 06/23/2016)

142   06/23/2016   MOTION for Leave to File Amicus      View Add to request
Curiae Brief in Support of Plaintiffs'
Motion for Summary Judgment filed
by Movant Center for Constitutional
Rights. (Attachments: # 1
Supplement Proposed Brief of
Amicus Curiae, # 2 Text of
Proposed Order Order Granting
Leave to File Brief) Motions
referred to Evelyn J.
Furse.(Johnson, R.) (Entered:
06/23/2016)

141   06/23/2016   Joint MOTION for Leave to File      View Add to request
Overlength Oppositions to Motions
for Summary Judgment filed by
Plaintiffs Animal Legal Defense
Fund, Amy Meyer, People for the
Ethical Treatment of Animals.
(Attachments: # 1 Text of Proposed
Order) Motions referred to Evelyn
J. Furse. Attorney Matthew D.
Strugar added to party Animal
Legal Defense Fund(pty:pla),
Attorney Matthew D. Strugar added
to party Amy
Meyer(pty:pla)(Strugar, Matthew)
(Entered: 06/23/2016)

140   06/23/2016   NOTICE of Appearance by R.          View Add to request
Shane Johnson on behalf of Center
for Constitutional Rights (Johnson,
R.) (Entered: 06/23/2016)

139   06/22/2016   NOTICE OF DEFICIENCY re 138      Send Runner to Court
First MOTION for Admission Pro
Hac Vice of Susannah W. Pollvogt,

Registration fee $ 250, receipt number 1088-2534192. The document is filed incorrectly with the wrong filing party selected and without the attachments separated as directed in the on-line instructions. Filing attorney does not represent the Plaintiff in this case. The clerk requests the filer of the original document to refile the pleading. The new entry will receive a new document number on the docket. (alt) (Entered: 06/22/2016)

138   06/22/2016   First MOTION for Admission Pro Hac Vice of Susannah W. Pollvogt , Registration fee $ 250, receipt number 1088-2534192, filed by Plaintiff Animal Legal Defense Fund. Attorney Thomas N. Thompson added to party Animal Legal Defense Fund(pty:pla)(Thompson, Thomas) (Entered: 06/22/2016)   View Add to request

137   06/17/2016   ORDER granting 133 Motion for Admission Pro Hac Vice of Deepak Gupta for Erwin Chemerinsky. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov Signed by Judge Robert J. Shelby on 6/17/2016. (jds) (Entered: 06/17/2016)   View Add to request

136   06/17/2016   Brief of Amicus Curiae Erwin Chemerinsky, Founding Dean and Distinguished Professor of Law and Raymond Pryke Professor of First Amendment Law, University of California, Irvine School of Law BRIEF filed by Movant Erwin   View Add to request

| | | | |
|---|---|---|---|
| | | Chemerinsky. (Strindberg, Erik) (Entered: 06/17/2016) | |
| 135 | 06/17/2016 | ORDER granting 134 Motion for Leave to File Amicus Brief. Signed by Judge Robert J. Shelby on 6/17/2016. (jds) (Entered: 06/17/2016) | View Add to request |
| 134 | 06/17/2016 | MOTION to File Amicus Brief by Erwin Chemerrinsky and Memorandum in Support filed by Movant Erwin Chemerinsky. (Attachments: # 1 Exhibit A -- Amicus Brief) Motions referred to Evelyn J. Furse.(Strindberg, Erik) (Entered: 06/17/2016) | View Add to request |
| 133 | 06/17/2016 | MOTION for Admission Pro Hac Vice of Deepak Gupta , Registration fee $ 250, receipt number 1088-2529777, filed by Movant Erwin Chemerinsky. (Attachments: # 1 Exhibit A Application for Admission, # 2 Exhibit B ECF Registration Form)(Strindberg, Erik) (Entered: 06/17/2016) | View Add to request |
| 132 | 06/17/2016 | NOTICE of Appearance by Erik Strindberg on behalf of Erwin Chemerinsky (Strindberg, Erik) (Entered: 06/17/2016) | View Add to request |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

131  06/16/2016  Amicus Brief BRIEF filed by         View Add to request
                 Amicus Government Accountability
                 Project. (Sleight, L.) (Entered:
                 06/16/2016)

130  06/15/2016  DOCKET TEXT ORDER granting         Send Runner to Court
                 128 Motion for Leave to File Amicus
                 Brief. Movant Government
                 Accountability Project shall file their
                 respective Briefs on the court's
                 docket within five days. Signed by
                 Judge Robert J. Shelby on
                 6/15/2016. No attached document.
                 (jds) (Entered: 06/15/2016)

129  06/15/2016  ORDER granting 127 Motion for       View Add to request
                 Admission Pro Hac Vice of Sarah
                 L. Nash for Government
                 Accountability Project. Attorneys
                 admitted Pro Hac Vice may
                 download a copy of the District of
                 Utahs local rules from the courts
                 web site at
                 http://www.utd.uscourts.gov Signed
                 by Judge Robert J. Shelby on
                 6/15/2016. (jds) (Entered:
                 06/15/2016)

128  06/15/2016  MOTION for Leave to File Amicus     View Add to request
                 Brief and Memorandum in Support
                 filed by Movant Government
                 Accountability Project.
                 (Attachments: # 1 Amicus Brief)
                 Motions referred to Evelyn J.
                 Furse.(Sleight, L.) (Entered:
                 06/15/2016)

127  06/14/2016  MOTION for Admission Pro Hac        View Add to request
                 Vice of Sarah Nash , Registration
                 fee $ 250, receipt number
                 1088-2527361, filed by Movant
                 Government Accountability Project.
                 (Attachments: # 1 Text of Proposed

| | | Order)(Sleight, L.) (Entered: 06/14/2016) | |
|---|---|---|---|
| 126 | 06/14/2016 | NOTICE of Appearance by L. Monte Sleight on behalf of Government Accountability Project (Sleight, L.) (Entered: 06/14/2016) | View Add to request |
| 125 | 06/09/2016 | Motions No Longer Referred: 116 SEALED MOTION for Summary Judgment and Memorandum in Support (acb) (Entered: 06/09/2016) | Send Runner to Court |
| 124 | 06/09/2016 | Amicus Curiae BRIEF in support of 106 Plaintiffs' Motion for Summary Judgment filed by Amicus Reporters Committee for Freedom of the Press. (Brown, Bruce) Modified docket entry relationship on 6/16/2016 (jds). (Entered: 06/09/2016) | View Add to request |
| 123 | 06/09/2016 | Amicus Curiae BRIEF in Support of Plaintiffs filed by Amicus Parties Center for Food Safety, Public Justice. (Stella, Cristina) (Entered: 06/09/2016) | View Add to request |
| 122 | 06/09/2016 | DOCKET TEXT ORDER granting 119 Motion to File Amicus Brief by The Reporters Committee for Freedom of the Press; granting 120 Motion to File Amicus Brief Center for Food Safety and Public Justice. These Amici shall file their respective Briefs within the court's docket within five days. Signed by Judge Robert J. Shelby on 6/9/2016. No attached document. (jds) (Entered: 06/09/2016) | Send Runner to Court |
| 121 | 06/08/2016 | ORDER granting 118 Motion for Admission Pro Hac Vice of David S. Muraskin for Public Justice. | View Add to request |

|  |  | Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov Signed by Judge Robert J. Shelby on 6/7/2016. (jds) (Entered: 06/08/2016) |  |
| --- | --- | --- | --- |
| 120 | 06/07/2016 | MOTION to File Amicus Brief by Center for Food Safety and Public Justice filed by Amicus Center for Food Safety. (Attachments: # 1 Amicus Curiae Brief, # 2 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Stella, Cristina) (Entered: 06/07/2016) | View Add to request |
| 119 | 06/07/2016 | MOTION to File Amicus Brief by The Reporters Committee for Freedom of the Press and Memorandum in Support of Plaintiffs' Motion for Summary Judgment filed by Amicus Reporters Committee for Freedom of the Press. Motions referred to Evelyn J. Furse.(Brown, Bruce) (Entered: 06/07/2016) | View Add to request |
| 118 | 06/07/2016 | MOTION for Admission Pro Hac Vice of David S. Muraskin , Registration fee $ 250, receipt number 1088-2520514, filed by Amicus Center for Food Safety. (Attachments: # 1 Exhibit A - Application for Admission Pro Hac Vice (David S. Muraskin), # 2 Exhibit B - ECF Registration (David S. Muraskin), # 3 Text of Proposed Order)(Toth, Kathleen) (Entered: 06/07/2016) | View Add to request |
| 117 | 06/03/2016 | EXHIBIT 7 filed by Gary R. Herbert, Sean D. Reyes re 112 Defendant's MOTION for Summary Judgment | Send Runner to Court |

|  |  | and Memorandum in Support (Exhibit is a video file on a single disc - as video cannot be uploaded to the CM/ECF system, the disc will be kept in permanent storage) (jds) (Entered: 6/6/2016) (jds) (Entered: 06/06/2016) |  |
|---|---|---|---|
| 116 | 06/03/2016 | *SEALED DOCUMENT* SEALED MOTION for Summary Judgment and Memorandum in Support filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Declaration of Kyle Kaiser, # 2 Exhibit 8, # 3 Exhibit 9) Motions referred to Evelyn J. Furse.(jds) (Entered: 06/06/2016) | View Add to request |
| 115 | 06/01/2016 | **SEALED DOCUMENT** Exhibit Z re 107 Affidavit/Declaration in Support of Motion, filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Exhibit Z)(jds) (Entered: 06/02/2016) | View Add to request |
| 114 | 06/01/2016 | **SEALED DOCUMENT** Exhibit J re 107 Affidavit/Declaration in Support of Motion, filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Exhibit J)(jds) (Entered: 06/02/2016) | View Add to request |
| 113 | 06/01/2016 | **SEALED DOCUMENT** Exhibit B re 107 Affidavit/Declaration in Support of Motion, filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Exhibit B)(jds) (Entered: 06/02/2016) | View Add to request |

| | | | |
|---|---|---|---|
| 112 | 05/31/2016 | REDACTED re 116 SEALED MOTION for Summary Judgment (Original filed under seal pursuant to protective order and DUCivR 5-2(e)). filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Appendix of Exhibits, # 2 Exhibit 1 - HB 187, # 3 Exhibit 2 - HB 187 Hearing, # 4 Exhibit 3 - HB 187 Committee Report, # 5 Exhibit 4 - HB 187 Second Substitute, # 6 Exhibit 5 - HB 187 Third Substitute, # 7 Exhibit 6 - Amy Meyers Depostions, # 8 Exhibit 7 - Amy Meyer Video (filed conventionally), # 9 Exhibit 8 - ALDF 30(b)(6) Depo, # 10 Exhibit 9 - PETA 30(b)(6) Depo, # 11 Exhibit 10 - Eric Parks' Expert Report, # 12 Exhibit 11 - Dr. WIlliam James' Expert Report, # 13 Exhibit 12 - Dr. David Pyle Expert Report, # 14 Exhibit 13 - Portions of Larry Lewis Deposition, # 15 Exhibit 14 - Portions of Ryan Holt Deposition, # 16 Exhibit 15 - Dr. Amy Sanders Expert Report)(Kaiser, Kyle) Modified on 6/6/2016; termed motion per sealed filing and added docket entry relationship (jds). Modified on 6/6/2016 (jds). (Entered: 05/31/2016) | View Add to request |
| 111 | 05/31/2016 | NOTICE OF CONVENTIONAL FILING of Exhibits B, J, and Z to the Declaration of Matthew Strugar (Doc. # 107) filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals re 107 Affidavit/Declaration in Support of Motion,,,,,,, (Gollan, Stewart) (Entered: 05/31/2016) | View Add to request |
| 110 | 05/31/2016 | AFFIDAVIT/DECLARATION of Jeff | View Add to request |

|     |            |                                                                                                                                                                                                                                                                                                                                          |                     |
| --- | ---------- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ------------------- |
|     |            | Kerr in Support re 106 Plaintiff's MOTION for Summary Judgment and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Gollan, Stewart) (Entered: 05/31/2016)                                                                                                      |                     |
| 109 | 05/31/2016 | AFFIDAVIT/DECLARATION of Carter Dillard in Support re 106 Plaintiff's MOTION for Summary Judgment and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Gollan, Stewart) (Entered: 05/31/2016)                                                                   | View Add to request |
| 108 | 05/31/2016 | AFFIDAVIT/DECLARATION of Amy Meyer in Support re 106 Plaintiff's MOTION for Summary Judgment and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Gollan, Stewart) (Entered: 05/31/2016)                                                                        | View Add to request |
| 107 | 05/31/2016 | AFFIDAVIT/DECLARATION of Matthew Strugar in Support re 106 Plaintiff's MOTION for Summary Judgment and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Exhibit A to Declaration of Matthew Strugar, # 2 Exhibit B (Conventionally Filed), # 3 Exhibit C to Declaration of Matthew Strugar, # 4 Exhibit D to Declaration of Matthew Strugar, # 5 Exhibit E to Declaration of Matthew Strugar, # 6 Exhibit F to Declaration of Matthew | View Add to request |

Strugar, # 7 Exhibit G to
Declaration of Matthew Strugar, # 8
Exhibit H to Declaration of Matthew
Strugar, # 9 Exhibit I to Declaration
of Matthew Strugar, # 10 Exhibit J
to Declaration of Matthew Strugar
(Conventionally Filed), # 11 Exhibit
K to Declaration of Matthew
Strugar, # 12 Exhibit L to
Declaration of Matthew Strugar, #
13 Exhibit M to Declaration of
Matthew Strugar, # 14 Exhibit N to
Declaration of Matthew Strugar, #
15 Exhibit O to Declaration of
Matthew Strugar, # 16 Exhibit P to
Declaration of Matthew Strugar, #
17 Exhibit Q to Declaration of
Matthew Strugar, # 18 Exhibit R to
Declaration of Matthew Strugar, #
19 Exhibit S to Declaration of
Matthew Strugar, # 20 Exhibit T to
Declaration of Matthew Strugar, #
21 Exhibit U to Declaration of
Matthew Strugar, # 22 Exhibit V to
Declaration of Matthew Strugar, #
23 Exhibit W to Declaration of
Matthew Strugar, # 24 Exhibit X to
Declaration of Matthew Strugar, #
25 Exhibit Y to Declaration of
Matthew Strugar, # 26 Exhibit Z to
Declaration of Matthew Strugar
(Conventionally Filed), # 27 Exhibit
AA to Declaration of Matthew
Strugar, # 28 Exhibit BB to
Declaration of Matthew
Strugar)(Gollan, Stewart) (Entered:
05/31/2016)

| | | | |
|---|---|---|---|
| 106 | 05/31/2016 | Plaintiff's MOTION for Summary Judgment and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Gollan, Stewart) (Entered: 05/31/2016) | View Add to request |

| | | | |
|---|---|---|---|
| 105 | 05/26/2016 | ORDER granting 104 Motion for Leave to File Over-length Summary Judgment Motions and Memoranda. Signed by Judge Robert J. Shelby on 5/26/2016. (jds) (Entered: 05/26/2016) | View Add to request |
| 104 | 05/26/2016 | Joint MOTION for Leave to File Excess Pages filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Kaiser, Kyle) (Entered: 05/26/2016) | View Add to request |
| | 04/15/2016 | Deadlines/Hearings terminated. The court strikes the Status Conference set for 5/5/2016 at 3:00 p.m. The court has extended the dispositive motion filing deadline to 5/30/2016, per docket entry 103 entered on 3/10/2016. Mary Jane McNamee (mjm) (Entered: 04/15/2016) | Send Runner to Court |
| 103 | 03/10/2016 | ORDER granting 102 Motion for Extension of Time. All parties shall have up to and including May 30, 2016 to file dispositive motions in the case. All other deadlines put in place in the Amended Scheduling Order 78 will remain in place. Signed by Magistrate Judge Evelyn J. Furse on 3/10/2016. (lnp) (Entered: 03/10/2016) | View Add to request |
| 102 | 03/09/2016 | MOTION for Extension of Time To File Dispositive Motions filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Kaiser, Kyle) (Entered: 03/09/2016) | View Add to request |

| | | | |
|---|---|---|---|
| 101 | 03/09/2016 | WITHDRAWAL OF MOTION by Defendants Gary R. Herbert, Sean D. Reyes re 96 Defendant's MOTION for Extension of Time for Expert Witness Discovery and Dispositive Motion Deadline and Memorandum in Support filed by Sean D. Reyes, Gary R. Herbert . (Kaiser, Kyle) (Entered: 03/09/2016) | View Add to request |
| 100 | 03/09/2016 | STIPULATION Re Expert Witness Discovery and Dispositive Motions by Gary R. Herbert, Sean D. Reyes. (Kaiser, Kyle) (Entered: 03/09/2016) | View Add to request |
| 99 | 03/03/2016 | NOTICE of Appearance by Darin B. Goff on behalf of Gary R. Herbert, Sean D. Reyes (Goff, Darin) (Entered: 03/03/2016) | View Add to request |
| 98 | 03/02/2016 | DOCKET TEXT ORDER taking under advisement 96 Motion for Extension of Time. Opposition, if any, due Friday, March 11, 2016. Signed by Magistrate Judge Evelyn J. Furse on 3/2/2016. No attached document. (man) (Entered: 03/02/2016) | Send Runner to Court |
| 97 | 03/01/2016 | EXPERT REPORT of Ken Silverstein filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals.(Gollan, Stewart) (Entered: 03/01/2016) | View Add to request |
| 96 | 03/01/2016 | Defendant's MOTION for Extension of Time for Expert Witness Discovery and Dispositive Motion Deadline and Memorandum in Support filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed | View Add to request |

|   |   |   |   |
|---|---|---|---|
| | | Order) Motions referred to Evelyn J. Furse.(Kaiser, Kyle) (Entered: 03/01/2016) | |
| 95 | 02/29/2016 | EXPERT REPORT of PROFESSOR BROOKE KROEGER, PROFESSOR TED CONOVER, AND MICKEY H. OSTERREICHER, ESQ. (Rebuttal Report) filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals.(Gollan, Stewart) (Entered: 02/29/2016) | View Add to request |
| 94 | 02/29/2016 | EXPERT REPORT of Sean Thomas (Counter Report) filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals.(Gollan, Stewart) (Entered: 02/29/2016) | View Add to request |
| 93 | 02/29/2016 | EXPERT REPORT of Travis Powell (Rebuttal Report) filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals, Amicus Center for Food Safety.(Gollan, Stewart) (Entered: 02/29/2016) | View Add to request |
| 92 | 02/29/2016 | EXPERT REPORT of Eric Parks filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Exhibit A - Counter Expert Report of Eric Parks, # 2 Exhibit B - Eric Parks's CV)(Kaiser, Kyle) (Entered: 02/29/2016) | View Add to request |
| 91 | 02/29/2016 | EXPERT REPORT of Dr. William James filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Exhibit A - Counter Expert Report of Dr. | View Add to request |

|  |  | William James)(Kaiser, Kyle) (Entered: 02/29/2016) |  |
|---|---|---|---|
| 90 | 02/29/2016 | EXPERT REPORT of Dr. Amy Kristin Sanders filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Exhibit A - Counter Expert Report of Dr. Amy Kristin Sanders)(Kaiser, Kyle) (Entered: 02/29/2016) | View Add to request |
| 89 | 01/29/2016 | EXPERT REPORT of Dr. David A. Pyle Witness filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Exhibit A - Expert Report of Dr. David A. Pyle, # 2 Exhibit B - Dr. David A. Pyle)(Kaiser, Kyle) (Entered: 01/29/2016) | View Add to request |
| 88 | 01/29/2016 | EXPERT REPORT of Dr. William James Witness filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Exhibit A - Expert Report of Dr. William James, # 2 Exhibit B - Dr. William James's CV)(Kaiser, Kyle) (Entered: 01/29/2016) | View Add to request |
| 87 | 01/29/2016 | EXPERT REPORT of Dr. Amy Kristin Sanders Witness filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Exhibit A - Expert Report of Dr. Amy K. Sanders, # 2 Exhibit B - Dr. Amy K. Sanders's CV)(Kaiser, Kyle) (Entered: 01/29/2016) | View Add to request |
| 86 | 01/29/2016 | EXPERT REPORT of Travis Powell Witness filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Exhibit Attachment 1 to Expert Report of Travis Powell, # 2 Exhibit | View Add to request |

Attachment 2 to Expert Report of
Travis Powell, # 3 Exhibit
Attachment 3 to Expert Report of
Travis Powell, # 4 Exhibit
Attachment 4.1 to Expert Report of
Travis Powell, # 5 Exhibit
Attachment 4.2 to Expert Report of
Travis Powell, # 6 Exhibit
Attachment 5.1 to Expert Report of
Travis Powell, # 7 Exhibit
Attachment 5.2 to Expert Report of
Travis Powell, # 8 Exhibit
Attachment 6 to Expert Report of
Travis Powell, # 9 Exhibit
Attachment 7 to Expert Report of
Travis Powell, # 10 Exhibit
Attachment 8 to Expert Report of
Travis Powell, # 11 Exhibit
Attachment 9 to Expert Report of
Travis Powell, # 12 Exhibit
Attachment 10 to Expert Report of
Travis Powell, # 13 Exhibit
Attachment 11 to Expert Report of
Travis Powell, # 14 Exhibit
Attachment 12 to Expert Report of
Travis Powell, # 15 Exhibit
Attachment 13 to Expert Report of
Travis Powell)(Gollan, Stewart)
(Entered: 01/29/2016)

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | | | |
|---|---|---|---|
| 85 | 01/29/2016 | EXPERT REPORT of Sean Thomas Witness filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals.(Gollan, Stewart) (Entered: 01/29/2016) | View Add to request |
| 84 | 01/29/2016 | EXPERT REPORT of Will Potter, M.A. Witness filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals.(Gollan, Stewart) (Entered: 01/29/2016) | View Add to request |
| 83 | 01/29/2016 | EXPERT REPORT of Thomas Devine, J.D. Witness filed by Plaintiffs Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals.(Gollan, Stewart) (Entered: 01/29/2016) | View Add to request |
| 82 | 01/29/2016 | ORDER granting 81 Motion to Dismiss Party. Daniel Hauff terminated. Signed by Judge Robert J. Shelby on 1/28/2016. (jds) (Entered: 01/29/2016) | View Add to request |
| 81 | 01/28/2016 | Joint MOTION to Dismiss Party Daniel Hauff and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Daniel Hauff, Amy Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Text of Proposed Order Re: Motion to Dismiss Plaintiff Daniel Hauff)(Gollan, Stewart) (Entered: 01/28/2016) | View Add to request |
| 80 | 01/20/2016 | NOTICE of Change of Address by Stewart W. Gollan (Attorney for Plaintiffs) (Gollan, Stewart) (Entered: 01/20/2016) | View Add to request |

| | | | |
|---|---|---|---|
| 79 | 12/21/2015 | CERTIFICATE OF SERVICE by Animal Legal Defense Fund, Amy Meyer, People for the Ethical Treatment of Animals Notice of Subpoena of Ryan Holt, Notice of Deposition of Ryan Holt, and Notice of Deposition of Larry Lewis (Gollan, Stewart) (Entered: 12/21/2015) | View Add to request |
| 78 | 11/05/2015 | ORDER granting in part and denying in part 75 Motion to Amend Scheduling Order. Discovery due by 3/30/2016. Motions due by 4/29/2016. Status Conference set for 5/5/2016 at 03:00 PM in Rm 7.300 before Judge Robert J. Shelby. Signed by Magistrate Judge Evelyn J. Furse on 11/5/2015. (jds) (Entered: 11/05/2015) | View Add to request |
| 77 | 11/05/2015 | STIPULATION Re: Discovery Dispute by People for the Ethical Treatment of Animals. (Strugar, Matthew) (Entered: 11/05/2015) | View Add to request |
| 76 | 10/30/2015 | REQUEST to Submit for Decision re 75 Defendant's MOTION to Amend/Correct 72 Order on Motion for Scheduling Order, filed by Defendants Gary R. Herbert, Sean D. Reyes. (Kaiser, Kyle) (Entered: 10/30/2015) | View Add to request |
| 75 | 10/16/2015 | Defendant's MOTION to Amend/Correct 72 Order on Motion for Scheduling Order, filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Kaiser, Kyle) Modified event type on 11/5/2015 (jds). (Entered: 10/16/2015) | View Add to request |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| | | | |
|---|---|---|---|
| 74 | 10/08/2015 | ORDER granting 73 Motion for Admission Pro Hac Vice of Christopher Berry for Animal Legal Defense Fund,Christopher Berry for Daniel Hauff. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 10/8/2015. (jds) (Entered: 10/08/2015) | View Add to request |
| 73 | 10/08/2015 | MOTION for Admission Pro Hac Vice of Christopher Berry , Registration fee $ 15, receipt number 1088-2357320, filed by Plaintiffs Animal Legal Defense Fund, Daniel Hauff. (Attachments: # 1 Exhibit Application for Pro Hac Vice, # 2 Exhibit ECF Registration Form, # 3 Text of Proposed Order)(Gollan, Stewart) (Entered: 10/08/2015) | View Add to request |
| 72 | 09/30/2015 | ORDER granting 71 Stipulated Motion to Amend Scheduling Order. Discovery due by 2/1/2016. Motions due by 3/1/2016. If the parties do not intend to file dispositive or potentially dispositive motions, a scheduling conference will be held for purposes of setting a trial date, Status Conference set for 3/15/2016 at 02:00 PM in Rm 7.300 before Judge Robert J. Shelby. Signed by Magistrate Judge Evelyn J. Furse on 9/30/2015. (jds) (Entered: 09/30/2015) | View Add to request |
| 71 | 09/17/2015 | Stipulated MOTION for Scheduling Order and Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Daniel Hauff, Amy | View Add to request |

|  |  |  |  |
|---|---|---|---|
|  |  | Meyer, People for the Ethical Treatment of Animals. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Gollan, Stewart) (Entered: 09/17/2015) |  |
| 70 | 08/20/2015 | ORDER granting 69 Motion for Disclosure. See Order for details. Signed by Magistrate Judge Evelyn J. Furse on 8/20/2015. (las) (Entered: 08/20/2015) | View Add to request |
| 69 | 08/19/2015 | Joint MOTION for Disclosure of Records filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Kaiser, Kyle) (Entered: 08/19/2015) | View Add to request |
| 68 | 07/14/2015 | AMENDED SCHEDULING ORDER: Discovery due by 11/16/2015. Motions due by 12/16/2015. Status Conference set for 12/21/2015 at 02:00 PM in Rm 7.300 before Judge Robert J. Shelby. Signed by Magistrate Judge Evelyn J. Furse on 7/14/2015. (las) (Entered: 07/14/2015) | View Add to request |
| 67 | 06/22/2015 | Stipulated MOTION to Amend/Correct 65 Order on Motion for Scheduling Order filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Wolf, David) (Entered: 06/22/2015) | View Add to request |
| 66 | 06/16/2015 | SUBSTITUTION OF COUNSEL David N. Wolf replacing Daniel R. Widdison as counsel on behalf of Gary R. Herbert, Sean D. Reyes. | View Add to request |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

|    |            |                                                                                                                                                                                                                                                                                     |                           |
|----|------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------------------------|
|    |            | (Wolf, David) (Entered: 06/16/2015)                                                                                                                                                                                                                                                  |                           |
| 65 | 03/27/2015 | ORDER granting 63 Motion for Stipulated Motion to Amend Scheduling Order. Discovery due by 11/30/2015. Motions due by 12/31/2015. Signed by Magistrate Judge Evelyn J. Furse on 03/26/2015. (tls) (Entered: 03/27/2015)                                                               | View Add to request       |
| 64 | 03/24/2015 | ORDER REFERRING CASE to Magistrate Judge Evelyn J. Furse under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. No attached document. Motions referred to Evelyn J. Furse. Signed by Judge Robert J. Shelby on 3/24/2015. (las) (Entered: 03/24/2015) | Send Runner to Court      |
| 63 | 03/20/2015 | Stipulated MOTION to Amend/Correct 58 Scheduling Order, filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Kaiser, Kyle) Modified by changing event type to Motion for Scheduling Order on 3/27/2015 (tls). (Entered: 03/20/2015)          | View Add to request       |
| 62 | 10/06/2014 | CERTIFICATE OF SERVICE by Animal Legal Defense Fund, Daniel Hauff, Amy Meyer, People for the Ethical Treatment of Animals Plaintiffs' Rule 26 Initial Disclosures (Gollan, Stewart) (Entered: 10/06/2014)                                                                             | View Add to request       |
| 61 | 09/10/2014 | DOCKET TEXT ORDER - The court orders the parties to follow the Short Form Discovery Motion procedure as outlined in the attached document in this case for                                                                                                                            | View Add to request       |

all discovery disputes arising after this date. Signed by Judge Robert J. Shelby on 9/10/2014. (jds) (Entered: 09/10/2014)

60   09/08/2014   Defendants' ANSWER to Complaint with Jury Demand filed by Gary R. Herbert, Sean D. Reyes.(Widdison, Daniel) (Entered: 09/08/2014)   View Add to request

59   09/08/2014   NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing held on August 7, 2014 before Judge Robert J. Shelby. Court Reporter/Transcriber Laura Robinson, Telephone number 801-328-4800. NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/29/2014. Redacted Transcript Deadline set for 10/9/2014. Release of Transcript Restriction set for 12/8/2014. (las) Modified on 12/8/2014 by removing restricted text(las). (Entered:   View Add to request

09/08/2014)

| 58 | 09/08/2014 | SCHEDULING ORDER: Amended Pleadings due by 12/1/2014. Joinder of Parties due by 12/1/2014. Discovery due by 10/15/2015. Motions due by 11/16/2015. Status Conference set for 11/23/2015 02:00 PM in Rm 7.300 before Judge Robert J. Shelby. Signed by Magistrate Judge Evelyn J. Furse on 9/8/2014. (las) (Entered: 09/08/2014) | View Add to request |
| 57 | 08/22/2014 | ORDER granting 56 Motion for Extension of Time to Answer re 2 Complaint,. Answer deadline updated for Gary R. Herbert answer due 9/9/2014; Sean D. Reyes answer due 9/9/2014. Signed by Judge Robert J. Shelby on 8/22/2014. (las) (Entered: 08/25/2014) | View Add to request |
| 56 | 08/22/2014 | MOTION for Extension of Time to File Answer re 2 Complaint, filed by Defendants Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Kaiser, Kyle) (Entered: 08/22/2014) | View Add to request |
| 55 | 08/21/2014 | REPORT OF ATTORNEY PLANNING MEETING. (Attachments: # 1 Text of Proposed Order (Scheduling))(Gollan, Stewart) (Entered: 08/21/2014) | View Add to request |
| 53 | 08/08/2014 | ORDER granting in part and denying in part 24 Motion to Dismiss. Signed by Judge Robert J. Shelby on 8/8/2014. (las) (Entered: 08/08/2014) | View Add to request |
| 54 | 08/07/2014 | Minute Entry for proceedings held before Judge Robert J. Shelby: | Send Runner to Court |

Motion Hearing held on 8/7/2014, re: 24 MOTION to Dismiss filed by John Swallow, Gary R. Herbert. The court hears oral argument. For the reasons stated on the record, the court GRANTS IN PART and DENIES IN PART the Motion as follows: Defendants Motion to Dismiss Plaintiffs CounterPunch, Will Potter, James McWilliams, and Jesse Fruhwith is GRANTED; Defendants Motion to Dismiss Plaintiffs Animal Legal Defense Fund, People for the Ethical Treatment of Animals, Daniel Hauff, and Amy Meyer is DENIED; Defendants Motion to Dismiss Plaintiffs Fourth Cause of Action, for alleged Equal Protection and Due Process violations, is DENIED; and Defendants Motion to Dismiss Plaintiffs Third Cause of Action, for Preemption by False Claims Act, is GRANTED. Attorney for Plaintiff: Stewart Gollan, Matthew Liebman, Matthew Strugar, Attorney for Defendant: Kyle Kaiser, Daniel Widdison. Court Reporter: Laura Robinson.(mjm) (Entered: 08/15/2014)

| 52 | 06/20/2014 | NOTICE of SUPPLEMENTAL AUTHORITY by Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter re 33 Memorandum in Opposition to Motion, (Attachments: # 1 Exhibit) (Strugar, Matthew) (Entered: 06/20/2014) | View Add to request |
| 51 | 03/18/2014 | AMENDED NOTICE OF HEARING ON MOTION re: 24 MOTION to | Send Runner to Court |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

|  |  | Dismiss : (Notice generated by Mary Jane McNamee) Motion Hearing RESET for 8/7/2014 AT 2:30 PM in Rm 7.300 before Judge Robert J. Shelby. Court Address: NEW COURTHOUSE - 351 South West Temple, Salt Lake City, Utah (mjm) (Entered: 03/18/2014) |  |
| 50 | 01/21/2014 | AMENDED NOTICE OF HEARING ON MOTION re: 24 MOTION to Dismiss : (Notice generated by Mary Jane McNamee) Motion Hearing RESET for 5/15/2014 AT 3:00 PM in Room 220 before Judge Robert J. Shelby. (mjm) (Entered: 01/21/2014) | Send Runner to Court |
| 49 | 01/15/2014 | Amicus BRIEF re 34 MOTION to File Amicus Brief by Reporters Committee for Freedom of the Press and Memorandum in Support of Plaintiffs filed by Amicus Reporters Committee for Freedom of the Press. (Brown, Bruce) (Entered: 01/15/2014) | View Add to request |
| 48 | 01/10/2014 | NOTICE OF HEARING ON MOTION re: 24 MOTION to Dismiss : (Notice generated by Mary Jane McNamee) Motion Hearing set for 2/6/2014 at 2:30 PM in Room 220 before Judge Robert J. Shelby. (mjm) (Entered: 01/10/2014) | Send Runner to Court |
| 47 | 01/10/2014 | ORDER granting 46 Motion to Substitute Party. Sean D. Reyes added. John Swallow (in his official capacity as Attorney General of Utah) terminated. Signed by Judge Robert J. Shelby on 01/10/2014. (tls) (Entered: 01/10/2014) | View Add to request |
| 46 | 01/09/2014 | MOTION to Substitute Party in Interest [Sean D. Reyes] filed by | View Add to request |

|  |  |  |  |
|---|---|---|---|
|  |  | Defendants Gary R. Herbert, John Swallow. (Attachments: # 1 Text of Proposed Order)(Widdison, Daniel) (Entered: 01/09/2014) |  |
| 45 | 01/09/2014 | REPLY to Response to Motion re 24 MOTION to Dismiss filed by Defendants Gary R. Herbert, John Swallow. (Widdison, Daniel) (Entered: 01/09/2014) | View Add to request |
| 44 | 01/09/2014 | Amicus Curiae BRIEF In Support of Plaintiffs filed by Amicus Center for Food Safety. (Stella, Cristina) (Entered: 01/09/2014) | View Add to request |
| 43 | 12/23/2013 | ORDER granting Center for Food Safety, Public Justice, Healthy Food Action, and Food & Water Watch's 40 Motion to File Amicus Brief. Signed by Judge Robert J. Shelby on 12/23/13 (alt) (Entered: 12/23/2013) | View Add to request |
| 42 | 12/23/2013 | ORDER granting Reporters Committee for Freedom of the Press' 34 Motion to File Amicus Brief. Signed by Judge Robert J. Shelby on 12/23/13 (alt) (Entered: 12/23/2013) | View Add to request |
| 41 | 12/19/2013 | NOTICE OF ADR, e-mailed or mailed to Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter, Movants Center for Food Safety, Reporters Committee for Freedom of the Press, Defendants Gary R. Herbert, John Swallow. (jmr) (Entered: 12/19/2013) | View Add to request |
| 40 | 12/17/2013 | MOTION to File Amicus Brief by | View Add to request |

|    |            | Center for Food Safety et al. filed by Movant Center for Food Safety. (Attachments: # 1 Exhibit Proposed Brief of Amici Curiae, # 2 Text of Proposed Order)(Stella, Cristina) (Entered: 12/17/2013) | |
| 39 | 12/16/2013 | ORDER granting 37 Motion for Admission Pro Hac Vice of Paige M. Tomaselli for Center for Food Safety. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 12/13/2013. (tls) (Entered: 12/16/2013) | View Add to request |
| 38 | 12/16/2013 | ORDER granting 36 Motion for Admission Pro Hac Vice of Cristina R. Stella for Center for Food Safety. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 12/13/2013. (tls) (Entered: 12/16/2013) | View Add to request |
| 37 | 12/13/2013 | MOTION for Admission Pro Hac Vice of Paige M. Tomaselli , Registration fee $ 15, receipt number 1088-1963203, filed by Movant Center for Food Safety. (Attachments: # 1 Exhibit A - PHV Application (Paige M. Tomaselli), # 2 Exhibit B - ECF Registration (Paige M. Tomaselli), # 3 Exhibit C - Proposed Order (Paige M. Tomaselli))(Toth, Kathleen) (Entered: 12/13/2013) | View Add to request |
| 36 | 12/13/2013 | MOTION for Admission Pro Hac | View Add to request |

Vice of Cristina R. Stella ,
Registration fee $ 15, receipt
number 1088-1963193, filed by
Movant Center for Food Safety.
(Attachments: # 1 Exhibit A - PHV
Application (Cristina R. Stella), # 2
Exhibit B - ECF Registration
(Cristina R. Stella), # 3 Exhibit C -
Proposed Order (Cristina R.
Stella))(Toth, Kathleen) (Entered:
12/13/2013)

| 35 | 12/13/2013 | NOTICE of Appearance by Kathleen Weron Toth on behalf of Center for Food Safety (Toth, Kathleen) (Entered: 12/13/2013) | View Add to request |
| 34 | 12/10/2013 | MOTION to File Amicus Brief by Reporters Committee for Freedom of the Press and Memorandum in Support of Plaintiffs filed by Movant Reporters Committee for Freedom of the Press. (Brown, Bruce) (Entered: 12/10/2013) | View Add to request |
| 33 | 12/10/2013 | MEMORANDUM in Opposition re 24 MOTION to Dismiss filed by Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter. (Gollan, Stewart) (Entered: 12/10/2013) | View Add to request |
| 32 | 12/03/2013 | ORDER granting 31 Motion for Leave to File an Overlength Memorandum in Opposition to Defendants' Motion to Dismiss. Signed by Judge Robert J. Shelby on 12/03/2013. (tls) (Entered: 12/03/2013) | View Add to request |
| 31 | 12/03/2013 | Stipulated MOTION for Leave to File Excess Pages and | View Add to request |

Memorandum in Support filed by Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter. (Attachments: # 1 Text of Proposed Order Granting Motion to File Overlength Memorandum)(Gollan, Stewart) (Entered: 12/03/2013)

| 30 | 11/27/2013 | ORDER granting 26 Motion for Admission Pro Hac Vice of Bruce D. Brown for Reporters Committee for Freedom of the Press. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 11/27/2013. (tls) (Entered: 11/27/2013) | View Add to request |

| 29 | 11/27/2013 | ORDER granting 27 Motion for Admission Pro Hac Vice of Gregg Leslie for Reporters Committee for Freedom of the Press. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 11/27/2013. (tls) (Entered: 11/27/2013) | View Add to request |

| 28 | 11/27/2013 | NOTICE of Appearance by Bryan S. Johansen on behalf of Reporters Committee for Freedom of the Press (Johansen, Bryan) (Entered: 11/27/2013) | View Add to request |

| 27 | 11/27/2013 | MOTION for Admission Pro Hac | View Add to request |

Vice of Gregg Leslie , Registration fee $ 15, receipt number 1088-1954178, filed by Movant Reporters Committee for Freedom of the Press. (Attachments: # 1 Exhibit Application, # 2 Exhibit Proposed Order)(Hunt, Jeffrey) (Entered: 11/27/2013)

| 26 | 11/27/2013 | MOTION for Admission Pro Hac Vice of Bruce D. Brown , Registration fee $ 15, receipt number 1088-1954166, filed by Movant Reporters Committee for Freedom of the Press. (Attachments: # 1 Exhibit Application, # 2 Exhibit Proposed Order)(Hunt, Jeffrey) (Entered: 11/27/2013) | View Add to request |

Animal Legal Defense Fund et al v. Herbert et al, 2:13CV00679 (2013)

| 25 | 11/27/2013 | NOTICE of Appearance by Jeffrey J. Hunt on behalf of Reporters Committee for Freedom of the Press (Hunt, Jeffrey) (Entered: 11/27/2013) | View Add to request |
| 24 | 10/11/2013 | Defendant's MOTION to Dismiss and Memorandum in Support filed by Defendants Gary R. Herbert, John Swallow. (Widdison, Daniel) Modified on 10/11/2013: per phone call, added John Swallow as filer of document (alt) (Entered: 10/11/2013) | View Add to request |
| | 10/11/2013 | Modification of Docket re 24 MOTION to Dismiss. Error: Only one filer of two was originally selected. Correction: John Swallow has been added as a filer of the motion per phone call. (alt) (Entered: 10/11/2013) | Send Runner to Court |
| 23 | 08/26/2013 | ORDER granting 21 Motion for Admission Pro Hac Vice of Alan Chen for Animal Legal Defense Fund,Alan Chen for Counterpunch,Alan Chen for Jesse Fruhwirth,Alan Chen for Daniel Hauff,Alan Chen for James McWilliams,Alan Chen for Amy Meyer,Alan Chen for People for the Ethical Treatment of Animals,Alan Chen for Will Potter. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 8/26/13. (jmr) (Entered: 08/26/2013) | View Add to request |
| 22 | 08/26/2013 | ORDER granting 20 Motion for | View Add to request |

Admission Pro Hac Vice of Edward T. Ramey for Animal Legal Defense Fund,Edward T. Ramey for Counterpunch,Edward T. Ramey for Jesse Fruhwirth,Edward T. Ramey for Daniel Hauff,Edward T. Ramey for James McWilliams,Edward T. Ramey for Amy Meyer,Edward T. Ramey for People for the Ethical Treatment of Animals,Edward T. Ramey for Will Potter. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 8/26/13. (jmr) (Entered: 08/26/2013)

| | | | |
|---|---|---|---|
| 21 | 08/26/2013 | MOTION for Admission Pro Hac Vice of Alan Chen , Registration fee $ 15, receipt number 1088-1896698, filed by Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter. (Attachments: # 1 Exhibit Exhibit A - Pro Hac Application, # 2 Exhibit Exhibit B - ECF Application, # 3 Text of Proposed Order Pro Hac Proposed Order)(Gollan, Stewart) (Entered: 08/26/2013) | View Add to request |
| 20 | 08/26/2013 | MOTION for Admission Pro Hac Vice of Edward T. Ramey , Registration fee $ 15, receipt number 1088-1896690, filed by Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter. (Attachments: # 1 | View Add to request |

|  |  |  |  |
|---|---|---|---|
|  |  | Exhibit Exhibit A - Pro Hac Application)(Gollan, Stewart) (Entered: 08/26/2013) |  |
| 19 | 08/05/2013 | ORDER granting 15 Motion for Admission Pro Hac Vice of Matthew Strugar for People for the Ethical Treatment of Animals. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 08/02/2013. (tls) (Entered: 08/05/2013) | View Add to request |
| 18 | 08/05/2013 | ORDER granting 16 Motion for Admission Pro Hac Vice of Justin F. Marceau for Animal Legal Defense Fund,Justin F. Marceau for Daniel Hauff. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 08/02/2013. (tls) (Entered: 08/05/2013) | View Add to request |
| 17 | 08/05/2013 | ORDER granting 14 Motion for Admission Pro Hac Vice of Matthew Liebman for Animal Legal Defense Fund,Matthew Liebman for Daniel Hauff. Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov. Signed by Judge Robert J. Shelby on 08/02/2013. (tls) (Entered: 08/05/2013) | View Add to request |
| 16 | 08/02/2013 | MOTION for Admission Pro Hac Vice of Justin F. Marceau , | View Add to request |

Registration fee $ 15, receipt number 1088-1882717, filed by Plaintiffs Animal Legal Defense Fund, Daniel Hauff. (Attachments: # 1 Exhibit Exhibit A - Pro Hac Application, # 2 Exhibit Exhibit B - ECF Application, # 3 Text of Proposed Order Pro Hac Proposed Order)(Gollan, Stewart) (Entered: 08/02/2013)

| 15 | 08/02/2013 | MOTION for Admission Pro Hac Vice of Matthew Strugar , Registration fee $ 15, receipt number 1088-1882716, filed by Plaintiff People for the Ethical Treatment of Animals. (Attachments: # 1 Exhibit Exhibit A - Pro Hac Application, # 2 Exhibit Exhibit B - ECF Application, # 3 Text of Proposed Order Pro Hac Proposed Order)(Gollan, Stewart) (Entered: 08/02/2013) | View Add to request |
|---|---|---|---|
| 14 | 08/02/2013 | MOTION for Admission Pro Hac Vice of Matthew Liebman , Registration fee $ 15, receipt number 1088-1882708, filed by Plaintiffs Animal Legal Defense Fund, Daniel Hauff. (Attachments: # 1 Exhibit Exhibit A - Pro Hac Application, # 2 Exhibit Exhibit B - ECF Application, # 3 Text of Proposed Order Pro Hac Proposed Order)(Gollan, Stewart) (Entered: 08/02/2013) | View Add to request |
| 13 | 08/01/2013 | NOTICE of Appearance by Daniel R. Widdison on behalf of All Defendants (Widdison, Daniel) (Entered: 08/01/2013) | View Add to request |
| 12 | 08/01/2013 | NOTICE of Appearance by Kyle J. Kaiser on behalf of Gary R. Herbert, John Swallow (Kaiser, Kyle) | View Add to request |

(Entered: 08/01/2013)

| 11 | 07/31/2013 | ORDER granting 10 Motion for Extension of Time to Answer re 2 Complaint. Answer deadline updated for Gary R. Herbert answer due 10/11/2013; John Swallow answer due 10/11/2013. Signed by Judge Robert J. Shelby on 07/31/2013. (tls) (Entered: 07/31/2013) | View Add to request |
|----|-----------|---|---|
| 10 | 07/31/2013 | Stipulated MOTION for Extension of Time to File Answer filed by Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter. (Attachments: # 1 Text of Proposed Order)(Gollan, Stewart) (Entered: 07/31/2013) | View Add to request |
| 9 | 07/23/2013 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Matthew Strugar, for Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter (rls) (Entered: 07/23/2013) | View Add to request |
| 8 | 07/23/2013 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Justin Marceau, for Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter (rls) (Entered: 07/23/2013) | View Add to request |
| 7 | 07/23/2013 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney | View Add to request |

|   |   |   |   |
|---|---|---|---|
|   |   | Matthew Liebman, for Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter (rls) (Entered: 07/23/2013) |   |
| 6 | 07/22/2013 | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by Daniel Hauff, People for the Ethical Treatment of Animals, Amy Meyer, Will Potter, Jesse Fruhwirth, Animal Legal Defense Fund, James McWilliams, Counterpunch as to John Swallow served on 7/22/2013, answer due 8/12/2013. (Gollan, Stewart) (Entered: 07/22/2013) | View Add to request |
| 5 | 07/22/2013 | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by Daniel Hauff, People for the Ethical Treatment of Animals, Amy Meyer, Will Potter, Jesse Fruhwirth, Animal Legal Defense Fund, James McWilliams, Counterpunch as to Gary R. Herbert served on 7/22/2013, answer due 8/12/2013. (Gollan, Stewart) (Entered: 07/22/2013) | View Add to request |
| 4 | 07/22/2013 | **RESTRICTED DOCUMENT** Summons Issued Electronically as to John Swallow. Instructions to Counsel: 1. Click on the document number. 2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF. 3. Print the issued summons for service. (rls) (Entered: 07/22/2013) | View Add to request |
| 3 | 07/22/2013 | **RESTRICTED DOCUMENT** Summons Issued Electronically as to Gary R. Herbert. Instructions to Counsel: 1. Click on the document | View Add to request |

number. 2. If you are prompted for
an ECF login, enter your 'Attorney'
login to CM/ECF. 3. Print the issued
summons for service. (rls) (Entered:
07/22/2013)

| | | | |
|---|---|---|---|
| 2 | 07/22/2013 | COMPLAINT against All Defendants (Filing fee $ 400, receipt number 1088-1874817), filed by Daniel Hauff, People for the Ethical Treatment of Animals, Amy Meyer, Will Potter, Jesse Fruhwirth, Animal Legal Defense Fund, James McWilliams, Counterpunch. (Attachments: # 1 Civil Cover Sheet Cover Sheet) Assigned to Judge Robert J. Shelby (Gollan, Stewart) (Entered: 07/22/2013) | View Add to request |
| 1 | 07/22/2013 | Case has been indexed and assigned to Judge Robert J. Shelby. Plaintiffs Animal Legal Defense Fund, Counterpunch, Jesse Fruhwirth, Daniel Hauff, James McWilliams, Amy Meyer, People for the Ethical Treatment of Animals, Will Potter is directed to E-File the Complaint and cover sheet (found under Complaints and Other Initiating Documents) and pay the filing fee of $ 400.00 by the end of the business day. NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system. Civil Summons may be issued electronically. Prepare the summons using the courts PDF version and email it to utdecf_clerk@utd.uscourts.gov for issuance. (rls) (Entered: 07/22/2013) | View Add to request |

TO ORDER COPIES OF ANY DOCUMENTS LISTED ABOVE, CALL WESTLAW
COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

**End of Document**                                © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Justin Marceau (California Bar No. 243479)
2255 E. Evans Ave., Denver, CO 80208, jmarceau@law.du.edu

Matthew Liebman (California Bar No. 248861)
170 E. Cotati Ave., Cotati, CA 94931, mliebman@aldf.org

Matthew Strugar (California Bar No. 232951)
2154 W. Sunset Blvd., Los Angeles, CA 90026, matthew-s@petaf.org

Paige M. Tomaselli (California Bar No. 237737)
303 Sacramento St., 2nd Floor, San Francisco, CA 94111, ptomaselli@centerforfoodsafety.org

(*Pro Hac Vice* applications pending)

Richard Alan Eppink (Idaho Bar No. 7503)
ACLU of Idaho Foundation, P.O. Box 1897, Boise, ID 83701, reppink@acluidaho.org

Maria E. Andrade, (Idaho Bar No. 6445)
P.O. Box 2109, Boise, ID 83701, mandrade@andradelegal.com

Attorneys for Plaintiffs

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

---

**ANIMAL LEGAL DEFENSE FUND,** )
**PEOPLE FOR THE ETHICAL** )
**TREATMENT OF ANIMALS, INC.,** )
**AMERICAN CIVIL LIBERTIES** )
**UNION OF IDAHO,** )
**THE CENTER FOR FOOD SAFETY,** )
**FARM SANCTUARY,** )
**RIVER'S WISH ANIMAL** )
**SANCTUARY,** )
**WESTERN WATERSHEDS PROJECT,** )
**SANDPOINT VEGETARIANS,** )
**IDAHO CONCERNED AREA** )
**RESIDENTS FOR THE** )
**ENVIRONMENT,** )
**IDAHO HISPANIC  CAUCUS** )
**INSTITUTE FOR RESEARCH** )
**& EDUCATION,** )

| | | |
|---|---|---|
| **COUNTERPUNCH,** | ) | |
| **FARM FORWARD,** | ) | |
| **WILL POTTER,** | ) | |
| **JAMES McWILLIAMS,** | ) | |
| **MONTE HICKMAN,** | ) | |
| **BLAIR KOCH,** | ) | |
| **and DANIEL HAUFF** | ) | |
| | ) | |
| | ) | **CASE NO. 1:14-cv-104** |
| | ) | |
| Plaintiffs, | ) | **CIVIL RIGHTS COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| **C. L. "BUTCH" OTTER**, in his official | ) | |
| capacity as Governor of Idaho; | ) | |
| **LAWRENCE WASDEN**, in his official | ) | |
| capacity as Attorney General of Idaho, | ) | |
| | ) | |
| Defendants. | ) | |

_____

The non-profit organizations Animal Legal Defense Fund, People for the Ethical Treatment of Animals, American Civil Liberties Union of Idaho, Center for Food Safety, Farm Sanctuary, River's Wish Animal Sanctuary, Western Watersheds Project, Sandpoint Vegetarians, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research & Education, and Farm Forward; the news journal CounterPunch; award-winning author and journalist Will Potter; animal agriculture scholar and historian James McWilliams; would-be-investigator Monte Hickman; freelance journalist Blair Koch; and agricultural investigations expert Daniel Hauff (hereinafter Plaintiffs), bring this Complaint and allege as follows:

## <u>INTRODUCTION</u>

1.     This lawsuit challenges Idaho's "ag gag" law, I.C. § 18–7042 (2014), as

unconstitutional.  The law creates the crime of "interference with agricultural production," which has both the purpose and effect of impairing the public debate about animal welfare, food safety, environmental, and labor issues that arise on public and private land.  In essence, the law criminalizes undercover investigations and videography documenting the "production of agricultural products for food, fiber, fuel, and other lawful uses."  The law makes it criminal to document animal welfare, worker safety, and food safety violations at an "agricultural production facility," thus "gagging" speech that is critical of industrial agriculture, including speech that advances significant public interests in protecting Idahoans' safety.  The statute defines "agricultural production facility" so broadly that it applies not only to factory farms and slaughterhouses, but also to public parks, restaurants, nursing homes, grocery stores, pet stores, and virtually every public accommodation and private residence in the state.  In doing so, the statute violates the First Amendment, the Supremacy Clause, and the Fourteenth Amendment of the U.S. Constitution.

2.       Since the early twentieth century, some of America's most storied journalistic endeavors have exposed inhumane and unsafe agricultural production facilities.  Upton Sinclair became a household name for exposing the unfair labor practices, cruelty to animals, and unsanitary conditions of meat processing plants in the early 1900s, and his exposé led to the enactment of the Federal Meat Inspection Act and the Pure Food and Drug Act.

3.       There is a long and celebrated history of journalists and activists reporting on industrial agriculture conditions, spurring enforcement, legislative reform, and public debate. The modern day accounts of the meat, dairy, and egg industries are no less compelling than those of a century ago when Sinclair wrote *The Jungle*.  *See, e.g.*, Timothy Pachirat, EVERY TWELVE

SECONDS (2011).

4.      In the last decade, animal protection advocates have conducted more than eighty undercover investigations at factory farms in the United States, virtually all of which would be criminalized by the Idaho statute. Without exception, each investigation has exposed horrific animal suffering. These investigations, as well as the subsequent media coverage, have led to food safety recalls, citations for environmental and labor violations, evidence of health code violations, plant closures, criminal convictions, and civil litigation.  Such investigations have resulted in thousands of news stories in the past year alone.

5.      Recent undercover investigations at factory farms have found workers kicking pigs in the head, spray painting them in the eyes, stomping and throwing chickens and turkeys like footballs, smashing piglets' heads against concrete floors, and beating and sexually assaulting pigs with steel gate rods and hard plastic herding canes.[1]

6.      In order to silence the undercover investigations and corresponding media coverage that contribute to public debate about animal treatment and food safety, industry

---

[1] One investigation by Plaintiff PETA that was widely covered in the media revealed workers slamming chickens against the wall, ripping their beaks off, twisting their heads off, spitting tobacco in their eyes and mouths, spray-painting their faces, and squeezing their bodies so hard that the birds expelled feces, all while the animals were still alive. People for the Ethical Treatment of Animals, *Thousands of Chickens Tortured by KFC Supplier*, Kentucky Fried Cruelty, http://www.kentuckyfriedcruelty.com/u-pilgrimspride.asp (last visited March 6, 2014). Another investigation by PETA revealed multiple beatings of pigs with metal rods and workers sticking clothespins into pigs' eyes and faces.  A supervisor was filmed kicking a young pig in the face, abdomen, and genitals to make her move and told the investigator, "You gotta beat on the bitch.  Make her cry."  People for the Ethical Treatment Animals, *Mother Pigs and Piglets Abused by Hormel Supplier*, https://secure.peta.org/site/Advocacy?cmd=display&page=UserAction&id=1131 (last visited March 12, 2014).  Other investigations have led to concerns about meat contamination and food safety issues more generally.

executives have made the enactment of factory farm-secrecy statutes, commonly known as "ag gag" laws because they gag speech that is critical of industrial agriculture, a top legislative priority.  In fact, Idaho's ag gag statute was drafted by a lawyer for the Idaho Dairymen's Association.

7.     Plaintiffs bring this action to prevent the enforcement of Idaho's ag gag law, I.C. § 18–7042,[2] which constitutes a sweeping prohibition on important protected speech.  Idaho's

---

[2] The full text of the statute reads:   18–7042. INTERFERENCE WITH AGRICULTURAL PRODUCTION.

(1) A person commits the crime of interference with agricultural production if the person knowingly:

(a) Is not employed by an agricultural production facility and enters an agricultural production facility by force, threat, misrepresentation or trespass;

(b) Obtains records of an agricultural production facility by force, threat, misrepresentation or trespass;

(c) Obtains employment with an agricultural production facility by force, threat, or misrepresentation with the intent to cause economic or other injury to the facility's operations, livestock, crops, owners, personnel, equipment, buildings, premises, business interests or customers;

(d) Enters an agricultural production facility that is not open to the public and, without the facility owner's express consent or pursuant to judicial process or statutory authorization, makes audio or video recordings of the conduct of an agricultural production facility's operations; or

(e) Intentionally causes physical damage or injury to the agricultural production facility's operations, livestock, crops, personnel, equipment, buildings or premises.

(2) For purposes of this section:

(a) "Agricultural production" means activities associated with the production of agricultural products for food, fiber, fuel and other lawful uses and includes without limitation:

(i) Construction, expansion, use, maintenance and repair of an agricultural production facility;

(ii) Preparing land for agricultural production;

(iii) Handling or applying pesticides, herbicides or other chemicals, compounds or substances labeled for insects, pests, crops, weeds, water or soil;

(iv) Planting, irrigating, growing, fertilizing, harvesting or producing agricultural, horticultural, floricultural and viti-cultural crops, fruits and vegetable products, field grains, seeds, hay, sod and nursery stock, and other plants, plant products, plant byproducts, plant waste and plant compost;

law criminalizes an entire class of historically celebrated and important speech.  Anyone who captures images or sounds of an agricultural activity in a facility not open to the public without "express consent or pursuant to judicial process or statutory authorization" is guilty of "interference with agricultural production."

8.      The law criminalizes acts of capturing image or audio even when the person is otherwise lawfully permitted to be at the location in question, and the law criminalizes gaining employment for the purposes of whistle-blowing.

9.      Notably, this law criminalizes efforts to document criminal behavior in a workplace.   The Idaho statute unconstitutionally and unwisely prohibits efforts to bring violations of state and federal laws relating to food safety, environmental protection, and animal handling to the attention of the public and law enforcement.

10.     I.C. § 18–7042 limits speech in the form of sound and image production, and it

---

    (v) Breeding, hatching, raising, producing, feeding and keeping livestock, dairy animals, swine, furbearing animals, poultry, eggs, fish and other aquatic species, and other animals, animal products and animal byproducts, animal waste, animal compost, and bees, bee products and bee byproducts;

    (vi) Processing and packaging agricultural products, including the processing and packaging of agricultural products into food and other agricultural commodities;

    (vii) Manufacturing animal feed.

  (b) "Agricultural production facility" means any structure or land, whether privately or publicly owned, leased or operated, that is being used for agricultural production.

(3) A person found guilty of committing the crime of interference with agricultural production shall be guilty of a misdemeanor and shall be punished by a term of imprisonment of not more than one (1) year or by a fine not in excess of five thousand dollars ($5,000), or by both such fine and imprisonment.

(4) In addition to any other penalty imposed for a violation of this section, the court shall require any person convicted, found guilty or who pleads guilty to a violation of this section to make restitution to the victim of the offense in accordance with the terms of section 19-5304, Idaho Code. Provided however, that such award shall be in an amount equal to twice the value of the damage resulting from the violation of this section.

does so in a content-based manner.  The law almost entirely limits the production and distribution of politically salient speech regarding industrial agriculture.  The practical effect of the law is to provide preferential treatment to industries at the expense of political speech.  Only one side of the debate regarding food safety, animal welfare, environmental degradation, and labor practices is available for public scrutiny after the enactment of the ag gag law, thus skewing the body of information that can contribute to free public discourse in the marketplace of ideas.

11.     Employment-based or other undercover investigations of facilities that process or produce food, fiber, or fuel are not uncommon in Idaho.

12.     I.C. § 18–7042 is both facially content-based and predicated on a viewpoint-based legislative purpose.  Undercover employment investigations in *any* industry that processes food, fiber, or fuel are outlawed, as are most undercover video or audio investigations.

13.     A law that prohibits the recording of audio or video during certain activities—be it a political rally or an unsafe or inhumane workplace—is content discriminatory.  Moreover, the legislative history, detailed below, leaves little doubt that the legislative purpose was to punish animal rights groups and curtail a form of political speech of great public interest.

14.     The purpose and effect of the law, as set forth in detail below, are to stifle political debate about modern agriculture by (1) criminalizing all employment-based undercover investigations; and (2) criminalizing investigative journalism, whistleblowing by employees, or other expository efforts that entail images or sounds.

15.     Accordingly, the law renders impossible the creation of non-industry-approved speech about matters of great public concern.  The law prevents the public and the government

from learning about violations of laws and regulations designed to protect workers, prevent environmental degradation, ensure a safe food supply, and minimize animal cruelty. There is no substitute for investigative journalism or exposés in documenting such issues in the agricultural industry.

16.     Plaintiffs, as parties that conduct these investigations, have a concrete desire to engage in speech and expressive conduct that violate the ag gag statute. Equally, Plaintiffs rely on the investigations for their reporting, research, and educational outreach to contribute to an important public debate about mass-produced agricultural products. The rise of the internet and the increased public interest in safe and ethically produced food have fostered greater awareness of and concern with ongoing abuses by large agricultural enterprises. The ag gag law has the effect of shielding these industries from scrutiny regarding food safety, animal welfare, environmental quality, workers' rights, and other related concerns.

17.     Moreover, the criminalization of this speech also creates significant obstacles to the enforcement and efficacy of federal laws and is therefore preempted under the Supremacy Clause. I.C. § 18–7042 criminalizes whistle-blowing speech that is incentivized by the False Claims Act and other statutory provisions protecting whistle-blowers and regulating the food industry.

18.     In addition, because the law is motivated by animus towards a politically unpopular group—animal protection advocates—it also violates the Fourteenth Amendment.

19.     In short, the Idaho law infringes the rights of Plaintiffs and gives the agriculture industry a virtual monopoly on the most relevant and probative speech on a topic that is of vital importance to the public, thereby allowing the industry to provide a misleading account of its

activities and hide violations of animal cruelty, labor, environmental, and food safety laws.  Such a sweeping prohibition on speech directly harms the Plaintiffs, both as investigators and conveyors of this information, and effectively removes an entire category of speech from the marketplace of ideas.

20.     Accordingly, Plaintiffs ask this Court for injunctive relief to preserve their right and the right of others to engage in expressive and communicative activity that is of the utmost public concern.  Unless this Court enjoins enforcement of the ag gag law, Plaintiffs will be compelled to divert resources from their core missions in order to engage in outreach and education about the ag gag law.  Several Plaintiffs suffer a direct injury because their missions relating to educating the public about the reality of factory farming in Idaho are made more difficult.

21.     Plaintiffs bring this action seeking declaratory and injunctive relief to lift a chill that leads some Plaintiffs to refrain from engaging in protected speech, that prevents other Plaintiffs from reporting on these events, and that causes other Plaintiffs to suffer direct economic and organizational injuries.  There is an imminent and credible threat of prosecution under statutory provisions that undermine Plaintiffs' rights under the U.S. Constitution.  I.C. § 18–7042 is facially, and as applied to Plaintiffs, unconstitutional for several independent reasons: (1) it is overbroad because it sweeps within its ambit a substantial amount of core First Amendment protected speech; (2) it discriminates on the basis of the content and viewpoint of particular speech and expressive conduct in violation of the First Amendment; (3) it is preempted by federal laws and thus violates the Supremacy Clause; and (4) it violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates on the basis of animus toward

unpopular political groups and lacks a rational basis.

## JURISDICTION AND VENUE

22.     This action arises under the U.S. Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1988.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

23.     This Court has authority to grant the declaratory and injunctive relief herein requested pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

24.     Venue is proper in the U.S. District Court for the District of Idaho pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

### Plaintiffs

25.     Plaintiff–ANIMAL LEGAL DEFENSE FUND (ALDF) is a national non-profit animal protection organization founded in 1979 that uses education, public outreach, investigations, legislation, and litigation to protect the lives and advance the interests of animals, including those raised for food.  ALDF's work is supported by more than 110,000 members across the country, including in Idaho.  ALDF promotes the humane treatment of farmed animals.  ALDF and its agents have conducted undercover investigations at animal facilities around the country, including facilities that would meet the definition of an "agricultural production facility" under I.C. § 18–7042(2)(b).  ALDF would like to conduct an investigation in Idaho and has an investigative team capable of doing so.  Moreover, ALDF's core mission of

9

improving the lives of animals is fundamentally impaired by the ag gag law.  ALDF uses

investigations to support its litigation and outreach and this law directly impedes these efforts by

diminishing the supply of such investigations.  ALDF also spends significant resources to

prevent the spread of, and when necessary to amend and/or repeal, unconstitutional ag gag laws

like and including the one enacted in Idaho.  These expenditures to counteract the

unconstitutional violations of various persons' civil rights constitute a harmful diversion of

ALDF's very limited resources and a loss to the organization because those resources would

otherwise be better spent furthering ALDF's core mission of protecting the lives and advancing

the interests of animals through the legal system. ALDF, however, is obligated to divert its

resources in order to prevent the harm ag gag laws, like and including the one enacted in Idaho,

pose to ALDF's core mission because such laws prevent the creation and dissemination of

information that protects the lives and advances the interests of animals, and because such laws

directly impede the development of animal law.

     26.    Plaintiff–PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.

(PETA) is a Virginia non-stock corporation and animal protection charity exempt from taxation

pursuant to Section 501(c)(3) of the Internal Revenue Code.  PETA is dedicated to protecting

animals from abuse, neglect, and cruelty, and undertakes these efforts through public education,

undercover investigations, research, animal rescue, legislation, special events, celebrity

involvement, protest campaigns, and lawsuits to enforce laws enacted to protect animals.  A

central tenet of PETA's mission is to expose cruelty to farmed animals, educate the public about

such cruelty, and encourage people to choose a lifestyle that does not involve or support abuse,

neglect, or exploitation of animals.  PETA's first undercover investigation—the 1981

investigation of Dr. Edward Taub's monkey testing laboratory in Silver Spring, Maryland—resulted in the nation's first arrest and criminal conviction of an animal experimenter for cruelty to animals.  PETA has conducted dozens of investigations in the United States over the past three decades, exposing illegal animal abuse and turning the results of each investigation over to appropriate law enforcement and/or regulatory authorities.   It continues to conduct these investigations to expose further illegal conduct on the part of workers and management personnel.  PETA is also interested and willing to conduct an investigation in Idaho but for the threat of criminal prosecution under I.C. § 18–7042.   Moreover, PETA uses investigations to support its litigation and outreach and this law directly impedes these efforts by diminishing the supply of such investigations.  The ag gag law impairs PETA's ability to carry out its core missions and has forced PETA to divert resources on educating the public regarding and otherwise opposing ag gag laws, like that enacted in Idaho. PETA has and will continue to divert resources to engage in educational outreach about Idaho's ag gag law, and the money spent opposing and doing outreach regarding ag gag laws diminishes the money available for these more traditional, core educational goals of PETA.

27.    Plaintiff–AMERICAN CIVIL LIBERTIES UNION OF IDAHO, INC. is a statewide non-profit, non-partisan organization of more than 1,200 members whose mission is to advance civil liberties and civil rights in Idaho.  The ACLU's members live and work throughout the state of Idaho, including at, for, and near agricultural production facilities.  According to the U.S. Department of Agriculture's most recent available Census of Agriculture, there are over 22,000 farms in the vicinity of the residences of current ACLU of Idaho members in good standing.  The ACLU nationally has a long history of protecting the public's right to know,

including through undercover investigations and journalism.  The national ACLU participated

before the U.S. Supreme Court as amicus curiae in *New York Times v. United States* to protect

the public's right to know of surreptitiously obtained classified documents known as the

"Pentagon Papers."  The ACLU's first permanent affiliate was founded by Upton Sinclair.

Among the ACLU of Idaho's members today are individuals who investigate and document

hazardous conditions and practices at agricultural production facilities in Idaho, including by

entering those facilities to make audio and video recordings and by obtaining facility records.

The ACLU itself, sometimes through its members, staff, and volunteers, also frequently attempts

to obtain records using the Idaho Public Records Law.  The ACLU's members have grave

concerns about the safety of agricultural operations in Idaho.  Recently, the ACLU of Idaho

participated in a lawsuit challenging an Idaho statute that prevented many Idahoans from

providing comment to county governments about large confined animal feeding operations

(CAFOs).  In that case, *Friends of Minidoka v. Jerome County Board of Commissioners*, the

Idaho Supreme Court allowed the ACLU to defend its members' freedom of speech and

Fourteenth Amendment rights as a friend of the court, over the objection of an agricultural

operator and intervenor, South View Dairy.  Both before and after the enactment of I.C. § 18–

7042, ACLU members have made significant complaints to the ACLU about the ag gag statute,

because it will violate and chill members' freedom of speech and is constitutionally defective.

The ag gag statute will subject ACLU members to arrest and incarceration for their speech

during their already planned investigations and documentation of Idaho agricultural facilities,

which those members continue to undertake to protect their families, their children, and the

public at large.

28.     Plaintiff–THE CENTER FOR FOOD SAFETY is a 501(c)(3) non-profit organization dedicated to protecting and promoting sustainable agriculture and the environment. As a membership organization, CFS has over 400,000 members nationwide, including members in Idaho.  CFS was established for the purpose of protecting the public by challenging harmful food production technologies and promoting sustainable alternatives.  CFS's mission is to protect the public's right to know how their food is produced.  CFS utilizes regulatory actions, citizen engagement, legislation, and when necessary, litigation, to promote transparency and accountability in the factory farm and industrial agriculture industries.  CFS disseminates to government agencies, members of Congress, and the general public a wide array of informational materials addressing the harmful effects of industrial agriculture.  These materials include news articles, policy reports, legal briefs, press releases, action alerts, and fact sheets. CFS relies on and uses videos and recordings obtained during undercover industrial agriculture investigations for its legal, policy, advocacy, and educational and outreach work.

29.     Plaintiff–FARM SANCTUARY is a non-profit 501(c)(3) animal-advocacy organization with over 250,000 constituents nationwide.  Core to its mission is protecting farm animals from cruelty and encouraging a new public awareness about farm animals through education and media outreach.  Farm Sanctuary focuses its efforts exclusively on farm animals and is the largest farm animal rescue and protection organization in the United States.  Farm Sanctuary has conducted farm animal investigations in the past, and it continues to rely on the information obtained by other groups' ongoing investigations for its work.  Stated differently, Farm Sanctuary is a uniquely situated recipient of the undercover recordings—a listener with a concrete injury.  Specifically, Farm Sanctuary uses the videos for educational purposes and for

in-person and online outreach.  In addition, Farm Sanctuary has concrete and imminent plans to promote and use future investigations in its video production, online, and in legislative and corporate campaigns.

30.     Plaintiff–RIVER'S WISH ANIMAL SANCTUARY is a non-profit 501(c)(3) organization located in Spokane County, Washington, not far from the Idaho border.  On its sixty-five acres, River's Wish provides a sanctuary to rabbits, dogs, cats, goats, horses, donkeys, pigs, chickens, turkeys, cows and more.  River's Wish's mission is to provide care and permanent sanctuary to neglected, abused, homeless, and older animals in need; and to promote kindness and compassionate lifestyle choices through humane education.  River's Wish offers educational programs, such as "Compassion for Animals," which allows people to meet animals first-hand and puts a story, personality, and face behind the abstract notion of their species. River's Wish is directly harmed by I.C. § 18–7042 for two independent reasons.  First, the law will impede the organization from learning of animals that are being mistreated and that are in need of rescue.  In the past, River's Wish has rescued one or more animals that were in danger in Idaho and that came to their attention because of undercover reporting.  It will be considerably more difficult to obtain information about the need for rescue when investigative efforts to uncover abuse are criminalized.  Second, River's Wish regards education and outreach as an important part of its mission and the ag gag law impairs its ability to do such outreach. Specifically, the sanctuary will have to devote resources to raising awareness about the ag gag law instead of finding animals in need of rescue.  This diversion of resources, in turn, limits the resources available for its core outreach on the topics of veganism and animal welfare, as well as the resources available for animal rescue.  Moreover, investigative videos are highly effective as

14

part of vegetarian outreach—a picture is worth a thousand words—and the ag gag law chokes off the supply of this footage, thereby directly harming the sanctuary's outreach efforts.

31.     Plaintiff-WESTERN WATERSHEDS PROJECT (WWP) is a non-profit conservation group, founded to protect and restore western watersheds and wildlife through education, public policy initiatives, and litigation.  WWP has 1,400 members, with field offices in Idaho, Montana, Utah, Wyoming, Arizona, and California.  WWP is headquartered in Hailey, Idaho, and manages the Greenfire Preserve in Clayton, Idaho.  The group works to influence and improve public lands management throughout the West with a primary focus on the negative impacts of livestock grazing on 250,000,000 acres of western public lands, including harm to ecological, biological, cultural, historic, archeological, and scenic resources.  WWP does investigative work to document the harms of livestock grazing on public lands, some of which is now illegal under I.C. § 18–7042.  Specifically, WWP takes photographic and video images of agricultural sites that are closed to the public in a manner that is criminalized by the statute.

32.     Plaintiff–SANDPOINT VEGETARIANS is an unincorporated non-profit association of vegetarians that encourages a vegetarian lifestyle to foster compassion, improve health, and protect the planet.  Sandpoint's mission is to promote the idea that all beings have a right of existence, that people have a moral obligation to stand up for animals, and that people must minimize the suffering of animals.  Sandpoint's advocacy includes potlucks, leafleting, film screenings, outreach, library displays, guest speakers, and presentations, all aimed at educating others about animal suffering and environmental degradation in industrial agriculture.  I.C. § 18–7042 substantially undermines Sandpoint's outreach and advocacy by eliminating the possibility of obtaining videos or photographs documenting the harm to animals on factory farms in Idaho

15

specifically, and it forces Sandpoint to divert resources away from vegan and vegetarian advocacy to educate the public about the ag gag law and its effects.

33.     Plaintiff–IDAHO   CONCERNED   AREA   RESIDENTS   FOR   THE ENVIRONMENT (ICARE) is a grassroots organization that advocates for Idahoans affected by animal facilities.  ICARE supports sustainable family farms and promotes the development of strong local and regional foodsheds; transparency and accountability in land-use planning, regulation, and enforcement; equitable global trade; and sane domestic agricultural policy. ICARE members are also interested and willing to conduct an investigation in Idaho but for the threat of criminal prosecution under I.C. § 18–7042.   ICARE members have conducted undercover investigations at animal facilities in Idaho in the past, including facilities that would meet the definition of an "agricultural production facility" under I.C. § 18–7042(2)(b).  In 2009, an ICARE member escorted a New York Times journalist around Idaho animal facilities for a series on Clean Water Act concerns.  The group covertly filmed several animal facilities from facility-owned property without consent.  ICARE would like to conduct similar investigation and has made arrangements to do so.   Moreover, ICARE has plans to engage in now-illegal employment-based investigations and had such plans prior to the enactment of I.C. § 18–7042.

34.     Plaintiff–IDAHO HISPANIC CAUCUS INSTITUTE FOR RESEARCH & EDUCATION (IHCIRE) is a nonprofit 501(c)(3) volunteer political organization based in Nampa, recognized as a statewide leader in advocating for social justice issues affecting Latinos in Idaho. With the charge of promoting the social, economic, and political empowerment of Latinos, IHCIRE takes an active role in addressing the ramifications of government as it relates to the Hispanic population in the State. IHCIRE's mission is to promote the social welfare of the

16

Idaho Latino community through action, research, and education on those social justice issues that continue to negatively impact the social well-being of Idaho's Latinos. It considers farmworkers one of its core constituencies, and its campaigns to mobilize voter registration and turnout and to increase the state minimum wage directly affect the lives of farmworkers. Among IHCIRE's objectives are to increase the acquisition and dissemination of Latino-based research on immigration, human rights, health, and employment, and to organize and execute community-based educational forums. IHCIRE, along with its community partners, intends to host a series of community meetings in 2014 throughout the state – in Wilder, Mountain Home, Twin Falls, and Pocatello – to address issues of significance to Latino communities, in particular farm-working women and their families. Because of the threat that the ag gag law poses to these communities, IHCIRE will be forced to divert its financial and personnel resources to educating attendees about the ag gag law. IHCIRE will be required to correspondingly reduce the amount of time and resources it can dedicate to its core mission work at these community meetings, such as promoting voter registration and other efforts to empower Latino communities. If the ag gag law is declared invalid, ICIRE will be able to redirect its resources to activities and outreach that promote its mission.

35.     Plaintiff–COUNTERPUNCH is a print and online journal of progressive politics, news, investigative reporting, civil liberties, art, and culture. CounterPunch's readership is global, with over 5,000 paid subscribers and a web readership of over one million unique visitors per month. CounterPunch and its writers have received numerous awards. CounterPunch regularly reports on undercover investigations at factory farms; the following articles illustrate the extensive coverage CounterPunch gives to these investigations: "Undercover at a Turkey

Slaughtering Plant," "Hatchery Horrors," "The Price of Cheap Easter Eggs," "Life on HBO's Factory Hog Farm," "Is Your Child Eating Downer Cows?," "American Beef Supply at Risk," and "Pig Hell at Wal-Mart Supplier."  The ag gag law stifles undercover investigations in Idaho and thus suppresses CounterPunch's free press rights and undermines its ability to report thoroughly and accurately on a matter of significant public concern: the ethical and public health implications of modern industrial agriculture.

36.    Plaintiff–FARM FORWARD is a 501(c)(3) non-profit organization seeking to implement innovative strategies to promote conscientious food choices, reduce farm animal suffering, and advance sustainable agriculture.   More specifically, Farm Forward works to eliminate the worst practices in factory farming; advocates an acute reduction in the consumption of factory-farmed meat, fish, eggs, and dairy by encouraging conscientious consumer decision-making; supports interdisciplinary research and undergraduate teaching about the cultural significance of animals and animal agriculture; and stimulates the production of essays, books, films, and religious activities that raise awareness about the problems in animal agriculture and the deeper cultural issues behind them.   One of the most effective ways that Farm Forward informs consumers about the cruelty of factory farming is by discussion of investigations into these farms.  I.C. § 18–7042 substantially impairs Farm Forward's ability to inform consumers about the worst practices in factory farming because Farm Forward will have to devote additional resources to explaining why abuses in the factory farm system are being hidden from public view.  In addition, Farm Forward is developing a tool (BuyingPoultry.com) for consumers to learn about the practices of the specific farms from which they buy poultry products.  The Idaho ag gag law will make it impossible to provide transparent, robust information on poultry

farming practices in Idaho to users of BuyingPoultry.com.  As part of its efforts to stimulate the conversation around factory farming in the arts, Farm Forward is helping producers of a documentary film (*Eating Animals*); its work to coordinate the film's content will be hindered by the Idaho ag gag law because it will prevent Farm Forward from overseeing an undercover farm investigation in Idaho, and because it will limit the ability of other groups to conduct investigations that might otherwise be discussed in the film.

37.     Plaintiff–WILL POTTER is an award-winning journalist, author, and public speaker based in Washington, D.C., who is a leading authority on the animal rights and environmental movements.  Potter's reporting and commentary have appeared in media outlets including *Rolling Stone*, *Mother Jones*, *The Los Angeles Times, Vermont Law Review,* and *The Washington Post*.  Potter has lectured at more than 100 universities and public forums internationally about his work, including Georgetown University, the New York City Bar Association, and the House of Democracy and Human Rights in Berlin, and he has testified before the U.S. Congress about his reporting.  Potter is a TED Fellow, which is a global network of innovators and trailblazers from a spectrum of disciplines.  Potter is the author of *Green is the New Red: An Insider's Account of a Social Movement Under Siege*, which Kirkus Reviews named as one of the best books of 2011 and described as a "shocking exposé" of "remarkable merit."  The book is regularly used in college and graduate school courses on political science, civil rights, and sociology.  Potter also runs the popular website www.greenisthenewred.com, where he reports on issues concerning animals and the environment.  Potter regularly reports on the results of undercover investigations, and he profits from visits to his website based on such reporting.  However, the ag gag law limits his access to undercover investigations and hinders

19

his coverage of industrial animal agriculture, and therefore, causes economic as well as speech related injuries.  Potter would report the findings of other investigations at animal agricultural operations in Idaho, but for the ag gag statute.

38.     Plaintiff–JAMES MCWILLIAMS is an award-winning professor in the Department of History at Texas State University at San Marcos.  McWilliams writes and publishes and lectures nationally at food and vegetarian conferences on the intersection of American history and diet, including the book *A Revolution in Eating: How the Quest for Food Shaped America*, published by Columbia University Press.  McWilliams' writing on food, agriculture, and animals has appeared in the *New York Times, Harper's, The Washington Post, The Atlantic, Slate, Forbes, Travel and Leisure, The Los Angeles Times, The International Herald Tribune, The Christian Science Monitor,* and *The Texas Observer.*  McWilliams also runs the popular blog *The Pitchfork,* where he writes about factory farming, relying in part on undercover investigations.  His current projects include two books.  One, tentatively titled *A Glorious Distance: The Origins of Factory Farming in the United States*, is being published by the Cornell University Press.  The second, tentatively titled *The Modern Savage: Our Unthinking Decision to Eat Animals* (St. Martin's Press), investigates the hidden ethical, environmental, and economic problems with small-scale animal agriculture today.  As a scholar and historian, McWilliams places great importance on access to reliable, accurate, first-hand source materials. The ag gag law inhibits this access, screening out important and relevant materials that are essential to McWilliams' scholarship, teaching, and national lectures, thus interfering with and undermining his profession.  McWilliams is directly harmed by I.C. § 18–7042 because it impedes his access to information, which is critical to his speeches to lay audiences as well as his

20

academic research.

39.     Plaintiff–MONTE HICKMAN is a lifelong Idaho resident who is interested in post-retirement work as an agricultural operations investigator.   Hickman was formerly employed as a dairy worker, a lumber yard worker, and most recently as a deputy sheriff. Hickman recently retired from his position as an Idaho law enforcement officer and has been interested in doing investigative work in support of labor and animal rights in Idaho.  His law enforcement and agricultural background make him well-suited for the work.   Moreover, Hickman has been guaranteed employment as an undercover investigator in the animal agricultural industries.  However, I.C. § 18–7042 makes it impossible for Hickman to engage in this work without risking criminal prosecution, thereby depriving him of a concrete opportunity to engage in political speech, pursue a new profession, and obtain financial benefit.

40.     Plaintiff–BLAIR KOCH is a fourth generation Idahoan and independent, freelance journalist that covers sensitive environmental, agriculture, and animal welfare issues in Idaho.   Koch has engaged in numerous investigations relating to large-scale agriculture operations and intends to continue that work.  Koch's investigative work requires her to enter agriculture facilities without permission to obtain recordings or photos.  Because of Idaho's ag gag law, Koch's investigations are now illegal.  The ag gag law denies Koch the ability to continue to investigate and report on important agriculture matters that otherwise would go unreported.  Specifically, I.C. § 18–7042 suppresses Koch's political speech and criminalizes her intention to continue investigating environmental, agriculture, and animal welfare issues at Idaho agriculture facilities.

41.     Plaintiff–DANIEL HAUFF is an animal and human rights activist, consultant, and

expert on employment-based undercover investigations at animal agricultural operations.  He is the former Director of Investigations for a major national animal protection organization.  In that capacity, he spent four years working with investigators, facilitating their employment, and overseeing more than a dozen high security undercover investigations across the country at a variety of animal agricultural operations—from pig breeding facilities to high-density egg farms to dairies to slaughterhouses to veal farms.  Each investigation that Hauff oversaw revealed severe animal suffering, either through the gratuitous infliction of animal cruelty or through legal and routine industrial farming practices such as intensive confinement and unanaesthetized mutilations (e.g., beak-searing, horn removal, and castration).  Hauff has facilitated every stage of undercover investigations, including identifying and scouting locations, hiring investigators, advising investigators in-field on everything from the effective use of surveillance equipment to emergency decision-making, reviewing investigative footage, presenting findings to law enforcement, and serving as a media spokesperson to convey investigative findings to the public.  Investigations overseen by Hauff gained national recognition and exposed institutionalized mistreatment of farmed animals, leading to raids on factory farms, rescue of abused and neglected animals, passage of landmark legislation, and major corporate policy changes affecting countless animals.  Because of Hauff's extensive expertise in the field, Plaintiff ALDF would engage him to coordinate an undercover, employment-based investigation in Idaho.  ALDF would pay Hauff to oversee such an investigation.  The existence of Idaho's ag gag law, however, prevents Hauff from pursuing this consulting opportunity, for fear of being prosecuted as an accomplice or co-conspirator to "Agricultural Production Interference."  The ag gag statute has thus injured Hauff financially by depriving him of a consulting opportunity, and

constitutionally by depriving him of the opportunity to serve as a media spokesperson about a Idaho investigation at an agricultural operation.  If the ag gag law is declared unconstitutional, Hauff will oversee an employment-based investigation of an agricultural operation in Idaho on behalf of ALDF.

### Defendants

42.     Defendant C. L. "BUTCH" OTTER is the Governor of Idaho and as such, is the Chief Executive for the state, responsible for ensuring the enforcement of the State's criminal statutes.  The Governor is sued in his official capacity.

43.     Defendant LAWRENCE WASDEN is the Attorney General of Idaho and as such, oversees the enforcement of the State's criminal statutes.  The Attorney General is sued in his official capacity.

### FACTUAL BACKGROUND

### Statutory Overview

44.     On February 28, 2014, Governor Otter signed into law Senate Bill 1337, codified at I.C. § 18–7042 (2014).

45.     I.C. § 18–7042 was enacted as an emergency provision, which went into effect immediately upon the Governor's signature.

46.     I.C. § 18–7042 criminalizes "interference with agricultural production."

47.     The statute defines "agricultural production" as "activities associated with the production of agricultural products for food, fiber, fuel and other lawful uses."  The statute lists examples of "agricultural production" that illustrate the breadth of the term, such that it includes virtually every conceivable human interaction with food, plants, or animals, including even just

the "processing and packaging of agricultural products into food," such as at a restaurant or in a home kitchen.[3]

48.    An "agricultural production facility" is any "structure or land, privately or publicly owned, leased or operated, that is being used for agricultural production."

49.    The statute creates five agricultural production interferences that will be deemed criminal:

a.    "[E]nter[ing] an agricultural production facility by force, threat, misrepresentation or trespass" while not employed by the facility, I.C. § 18–7042(1)(a);

b.    "Obtain[ing] records of an agricultural production facility by force, threat, misrepresentation or trespass," I.C. § 18–7042(1)(b);

c.    "Obtain[ing] employment with an agricultural production facility by force,

---

[3] Idaho Stat. Ann. § 18–7042(2) defines "agriculture production" as:
(a) "Agricultural production" means activities associated with the production of agricultural products for food, fiber, fuel and other lawful uses and includes without limitation:
(i) Construction, expansion, use, maintenance and repair of an agricultural production facility;
(ii) Preparing land for agricultural production;
(iii) Handling or applying pesticides, herbicides or other chemicals, compounds or substances labeled for insects, pests, crops, weeds, water or soil;
(iv) Planting, irrigating, growing, fertilizing, harvesting or producing agricultural, horticultural, floricultural and viti-cultural crops, fruits and vegetable products, field grains, seeds, hay, sod and nursery stock, and other plants, plant products, plant byproducts, plant waste and plant compost;
(v) Breeding, hatching, raising, producing, feeding and keeping livestock, dairy animals, swine, furbearing animals, poultry, eggs, fish and other aquatic species, and other animals, animal products and animal byproducts, animal waste, animal compost, and bees, bee products and bee byproducts;
(vi) Processing and packaging agricultural products, including the processing and packaging of agricultural products into food and other agricultural commodities;
(vii) Manufacturing animal feed.

threat, misrepresentation or trespass with the intent to cause economic or other injury to the facility's operations" or "business interests," I.C. § 18–7042(1)(c); or

      d.     "Enter[ing] an agricultural production facility that is not open to the public and, without the facility owner's express consent . . . , mak[ing] audio or video recordings of the conduct of an agricultural production facility's operations," I.C. § 18–7042(1)(d).

      e.     "Intentionally causing physical damage or injury to the agricultural production facility's operations," I.C. § 18–7042(1)(e).

50.     Persons violating I.C. § 18–7042(1) face up to a year in jail and up to $5,000 in fines.  By comparison, the maximum jail time for a first-offense conviction of animal cruelty is six months.  I.C. § 25–3520A.  In other words, the statute punishes those who expose animal cruelty more severely than those who commit it.

51.     Under the plain terms of I.C. § 18–7042, no new investigations of the type contemplated by some of the Plaintiffs and relied on by other Plaintiffs may be conducted in Idaho.  Farmworkers and other current employees working at agricultural production facilities cannot even credibly document unsafe conditions in their workplace without risking arrest and prosecution.

52.     Although investigations and their corresponding media coverage are the primary source of whistleblowing activity in the agricultural industry, the Idaho law makes all such speech effectively impossible.

53.     The threat of criminal liability extends beyond the individual who conducts the investigation and includes non-profit organizations such as PETA and ALDF. These Plaintiffs support and encourage whistleblowers and investigators who are shining a spotlight on practices,

in the belief that the public has a right to know what goes on in facilities that produce products

for public consumption.  Indeed, even a journalist who worked with an investigator to obtain

undercover video or photographic images would be a criminal.  I.C. § 18–304 (aiding in

misdemeanors); I.C. § 18–1701 (conspiracy).

54.    I.C. § 18–7042 criminalizes investigative efforts—employment-based  or

otherwise—in an unconscionably broad range of facilities.  An "agricultural production facility"

is defined so as to include land "whether privately *or publicly owned*."  I.C. § 18–7042 (2)(a).

Moreover, the law defines the range of conduct that may not be subject to investigative image or

audio capture in even more sweeping terms:  any facility involved in the production of "food,

fiber, fuel, and other lawful uses [of agricultural products]" that is not open to the public.  Any

facility that raises animals, or grows plants, or processes the animals or plants for food is

suddenly exempt from most forms of whistle-blowing.  I.C. § 18–7042 criminalizes

investigations at any stage of the food production or animal handling cycle of production.  It

makes an entire range of politically salient speech criminal.

55.    These statutes have the effect of criminalizing undercover investigative activities

of agricultural operations, as well as the planning and assistance of such activity, thereby making

the investigations and the journalism surrounding such events virtually impossible.  Actions in

furtherance of a plan to investigate would give rise to attempt liability under the Idaho criminal

code.

**Statutory Purpose**

56.    I.C. § 18–7042 criminalizes image capture from agricultural operations not open

to the public where the owner of the facility does not expressly approve of the recording in

advance of its production.

57.     I.C. § 18–7042 criminalizes both employment-based investigations where employment is obtained through misrepresentation or omission and other forms of investigation that involve documentation (including traditional whistle-blowing by employees).

58.     The statute does not prohibit or single-out images and recordings produced by the owners or others who will portray the agricultural industry in a favorable light.  The purpose and effect of the statute is to prioritize and privilege speech that is favorable to the agricultural industry.

59.     The statute criminalizes the production of only speech that is inconsistent with the goals and interests of the agricultural industry.

60.     The statute criminalizes the production of speech that is a matter of considerable public concern.

61.     The statute's legislative history demonstrates that it was introduced with the explicit intent of silencing or impeding speech by animal protection organizations.

62.     Senator Jim Patrick, sponsor of the Senate bill, justified the legislation by claiming that extremist animal activists were comparable to marauding invaders centuries ago who swarmed into foreign territory and destroyed crops to starve foes into submission.

63.     Sen. Patrick, speaking of animal activists in a committee hearing, stated: "[T]errorism has been used by enemies for centuries to destroy the ability to produce food and the confidence in the food's safety. This is clear back in the 6th century B.C."  Defending the legislation, Sen. Patrick said, "This is how you combat your enemies."

64.     Senator Linden Bateman called animal protection organizations that encourage

undercover whistleblowing "extreme activists who want to contrive issues simply to bring in the donations."

65.     Representative Steven Miller, the bill's co-sponsor, stated the motivation behind the bill was to protect the economic interests of factory farms from investigations by animal-rights groups.

66.     Representative Donna Pence also indicated that the bill was directed at protecting factory farms from investigations by animal-rights groups, disparaging core political advocacy efforts related to a prior investigation at an Idaho dairy:  "By releasing the footage to the Internet, with petitions calling for a boycott of products of any company that bought meat or milk from Bettencourt Dairy, the organizations involved then crossed the ethical line for me."

67.     One of the primary public voices in support for the Idaho statute was the Idaho Dairymen's Association.  Tony VanderHulst, chairman of the Idaho Dairymen's Association, stated, "This is about exposing the real agenda of these radical groups that are engaged in terrorism."

68.     Representative Gayle Batt, speaking of the Idaho Dairymen's Association involvement in the legislation noted: "The dairy industry decided they could no longer be held hostage by such threats. They could not allow fellow members of the industry to be persecuted in the court of public opinion. It was then that th[e]y were convinced that *they* had to go forward with this legislation." (Emphasis added.)

69.     Dan Steenson, attorney for the Idaho Dairymen's Association, proudly proclaimed that he drafted the legislation because "extremist groups implement vigilante tactics."

70.     Mr. Steenson also acknowledged the broad nature of the bill: "Subsection 1(d)

28

applies where, without express consent, there's a recording even if the employee is a 'legitimate' long-term employee and documents non-animal related violations such as blocked fire exits."

71.    Speaking of the economic motivations, Mr. Steenson said: "I proudly represent the hardworking dairy farmers who comprise the Idaho Dairyman's Association. Although I prepared this legislation at their request, in writing it, I kept in mind the other agricultural associations, farmers and ranchers I represent in central and southern Idaho."

72.    Upon information and belief, certain legislators and legislative staff advocated for I.C. § 18–7042 specifically because it would silence animal protection organizations.

73.    On information and belief, Idaho's law was based in substantial part on model language drafted and lobbied by the American Legislative Exchange Council (ALEC).

74.    On information and belief, the law was drafted by the Idaho Dairymen's Association with the express purpose of disadvantaging animal rights and whistleblower speech. About one week before the ag gag bill was introduced in the Idaho legislature, the Idaho Dairymen's Association began instructing its members to coerce employees to waive their constitutional rights to speak freely by requiring workers to sign agreements that prohibit them from disclosing to the government or the public *any* information about unsafe, dangerous, or abusive conditions or conduct on Idaho dairies and other agricultural facilities.

75.    On information and belief, there are no other statutes in Idaho that target a specific category of whistle-blowing or investigative journalism.  Undercover investigations of, for example, financial institutions or medical providers are still permitted.

### Investigations and Reporting Generally

76.    Plaintiff PETA regularly conducts investigations into industrial factory farming

29

facilities and slaughtering operations in the United States.  These investigations are central to the organization's mission and related public interest campaigns.

77.    Plaintiffs Will Potter, CounterPunch, and James McWilliams actively report on agricultural investigations.  Each engages in reporting that relies on the investigations either explicitly, or as part of their background research.

78.    Plaintiff ALDF is engaged in, or will imminently be engaged in, undercover investigations of agricultural facilities in the United States.  ALDF conducts investigations because they are useful to the organizations' educational and outreach missions, as well as its litigation.

79.    Plaintiff Western Watersheds Project investigates the harms of domestic livestock grazing on federal land.  WWP's efforts include entering federal land that is closed to the public and documenting inappropriate grazing through videos and photos, among other things.

80.    Plaintiff Monte Hickman believes that undercover investigations are an important part of civic discourse and political participation.  He has the time, background, and desire to do an undercover investigation in Idaho.  He would be employed to do such an investigation but for the existence of I.C. § 18–7042.

81.    Plaintiff Daniel Hauff believes that undercover investigations are an important means of exposing animal cruelty at factory farms.  He has the time, background, and desire to coordinate and consult on an undercover investigation in Idaho.  He would be employed to do such coordination and consultation but for the existence of I.C. § 18–7042.

82.    Plaintiff ACLU of Idaho has current members who have conducted investigations—as recently as within the past month—that included making audio and video

30

recordings on site at agricultural production facilities in Idaho, and those members have specific plans to conduct similar investigations and make audio and video recordings at such facilities within the coming month. In some cases, the ACLU of Idaho's members must enter these facilities to protect their safety, because some adjacent public roads lack shoulders and some facilities have no fences. In other cases, ACLU of Idaho members have entered facilities by crossing the plane of property boundaries with cameras and recording equipment in order to document conditions endangering the public's safety. In still other cases, members have had to fully enter facilities' land to adequately document conditions that endanger the public's health.

83.     Plaintiff ICARE has current members who have conducted investigations that included making audio and video recordings on site at agricultural production facilities in Idaho, and those members have specific plans to conduct similar investigations and make audio and video recordings at such facilities within the coming month. ICARE members have plans to do more investigations at agricultural facilities, both employment-based investigations and other forms of investigation.

84.     In order to document actual conditions within agricultural operations, including egregious animal abuses and routine cruelties, PETA, ALDF, Hickman, Hauff, Koch, members of the ACLU of Idaho, and ICARE have conducted or are committed to conducting undercover investigations at agriculture facilities.

85.     Hickman would be paid to attempt to obtain employment with agricultural facilities, or to gain access through misrepresentations for a shorter period of time such as posing as a member of tour group.

86.     Some of the investigations, including those that would be conducted by Hickman

31

and Koch, would likely take the form of an employment-based investigation.  In this context, investigators for PETA and ALDF, or Hickman and Koch, would perform all the duties of a farm laborer while observing and recording any illegal conduct occurring at the facility.

87.    Even attempting to obtain employment or gain access to an agricultural production facility in Idaho would make one guilty of criminal attempt.  Thus PETA, ALDF, Hickman, and Koch are precluded from even attempting to gain access to the facilities.

88.    On information and belief, agricultural employers in Idaho will inquire about whether a potential employee has any connections to an animal protection organization.

89.    Industry documents for the agricultural field, including documents provided to farms by the Idaho Dairymen's Association, routinely instruct agricultural employers to inquire about affiliations with animal protection organizations.

90.    During their investigations, employment-based or otherwise, investigators use recording equipment to document violations of applicable laws and regulations, including unsanitary practices, cruelty to animals, pollution, sexual misconduct, labor law violations, and other matters of public importance.

91.    Plaintiffs ALDF, PETA, CFS, Farm Sanctuary, River's Wish Animal Sanctuary, WWP, Sandpoint Vegetarians, ICARE, and Farm Forward have used the videos and photos of illegal conduct to seek enforcement of civil and criminal laws and regulations, to encourage legislative and industry reform, to educate the public about factory farms, and to effectuate changes in corporate policies and supply chains.

92.    PETA's 1998 investigation of Belcross Farm, a pig-breeding factory farm in North Carolina, resulted in felony indictments of workers after PETA released hours of video

footage that revealed shocking, systematic cruelty from daily beatings of pregnant sows with a wrench and an iron pole to skinning pigs alive and sawing off a conscious animal's legs.  A 2001 PETA investigation of Seaboard Farms, an Oklahoma pig farm, resulted in the first conviction for felony animal cruelty to farmed animals after PETA's investigation showed employees routinely throwing, beating, kicking, and slamming animals against concrete floors and bludgeoning them with metal gate rods and hammers.  PETA's 2008 investigation of the factory farms of Aviagen Turkeys resulted in the first-ever felony indictments for farmed poultry, and first convictions of factory farmers for abusing turkeys.

93.     Undercover investigations have and will continue to result in positive legal outcomes, provide insights into modern factory farming, and contribute immensely to public discourse about the political and ethical dimensions of our food choices.

94.     These recordings are an important part of the marketplace of ideas because they influence public opinion and consumer demand.  A 2012 consumer survey conducted by Purdue University's Department of Agricultural Economics and Department of Animal Sciences found that the public relies on the information gathered and presented by animal protection groups or investigative journalists more than they rely on industry groups and the government combined.

95.     With the exception of material generated by or done on behalf of the animal agricultural industry, or pro-agriculture speech produced by the State, investigations by journalists or activists and their subsequent coverage in the media provide the primary lens through which the workings of agricultural operations may be gleaned.

96.     Countless reporters and authors have sought access to factory farms and slaughterhouses by asking owners for tours in order to better understand modern industrial

agriculture.  Owners and managers of these facilities never give such consent.  The acclaimed author Jonathan Safran Foer, who spent three years researching agriculture for his book *Eating Animals*, wrote, "As it turns out, locked doors are the least of it. I never heard back from . . . any of the companies I wrote to. . . . Even research organizations with paid staffs find themselves consistently thwarted by industry secrecy. . . . The power brokers of factory farming know that their business model depends on consumers not being able to see (or hear about) what they do."

**Investigative Injuries (ALDF, PETA, ACLU, ICARE, Hauff, Hickman, Koch, and WWP)**

97.    Plaintiffs ALDF and PETA have the goal and organizational purpose of producing speech that shows the hidden side of industrial agriculture.

98.    ALDF and PETA have a specific interest in agricultural investigations in Idaho.

99.    Plaintiffs ALDF and PETA's missions are best served by demonstrating that meat, dairy, eggs, and related products are produced in a similar manner industry-wide, across the United States, which requires the ability to access a diverse array of states and not just a select few.  These goals are best served by constantly seeking investigative opportunities in new states; indeed, the fact that they have not done an investigation in Idaho in the past makes Idaho's agricultural industry a uniquely important area for investigation.

100.    The inability to conduct undercover investigations in Idaho allows agricultural enterprises in Idaho to claim that they are treating their animals in a way that is different than what is shown in the videos obtained by Plaintiffs from other states.  Food safety, labor, and animal welfare issues are uniquely hidden from public scrutiny because of the Idaho ag gag law.

101.    ALDF agreed to hire Daniel Hauff, a national expert in obtaining access to agricultural operations for undercover investigations.  Hauff would coordinate ALDF's Idaho

investigation.

102.    The investigations desired by ALDF and PETA would violate the ag gag statute,
I.C. § 18–7042.

103.    ALDF and PETA would instruct their investigators to take photos and videos to
document inhumane conduct inside the facility, without the permission or consent of the owner,
and their investigators would not disclose their affiliation with animal protection organizations.
As such, ALDF and PETA and their investigators would face the threat of prosecution under I.C.
§ 18–7042(1).

104.    Plaintiff ACLU of Idaho's mission includes vigorously protecting the civil
liberties and freedom of speech of its members and all Idahoans.  The ACLU of Idaho has an
ongoing interest in robust public debate, informed by investigation, documentation, and access to
and disclosure of public records.   Its members have recently conducted investigations of
agricultural production facilities that would violate the ag gag statute, I.C. § 18–7042, and those
members plan to continue those investigations.   The ag gag statute significantly impairs the
ACLU's mission of protecting its members' freedom of speech to continue these investigations.

105.    In addition to the agricultural investigations of its members, the ACLU and its
members also frequently try to obtain records from the government.  Among the records kept by
the government are records of agricultural production facilities, including records of dangerous
and unhealthy conditions at some of those facilities.  Under I.C. § 18–7042, anyone who makes a
public records request seeking records of an agricultural production facility risks being
prosecuted if any of their statements in making the request is interpreted to be a
misrepresentation.  These provisions substantially chill all Idahoans' speech in requesting public

35

records from their government.

106.    WWP documents inappropriate cattle grazing on public land, including areas that are closed to the public for any number of reasons.  WWP documents degradation of public land, including private corrals or agricultural structures not open to the public but placed on public land.  This requires entering the area and taking photographs or videos.  These acts are specifically criminalized by I.C. § 18–7042.  But for the existence of I.C. § 18–7042, WWP would conduct investigations of agricultural lands in Idaho that are now illegal.

107.    Plaintiffs believe that prosecutors in Idaho intend to enforce I.C. § 18–7042.

108.    The more successful the undercover investigations by Plaintiffs, the more likely the animal welfare, labor, environmental, and food safety issues are to achieve substantial media attention, and the more likely it is that they will be prosecuted under I.C. § 18–7042.

109.    ALDF and PETA would like to investigate one or more facilities in Idaho, but their constitutionally-protected speech is chilled because of the reasonable fear of prosecution under I.C. § 18–7042.  They cannot engage in their investigative activities without fear of prosecution.

110.    Plaintiff Hauff suffers economic harm because he would be paid by ALDF to consult regarding investigations in Idaho.  I.C. § 18–7042 precludes him from gaining employment assisting with investigations in Idaho.

111.    Plaintiff ICARE has taken photos and videos on agricultural properties without the express consent of the owners in the past and has plans to do so again in the future.  These actions are criminalized under I.C. § 18–7042.

112.    Plaintiff ICARE is interested in conducting employment-based investigations in

36

Idaho.  They have taken steps to find a suitable investigative employee but cannot take further actions to obtain agricultural employment for the person because of I.C. § 18–7042.

113.    Plaintiff Monte Hickman is committed to doing an agricultural investigation.  He has the background and experience that make him well-suited for agricultural employment and would pursue this type of work for both personal and financial reasons.

114.    Plaintiff Hickman cannot accept employment as an agricultural worker for purposes of an investigation because to do so would constitute a violation of I.C. § 18–7042.

115.    Plaintiff Hickman is willing, able, and ready to engage in investigative activities. He is prevented from doing so because of I.C. § 18–7042.

116.    If I.C. § 18–7042 is invalidated, Hickman's economic and speech injuries will be redressed and he will be hired to attempt to do investigative work.

117.    Hickman will be paid an hourly rate to conduct investigations, but most of the work he would be paid to do is rendered illegal by the statute.  He cannot seek employment or otherwise investigate facilities not open to the public because doing so would constitute an attempt to commit agricultural operation interference.

118.    Hickman has been promised employment as a potential investigator.  He cannot accept this employment and pursue investigative opportunities until the law is invalidated.

119.    Plaintiff Koch intends to continue her investigative activities, but is prevented from doing so because of I.C. § 18–7042.

120.    If I.C. § 18–7042 is invalidated, Koch's economic and speech injuries will be redressed and she will continue her investigative work.

121.    Realistically, there is no investigation strategy that would meaningfully reveal the

37

conditions inside agricultural production facilities without violating the statute.

### Reporter and Scholarly Interests (Potter, CounterPunch, McWilliams)

122.   Plaintiff CounterPunch, a publisher, and Will Potter, a journalist, are committed to covering the images and stories that emerge from undercover investigations of agricultural operations.

123.   Plaintiff James McWilliams is a historian and scholar who lectures across the country, blogs, writes for popular media, and teaches courses on the ethics of food.  He relies on undercover investigations for his research, teaching, and presentations.

124.   Each of the above mentioned media and scholarly plaintiffs have covered issues relating to labor, the environment, food safety, or animal welfare.

125.   Each such Plaintiff is concerned with these issues across the entire nation and will attest that they would report on any investigations done in Idaho.

126.   The harm to the media and academic plaintiffs is no less than the harm to the investigative plaintiffs.

127.   There is a right to receive speech just as much as there is a right to produce it. The media and academic plaintiffs are committed to a transparent and free-flowing exchange of ideas regarding issues of food safety and animal welfare, and the ag gag law directly impedes their ability to report on these stories by stymieing undercover investigations in the state.

128.   If the ag gag law is declared unconstitutional, CounterPunch, Potter, McWilliams, and Koch will report on the findings of undercover factory farm investigations conducted in Idaho.  They will cover any investigation completed by one of the named plaintiffs in this case or an investigation conducted in Idaho by any other group or individual.

**Organizational Injuries (ALDF, PETA, ACLU, CFS, Farm Sanctuary, River's Wish,**

**WWP, Sandpoint Vegetarians, and Farm Forward)**

129.    ALDF, PETA, CFS, Farm Sanctuary, River's Wish Animal Sanctuary, WWP,

Sandpoint Vegetarians, IHCIRE, and Farm Forward are each forced to divert resources away

from their core educational and outreach programs to focus on the social harms of ag gag laws.

The existence of I.C. § 18–7042 forces each organization to do public outreach and education

about ag gag laws generally, and in Idaho in particular, and as such they have less money and

time to devote to outreach on topics that are more central to their missions, such as animal

rescues, the more harms of industrial farming and grazing, and community empowerment.

130.    ALDF, PETA, CFS, Farm Sanctuary, River's Wish Animal Sanctuary, WWP,

Sandpoint Vegetarians, and Farm Forward are each harmed because the law makes their outreach

and educational programs more difficult.

131.    ALDF, PETA, CFS, Farm Sanctuary, River's Wish Animal Sanctuary, WWP,

Sandpoint Vegetarians, and Farm Forward are spending money or organizational resources on

media and education regarding the harmful impacts of ag gag laws, including I.C. § 18–7042.

This is money that would have otherwise been used to support their core missions of educating

the public about the harms of factory farming and other forms of abuse, neglect, and cruelty to

animals.

132.    PETA and ALDF use their own investigations and those of other groups to

document the problems with the legal system's treatment of animals, such as the absence of

federal laws that protect animals on farms or the under-enforcement of state anti-cruelty laws.

I.C. § 18–7042 makes access to investigative accounts of the agricultural industry more difficult

to obtain, and thus undermines their outreach and educational programs.

133.    Farm Forward uses the investigations of other groups to document the problems
with the legal system's treatment of animals, such as the absence of federal laws that protect
animals on farms or the under-enforcement of state anti-cruelty laws.  I.C. § 18–7042 makes
access to investigative accounts of the agricultural industry more difficult to obtain, and thus
undermines their outreach and educational programs.

134.    River's Wish Animal Sanctuary benefits from investigative work at agricultural
facilities.  The work of whistle-blowers can and has resulted in their sanctuary obtaining rescue
animals.  That is to say, the very animals they seek to protect will be more difficult to identify
because of I.C. § 18–7042.  Likewise, the law makes their outreach and educational programs
more difficult.

135.    Sandpoint Vegetarians and Farm Forward rely heavily on showing video of
animal agriculture to the public.  They have found this to be one of their most effective outreach
tools.

136.    Sandpoint Vegetarians must now devote a significant amount of their members'
time and energy to public outreach about the ag gag law and repeal efforts. This sort of outreach
directly limits the amount of time and resources they can spend on advocating a vegetarian diet
and the humane treatment of animals.

137.    WWP seeks to remove domestic livestock grazing from federal public lands.
Those public lands fall within the definition of "agricultural production facility's operations"
provided by I.C. § 18–7042(2)(b).  Their goal is to protect public lands from the environmental
degradation caused by livestock grazing.

138.    A core component of the ACLU's mission and activities is public education about laws that restrict Idahoans' civil liberties.  In response to member complaints and tremendous public and media interest in the ag gag statue, the ACLU of Idaho will be forced to deploy significant staff time to public outreach and education about the ag gag law, including developing new "Know Your Rights" trainings and materials for its members about their rights under the new criminal statute.

139.    CFS relies on and uses videos and recordings obtained during undercover industrial agriculture investigations for its legal, policy, advocacy, and educational and outreach work.  For example, CFS was involved in litigation in Texas to enforce the state's Health and Safety Code at egg production facilities with the goal of protecting the public from contracting foodborne illnesses.  The lawsuit stemmed in part from an undercover investigation that revealed unsanitary and inhumane conditions at the facility.  CFS is a uniquely-situated recipient of the undercover recordings as it is a listener; without access to undercover recordings CFS has difficulty fulfilling its mission and providing information to the public about food production at agricultural operations.

140.    CFS has imminent plans to rely on undercover investigations to pursue legal and policy work as part of its campaign against concentrated animal feeding operations.  The reasonable fear of foodborne illnesses from certain agricultural facilities, the difficulty in obtaining information, and the inability to protect the public from environmental and public health threats of certain agricultural operations are themselves actual injuries.

**CLAIMS FOR RELIEF**

**Declaratory Relief**

41

141.    An actual and immediate controversy exists between Plaintiffs and Defendants. Plaintiffs contend that the challenged statute is unconstitutional.  Defendants believe the statute is constitutional.

142.    Plaintiffs are therefore entitled to a declaration of rights with respect to this controversy.  Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law.

### Injunctive Relief

143.    Plaintiffs are entitled to an injunction.  Defendants are acting and threatening to act under color of state law to deprive Plaintiffs of their constitutional rights.  Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a result of the existence, operation, enforcement, and threat of enforcement of the challenged statute.  Plaintiffs have no plain, adequate, or speedy remedy at law.  Plaintiffs are refraining from constitutionally protected activities solely for fear of prosecution under the statute.

### FIRST CAUSE OF ACTION

### (First Amendment: Overbreadth)

144.    Plaintiffs incorporate by reference all allegations contained in the above paragraphs.

145.    The act of image capture—the recording of audio or video—is not only a necessary predicate to certain speech, it is speech itself.

146.    Both listeners and speakers can challenge a law as constitutionally overbroad. When a law impairs protected speech, both the would-be speakers and those who would benefit

42

from hearing or seeing the speech are harmed.  One need not be threatening to violate I.C. § 18–7042 (2014) in order to have a cognizable injury.

147.    Even a speaker or listener whose rights are not violated by the statute in question can raise an overbreadth challenge.  Overbreadth doctrine permits the vindication of First Amendment rights for parties not before the Court.

148.    A statute that prohibits substantially more speech than the First Amendment permits is unconstitutionally overbroad even though the State could lawfully punish some of the conduct targeted by the statute.  *See United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010).

149.    Even if the State may be able to lawfully limit the creation of certain recordings on an agricultural operation, I.C. § 18–7042 regulates substantially more speech than the First Amendment permits.

150.    Specifically, the ag gag law, although designed to target and chill animal protection activists, also criminalizes all sorts of protected speech.  Intentionally or not, the law chills and criminalizes a plethora of protected speech that is not even related to animal welfare, including worker safety, food safety, labor laws, and other types of agricultural industry misconduct.

151.    The ag gag law criminalizes not just the protected speech of Plaintiffs, but of any person or group that would seek to investigate an "agricultural production facility" in a similar manner, including employees, journalists, or any person merely concerned about the conditions under which food is processed.

152.    Because the ag gag law categorizes so much protected speech as "criminal," it is unconstitutionally overbroad.

153.    Plaintiffs are entitled to prospective relief enjoining Defendants from enforcing the ag gag law.

154.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the ag gag law is unconstitutionally overbroad and unenforceable in any situation.

## SECOND CAUSE OF ACTION

### (First Amendment: Content & Viewpoint Based Discrimination)

155.    Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

156.    The most important function of the First Amendment is to protect against laws that target certain messages or speech because of their "ideas, subject matter, or content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95–96 (1972).

157.    "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994).

158.    I.C. § 18–7042 limits the ability to create images relating to a particular activity: agricultural operations.  A regulation prohibiting the recording of images or sounds from a certain type of activity—working conditions, animal welfare, and food safety at agricultural facilities—is content-discriminatory.

159.    Even if the speech in question is not generally protected speech—for example, if the speech in question is merely cast as trespassing—the State still may not make a content-based distinction.  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 380 (1992).  That is to say, content-based distinctions are impermissible even for speech that is generally unprotected.

160.    By its plain text, the ag gag statute is an explicit content-based regulation.  It singles out recording the activities of agricultural operations for special, discriminatory treatment.

161.    In addition, the legislative history of the statute, including statements made by the law's sponsors and drafters, make clear that the purpose of the ag gag statute was and is to interfere with and suppress the message of national animal protection groups.  Legislators were targeting the speech and expressive activities of certain individuals for discriminatory treatment.

162.    The law singles out speech about agricultural activities and limits the ability of activists and journalists to engage in political speech that is of the utmost public concern.

163.    The State has not limited the ability to engage in whistleblowing activity in other highly regulated or important industries, including medical providers, defense contractors, banks, or childcare providers.

164.    By singling out the agricultural industry for protection against political speech that may be harmful to its profits, the ag gag law must be treated as a content- and viewpoint-based regulation.  In practice, the law ensures that only one side of the debate about industrial agricultural facilities is raised.

165.    The ag gag statute, as a content- and viewpoint-based regulation that is neither justified by a compelling interest nor narrowly tailored, violates Plaintiffs' First Amendment rights.

166.    Plaintiffs are entitled to prospective relief from the Defendants to remedy the deprivations suffered as a result of the violations of their First Amendment rights.

167.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the

ag gag law is unconstitutional and unenforceable in any situation.

### THIRD CAUSE OF ACTION

### (Article VI, § 2: Supremacy Clause: Preemption)

168.    Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

169.    Article VI, paragraph 2, of the U.S. Constitution provides, "the Laws of the United States . . . shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

170.    State laws that conflict with or frustrate the purposes of federal laws are preempted.

171.    A state law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983).

172.    The operation, existence, and enforcement of the ag gag law, I.C. § 18–7042, violates the Supremacy Clause because it conflicts with federal law by undermining the objectives of two federal statutes.

### False Claims Act (FCA) Preemption

173.    Because one of the core purposes of the False Claims Act, 31 U.S.C. §§ 3729, 3730 (2006), is to provide incentives and protections for private persons to surreptitiously uncover fraud against the federal government, I.C. § 18–7042 is preempted.

174.    On information and belief, in Idaho there is at least one agricultural facility that has a contract with the federal government either to provide meat for the National School Lunch

Program or other food assistance programs, or to provide some other form of agricultural commodity to the federal government.

175.   On information and belief, some of the agricultural operations in Idaho are subject to federal inspection.

176.   I.C. § 18–7042 drastically undermines the federal goal of discovering fraud against the federal government by criminalizing the very conduct that has produced at least one False Claims Act case in the agricultural industry.[4]

### Food Safety Modernization Act (FSMA) Preemption

177.   The purpose of 21 U.S.C. § 399d is to protect whistle-blowers from retaliation.

178.   The FMSA ensures that employees of an "entity engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food" are protected against retaliation for reporting violations of the act.[5]

179.   An employee documenting, for example, adulterated animal products with videos would be protected under the FMSA and simultaneously subject to criminal penalties under I.C. § 18–7042.

---

[4] For example, in 2008 an undercover investigation of a California slaughterhouse resulted in gruesome images of inhumane treatment of cows.  The investigation resulted in the president of the slaughterhouse admitting that his company had produced hamburger from sick cows and sold the product to the federal government for the National School Lunch Program.  The case spurred a False Claims Act prosecution resulting in a $497 million judgment.  *See* Linda Chiem, *Slaughterhouse Owners Hit With $500M Judgment In FCA Case*, Law360 (Nov. 16, 2012), http://www.law360.com/articles/394827/slaughterhouse-owners-hit-with-500m-judgment-in-fca-case.

[5] 21 U.S.C. § 399d (prohibiting retaliation for reporting to government officials "any act or omission the employee reasonably believes to be a violation of any provision of this chapter or any order, rule, regulation, standard, or ban under this chapter, or any order, rule, regulation, standard, or ban under this chapter").

180.   A key purpose of this provision of the FMSA is to encourage whistle-blowing. Accordingly, a state law that imposes punishments for doing so would frustrate Congressional purpose. *See Nash v. Florida Industrial Commission*, 389 U.S. 235 (1967) (noting a conflict between a state law and the NLRA).

## Clean Water Act (CWA) Preemption

181.   The purpose of 33 U.S.C. § 1367(a) is to protect whistle-blowers from retaliation.

182.   The CWA ensures that employees of regulated entities are protected against retaliation for reporting violations of the act.

183.   An employee documenting, for example, excessive effluent run-off or violations of federal discharge permits at a factory farm would be protected under the AWA and simultaneously subject to criminal penalties under I.C. § 18–7042.

184.   A key purpose of this provision of the AWA is to encourage whistle-blowing. Accordingly, a state law that imposes punishments for doing so would frustrate Congressional purpose. *See Nash v. Florida Industrial Commission*, 389 U.S. 235 (1967) (noting a conflict between a state law and the NLRA).

185.   Plaintiffs are entitled to a judgment declaring that I.C. § 18–7042 is preempted. Such a declaration is appropriate and necessary in order to determine the rights and obligations of the parties.

186.   Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the ag gag law is unconstitutional.

## FOURTH CAUSE OF ACTION

48

**(Fourteenth Amendment:  Equal Protection & Due Process)**

187.    Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

188.    The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

189.    Equal Protection and Due Process generally prohibit laws that impinge on fundamental rights, including freedom of speech.

190.    When a statue is enacted based on improper motives, including animus towards a particular group of people, the Equal Protection and Due Process Clauses of the Fourteenth Amendment are violated.  *See, e.g.*, *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).

191.    The motivating purpose behind I.C. § 18–7042 was animus towards animal rights groups.

192.    There was *no other purpose* behind I.C. § 18–7042 than to harm a politically unpopular group and shelter a single industry from political discourse and criticism.

193.    I.C. § 18–7042 targets animal protection groups and serves no rational, non-animus based purpose.  The legislative history is replete with derogatory statements about Plaintiffs and their political beliefs.

194.    Plaintiffs are entitled to prospective relief from the Defendants to remedy the Equal Protection and Due Process violations.

195.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the ag gag law is unconstitutional.

**PRAYER FOR RELIEF**

49

Plaintiffs respectfully request an order and judgment:

196.   Declaring that the challenged statute, I.C. § 18–7042 (2014),  violates the U.S. Constitution on its face and as applied to Plaintiffs;

197.   Permanently enjoining Defendants, as well as their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from enforcing the challenged statute;

198.   Striking down the challenged statute in its entirety;

199.   To ensure that the public has accurate notice of the requirements of the law and the Idaho Code, and to prevent chilling speech, requiring the Defendants to provide public notice, including in the official and online editions of the Idaho Code, that I.C. § 18–7042 is unconstitutional.

200.   Awarding the Plaintiffs reasonable attorneys' fees and costs; and

201.   Awarding any such relief as the Court may deem just and proper.


Dated this 17th Day of March, 2014


_____

Professor Justin Marceau, (*Pro Hac Vice application pending*)
Of Counsel, Animal Legal Defense Fund
University of Denver
Sturm College of Law
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6449
jmarceau@law.du.edu

50

Matthew Liebman, (*Pro Hac Vice application pending*)
Animal Legal Defense Fund
170 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533, ext. 1028
mliebman@aldf.org

Matthew Strugar (*Pro Hac Vice application pending*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
(323) 210-2263
matthew-s@petaf.org

Paige M. Tomaselli (*Pro Hac Vice application pending*)
Center for Food Safety
303 Sacramento St., 2nd Floor
San Francisco, CA 94111
(415) 826-2770
ptomaselli@centerforfoodsafety.org

Richard Alan Eppink, ISB no. 7503
American Civil Liberties Union
of Idaho Foundation
P.O. Box 8791
Boise, ID  83701
(208) 344-9750, ext. 1202
reppink@acluidaho.org

Maria E. Andrade, ISB no. 6445
P.O. Box 2109
Boise, ID 83701
(208) 342-5100, ext. 102
mandrade@andradelegal.com

Attorneys for Plaintiffs

51

TO ORDER COPIES OF ANY DOCUMENTS LISTED BELOW, CALL WESTLAW
COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

**This docket is current through 12/04/2018**

**Current Date:** 5/15/2020
**Source:**          U.S. District Court, District of Idaho (Boise)
**Court:**                                       U.S. District Court, District of Idaho (Boise)

**Case Title:**                                  Animal Legal Defense Fund et al v. Otter et al

**Case:**                                        1:14-CV-00104

**Judge:**                                       Judge B. Lynn Winmill

**Date Filed:**                                  03/16/2014

**Other Dockets:**                               Case in other court: Ninth Circuit Court of Appeals, 15-35960

**Date Closed/Terminated:**                      12/04/2018

**Case Status:**                                 LC17, REOPEN, TERMED

**SYNOPSIS INFORMATION**
**Allegations:**                                 Plaintiffs challenge the Idaho's "ag gag" law, contending that the law penalized undercover
                                                 investigations and videography documenting the production of agricultural products for
                                                 lawful uses.

**Damages:**                                     Declaratory and injunctive relief, fees, and costs.

**COMPLAINT (MANUALLY RETRIEVED)**               Original Image of this Document (PDF)

**CASE INFORMATION**
**Case Number:**                                 1:14CV00104

**Jury Demand:**                                 None

**Nature of Suit:**                              Civil Rights: Other Civil Rights (440)

**Key Nature of Suit:**                          Civil Rights; Other Federal Civil Rights (110.45)

**Jurisdiction:**                                Federal Question

**Cause:**                                       42 USC 1983 Civil Rights Act

**PARTICIPANT INFORMATION**

| Animal Legal Defense Fund |
|---|

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Justin F Marceau |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | University of Denver Sturm College of Law |
| **Attorney Address:** | 2255 E Evans Avenue<br>Denver, CO 80210 |
| **Attorney Phone:** | 303-871-6449 |
| **Email Address:** | jmarceau@law.du.edu |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew G Liebman |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Animal Legal Defense Fund |
| **Attorney Address:** | 170 E Cotati Avenue<br>Cotati, CA 94931 |
| **Attorney Phone:** | 707-795-2533 ext 1028 |
| **Email Address:** | mliebman@aldf.org |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Email Address:** | reppink@acluidaho.org |

## People for the Ethical Treatment of Animals

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## American Civil Liberties Union of Idaho

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109 |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

|                    |                                                      |
|--------------------|------------------------------------------------------|
|                    | Boise, ID 83701                                      |
| **Attorney Phone:**| 208-342-5100                                         |
| **Attorney Fax:**  | 208-342-5101                                         |
| **Email Address:** | mandrade@andradelegal.com                            |
| **Attorney:**      | Matthew Daniel Strugar                               |
| **Status:**        | PRO HAC VICE; ATTORNEY TO BE NOTICED                 |
| **Firm Name:**     | Law Office of Matthew Strugar                        |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039         |
| **Attorney Phone:**| 323-696-2299                                         |
| **Email Address:** | matthewstrugar@gmail.com                             |
| **Attorney:**      | Richard Alan Eppink                                  |
| **Status:**        | ATTORNEY TO BE NOTICED                               |
| **Firm Name:**     | American Civil Liberties Union of Idaho Foundation   |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701                  |
| **Attorney Phone:**| 208-344-9750 ext. 1202                               |
| **Attorney Fax:**  | 208-344-7201                                         |
| **Email Address:** | reppink@acluidaho.org                                |

### The Center for Food Safety

|                    |                                                      |
|--------------------|------------------------------------------------------|
| **Type:**          | Plaintiff                                            |
| **Attorney:**      | Maria E Andrade                                      |
| **Status:**        | LEAD ATTORNEY; ATTORNEY TO BE NOTICED                |
| **Firm Name:**     | ANDRADE LEGAL, INC                                   |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701                    |
| **Attorney Phone:**| 208-342-5100                                         |
| **Attorney Fax:**  | 208-342-5101                                         |
| **Email Address:** | mandrade@andradelegal.com                            |
| **Attorney:**      | Leslie Brueckner                                     |
| **Status:**        | PRO HAC VICE; ATTORNEY TO BE NOTICED                 |
| **Firm Name:**     | Public Justice, P.C.                                 |
| **Attorney Address:** | 555 12th Street, Suite 1230<br>Oakland, CA 94607  |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| Attorney Phone: | 510-622-8150 ext 205 |
| Email Address: | lbrueckner@publicjustice.net |
| Attorney: | Matthew Daniel Strugar |
| Status: | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| Firm Name: | Law Office of Matthew Strugar |
| Attorney Address: | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| Attorney Phone: | 323-696-2299 |
| Email Address: | matthewstrugar@gmail.com |
| Attorney: | Paige M Tomaselli |
| Status: | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| Attorney Address: | Center for Food Safety<br>303 Sacramento Street, 2nd Floor<br>San Francisco, CA 94111 |
| Attorney Phone: | 415-826-2770 |
| Email Address: | ptomaselli@centerforfoodsafety.org |
| Attorney: | Richard Alan Eppink |
| Status: | ATTORNEY TO BE NOTICED |
| Firm Name: | American Civil Liberties Union of Idaho Foundation |
| Attorney Address: | P.O. Box 1897<br>Boise, ID 83701 |
| Attorney Phone: | 208-344-9750 ext. 1202 |
| Attorney Fax: | 208-344-7201 |
| Email Address: | reppink@acluidaho.org |

## Farm Sanctuary

| | |
|---|---|
| Type: | Plaintiff |
| Attorney: | Maria E Andrade |
| Status: | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| Firm Name: | ANDRADE LEGAL, INC |
| Attorney Address: | PO Box 2109<br>Boise, ID 83701 |
| Attorney Phone: | 208-342-5100 |
| Attorney Fax: | 208-342-5101 |
| Email Address: | mandrade@andradelegal.com |
| Attorney: | Matthew Daniel Strugar |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## River's Wish Animal Sanctuary

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Western Watersheds Project

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Sandpoint Vegetarians

| | |
|---|---|
| **Type:** | Plaintiff |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Idaho Concerned Area Residents for the Environment

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Idaho Hispanic Caucus Institute for Research and Education

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Counterpunch

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Farm Forward

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Will Potter

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## James McWilliams

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897 |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

|  | Boise, ID 83701 |
|---|---|
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Monte Hickman

| **Type:** | Plaintiff |
|---|---|
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Blair Koch

| **Type:** | Plaintiff |
|---|---|
| **Attorney:** | Maria E Andrade |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## Daniel Hauff

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Maria E Andrade |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | ANDRADE LEGAL, INC |
| **Attorney Address:** | PO Box 2109<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-342-5100 |
| **Attorney Fax:** | 208-342-5101 |
| **Email Address:** | mandrade@andradelegal.com |
| **Attorney:** | Matthew Daniel Strugar |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Firm Name:** | Law Office of Matthew Strugar |
| **Attorney Address:** | 2108 Cove Avenue<br>Los Angeles, CA 90039 |
| **Attorney Phone:** | 323-696-2299 |
| **Email Address:** | matthewstrugar@gmail.com |
| **Attorney:** | Richard Alan Eppink |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | American Civil Liberties Union of Idaho Foundation |
| **Attorney Address:** | P.O. Box 1897<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-344-9750 ext. 1202 |
| **Attorney Fax:** | 208-344-7201 |
| **Email Address:** | reppink@acluidaho.org |

## C.L. Butch Otter

| | |
|---|---|
| **Party Description:** | in his official capacity as Governor of Idaho |
| **Type:** | Defendant |
| **Party Terminated:** | TERMINATED: 09/04/2014 |
| **Attorney:** | Thomas C. Perry |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Office of the Governor |
| **Attorney Address:** | State Capitol<br>Boise, ID 83720 |
| **Attorney Phone:** | 208-334-2100 |
| **Attorney Fax:** | 208-854-3036 |
| **Email Address:** | tom.perry@gov.idaho.gov |
| **Attorney:** | Cally Ann Younger |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Governor's Office |
| **Attorney Address:** | State Capitol<br>PO Box 83720<br>Boise, ID 83720 |
| **Attorney Phone:** | 208-334-2100 |
| **Email Address:** | cally.younger@gov.idaho.gov |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

## Lawrence Wasden

| | |
|---|---|
| **Party Description:** | in his official capacity as Attorney General of Idaho |
| **Type:** | Defendant |
| **Attorney:** | Clay R Smith |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Terminated:** | TERMINATED: 04/18/2018 |
| **Firm Name:** | OFFICE OF ATTORNEY GENERAL |
| **Attorney Address:** | POB 83720<br>Boise, ID 83720-0010 |
| **Attorney Phone:** | 208-334-4118 |
| **Attorney Fax:** | 208-854-8073 |
| **Email Address:** | clay.smith@ag.idaho.gov |
| **Attorney:** | Peter L Wucetich |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Office of the Idaho Attorney General |
| **Attorney Address:** | 954 W. Jefferson<br>Boise, ID 83720 |
| **Attorney Phone:** | 208-332-3548 |
| **Email Address:** | peter.wucetich@ag.idaho.gov |
| **Attorney:** | Steven Lamar Olsen |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | OFFICE OF THE ATTORNEY GENERAL |
| **Attorney Address:** | POB 83720<br>Boise, ID 83720-0010 |
| **Attorney Phone:** | 208-334-2400 |
| **Attorney Fax:** | 208-854-8073 |
| **Email Address:** | steven.olsen@ag.idaho.gov |
| **Attorney:** | Carl J Withroe |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Attorney Address:** | Idaho Attorney General<br>954 W. Jefferson, Second Floor<br>Boise, ID 83720-0010 |
| **Attorney Phone:** | 208-332-3554 |
| **Email Address:** | carl.withroe@ag.idaho.gov |

## The Idaho Dairymen's Association, Inc.

**Type:**                          Intervenor Defendant

**Party Terminated:**              TERMINATED: 06/16/2014

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Attorney:** | David P Claiborne |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Sawtooth Law Offices, PLLC |
| **Attorney Address:** | P.O. Box 7985<br>Boise, ID 83707 |
| **Attorney Phone:** | 208-629-7447 |
| **Attorney Fax:** | 208-629-7559 |
| **Email Address:** | david@sawtoothlaw.com |
| **Attorney:** | Daniel V Steenson |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Sawtooth Law Offices, PLLC |
| **Attorney Address:** | PO Box 7985<br>Boise, ID 83707 |
| **Attorney Phone:** | 208-629-7447 |
| **Attorney Fax:** | 208-629-7559 |
| **Email Address:** | dan@sawtoothlaw.com |

## Reporters Committee for Freedom of the Press

| | |
|---|---|
| **Party Description:** | and 15 Others |
| **Type:** | Amicus |
| **Attorney:** | Charles A Brown |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | PO Box 1225<br>Lewiston, ID 83501 |
| **Attorney Phone:** | 208-746-9947 |
| **Attorney Fax:** | 208-746-5886 |
| **Email Address:** | CharlesABrown@cableone.net |
| **Attorney:** | Bruce D Brown |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Reporters Committee for Freedom of the Press |
| **Attorney Address:** | 1101 Wilson Blvd, Suite 1100<br>Arlington, VA 22209 |
| **Attorney Phone:** | 703-807-2101 |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Email Address:** | bbrown@rcfp.org |

## Government Accountability Project

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Craig Durham |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Ferguson Durham, PLLC |
| **Attorney Address:** | 223 N. 6th Street, Suite 325<br>Boise, ID 83702 |
| **Attorney Phone:** | 208-345-5183 |
| **Attorney Fax:** | 208-906-8663 |
| **Email Address:** | chd@fergusondurham.com |
| **Attorney:** | Jeffery S Gulley |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | Government Accountability Project<br>1612 K Street, NW, Suite 1100<br>Washington, DC 20006 |
| **Attorney Phone:** | 202-457-0034 ext 127 |
| **Email Address:** | jeffg@whistleblower.org |

## Idaho Building and Construction Trades Council, AFL-CIO

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | James Marshall Piotrowski |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | HERZFELD & PIOTROWSKI |
| **Attorney Address:** | PO Box 2864<br>Boise, ID 83701-2864 |
| **Attorney Phone:** | 208-331-9200 |
| **Email Address:** | JPiotrowski@idunionlaw.com |
| **Attorney:** | Marty Durand |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Herzfeld & Piotrowski, LLP |
| **Attorney Address:** | P.O. Box 2864<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-331-9200 |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

**Email Address:**                     marty@idunionlaw.com

## Idaho Farm Bureau Federation, Inc.

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Norman M Semanko |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Moffatt Thomas Barrett Rock & Fields, Chtd. |
| **Attorney Address:** | 101 S. Capitol Blvd., 10th Floor<br>P.O. Box 829<br>Boise, ID 83701-0829 |
| **Attorney Phone:** | 208-345-2000 |
| **Attorney Fax:** | 208-385-5446 |
| **Email Address:** | nsemanko@parsonsbehle.com |

## Idaho Heartland Coalition, Inc.

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Norman M Semanko |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Moffatt Thomas Barrett Rock & Fields, Chtd. |
| **Attorney Address:** | 101 S. Capitol Blvd., 10th Floor<br>P.O. Box 829<br>Boise, ID 83701-0829 |
| **Attorney Phone:** | 208-345-2000 |
| **Attorney Fax:** | 208-385-5446 |
| **Email Address:** | nsemanko@parsonsbehle.com |

## Food Producers of Idaho, Inc.

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Norman M Semanko |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Moffatt Thomas Barrett Rock & Fields, Chtd. |
| **Attorney Address:** | 101 S. Capitol Blvd., 10th Floor<br>P.O. Box 829<br>Boise, ID 83701-0829 |
| **Attorney Phone:** | 208-345-2000 |

| | |
|---|---|
| **Attorney Fax:** | 208-385-5446 |
| **Email Address:** | nsemanko@parsonsbehle.com |

## Idaho Cattle Association

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Norman M Semanko |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Moffatt Thomas Barrett Rock & Fields, Chtd. |
| **Attorney Address:** | 101 S. Capitol Blvd., 10th Floor<br>P.O. Box 829<br>Boise, ID 83701-0829 |
| **Attorney Phone:** | 208-345-2000 |
| **Attorney Fax:** | 208-385-5446 |
| **Email Address:** | nsemanko@parsonsbehle.com |

## Center for Constitutional Rights

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Michael J Bartlett |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Nevin, Benjamin, McKay & Bartlett LLP |
| **Attorney Address:** | 303 W. Bannock<br>P.O. Box 2772<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-343-1000 |
| **Attorney Fax:** | 208-345-8274 |
| **Email Address:** | bartlett@nbmlaw.com |
| **Attorney:** | Rachel Meeropol |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Attorney Address:** | Center for Constitutional Rights<br>666 Broadway, 7th Floor<br>New York, NY 10012 |
| **Attorney Phone:** | 212-614-6432 |
| **Email Address:** | rachelm@ccrjustice.org |

## The Idaho Dairymen's Association, Inc.

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | David P Claiborne |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Sawtooth Law Offices, PLLC |
| **Attorney Address:** | P.O. Box 7985<br>Boise, ID 83707 |
| **Attorney Phone:** | 208-629-7447 |
| **Attorney Fax:** | 208-629-7559 |
| **Email Address:** | david@sawtoothlaw.com |

## Professors of the Law of Unconstitutional Animus

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Celeste K Miller |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | McDevitt & Miller LLP |
| **Attorney Address:** | 420 W. Bannock<br>P.O. Box 2564<br>Boise, ID 83701 |
| **Attorney Phone:** | 208-343-7500 |
| **Attorney Fax:** | 208-336-6912 |
| **Email Address:** | ckmill2@gmail.com |
| **Attorney:** | Dean J Miller |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | MCDEVITT and MILLER |
| **Attorney Address:** | PO Box 2564<br>Boise, ID 83702 |
| **Attorney Phone:** | 208-343-7500 |
| **Attorney Fax:** | 208-336-6912 |
| **Email Address:** | joe@mcdevitt-miller.com |
| **Attorney:** | Susannah W Pollvogt |
| **Status:** | PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | University of Washburn School of Law |
| **Attorney Address:** | 1700 SW College Ave<br>Topeka, KS 66621 |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | |
|---|---|
| **Attorney Phone:** | 802-461-7817 |
| **Email Address:** | susannah.pollvogt@washburn.edu |

## Erwin Chemerinsky

| | |
|---|---|
| **Type:** | Amicus |
| **Attorney:** | Deepak Gupta |
| **Status:** | LEAD ATTORNEY; PRO HAC VICE; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Gupta Beck PLLC |
| **Attorney Address:** | 1735 20th Street NW<br>Washington, DC 20009 |
| **Attorney:** | Erika Birch |
| **Status:** | LEAD ATTORNEY; ATTORNEY TO BE NOTICED |
| **Firm Name:** | Strindberg & Scholnick, LLC |
| **Attorney Address:** | 1516 W. Hays St.<br>Boise, ID 83702 |
| **Attorney Phone:** | 208-336-1788 |
| **Attorney Fax:** | 208-287-3708 |
| **Email Address:** | erika@idahojobjustice.com |

## CALENDAR INFORMATION
View Calendar Information

## DOCKET PROCEEDINGS (171)

| Entry #: | Date: | Description: | |
|---|---|---|---|
| 158 | 12/04/2018 | AMENDED FINAL JUDGMENT & PERMANENT INJUNCTION - Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) | View Add to request |
| 157 | 11/30/2018 | ORDER FOR AWARD OF ATTORNEYS FEES AND COSTS re 156 Stipulation. Signed by Judge B. Lynn | View Add to request |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

|  |  | Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) |  |
| --- | --- | --- | --- |
| 156 | 11/29/2018 | STIPULATION FOR AWARD OF ATTORNEYS' FEES AND COSTS by Lawrence Wasden. (Olsen, Steven) | View Add to request |
| 155 | 08/29/2018 | ORDER re 154 Stipulation - IT IS HEREBY ORDERED, therefore, that all applicable deadlines governing the plaintiffs filing of motions or petitions for costs or fees in this matter shall be extended by 14 days. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) | View Add to request |
| 154 | 08/21/2018 | STIPULATION re 138 USCA Order to Extend Deadline for Fee Petition by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. (Eppink, Richard) | View Add to request |

| 153 | 08/08/2018 | DOCKET ENTRY ORDER: In accordance with agreements reached during the status conference conducted on August 8, 2015, the parties shall submit a proposed judgment and injunction for the Courts consideration on or before August 15, 2018. Signed by Judge B. Lynn Winmill. (mls) | Send Runner to Court |
| 152 | 08/08/2018 | NOTICE of Appearance by Peter L Wucetich on behalf of Lawrence Wasden (Wucetich, Peter) | View Add to request |
| 151 | 07/18/2018 | DOCKET ENTRY NOTICE OF HEARING: A Telephonic Status Conference is set for 8/8/2018 at 4:00 PM before Judge B. Lynn Winmill. The call in information is as follows: dial in number 1-877-336-1828, access code 4685496, and security code 9466.(jlb) | Send Runner to Court |
| 150 | 05/08/2018 | MEMORANDUM DECISION AND ORDER - IT IS ORDERED that: 1. Plaintiffs Motion for Declaratory Judgment (Dkt. 140 ) is DENIED. 2. Plaintiffs unopposed Request for Judicial Notice (Dkt. 142 ) is GRANTED. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) | View Add to request |
| 149 | 04/18/2018 | NOTICE of Substitution - Attorney Steven Lamar Olsen for Lawrence Wasden added. Attorney Clay R Smith terminated. (Olsen, Steven) | View Add to request |

| 148 | 03/30/2018 | REPLY to Response to Motion re 140 MOTION for Declaratory Judgment filed by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project.(Strugar, Matthew) | View Add to request |
| 147 | 03/19/2018 | ERRATA by Defendant Lawrence Wasden re 146 Response to Motion . (Attachments: # 1 Attachment)(Smith, Clay) | View Add to request |
| 146 | 03/16/2018 | RESPONSE to Motion re 140 MOTION for Declaratory Judgment filed by Lawrence Wasden. Replies due by 3/30/2018.(Smith, Clay) | View Add to request |
| 145 | 03/16/2018 | DOCKET ENTRY ORDER: The Consent Motion for an Extension of Time (Dkt. 143) is GRANTED. The response brief to the pending motion for declaratory judgment is now due on March 16, 2018. Signed by Judge B. Lynn Winmill (mls) | Send Runner to Court |
| 144 | 03/12/2018 | RESPONSE to Motion re 142 MOTION to Take Judicial Notice | View Add to request |

|     |            |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                         |                        |
| --- | ---------- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---------------------- |
|     |            | filed by Lawrence Wasden. Replies due by 3/26/2018.(Smith, Clay)                                                                                                                                                                                                                                                                                                                                                                                                                                                                         |                        |
| 143 | 03/08/2018 | Consent MOTION for Extension of Time to File Response/Reply as to 140 MOTION for Declaratory Judgment Clay R Smith appearing for Defendant Lawrence Wasden. Responses due by 3/29/2018 (Smith, Clay)                                                                                                                                                                                                                                                                                                                                       | View Add to request    |
| 142 | 02/20/2018 | MOTION to Take Judicial Notice Matthew Daniel Strugar appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 3/13/2018 (Strugar, Matthew) | View Add to request    |
| 141 | 02/20/2018 | CERTIFICATE OF SERVICE by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams,                                                                                                                                                                                                                         | View Add to request    |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

|  |  |  |  |
|---|---|---|---|
|  |  | People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project re 140 MOTION for Declaratory Judgment (Strugar, Matthew) |  |
| 140 | 02/20/2018 | MOTION for Declaratory Judgment Matthew Daniel Strugar appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 3/13/2018 (Attachments: # 1 Memorandum in Support of Motion for Declaratory Judgment, # 2 Declaration of Stephen Wells in Support of Motion for Declaratory Judgment, # 3 Declaration of Jeffrey Kerr in Support of Motion for Declaratory Judgment, # 4 Request for Judicial Notice)(Strugar, Matthew) | View Add to request |
|  | 02/20/2018 | CORRECTIVE ENTRY - The entry docket number 140 MOTION for Declaratory Judgment filed by Western Watersheds Project, Daniel | Send Runner to Court |

Hauff, Counterpunch, Farm
Sanctuary, Idaho Concerned
Area Residents for the
Environment, The Center for
Food Safety, Will Potter, James
McWilliams, Blair Koch, Idaho
Hispanic Caucus Institute for
Research and Education, Monte
Hickman, River's Wish Animal
Sanctuary, American Civil
Liberties Union of Idaho, Animal
Legal Defense Fund, Farm
Forward, Sandpoint
Vegetarians, People for the
Ethical Treatment of Animals
was filed incorrectly in this case
as it pertains to the Certificate of
Service only. The filing party
shall refer to ECF Procedure 8
and re-submit their correct
certificate of service using
Certificate of Service located
under Service of Process and
link to the docket entry. (cjs)

02/20/2018       CORRECTIVE ENTRY - The          Send Runner to Court
                 entry docket number 140
                 MOTION for Declaratory
                 Judgment filed by Western
                 Watersheds Project, Daniel
                 Hauff, Counterpunch, Farm
                 Sanctuary, Idaho Concerned
                 Area Residents for the
                 Environment, The Center for
                 Food Safety, Will Potter, James
                 McWilliams, Blair Koch, Idaho
                 Hispanic Caucus Institute for
                 Research and Education, Monte
                 Hickman, River's Wish Animal
                 Sanctuary, American Civil
                 Liberties Union of Idaho, Animal
                 Legal Defense Fund, Farm
                 Forward, Sandpoint
                 Vegetarians, People for the
                 Ethical Treatment of Animals

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

|  |  |  |  |
|---|---|---|---|
|  |  | was filed incorrectly in this case in regard to the Request for Judicial Notice Attachment # 4. The filing party shall re-submit their filing for Attachment # 4 only using the motion event of "Take Judicial Notice". (cjs) |  |
| 139 | 02/06/2018 | DOCKET ENTRY NOTICE OF HEARING: A Telephonic Status Conference is set for 2/21/2018 at 11:00 AM before Judge B. Lynn Winmill. The call in information is as follows: dial in number 1-877-336-1828, access code 4685496, and security code 9466. (jlb) | Send Runner to Court |
| 138 | 02/02/2018 | ORDER of USCA as to 119 Notice of Appeal, filed by Lawrence Wasden. Appellees Motion to Transfer Consideration of Attorneys Fees on Appeal to the District Court is GRANTED. (cjs) (Entered: 02/05/2018) | View Add to request |
| 137 | 01/26/2018 | MANDATE of USCA as to 119 Notice of Appeal, filed by Lawrence Wasden (cjs)(Does not reopen case.) Modified on 2/6/2018 to reflect this does reopen case (cjs). (Entered: 01/29/2018) | View Add to request |
| 136 | 01/04/2018 | OPINION of USCA as to 119 Notice of Appeal, filed by Lawrence Wasden. AFFIRMED IN PART, REVERSED IN PART. Each party shall bear its own costs on appeal. (cjs) | View Add to request |
| 135 | 07/11/2016 | NOTICE of Change of Address by Matthew Daniel Strugar (Strugar, Matthew) | View Add to request |

| 134 | 06/20/2016 | ORDER APPROVING JOINT STIPULATION RE PAYMENT OF ATTORNEYS FEES AND COSTS re 133 Stipulation. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) | View Add to request |
|---|---|---|---|
| 133 | 06/17/2016 | STIPULATION re 132 Order on Motion for Attorney Fees, and Costs by Lawrence Wasden. (Smith, Clay) | View Add to request |
| 132 | 05/18/2016 | MEMORANDUM DECISION AND ORDER - IT IS ORDERED THAT Plaintiffs Motion for Attorneys Fees and Costs (Dkt. 117 ), as corrected (Dkt. 118 -1), is GRANTED to the extent Plaintiffs are awarded $249,875.08 in fees, expenses, and costs. The motion is DENIED to the extent Plaintiffs request any additional amounts. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) | View Add to request |
| 131 | 01/15/2016 | REPLY to Response to Motion re 117 MOTION for Attorney Fees and Costs filed by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, | View Add to request |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

|  |  | Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. (Attachments: # 1 Affidavit of Cristina Stella)(Strugar, Matthew) |  |
| 130 | 01/12/2016 | Notice of Filing of Official Transcript (cjs) | View Add to request |
| 129 | 01/12/2016 | Transcript filed for dates of 4/28/2015 (Motion Hearing) before Judge B. Lynn Winmill, re 119 Notice of Appeal, Court Reporter/Transcriber Tamara Hohenleitner, Telephone number 208-334-1500. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/5/2016. Redacted Transcript Deadline set for 2/16/2016. Release of Transcript Restriction set for 4/14/2016. (cjs) | View Add to request |
| 128 | 01/12/2016 | Transcript filed for dates of 6/25/2014 (Motion Hearing) before Judge B. Lynn Winmill, re 119 Notice of Appeal, Court Reporter/Transcriber Tamara Hohenleitner, Telephone number 208-334-1500. Transcript may be viewed at the | View Add to request |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

court public terminal or
purchased through the Court
Reporter/Transcriber before the
deadline for Release of
Transcript Restriction. After that
date it may be obtained through
PACER. Redaction Request due
2/5/2016. Redacted Transcript
Deadline set for 2/16/2016.
Release of Transcript
Restriction set for 4/14/2016.
(cjs)

127     12/29/2015    RESPONSE to Motion re 118 -1     View Add to request
                      Corrected Motion re 117
                      MOTION for Attorney Fees and
                      Costs filed by Lawrence
                      Wasden. Replies due by
                      1/15/2016. (Attachments: # 1
                      Declaration of Clay R. Smith, # 2
                      Exhibit 1 to Declaration of Clay
                      R. Smith - Maria Andrade Time
                      Records, # 3 Exhibit 2 to
                      Declaration of Clay R. Smith -
                      Leslie Brueckner Time Records,
                      # 4 Exhibit 3 to Declaration of
                      Clay R. Smith - Alan Chen Time
                      Records, # 5 Exhibit 4 to
                      Declaration of Clay R. Smith -
                      Ritchie Eppink Time Records, #
                      6 Exhibit 5 to Declaration of Clay
                      R. Smith - Matthew Liebman
                      Time Records, # 7 Exhibit 6 to
                      Declaration of Clay R. Smith -
                      Justin Marceau Time Records, #
                      8 Exhibit 7 to Declaration of Clay
                      R. Smith - Starr Shepard Time
                      Records, # 9 Exhibit 8 to
                      Declaration of Clay R. Smith -
                      Cristina Stella Time Records, #
                      10 Exhibit 9 to Declaration of
                      Clay R. Smith - Matthew Strugar
                      Time Records, # 11 Exhibit 10 to
                      Declaration of Clay R. Smith -
                      Paige Tomaselli Time Records,

# 12 Exhibit 11 to Declaration of Clay R. Smith - Complaint Preparation Time Entries, # 13 Exhibit 12 to Declaration of Clay R. Smith - Motion to Dismiss Response Briefing Time Entries, # 14 Exhibit 13 to Declaration of Clay R. Smith - Motion to Dismiss Oral Argument-Related Activities Time Entries, # 15 Exhibit 14 to Declaration of Clay R. Smith - Summary Judgment Opening and Reply Briefing Time Entries, # 16 Exhibit 15 to Declaration of Clay R. Smith - Summary Judgment Oral Argument-Related Activities Time Entries, # 17 Exhibit 16 to Declaration of Clay R. Smith - IDA's Intervention and Amicus Response Brief Time Entries, # 18 Exhibit 17 to Declaration of Clay R. Smith - Amicus-Related Activities Time Entries, # 19 Exhibit 18 to Declaration of Clay R. Smith - Supplemental Authority Filings Time Entries, # 20 Exhibit 19 to Declaration of Clay R. Smith - Judgment/Remedy Filings Time Entries, # 21 Exhibit 20 to Declaration of Clay R. Smith - Miscellaneous Time Entries, # 22 Exhibit 21 to Declaration of Clay R. Smith - Attorney's Fees Time Entries, # 23 Exhibit 22 to Declaration of Clay R. Smith - Preemption Claims Time Entries Taken from Motion to Dismiss Response Briefing Category Time Entries)(Smith, Clay) Modified on 12/29/2015 to create link to Dkt 118-1 (cjs).

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| 126 | 12/18/2015 | ORDER GRANTING DEFENDANTS CONSENT MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFFS CORRECTED MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS re 118 -1 re 117 . Responses due by 12/29/2015. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) | View Add to request |
| 125 | 12/17/2015 | Consent MOTION for Extension of Time to File Response/Reply as to 118 Errata re 117 MOTION for Attorney Fees and Costs, Clay R Smith appearing for Defendant Lawrence Wasden. Responses due by 1/11/2016 (Smith, Clay) Modified on 12/17/2015 to create link to 117 (cjs). | View Add to request |
| 124 | 12/15/2015 | TRANSCRIPT REQUEST by Lawrence Wasden for proceedings held on 6/25/2014, 4/28/2015 before Judge Winmill, (Notice sent by e-mail to Court Reporter) (Attachments: # 1 Certificate of Service)(Smith, Clay) | View Add to request |
| 123 | 12/14/2015 | USCA Scheduling Order as to 119 Notice of Appeal, filed by Lawrence Wasden. (Notice sent by e-mail to Court Reporter) (cjs) (Entered: 12/15/2015) | View Add to request |
| 122 | 12/14/2015 | USCA Case Number 15-35960 for 119 Notice of Appeal, filed by Lawrence Wasden. (cjs) (Entered: 12/15/2015) | View Add to request |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| 121 | 12/14/2015 | CERTIFICATE OF SERVICE by Lawrence Wasden re 120 Appeal Transcript Request (Smith, Clay) | View Add to request |

| 120 | 12/14/2015 | TRANSCRIPT REQUEST by Lawrence Wasden for proceedings held on 6/25/2014, 4/28/2015 before Judge Winmill, (Notice sent by e-mail to Court Reporter) (Smith, Clay) | View Add to request |

|  | 12/14/2015 | CORRECTIVE ENTRY - The entry docket number 120 Appeal Transcript Request filed by Lawrence Wasden was filed incorrectly in this case as the required form was not used. Please use the Transcript Designation Form available on our website and re-submit using the same event. (cjs) | Send Runner to Court |

| 119 | 12/10/2015 | NOTICE OF APPEAL as to 110 Order on Motion for Partial Summary Judgment, 116 Judgment by Lawrence Wasden. Filing fee $ 505, receipt number 0976-1382459. (Notice sent to Court Reporter & 9th Cir) (Attachments: # 1 Representation Statement)(Smith, Clay)(15-35960). | View Add to request |

| 118 | 12/02/2015 | ERRATA by Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, | View Add to request |

River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project re 117 MOTION for Attorney Fees and Costs. (Attachments: # 1 Corrected Motion for Attorney Fees and Costs, # 2 Corrected Memorandum in Support of Motion for Attorney Fees and Costs)(Strugar, Matthew)

| | | | |
|---|---|---|---|
| 117 | 11/25/2015 | MOTION for Attorney Fees and Costs Matthew Daniel Strugar appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 12/21/2015 (Attachments: # 1 Memorandum in Support, # 2 Declaration of Matthew Strugar, # 3 Declaration of Justin Marceau, # 4 Declaration of Matthew Liebman, # 5 Declaration of Richard Eppink, # 6 Declaration of Leslie Brueckner, # 7 Declaration of Paige Tomaselli, # 8 Declaration of Alan Chen, # 9 Declaration of Maria Andrade, # 10 Declaration of Jason Monteleone, # 11 Declaration of Craig Durham)(Strugar, Matthew) | View Add to request |
| 116 | 11/12/2015 | FINAL JUDGMENT & PERMANENT INJUNCTION. | View Add to request |

|  |  |  |  |
|---|---|---|---|
|  |  | Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) |  |
| 115 | 09/17/2015 | MEMORANDUM/BRIEF filed by Lawrence Wasden Re Final Judgment. (Attachments: # 1 Declaration of Jackie Gunn)(Withroe, Carl) | View Add to request |
| 114 | 09/10/2015 | ORDER RE: PAGE LIMITS FOR BRIEFS ON THE REMEDY granting 113 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) | View Add to request |
| 113 | 09/09/2015 | MOTION for Leave to File Excess Pages Re: Page Limits for Briefs on the Remedy Richard Alan Eppink appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 10/5/2015 (Eppink, Richard) | View Add to request |
| 112 | 09/09/2015 | MEMORANDUM/BRIEF re 111 Order, filed by American Civil | View Add to request |

Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project Plaintiffs' Brief on the Remedy. (Attachments: # 1 Declaration in Support of Brief on Remedy)(Eppink, Richard)

| 111 | 08/12/2015 | DOCKET ENTRY ORDER - In accordance with the parties' agreement reached in email communications with Court staff, the following deadlines shall govern briefing on the issue of the proper remedy in this case: (1) Plaintiffs' brief shall be due no later than September 10, 2015; and (2) Defendant's response brief shall be due no later than September 17, 2015. Signed by Judge B. Lynn Winmill. ((jsv) | Send Runner to Court |

| 110 | 08/03/2015 | MEMORANDUM DECISION AND ORDER granting 74 ALDF's Motion for Partial Summary Judgment. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) | View Add to request |

| | 06/30/2015 | CORRECTIVE ENTRY - The entry docket number 109 Response to Motion filed by Lawrence Wasden | Send Runner to Court |

was filed incorrectly in this case as the wrong event was used and it was not linked to the correct docket entry. No action is needed by the filing party as the Clerk's Office will edit the entry, correctly link, and term the erroneous response deadline set. (cjs)

| | | | |
|---|---|---|---|
| 109 | 06/25/2015 | RESPONSE re 108 NOTICE of Supplemental Authority filed by Lawrence Wasden. (Withroe, Carl) Modified on 6/30/2015 to edit text, create correct link per Corrective Entry (cjs). | View Add to request |
| 108 | 06/19/2015 | NOTICE by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project Notice of Supplemental Authority (Andrade, Maria) | View Add to request |
| 107 | 04/28/2015 | Minute Entry for proceedings held before Judge B. Lynn Winmill: Motion Hearing held on 4/28/2015 re 74 Motion for Partial Summary Judgment. The matter was taken under advisement. (Court Reporter Tammy Hohenleitner.) (jlg) (Entered: 04/29/2015) | View Add to request |
| 106 | 02/13/2015 | AMENDED DOCKET ENTRY | Send Runner to Court |

|  |  | NOTICE OF HEARING regarding 74 Motion for Partial Summary Judgment: Due to scheduling conflicts, the Motion Hearing set for 3/19/2015 is rescheduled for 4/28/2015 at 3:30 PM in Boise - Courtroom 3 before Judge B. Lynn Winmill. (jlg) |  |
| 105 | 02/11/2015 | DOCKET ENTRY ORDER granting 103 Motion to file Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 104 | 02/06/2015 | AMENDED DOCKET ENTRY NOTICE OF HEARING regarding 74 Motion for Partial Summary Judgment: Due to the Court's calendar, the Motion Hearing set for 2/17/2015 is rescheduled for 3/19/2015 at 3:30 PM in Boise - Courtroom 3 before Judge B. Lynn Winmill. (jlg)(Mailed by cjs). | Send Runner to Court |
| 103 | 02/02/2015 | Second MOTION to File Amicus Brief Norman M Semanko appearing for Amicus Parties Food Producers of Idaho, Inc., Idaho Cattle Association, Idaho Farm Bureau Federation, Inc., Idaho Heartland Coalition, Inc.. Responses due by 2/26/2015 (Attachments: # 1 Amicus Curiae Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment)(Semanko, Norman) | View Add to request |
| 102 | 02/02/2015 | DOCKET ENTRY ORDER granting 100 Motion to file Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the | Send Runner to Court |

addresses listed on the Notice of
Electronic Filing (NEF) by (jsv)

| | | | |
|---|---|---|---|
| 101 | 02/02/2015 | DOCKET ENTRY ORDER granting 96 Motion to file Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 100 | 01/30/2015 | Third MOTION to File Amicus Brief David P Claiborne appearing for Amicus The Idaho Dairymen's Association, Inc.. Responses due by 2/23/2015 (Attachments: # 1 Second Brief of Amicus Curiae IDA)(Claiborne, David) | View Add to request |
| 99 | 01/29/2015 | DOCKET ENTRY ORDER granting 92 Plaintiffs' unopposed Motion for Leave to file an overlength reply brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 98 | 01/27/2015 | CERTIFICATE OF SERVICE by Erwin Chemerinsky re 96 MOTION to File Amicus Brief (Birch, Erika) | View Add to request |
| 97 | 01/27/2015 | RESPONSE to Motion re 92 MOTION for Leave to File Excess Pages filed by Lawrence Wasden. Replies due by 2/13/2015.(Smith, Clay) | View Add to request |
| 96 | 01/26/2015 | MOTION to File Amicus Brief Erika Birch appearing for Amicus Erwin Chemerinsky. Responses due by 2/20/2015 (Attachments: # 1 Amicus Brief)(Birch, Erika) | View Add to request |
| 95 | 01/26/2015 | DOCKET ENTRY ORDER | Send Runner to Court |

|  |  | approving 94 Motion for Pro Hac Vice Appearance of attorney Deepak Gupta for Erwin Chemerinsky. Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjs) |  |
| 94 | 01/26/2015 | MOTION FOR PRO HAC VICE APPEARANCE by Deepak Gupta. Erika Birch appearing for Amicus Erwin Chemerinsky. ($225.00 paid Receipt # 0976-1256378) Responses due by 2/20/2015. (cjs) | View Add to request |
|  | 01/26/2015 | RECEIPT: Pro Hac Vice Admission Fee Fee Received $ 225.00, receipt # 0976-1256378 (cjs) | Send Runner to Court |
|  | 01/26/2015 | CORRECTIVE ENTRY - The entry docket number 96 MOTION to File Amicus Brief filed by Erwin Chemerinsky was filed incorrectly in this case as it pertains to the Certificate of Service only. The filing party shall refer to ECF Procedure 8 and re-submit their correct certificate of service using Certificate of Service located under Service of Process and link to the docket entry. (cjs) | Send Runner to Court |
| 93 | 01/12/2015 | REPLY to Response to Motion re 74 MOTION for Partial Summary Judgment filed by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned | View Add to request |

|   |   |   |   |
|---|---|---|---|
|   |   | Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project.(Andrade, Maria) |   |
| 92 | 01/12/2015 | MOTION for Leave to File Excess Pages Maria E Andrade appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 2/5/2015 (Andrade, Maria) | View Add to request |
| 91 | 12/30/2014 | DOCKET ENTRY NOTICE OF HEARING regarding 74 Motion for Partial Summary Judgment: A Motion Hearing is set for 2/17/2015 at 1:30 PM in Boise - Courtroom 3 before Judge B. Lynn Winmill. (jlg) | Send Runner to Court |
| 90 | 12/22/2014 | DOCKET ENTRY ORDER granting 89 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of | Send Runner to Court |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

---

Electronic Filing (NEF) by (jsv)

| | | | |
|---|---|---|---|
| 89 | 12/19/2014 | MOTION for Leave to File Excess Pages Clay R Smith appearing for Defendant Lawrence Wasden. Responses due by 1/12/2015 (Smith, Clay) | View Add to request |
| 88 | 12/19/2014 | RESPONSE to Motion re 74 MOTION for Partial Summary Judgment filed by Lawrence Wasden. Replies due by 1/5/2015. (Attachments: # 1 Response to Plaintiff's Statement of Material Facts)(Smith, Clay) | View Add to request |
| 87 | 12/15/2014 | DOCKET ENTRY ORDER granting 76 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 86 | 12/11/2014 | RESPONSE to Motion re 76 MOTION for Leave to File Excess Pages filed by Lawrence Wasden. Replies due by 12/29/2014.(Smith, Clay) | View Add to request |
| 85 | 12/09/2014 | ORDER GRANTING PLAINTIFFSCONSENT MOTION FOR EXTENSION OF TIME TO FILE REPLY BRIEF ON THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT granting 81 Motion for Extension of Time to File Response/Reply; granting 82 Motion for Extension of Time to File Response/Reply re 74 MOTION for Partial Summary Judgment. Responses due by 12/19/2014. Replies due by 1/12/2015. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered | View Add to request |

---

Participants at the addresses listed
on the Notice of Electronic Filing
(NEF) by (cjm)

84   12/09/2014   DOCKET ENTRY ORDER granting   Send Runner to Court
80 Motion to file Amicus Brief.
Signed by Judge B. Lynn Winmill.
(caused to be mailed to non
Registered Participants at the
addresses listed on the Notice of
Electronic Filing (NEF) by (jsv)

83   12/09/2014   DOCKET ENTRY ORDER granting   Send Runner to Court
78 Motion to file Amicus Brief.
Signed by Judge B. Lynn Winmill.
(caused to be mailed to non
Registered Participants at the
addresses listed on the Notice of
Electronic Filing (NEF) by (jsv)

82   12/08/2014   Consent MOTION for Extension of   View Add to request
Time to File Response/Reply as to
74 MOTION for Partial Summary
Judgment Matthew Daniel Strugar
appearing for Plaintiffs American
Civil Liberties Union of Idaho,
Animal Legal Defense Fund,
Counterpunch, Farm Forward,
Farm Sanctuary, Daniel Hauff,
Monte Hickman, Idaho Concerned
Area Residents for the
Environment, Idaho Hispanic
Caucus Institute for Research and
Education, Blair Koch, James
McWilliams, People for the Ethical
Treatment of Animals, Will Potter,
River's Wish Animal Sanctuary,
Sandpoint Vegetarians, The Center
for Food Safety, Western
Watersheds Project. Responses
due by 1/2/2015 (Strugar, Matthew)

81   12/08/2014   MOTION for Extension of Time to   View Add to request
File Response/Reply as to 74
MOTION for Partial Summary

|  |  | Judgment Clay R Smith appearing for Defendant Lawrence Wasden. Responses due by 1/2/2015 (Smith, Clay) |  |
|---|---|---|---|
|  | 12/05/2014 | CORRECTIVE ENTRY - The entry docket number 80 MOTION to File Amicus Brief Motion of the Reporters Committee for Freedom of the Press and 15 Others for Leave to File Brief as Amici Curiae in Support of Plaintiffs filed by Reporters Committee for Freedom of the Press was filed incorrectly in this case. the Brief should have been an attachment to the motion and not lumped as one main document. No action is needed at this time by the filing party as this is notice for future filings. (cjm) | Send Runner to Court |
| 80 | 12/04/2014 | MOTION to File Amicus Brief Motion of the Reporters Committee for Freedom of the Press and 15 Others for Leave to File Brief as Amici Curiae in Support of Plaintiffs Charles A Brown appearing for Amicus Reporters Committee for Freedom of the Press. Responses due by 12/29/2014 (Brown, Charles) | View Add to request |
| 79 | 12/02/2014 | DOCKET ENTRY ORDER approving 77 Motion for Pro Hac Vice Appearance of attorney Susannah W Pollvogt for Professors of the Law of Unconstitutional Animus. Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing | Send Runner to Court |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

(NEF) by (cjm)

| | | | |
|---|---|---|---|
| 78 | 12/01/2014 | MOTION to File Amicus Brief Celeste K Miller appearing for Amicus Professors of the Law of Unconstitutional Animus. Responses due by 12/26/2014 (Attachments: # 1 Amicus Brief)(Miller, Celeste) Modified on 12/2/2014 to edit text to remove all capitalization used for attachment (cjm). | View Add to request |
| 77 | 12/01/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Susannah Pollvogt. ( Filing fee $ 225 receipt number 0976-1235964.)Celeste K Miller appearing for Amicus Professors of the Law of Unconstitutional Animus. Responses due by 12/26/2014 (Miller, Celeste) | View Add to request |
| | 11/24/2014 | The 60 day deadline has expired. Case will remain with District Judge. No more notice of availability will be sent out. Consent deadline(s) termed. (cjm) | Send Runner to Court |
| 76 | 11/18/2014 | MOTION for Leave to File Excess Pages Maria E Andrade appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center | View Add to request |

for Food Safety, Western
Watersheds Project. Responses
due by 12/12/2014 (Andrade,
Maria)

75     11/18/2014          SUPPLEMENT Plaintiff's Separate      View Add to request
                           Statement of Undisputed Material
                           Facts by Plaintiffs American Civil
                           Liberties Union of Idaho, Animal
                           Legal Defense Fund,
                           Counterpunch, Farm Forward,
                           Farm Sanctuary, Daniel Hauff,
                           Monte Hickman, Idaho Concerned
                           Area Residents for the
                           Environment, Idaho Hispanic
                           Caucus Institute for Research and
                           Education, Blair Koch, James
                           McWilliams, People for the Ethical
                           Treatment of Animals, Will Potter,
                           River's Wish Animal Sanctuary,
                           Sandpoint Vegetarians, The Center
                           for Food Safety, Western
                           Watersheds Project re 74 MOTION
                           for Partial Summary Judgment .
                           (Attachments: # 1 Declaration, # 2
                           Declaration, # 3 Declaration, # 4
                           Declaration, # 5 Declaration, # 6
                           Declaration, # 7 Declaration, # 8
                           Declaration, # 9 Declaration, # 10
                           Declaration, # 11 Declaration, # 12
                           Declaration, # 13 Declaration, # 14
                           Declaration, # 15 Declaration, # 16
                           Declaration, # 17 Exhibit to
                           Declaration, # 18 Exhibit to
                           Declaration, # 19 Exhibit to
                           Declaration, # 20 Exhibit to
                           Declaration, # 21 Exhibit to
                           Declaration, # 22 Declaration, # 23
                           Declaration)(Andrade, Maria)
                           Modified on 11/18/2014 to edit text
                           (cjm). Modified on 11/18/2014 to
                           reflect DVD lodged for Exhibits 1-4
                           to Attachment # 1 (cjm).

| | | | |
|---|---|---|---|
| 74 | 11/18/2014 | MOTION for Partial Summary Judgment Maria E Andrade appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 12/12/2014 (Attachments: # 1 Memorandum in Support Memorandum in Support)(Andrade, Maria) | View Add to request |
| | 11/18/2014 | Lodged Document for Exhibits 1, 2, 3, and 4 received on DVD, re 75 -1 Declaration to Supplement, filed by Western Watersheds Project, Daniel Hauff, Counterpunch, Farm Sanctuary, Idaho Concerned Area Residents for the Environment, The Center for Food Safety, Will Potter, James McWilliams, Blair Koch, Idaho Hispanic Caucus Institute for Research and Education, Monte Hickman, River's Wish Animal Sanctuary, American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Farm Forward, Sandpoint Vegetarians, People for the Ethical Treatment of Animals. Placed in folder and lodged on shelf in Clerk's Office. (cjm) | Send Runner to Court |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | | | |
|---|---|---|---|
| 73 | 10/14/2014 | MEMORANDUM DECISION Idaho Dairymen's Association's Motion to Reconsider the Order Denying Intervention 61 is Denied. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jp) | View Add to request |
| 72 | 09/24/2014 | Docket entry only - CONSENT to Magistrate Judge filed. (jp) (Entered: 09/25/2014) | Send Runner to Court |
| 71 | 09/16/2014 | NOTICE of Availability of Magistrate Judge and Requirement for Consent sent to counsel for American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Lawrence Wasden, Western Watersheds Project re 70 Answer to Complaint, 1 Complaint Consent/Objection to Magistrate due by 11/20/2014. (cjm) | View Add to request |
| | 09/16/2014 | NOTICE: Pursuant to FRCP 7.1 you are required to file a Corporate Disclosure Statement with the Clerk's Office. You can do this by choosing the category Other Documents, then select Corporate Disclosure Statement. (cjm) | Send Runner to Court |
| 70 | 09/15/2014 | ANSWER to 1 Complaint by | View Add to request |

Lawrence Wasden.(Smith, Clay)

| 69 | 09/08/2014 | ORDER re 67 Consent MOTION to Extend Deadlines re 33 Scheduling Order. Amended Pleadings and Joinder of Parties due by 10/14/2014. Discovery due by 1/13/2015. Dispositive Motions due by 3/9/2015. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm) | View Add to request |
|---|---|---|---|
| 68 | 09/04/2014 | MEMORANDUM DECISION AND ORDER. IT IS ORDERED that Defendants Motion to Dismiss (Dkt. 12 ) is GRANTED to the extent that Governor Otter will be dismissed as a defendant. Additionally, all claims under section 18-7042(1)(e) will be dismissed. The Motion to Dismiss is DENIED in all other respects. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm) | View Add to request |
| 67 | 08/25/2014 | Consent MOTION to Extend Deadlines re 33 Case Management Order, Paige M Tomaselli appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, | View Add to request |

|  |  |  |
|---|---|---|
| | | Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project, Defendants C.L. Butch Otter, Lawrence Wasden. Responses due by 9/18/2014 (Tomaselli, Paige) Modified on 8/26/2014 to edit text for linked document (cjm). |
| 66 | 08/04/2014 | REPLY to Response to Motion re 61 View Add to request MOTION for Reconsideration re 48 Order on Motion to Intervene Second MOTION to Intervene filed by The Idaho Dairymen's Association, Inc..(Claiborne, David) |
| 65 | 07/18/2014 | MEMORANDUM in Opposition re 61 View Add to request MOTION for Reconsideration re 48 Order on Motion to Intervene Second MOTION to Intervene filed by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Replies due by 8/4/2014.(Strugar, Matthew) |
| 64 | 07/08/2014 | RESPONSE re 63 Notice (Other), View Add to request filed by Animal Legal Defense Fund . (Andrade, Maria) |
| 63 | 07/08/2014 | NOTICE of Supplemental Authority View Add to request by C.L. Butch Otter, Lawrence Wasden re 12 Motion to Dismiss for Failure to State a Claim MOTION to |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

|  |  | Dismiss for Lack of Jurisdiction , 35 Reply to Response to Motion (Attachments: # 1 Arizona Dream Act Coalition v. Brewer, No. 13-16248 (9th Cir. Jul. 7, 2014))(Smith, Clay) Modified on 7/9/2014 to edit text (jp). |  |
| 62 | 06/25/2014 | Minute Entry for proceedings held before Judge B. Lynn Winmill: Motion Hearing held on 6/25/2014 re 12 Motion to Dismiss. After oral argument, the motion was taken under advisement. (Court Reporter Tammy Hohenleitner.) (jlg) | View Add to request |
| 61 | 06/24/2014 | MOTION for Reconsideration re 48 Memorandum Decision and Order , Second MOTION to Intervene ( Responses due by 7/18/2014)David P Claiborne appearing for Amicus The Idaho Dairymen's Association, Inc.. (Attachments: # 1 Memorandum in Support)(Claiborne, David) Modified on 6/24/2014 to edit text for linked document (cjm). | View Add to request |
|  | 06/24/2014 | CORRECTIVE ENTRY - The entry docket number 58 Appendix, filed by The Center for Food Safety, Blair Koch, James McWilliams, Will Potter, Idaho Hispanic Caucus Institute for Research and Education, Monte Hickman, Western Watersheds Project, Daniel Hauff, River's Wish Animal Sanctuary, Counterpunch, American Civil Liberties Union of Idaho, Farm Sanctuary, Farm Forward, Animal Legal Defense Fund, People for the Ethical Treatment of Animals, Sandpoint Vegetarians was filed incorrectly in this case as the wrong event was | Send Runner to Court |

|    |            | used. This is a motion and should have been filed using a motion event. No action is needed by the filing party at this time as the Court has already ruled on the request at Docket Entry Order No. 60. (cjm) |                      |
|----|------------|----|----|
| 60 | 06/23/2014 | DOCKET ENTRY ORDER granting 55 Plaintiffs' Motion for Leave to File a response to the IDA's amicus brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 59 | 06/23/2014 | DOCKET ENTRY ORDER granting 56 the Idaho Dairymen Association's Motion to file Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 58 | 06/23/2014 | Appendix Renewed Motion for Leave to File a Response to Amicus Curiae Brief of the IDA filed by Richard Alan Eppink on behalf of American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project Related document: 56 Second MOTION to File Amicus Brief filed by The Idaho Dairymen's Association, Inc., 55 | View Add to request |

MOTION for Leave to File Response to the Idaho Dairymen's Association's Amicus Curiae Brief filed by Western Watersheds Project, Daniel Hauff, Counterpunch, Farm Sanctuary, Idaho Concerned Area Residents for the Environment, The Center for Food Safety, Will Potter, James McWilliams, Blair Koch, Idaho Hispanic Caucus Institute for Research and Education, Monte Hickman, River's Wish Animal Sanctuary, American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Farm Forward, Sandpoint Vegetarians, People for the Ethical Treatment of Animals. (Attachments: # 1 Plaintiffs' proposed response to IDA's proposed amicus brief)(Eppink, Richard) Modified on 6/24/2014 to edit text to reflect caption of document (cjm).

| 57 | 06/23/2014 | RESPONSE re 49 Notice (Other),, filed by C.L. Butch Otter, Lawrence Wasden of Additional Authority. (Smith, Clay) | View Add to request |

| 56 | 06/20/2014 | Second MOTION to File Amicus Brief David P Claiborne appearing for Amicus The Idaho Dairymen's Association, Inc.. Responses due by 7/14/2014 (Attachments: # 1 Memorandum in Support (20-page Amicus Curiae Brief), # 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4)(Claiborne, David) | View Add to request |

| 55 | 06/19/2014 | MOTION for Leave to File Response to the Idaho Dairymen's Association's Amicus Curiae Brief Matthew Daniel Strugar appearing | View Add to request |

for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 7/14/2014 (Strugar, Matthew)

| 54 | 06/19/2014 | DOCKET ENTRY ORDER - Each side will be allotted 20 minutes for oral argument on 12 Defendants' Motion to Dismiss. None of the Amicus Curiae will be allowed to participate in oral argument, but the Court will consider their written submissions. Signed by Judge B. Lynn Winmill. ((jsv) | Send Runner to Court |

| 53 | 06/19/2014 | DOCKET ENTRY ORDER denying 51 Motion for Leave to File Overlength Amicus Brief. None of the other amicus briefs exceed the page limit, and the Court does not feel an overlength amicus brief will significantly aid the Court. The IDA may file a brief that does not exceed the page limit. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |

| 52 | 06/19/2014 | DOCKET ENTRY ORDER granting 50 Motion for Leave to File Amicus | Send Runner to Court |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

|  |  |  |  |
|---|---|---|---|
|  |  | Curiae Brief filed by the Idaho Dairymen's Association. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) |  |
| 51 | 06/18/2014 | MOTION for Leave to File Overlength Amicus Brief David P Claiborne appearing for Amicus The Idaho Dairymen's Association, Inc.. Responses due by 7/14/2014 (Claiborne, David) | View Add to request |
| 50 | 06/18/2014 | MOTION for Leave to File Amicus Curiae Brief David P Claiborne appearing for Amicus The Idaho Dairymen's Association, Inc.. Responses due by 7/14/2014 (Attachments: # 1 Amicus Curiae Brief of the IDA, # 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4)(Claiborne, David) | View Add to request |
| 49 | 06/17/2014 | NOTICE by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project of Supplemental Authority (Attachments: # 1 Supplemental Authority)(Strugar, Matthew) | View Add to request |
| 48 | 06/16/2014 | MEMORANDUM DECISION AND | View Add to request |

|    |            | ORDER denying 16 IDA's Motion to Intervene. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm) |                      |
|----|------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|----------------------|
| 47 | 06/03/2014 | DOCKET ENTRY ORDER granting 39 Motion to file Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 46 | 06/03/2014 | DOCKET ENTRY ORDER granting 36 Motion for Leave to File Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 45 | 06/03/2014 | DOCKET ENTRY ORDER granting 30 Motion to file Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 44 | 06/03/2014 | DOCKET ENTRY ORDER granting 28 Motion to file Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 43 | 06/03/2014 | DOCKET ENTRY ORDER granting 21 Motion to file Amicus Brief. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of | Send Runner to Court |

Electronic Filing (NEF) by (jsv)

| | | | |
|---|---|---|---|
| 42 | 06/03/2014 | DOCKET ENTRY ORDER granting 24 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jsv) | Send Runner to Court |
| 41 | 05/30/2014 | REPLY to Response to Motion re 16 MOTION to Intervene filed by The Idaho Dairymen's Association, Inc..(Claiborne, David) | View Add to request |
| 40 | 05/21/2014 | DOCKET ENTRY ORDER approving 38 Motion for Pro Hac Vice Appearance of attorney Rachel Meeropol for Center for Constitutional Rights. Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm) | Send Runner to Court |
| 39 | 05/21/2014 | MOTION to File Amicus Brief in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss Michael J Bartlett appearing for Amicus Center for Constitutional Rights. Responses due by 6/16/2014 (Attachments: # 1 Exhibit)(Bartlett, Michael) | View Add to request |
| 38 | 05/21/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Rachel Meeropol. ( Filing fee $ 225 receipt number 0976-1162372.)Michael J Bartlett appearing for Amicus Center for Constitutional Rights. Responses due by 6/16/2014 | View Add to request |

(Bartlett, Michael)

| 37 | 05/16/2014 | RESPONSE to Motion re 36 MOTION for Leave to File Amicus Brief filed by C.L. Butch Otter, Lawrence Wasden. Replies due by 6/2/2014.(Smith, Clay) | View Add to request |
|---|---|---|---|
| 36 | 05/15/2014 | MOTION for Leave to File Amicus Brief Norman M Semanko appearing for Amicus Parties Idaho Farm Bureau Federation, Inc., Idaho Heartland Coalition, Inc., Food Producers of Idaho, Inc., Idaho Cattle Association. Responses due by 6/9/2014 (Attachments: # 1 Amicus Curiae Idaho Agricultural Groups' Reply Brief in Support of Motion to Dismiss)(Semanko, Norman) | View Add to request |
| 35 | 05/15/2014 | REPLY to Response to Motion re 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction filed by C.L. Butch Otter, Lawrence Wasden.(Smith, Clay) | View Add to request |
| 34 | 05/12/2014 | MEMORANDUM in Opposition re 16 MOTION to Intervene filed by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western | View Add to request |

Watersheds Project. Replies due by 5/30/2014.(Strugar, Matthew)

| 33 | 05/08/2014 | CASE MANAGEMENT ORDER. Amended Pleadings due by 9/1/2014. Completion of Discovery due by 12/1/2014. Joinder of Parties due by 9/1/2014. Dispositive Motions due by 1/23/2015. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) | View Add to request |
| 32 | 05/08/2014 | RESPONSE to Motion re 21 MOTION to File Amicus Brief of the Reporters Committee for Freedom of the Press and 15 others, 30 MOTION to File Amicus Brief , 28 MOTION to File Amicus Brief in support of Plaintiffs, filed by C.L. Butch Otter, Lawrence Wasden. Replies due by 5/27/2014.(Smith, Clay) | View Add to request |
| 31 | 05/05/2014 | SCHEDULING CONFERENCE FORM - LITIGATION PLAN by C.L. Butch Otter, Lawrence Wasden. (Withroe, Carl) | View Add to request |
| 30 | 05/05/2014 | MOTION to File Amicus Brief Marty Durand, James Marshall Piotrowski appearing for Amicus Idaho Building and Construction Trades Council, AFL-CIO. Responses due by 5/30/2014 (Attachments: # 1 Amicus Curiae Brief)(Durand, Marty) | View Add to request |
| 29 | 05/01/2014 | DOCKET ENTRY ORDER approving 27 Motion for Pro Hac Vice Appearance of attorney Jeffery S Gulley for Government Accountability Project. Per General | Send Runner to Court |

Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm)

| 28 | 05/01/2014 | MOTION to File Amicus Brief in support of Plaintiffs, Craig Durham appearing for Amicus Government Accountability Project. Responses due by 5/27/2014 (Attachments: # 1 Government Accountability Project's Amicus Brief)(Durham, Craig) | View Add to request |

| 27 | 05/01/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Jeffery S. Gulley. ( Filing fee $ 225 receipt number 0976-1154414.)Craig Durham appearing for Amicus Government Accountability Project. Responses due by 5/27/2014 (Durham, Craig) | View Add to request |

| 26 | 04/29/2014 | DOCKET ENTRY NOTICE OF HEARING regarding 12 Motion to Dismiss: A Motion Hearing is set for 6/25/2014 at 2:00 PM in Boise - Courtroom 3 before Judge B. Lynn Winmill. (jlg) | Send Runner to Court |

| 25 | 04/29/2014 | RESPONSE to Motion re 24 MOTION for Leave to File Excess Pages filed by C.L. Butch Otter, Lawrence Wasden. Replies due by 5/16/2014.(Smith, Clay) | View Add to request |

| 24 | 04/28/2014 | MOTION for Leave to File Excess Pages Richard Alan Eppink appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, | View Add to request |

|  |  |  |  |
|---|---|---|---|
|  |  | Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 5/22/2014 (Eppink, Richard) |  |
| 23 | 04/28/2014 | RESPONSE to Motion re 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction filed by American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Replies due by 5/15/2014.(Eppink, Richard) | View  Add to request |
| 22 | 04/28/2014 | DOCKET ENTRY ORDER approving 20 Motion for Pro Hac Vice Appearance of attorney Leslie Brueckner for The Center for Food Safety. Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF | Send Runner to Court |

|  |  | Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm) | |
|---|---|---|---|
| 21 | 04/28/2014 | MOTION to File Amicus Brief of the Reporters Committee for Freedom of the Press and 15 others Bruce D Brown appearing for Amicus Reporters Committee for Freedom of the Press. Responses due by 5/22/2014 (Attachments: # 1 Memorandum in Support Amicus Brief of the Reporters Committee)(Brown, Bruce) | View Add to request |
|  | 04/28/2014 | DISREGARD - CORRECTIVE ENTRY - The entry docket number 21 MOTION to File Amicus Brief of the Reporters Committee for Freedom of the Press and 15 others filed by Reporters Committee for Freedom of the Press was filed incorrectly in this case as it pertains to the Brief for Attachment # 1 ONLY. The document is not signed or dated by counsel. The filing party shall re-submit their dated and signed brief ONLY using the event of "Errata" located under Other Documents and link to docket 21. (cjm) Modified on 4/28/2014 (cjm). | Send Runner to Court |

Animal Legal Defense Fund et al v. Otter et al, 1:14CV00104 (2014)

| | 04/28/2014 | Please disregard Corrective Entry entered for Brief in Support of Motion 21 -1 as the document is signed on filing party page 11 and ECF page 18. The Appendix at the end should have been a separate attachment. No errata is necessary. (cjm) | Send Runner to Court |
| 20 | 04/25/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Leslie Brueckner. ( Filing fee $ 225 receipt number 0976-1152027.)Richard Alan Eppink appearing for Plaintiff The Center for Food Safety. Responses due by 5/19/2014 (Eppink, Richard) | View Add to request |
| 19 | 04/25/2014 | RESPONSE to Motion re 16 MOTION to Intervene filed by C.L. Butch Otter, Lawrence Wasden. Replies due by 5/12/2014.(Smith, Clay) | View Add to request |
| 18 | 04/21/2014 | DOCKET ENTRY ORDER approving 17 Motion for Pro Hac Vice Appearance of attorney Bruce D Brown for Reporters Committee for Freedom of the Press. Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm) | Send Runner to Court |
| 17 | 04/19/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Bruce D. Brown. ( Filing fee $ 225 receipt number 0976-1149001.)Charles A Brown appearing for Amicus Reporters | View Add to request |

|    |            | Committee for Freedom of the Press. Responses due by 5/15/2014 (Brown, Charles) | |
|----|------------|--------------------------------------------------------------------------------------|---|
| 16 | 04/18/2014 | MOTION to Intervene David P Claiborne appearing for Intervenor Defendant The Idaho Dairymen's Association, Inc.. Responses due by 5/12/2014 (Attachments: # 1 Memorandum in Support, # 2 Affidavit)(Claiborne, David) | View Add to request |
| 15 | 04/04/2014 | NOTICE OF HEARING: A Telephonic Scheduling Conference is set for 5/8/2014 at 11:00 AM before Judge B. Lynn Winmill. (Attachments: # 1 Litigation Plan Letter, # 2 Litigation Plan)(jlg) | View Add to request |
| 14 | 04/03/2014 | NOTICE of Appearance by Cally Ann Younger on behalf of C.L. Butch Otter (Younger, Cally) | View Add to request |
| 13 | 04/03/2014 | NOTICE of Appearance by Carl J Withroe on behalf of Lawrence Wasden (Withroe, Carl) | View Add to request |
| 12 | 04/03/2014 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction ( Responses due by 4/28/2014)Clay R Smith appearing for Defendants C.L. Butch Otter, Lawrence Wasden. (Attachments: # 1 Memorandum in Support)(Smith, Clay) | View Add to request |
| 11 | 03/18/2014 | SUMMONS Returned Executed by Counterpunch, Farm Forward, The Center for Food Safety, Animal Legal Defense Fund, Monte Hickman, Blair Koch, Farm Sanctuary, Sandpoint Vegetarians, Will Potter, Idaho Concerned Area Residents for the Environment, | View Add to request |

Idaho Hispanic Caucus Institute for Research and Education, River's Wish Animal Sanctuary, American Civil Liberties Union of Idaho, James McWilliams, People for the Ethical Treatment of Animals, Western Watersheds Project, Daniel Hauff. Lawrence Wasden served on 3/18/2014, answer due 4/8/2014. (Andrade, Maria)

| 10 | 03/18/2014 | SUMMONS Returned Executed by Counterpunch, Farm Forward, The Center for Food Safety, Animal Legal Defense Fund, Monte Hickman, Blair Koch, Farm Sanctuary, Sandpoint Vegetarians, Will Potter, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, River's Wish Animal Sanctuary, American Civil Liberties Union of Idaho, James McWilliams, People for the Ethical Treatment of Animals, Western Watersheds Project, Daniel Hauff. C.L. Butch Otter served on 3/18/2014, answer due 4/8/2014. (Andrade, Maria) | View Add to request |

| 9 | 03/17/2014 | DOCKET ENTRY ORDER approving 7 Motion for Pro Hac Vice Appearance of attorney Paige M Tomaselli for The Center for Food Safety. Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm) | Send Runner to Court |

| 8 | 03/17/2014 | DOCKET ENTRY ORDER | Send Runner to Court |

approving 5 Motion for Pro Hac Vice
Appearance of attorney Matthew G
Liebman for Animal Legal Defense
Fund; approving 6 Motion for Pro
Hac Vice Appearance of attorney
Justin Marceau for Animal Legal
Defense Fund. Per General Order
206, out-of-state counsel shall
immediately register for ECF.
(Notice sent to CM/ECF
Registration Clerk) (caused to be
mailed to non Registered
Participants at the addresses listed
on the Notice of Electronic Filing
(NEF) by (cjm)

| 7 | 03/17/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Paige M. Tomaselli. ( Filing fee $ 225 receipt number 0976-1133797.)Maria E Andrade appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 4/10/2014 (Andrade, Maria) | View Add to request |
| 6 | 03/17/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Justin Marceau. ( Filing fee $ 225 receipt number 0976-1133782.)Maria E Andrade appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, | View Add to request |

Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 4/10/2014 (Andrade, Maria)

| 5 | 03/17/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Matthew G. Liebman. ( Filing fee $ 225 receipt number 0976-1133776.)Maria E Andrade appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 4/10/2014 (Andrade, Maria) | View Add to request |

| 4 | 03/17/2014 | DOCKET ENTRY ORDER approving 3 Motion for Pro Hac Vice Appearance of attorney Matthew Strugar for American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, | Send Runner to Court |

|   |            |                                                                                                                                                                                                                                                                                                                                                                                          |                                   |
|---|------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----------------------------------|
|   |            | Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Per General Order 206, out-of-state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (cjm) |                                   |
| 3 | 03/17/2014 | MOTION FOR PRO HAC VICE APPEARANCE by Matthew Strugar. ( Filing fee $ 225 receipt number 0976-1133744.)Maria E Andrade appearing for Plaintiffs American Civil Liberties Union of Idaho, Animal Legal Defense Fund, Counterpunch, Farm Forward, Farm Sanctuary, Daniel Hauff, Monte Hickman, Idaho Concerned Area Residents for the Environment, Idaho Hispanic Caucus Institute for Research and Education, Blair Koch, James McWilliams, People for the Ethical Treatment of Animals, Will Potter, River's Wish Animal Sanctuary, Sandpoint Vegetarians, The Center for Food Safety, Western Watersheds Project. Responses due by 4/10/2014 (Andrade, Maria) | View Add to request |
| 2 | 03/17/2014 | Summons Issued as to C.L. Butch Otter, Lawrence Wasden. (Print attached Summons for service.) (Attachments: # 1 Summons)(cjm) | View Add to request |

| | | | |
|---|---|---|---|
| 1 | 03/17/2014 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0976-1133576.), filed by All Plaintiffs. (Attachments: # 1 Cover Sheet Civil Cover Sheet, # 2 Summons Summons, # 3 Summons Summons)(Andrade, Maria) | View Add to request |

TO ORDER COPIES OF ANY DOCUMENTS LISTED ABOVE, CALL WESTLAW
COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

**End of Document**                                   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **ANIMAL LEGAL DEFENSE FUND**, **IOWA CITIZENS FOR COMMUNITY IMPROVEMENT**, **BAILING OUT BENJI**, **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.**, and **CENTER FOR FOOD SAFETY** | **CASE NO. 4:17-cv-362** |
| Plaintiffs, | |
| v. | **CIVIL RIGHTS COMPLAINT** |
| **KIMBERLY K. REYNOLDS**, in her official capacity as Governor of Iowa, **TOM MILLER**, in his official capacity as Attorney General of Iowa, and **BRUCE E. SWANSON**, in his official capacity as Montgomery County, Iowa County Attorney, | |
| Defendants. | |

**COME NOW** Plaintiffs **Animal Legal Defense Fund**, **Iowa Citizens for Community Improvement**, **Bailing Out Benji**, **People for the Ethical Treatment of Animals**, and **Center for Food Safety**, (hereinafter Plaintiffs), by and through their attorneys, Rita Bettis of the American Civil Liberties Union of Iowa, Professors Justin Marceau Alan Chen of the University of Denver Sturm College of Law, of counsel to the Animal Legal Defense Fund, Matthew Liebman of the Animal Legal Defense Fund, Matthew Strugar of the Law Office of Matthew Strugar, Paige M. Tomaselli of the Center for Food Safety, and David S. Muraskin and Leslie A. Brueckner of Public Justice, P.C., and respectfully allege as follows:

## INTRODUCTION

1.      This lawsuit challenges the constitutionality of Iowa's "Ag-Gag" law, Iowa Code

§ 717A.3A, which criminalizes undercover investigations at factory farms and slaughterhouses.

These investigations reveal animal cruelty, unsafe food safety practices, environmental hazards,

and inhumane working conditions.  At the behest of the animal agriculture industry, nine states

have passed Ag-Gag laws.  These are Kansas, Montana, North Dakota, Iowa, Utah, Missouri,

Idaho, North Carolina, and Arkansas.  Ag-Gag bills have been introduced in dozens more

states. Federal courts have already invalidated Ag-Gag laws as violations of free speech in Idaho

and Utah.

2.      In the early 1900s, Upton Sinclair became a household name for exposing the

unfair labor practices, cruelty to animals, and unsanitary conditions of meat processing plants,

and his exposé led to the enactment of landmark federal food safety legislation, including the

Federal Meat Inspection Act and the Pure Food and Drug Act.

3.      In the last decade, journalists and animal protection advocates have continued

Sinclair's legacy, conducting more than eighty undercover investigations at factory farms in the

United States, virtually all of which would be criminalized by the Iowa statute.  Without

exception, each investigation has exposed horrific animal suffering and many led to food safety

recalls, citations for environmental and labor violations, evidence of health code violations, plant

closures, criminal animal cruelty convictions, and civil litigation.  Such investigations have

resulted in thousands of news stories and have made invaluable contributions to national

conversations on matters of significant public concern.

4.      One such undercover, employment-based investigation at a Hormel Foods

supplier in Iowa revealed multiple beatings of pigs with metal rods and workers sticking

clothespins into pigs' eyes and faces.  A supervisor was filmed kicking a young pig in the face, abdomen, and genitals to make her move and told the investigator, "You gotta beat on the bitch. Make her cry."[1]

5.     Another investigation at a slaughterhouse in Iowa revealed the horrific treatment of cows, some of whom remained conscious for as long as two minutes after their throats had been slit.  The same facility had previously been cited for violations of occupational safety laws and child labor laws.[2]

6.     In passing Iowa's Ag-Gag law, the legislature intended to prevent such investigations with the force of criminal penalties.  And it has succeeded.  In the years leading up to the passage of the Ag-Gag law in 2012, there were at least ten undercover investigations in Iowa.  Since the law's passage, there have been zero.

7.     Undercover investigations in the animal agriculture industry are typically employment-based: investigators obtain a job through the usual channels, then document activities in the facility through a hidden camera while performing the tasks required of them as employees.  When obtaining employment, investigators actively or passively conceal their investigatory motive, as well as their affiliations with journalistic or advocacy groups.

8.     The law has gagged critics of industrial agriculture by creating the viewpoint-based crime of "agricultural production facility fraud."  The law makes it a crime to "obtain[] access to an agricultural production facility by false pretenses" or "make[] a false statement or

---

[1] People for the Ethical Treatment of Animals, *Mother Pigs and Piglets Abused by Hormel Supplier*, https://investigations.peta.org/mother-pigs-piglets-abused-hormel-supplier  (last visited Oct. 10, 2017).

[2] People for the Ethical Treatment of Animals, *PETA Reveals Extreme Cruelty at Kosher Slaughterhouse*, https://www.peta.org/features/agriprocessors/ (last visited Oct. 10, 2017).

representation" on an employment application "with an intent to commit an act not authorized by the owner" of the facility.  Iowa Code § 717A.3A(1)(a)-(b).

9.      In its intent and operation, the law eliminates undercover investigations at agricultural facilities because the use of false pretenses and misrepresentations are essential tools for conducting undercover journalism and public interest investigations.  If investigators were required to disclose that they were engaging in an undercover investigation or affiliated with the press or public interest organizations, as the Iowa law requires, they would never be allowed to enter the facilities.

10.      Moreover, the statute defines "agricultural production facility" so broadly that it applies not only to factory farms and slaughterhouses, but also to any "crop operation property" or any location "agricultural animals" are maintained, including exhibitions, markets, and even vehicles. Iowa Code § 717A.1(2)-(4), (5)(a).

11.      The Ag-Gag law even applies to "puppy mills," facilities that breed large numbers of dogs in inhumane conditions for the pet trade.  The law defines "agricultural animal" to include "[a]n animal that is maintained for its parts or products having commercial value," as dogs bred for the commercial pet trade are.  Iowa Code § 717A.1(4).  Commercial dog breeders in Iowa are regulated by the Iowa Department of Agriculture and Land Stewardship, further evidence that they are "agricultural animals."  Iowa Code § 162.8.

12.      Advocacy groups estimate that Iowa currently has approximately 250 puppy mills. While the conditions at many of these facilities are unknown, at least 15 have been cited for causing extreme animal suffering, such as forcing the animals to live in filthy conditions, providing no protection from extreme heat and cold, and having severely injured or sick dogs with no adequate veterinary care.

13.    Despite the fact that Iowa is home to a large number of abusive puppy mills, there are currently no laws that require inspections of these facilities, which makes undercover investigations the only reliable way to expose these conditions.  Moreover, advocacy groups can no longer rely on the U.S. Department of Agriculture's inspection reports because of the Agency's recent decision to remove these reports from its website.  Due to the backlog of requests under the Freedom of Information Act, these records are estimated to take months or years to obtain, making it nearly impossible to determine the current conditions of these facilities.

14.    The Iowa Ag-Gag law is part of the animal agriculture industry's nationwide campaign to silence the undercover investigations and corresponding media coverage that contribute to public debate about animal treatment and food safety.

15.    In August 2015, the U.S. District Court for the District of Idaho struck down Idaho's Ag-Gag law as unconstitutional under the First and Fourteenth Amendments.  Like Iowa's Ag-Gag law, Idaho's Ag-Gag law criminalized obtaining employment through misrepresentation.[3] In July 2017, the U.S. District Court for the District of Utah struck down Utah's Ag-Gag law as unconstitutional under the First Amendment.  Like Iowa's Ag-Gag law, Utah's Ag-Gag law criminalized obtaining employment through false pretenses.[4]  In September 2017, the U.S. Court of Appeals for the Tenth Circuit reversed a federal district court in Wyoming and held that Wyoming's Ag-Gag laws—also known as "Data Trespass laws"—violated the First Amendment.[5] Like Iowa's Ag-Gag law, Wyoming's Data Trespass laws

---

[3] *Animal Legal Defense Fund v. Otter*, 118 F. Supp. 3d 1195, 1201 (D. Idaho 2015).

[4] *Animal Legal Defense Fund v. Herbert*, No. 2:13-CV-00679-RJS, 2017 WL 2912423 (D. Utah July 7, 2017).

[5] *W. Watersheds Project v. Michael*, 869 F.3d 1189 (11th Cir. 2017).

criminalized undercover investigations into potential violations of environmental, food safety, and animal cruelty laws.  Each of these decisions recognized the critical difference between generally applicable trespass or fraud laws, and laws that single out certain types of trespass or fraud for increased criminal sanction because of a purpose to limit certain types of whistleblowing speech.

16.     Plaintiffs bring this action to prevent the enforcement of Iowa's Ag-Gag law, Iowa Code § 717A.3A.[6]

---

[6] The statute reads as follows: 717A.3A AGRICULTURAL PRODUCTION FACILITY FRAUD.

1. A person is guilty of agricultural production facility fraud if the person willfully does any of the following:

   a. Obtains access to an agricultural production facility by false pretenses.

   b. Makes a false statement or representation as part of an application or agreement to be employed at an agricultural production facility, if the person knows the statement to be false, and makes the statement with an intent to commit an act not authorized by the owner of the agricultural production facility, knowing that the act is not authorized.

2. A person who commits agricultural production facility fraud under subsection 1 is guilty of the following:

   a. For the first conviction, a serious misdemeanor.

   b. For a second or subsequent conviction, an aggravated misdemeanor.

3. a. A person who conspires to commit agricultural production facility fraud under subsection 1 is subject to the provisions of chapter 706. A person who aids and abets in the commission of agricultural production facility fraud under subsection 1 is subject to the provisions of chapter 703. When two or more persons, acting in concert, knowingly participate in committing agricultural production facility fraud under subsection 1, each person is responsible for the acts of the other person as provided in section 703.2. A person who has knowledge that agricultural production facility fraud under subsection 1 has been committed and that a certain person committed it, and who does not stand in the relation of husband or wife to the person committing the agricultural production facility fraud under subsection 1, and who harbors, aids, or conceals the person committing the agricultural production facility fraud under subsection 1, with the intent to prevent the

17.     Iowa Code § 717A.3A is both facially content-based and predicated on a viewpoint-based legislative purpose.  The statute is exclusively targeted at undercover investigations conducted at agricultural facilities in order to prohibit the development and release of information critical of agricultural production practices.  It is facially unconstitutional and unconstitutional as-applied to the Plaintiffs in this case.

18.     The legislative history and context for the law, detailed below, leaves little doubt that the legislative purpose was to punish animal rights groups and curtail a form of political speech of great public concern.

19.     Several of the Plaintiffs are parties that conduct these investigations and have a concrete desire to engage in speech and expressive conduct that violate the Ag-Gag statute. Other Plaintiffs rely on the investigations for their reporting, research, and educational outreach to contribute to an important public debate about mass-produced agricultural products.  The Ag-Gag law also harms Plaintiffs because as long as it remains enforceable Plaintiffs will be compelled to divert resources from their core missions in order to engage in outreach and education about the Ag-Gag law. Plaintiff CCI also suffers a direct injury because its mission relating to educating the public about the reality of factory farming in Iowa is impeded.

20.     In addition, because the law is motivated by animus towards a politically unpopular group—animal protection advocates—it also violates the Fourteenth Amendment.

---

apprehension of the person committing the agricultural production facility fraud under subsection 1, is subject to section 703.3.

b. A trial information or an indictment relating to agricultural production facility fraud under subsection 1 need not contain allegations of vicarious liability as provided in chapter 703.

21.     In short, the Iowa law infringes the rights of Plaintiffs and gives the agriculture industry a virtual monopoly on the most relevant and probative speech on a topic that is of vital importance to the public, thereby allowing the industry to provide a misleading account of its activities and hide violations of animal cruelty, labor, environmental, and food safety laws.

22.     Accordingly, Plaintiffs ask this Court for declaratory and injunctive relief to preserve their right and the right of others to engage in expressive and communicative activity that is of the utmost public concern.

## JURISDICTION AND VENUE

23.     This action arises under the U.S. Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1988. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

24.     This Court has authority to grant the declaratory and injunctive relief herein requested pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

25.     Venue is proper in the U.S. District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

### Plaintiffs

26.     Plaintiff ANIMAL LEGAL DEFENSE FUND (ALDF) is a national non-profit animal protection organization founded in 1979 that uses education, public outreach,

investigations, legislation, and litigation to protect the lives and advance the interests of animals,

including those raised for food.  ALDF's work is supported by more than 200,000 members and

supporters across the country, including in Iowa.  ALDF promotes the humane treatment of

farmed animals.  ALDF and its agents have conducted undercover investigations at animal

facilities around the country, including facilities that would meet the definition of an

"agricultural production facility" under Iowa Code § 717A.1(5)(1).  ALDF would like to conduct

an investigation at an agricultural production facility in Iowa, has conducted animal welfare

investigations in Iowa before, and has a professional working relationship with a licensed private

investigator in Iowa.  Moreover, ALDF's core mission of improving the lives of animals is

fundamentally impaired by the Ag-Gag law.  ALDF uses investigations to support its litigation

and outreach, and this law directly impedes these efforts by diminishing the supply of such

investigations.  ALDF also spends significant resources to prevent the spread of unconstitutional

Ag-Gag laws, including the one enacted in Iowa.  These expenditures to counteract the

unconstitutional violations of various persons' civil rights constitute a harmful diversion of

ALDF's very limited resources and a loss to the organization because those resources would

otherwise be better spent furthering ALDF's core mission of protecting the lives and advancing

the interests of animals through the legal system.  ALDF, however, is obligated to divert its

resources in order to prevent the harm Ag-Gag laws, like and including the one enacted in Iowa,

pose to ALDF's core mission because such laws prevent the creation and dissemination of

information that protects the lives and advances the interests of animals, and because such laws

directly impede the improvement of animals' status in the law.

     27.     Plaintiff IOWA CITIZENS FOR COMMUNITY IMPROVEMENT (CCI) is a

statewide Iowa non-profit organization that works to enable Iowans from all walks of life—

urban and rural, young and old, immigrants and lifelong Iowans—to make change in their

communities by raising their voices and doing grassroots advocacy.  They have approximately

4,200 dues paying members around the state, in addition to another 17,000 supporters and

activists who sign up to receive CCI emails, take action online, attend meetings, sign petitions,

and engage in other forms of activism with and for CCI.  Many of their members are workers in

agricultural facilities, through which CCI would be able to engage in undercover investigations

and engage in evidence collection through false pretenses in order to support its advocacy

mission, were it not for the Ag-Gag law.  Their motto is "People Before Politics. People Before

Profits. People Before Polluters."  Their organizational priorities include fighting factory farms

and protecting Iowa's clean water and environment, as well as advancing for worker justice,

racial justice, and immigrants' rights.  They work to organize workers, and have specifically

worked in the past to organize in hog facilities.  In 2015, they worked with Latino workers in an

egg and poultry facility who had been forced to pay for their own protective gear.  CCI did not

engage in undercover investigations as part of that advocacy, and did not collect footage of

conditions for workers inside that facility, out of fear of criminal liability imposed by Iowa's Ag-

Gag law.  Prior to the Ag-Gag law, CCI's members—who were workers in targeted facilities—

would collect photographic evidence of poor or unsafe working conditions.  Those photos were

key components of the OSHA complaint that CCI members, who were Latino farmworkers, filed

in 2012 against Angola Pork LLC, a factory farm near Algona, which resulted in citations and

notifications of penalty by the agency to Angola Pork later that year.  In that case, the ability for

CCI, through its members, to obtain photographic evidence undercover while under the pretense

of simply being workers showing up for duty, was critical to the citations, which included

serious violations for failing to furnish facilities that were "free from recognized hazards that

were causing or likely to cause death or serious physical harm" to employees.  In addition, CCI

utilizes video and images in its online and in-person activism, including online petitions and

other forms of advocacy.  For example, when they believe illegal dumping into Iowa waterways

or other violations of the Clean Water Act are occurring, they have been chilled from obtaining

video evidence of those violations.  Because of the fear of criminal prosecution imposed by the

Ag-Gag law, CCI and its members do not collect those images or video by gaining access to

agricultural facilities, and are limited to what documentation and images are viewable from

public property.  This necessarily severely limits what documentation and images are available

for use in CCI's advocacy.  At a time when the Iowa Department of Natural Resources has been

underfunded by the legislature and is understaffed to investigate and respond to citizen

complaints of spills or dumping, CCI views the availability of those tools as never more

important to its mission.

   28. Plaintiff BAILING OUT BENJI is a small Iowa non-profit organization that

works to protect companion animals and raise the public's awareness about various animal

welfare issues impacting dogs. It is specifically concerned about puppy mills.  In 2011, the

organization's founder, Mindi Callison, first learned about Iowa's problem puppy mills and the

conditions some dogs and puppies face in large animal breeding facilities, including lack of

human interaction, unsafe and unsanitary conditions, lack of veterinarian care, and exposure to

rain, snow, extreme heat, and extreme cold.  Outraged and motivated to change things in Iowa,

she founded Bailing Out Benji.  Prior to the passage of the Ag-Gag law, the organization

conducted its own investigations into puppy mills, including on an undercover basis by using

false pretenses to gain access to facilities and used images and video obtained by them and by

others in their public presentations.  For example, Bailing Out Benji volunteers would use false

pretenses to gain access to those auctions, either by stating overtly or by letting the assumption

go uncorrected, that they were breeders or brokers, when in fact, their intent was not to purchase

dogs, but to document expose practices that they view as abusive, and then rescue the dogs.

Since the Ag-Gag law was signed into law, however, they no longer engage in undercover

activities for fear of prosecution.  Similarly, prior to the Ag-Gag law, Bailing Out Benji would

use images and video obtained through undercover investigations conducted in Iowa by another

animal welfare organization, Companion Animal Protection Society (CAPS), in their public

education activities.  Now, because of the chilling effect of Ag-Gag, CAPS no longer produces

undercover materials of puppy mills in Iowa, and, as a result Bailing Out Benji can no longer use

these materials in its advocacy.  Finally, one of the ways in which Bailing Out Benji

accomplishes its mission is by exposing which puppy mills pet stores in Iowa are purchasing

puppies from as well as the conditions of those puppy mills.  Without the materials produced

through undercover investigations, they are unable to engage in that work as effectively, or at all,

for fear their activities would constitute "harbor[ing], aid[ing], or conceal[ing] the person

committing the agricultural production facility fraud under subsection 1, with the intent to

prevent the apprehension of the person committing the agricultural production facility fraud" if

they failed to disclose that they work for an animal advocacy organization.

     29.    Plaintiff PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.

(PETA) is a Virginia non-stock corporation and animal protection charity exempt from taxation

pursuant to Section 501(c)(3) of the Internal Revenue Code.  PETA is dedicated to protecting

animals from abuse, neglect, and cruelty, and undertakes these efforts through public education,

undercover investigations, research, animal rescue, legislation, special events, celebrity

involvement, protest campaigns, and lawsuits to enforce laws enacted to protect animals.  A

central tenet of PETA's mission is to expose cruelty to farmed animals, educate the public about such cruelty, and encourage people to choose a lifestyle that does not involve or support abuse, neglect, or exploitation of animals.  PETA has conducted dozens of investigations in the United States over the past three decades, exposing illegal animal abuse and turning the results of each investigation over to appropriate law enforcement and/or regulatory authorities.  It continues to conduct these investigations to expose further illegal conduct on the part of workers and management personnel.  PETA is also interested and willing to conduct an investigation in Iowa but for the threat of criminal prosecution under Iowa Code § 717A.3A.   Specifically, PETA has conducted such investigations in Iowa before the passage of the Ag-Gag and is interested in conducting an employment-based undercover investigation in Montgomery County following PETA's receipt of a whistleblower report of animal mistreatment at a Montgomery-based egg farm.  PETA would attempt to conduct an employment-based undercover investigation at the Montgomery County facility but for the Ag-Gag statute.  Moreover, PETA uses investigations to support its litigation and outreach and this law directly impedes these efforts by diminishing the supply of such investigations.  The Ag-Gag law impairs PETA's ability to carry out its core mission and has forced PETA to divert resources toward educating the public regarding and otherwise opposing Ag-Gag laws, like that enacted in Iowa.  PETA has and will continue to divert resources to engage in educational outreach about Iowa's Ag-Gag law, and the money spent opposing and doing outreach regarding Ag-Gag laws diminishes the money available for these more traditional, core educational goals of PETA.

30.    Plaintiff CENTER FOR FOOD SAFETY is a 501(c)(3) non-profit environmental and consumer advocacy organization that empowers people, supports farmers, and protects the earth from the harmful impact of industrial agriculture.  Through legal, scientific, and grassroots

action, CFS protects and promotes the public's right to safe food and the environment.  CFS has

over 900,000 members nationwide, including 5,211 members in Iowa.  CFS's industrial animal

agriculture program uses regulatory action, citizen engagement, litigation, and legislation to

promote transparency and accountability in the animal agriculture industry.  Through this work,

the program aims to reduce the harmful impacts of industrial animal facilities on animal welfare,

the environment, and human health and to increase consumer awareness, availability, and

accessibility of suitable alternatives by highlighting humane, organic, and pasture-based animal

raising practices and producers.  Since 2009, CFS's industrial animal agriculture program has

developed expertise and multi-faceted strategies on addressing the known impacts of intensive

animal confinement on food safety and public health.  Unconstitutional Ag-Gag laws frustrate

CFS's mission to protect the earth from the harmful impact of industrial agriculture because they

prevent CFS from disseminating information about the conditions at animal production facilities

to their members, impede the transparency in agriculture that CFS promotes, and encourage the

continuation of the harmful, inhumane, industrial animal agricultural model. CFS has spent

significant resources to stop unconstitutional Ag-Gag laws and promote transparency in animal

agriculture. But for these unconstitutional Ag-Gag laws, CFS would utilize its limited resources

promoting alternatives to the industrial animal raising system. CFS also disseminates to

government agencies, members of Congress, and the general public a wide array of

informational materials addressing the harmful effects of industrial agriculture.  These materials

include news articles, policy reports, legal briefs, press releases, action alerts, and fact sheets.

CFS relies on and uses videos and recordings obtained during undercover industrial agriculture

investigations for its legal, policy, advocacy, and educational and outreach work.  The Iowa Ag-

Gag law impedes on CFS's ability to carry out its work because it cannot disseminate information concerning the animal agricultural industry in Iowa.

## Defendants

31.     Defendant KIMBERLY KAY REYNOLDS is the Governor of Iowa and as such, is the Chief Executive for the state, responsible for ensuring the enforcement of the State's criminal statutes. The Governor is sued in her official capacity.

32.     Defendant TOM MILLER is the Attorney General of Iowa and as such, oversees the enforcement of the State's criminal statutes by the Iowa Attorney General's Office, including yearly coordination of training with Iowa county attorneys who prosecute the state's criminal statutes in all of Iowa's 99 counties.  The Attorney General is sued in his official capacity.

33.     Defendant BRUCE E. SWANSON is the County Attorney of Montgomery County, Iowa, the site of an egg farm where PETA would conduct an undercover investigation in response to a 2017 whistleblower complaint, but for the Ag-Gag law.  As county attorney, Mr. Swanson is primarily responsible for the enforcement of criminal laws in Montgomery County, Iowa by acting as prosecuting attorney on behalf of the State of Iowa.  Mr. Swanson is sued in his official capacity.

## FACTUAL BACKGROUND

### Statutory Overview

34.     On March 2, 2012, former Governor Terry Branstad signed into law House File 589, codified at Iowa Code § 717A.3A.

35.     Iowa Code § 717A.3A created the new crime of "agricultural production facility fraud."

36.     An "agricultural production facility" is "an animal facility as defined in [Iowa

Code § 717A.1(5)(a)] or a crop operation property." Iowa Code § 717A.1(3).

37.     Iowa Code § 717A.1(5)(a) defines an "animal facility" as "a location where an agricultural animal is maintained for agricultural production purposes, *including but not limited to* a location dedicated to farming as defined in section 9H.1, a livestock market, exhibition, or a vehicle used to transport the animal." (Emphasis added.)

38.     An "agricultural animal" is defined as "[a]n animal that is maintained for its parts or products having commercial value, including but not limited to its muscle tissue, organs, fat, blood, manure, bones, milk, wool, hide, pelt, feathers, eggs, semen, embryos, or honey," as well as equines. Iowa Code § 717A.1(1).

39.     The code defines "agricultural production" as "any activity related to maintaining an agricultural animal at an animal facility or a crop on crop operation property." Iowa Code § 717A.1(2).

40.     The statute creates two forms of agricultural production facility fraud:

    a.     "Obtain[ing] access to an agricultural production facility through false pretenses." Iowa Code § 717A.3A(1)(a).

    b.     "Mak[ing] a false statement or representation as part of an application or agreement to be employed at an agricultural production facility, if the person knows the statement to be false, and makes the statement with an intent to commit an act not authorized by the owner of the agricultural production facility, knowing that the act is not authorized." Iowa Code § 717A.3A(1)(b).

41.     Persons violating Iowa Code § 717A.3A(1)(a) or (b) face up to a year in jail and up to $1,875 in fines for a first conviction, or up to two years in jail and up to $6,250 for a second conviction. Iowa Code § 903.1(1).

42.     The threat of criminal liability extends beyond the individual who conducts the investigation and includes non-profit organizations such as ALDF and PETA that coordinate and promote such investigations.  The statute includes liability for those who conspire to violate the Ag-Gag law, as well as those who aid and abet violations.  Iowa Code § 717A.3A(3)(a).  Indeed, even a journalist who refused to reveal a source who provided news obtained through an undercover investigation would be a criminal, because the law also makes liable anyone "who harbors, aids, or conceals" someone who has violated the Ag-Gag law.  *Id.*  Under the plain terms of Iowa Code § 717A.3A, no new investigations of the type contemplated by some of the Plaintiffs and relied on by other Plaintiffs may be conducted in Iowa.

**Statutory Purpose**

43.     Iowa Code § 717A.3A criminalizes obtaining access to an agriculture production facility by false pretenses.

44.     Iowa Code § 717A.3A criminalizes employment-based investigations where employment is obtained through misrepresentation or omission.

45.     By criminalizing the obtaining of access through false pretenses, the statute is ensuring that no recordings or images are captured by individuals who may portray the agricultural industry in a negative light.

46.     Because the Ag-Gag law criminalizes misrepresentations made with "an intent to commit an act not authorized by the owner of the agricultural production facility," Iowa Code § 717A.3A(b), including undercover recording, the statute in effect prohibits and singles-out images and recordings that will portray the agricultural industry in a negative light.  The purpose

and effect of the statute is to prioritize and privilege speech that is favorable to the agricultural industry and to prevent speech that is unfavorable to the agricultural industry.

47.     The statute criminalizes the production of speech that is a matter of considerable public concern.

48.     The statute's legislative history demonstrates that it was introduced with the explicit intent of silencing or impeding speech by animal protection organizations.

49.     In debating the Ag-Gag law, Iowa legislatures confirmed that the central objective of the law is to prevent whistleblowers from collecting information about animal agriculture and distributing it to the public.

50.     Representative Sweeney stated: "I feel it is wrong to absolutely like to get a job to try to defame the employer." The law, however, only applies to agriculture, rather than all employees in Iowa generally.

51.     Senator John P. Kibbie of Emmetsburg, president of the State Senate, commented to the New York Times that he supported the legislation to "make producers feel more comfortable."

52.     Speaking about the bill, Senator Tom Rielly of Oskaloosa told the Sioux City Journal that animal rights activists "want to hurt an important part of our economy . . . . These people don't want us to have eggs; they don't want people to eat meat . . . . What we're aiming at is stopping these groups that go out and gin up campaigns that they use to raise money by trying to give the agriculture industry a bad name."

53.     A spokesman for Governor Terry Branstad told the same outlet that the governor "believes undercover filming is a problem that should be addressed."

54.     Senator Joe Seng, a proponent of the bill and the Senate Agriculture Committee Chair, stated: "I really think [the bill] is an attempt to protect agriculture, but not have any subversive acts to bring down an industry."

55.     When asked whether he believes that the industry can police itself and protect the animals against abuse, Senator Seng said: "I think the bill that we passed is mainly for protection of industry that is dedicated to actually feeding the world in the next 25 years."

56.     Senator Seng stated: "It's my job as Ag Chair to support agriculture."

57.     Cody McKinley, a public policy director for the Iowa Pork Producers Association and a supporter of the Ag-Gag bill, stated: "I don't believe in people being hired under false pretenses to get access to these facilities to portray their side of the story."

58.     Bruce Berven, lobbyist for the Iowa Cattlemen's Association, argued that animal rights organizations are interested in something other than ensuring humane treatment of animals.  He stated: "[The animal activists'] agenda is clear and basically anti-livestock.  They are basically just using this issue to promote their vegan-slash-vegetarian agenda.  There's a bigger war going on than this issue."

59.     A vice president for the National Pork Producers Council, Pat McGonegle, stated that factory farms "need protection from people who have mischievous intentions and this does just that."

60.     Dave Warner, the Director of Communications of the National Pork Producers Council faulted the undercover investigations because they time their exposés to correspond to "a good news cycle."

61.     The history, text and structure of the law also confirm that the law was intended to suppress speech that is negative to the agricultural industry.  On information and belief, the law

was introduced in response to past investigations in the state, it has the effect of criminalizing

essentially every undercover investigation that has occurred in Iowa, and it even criminalizes

journalistic decisions to keep confidential the source of an exposé.  Iowa Code § 717A.3A(3)(a).

62.     On information and belief, the Iowa Ag-Gag law was drafted and enacted just

over a year after a major factory farm investigation of the Iowa Select Farms.

63.     Upon information and belief, certain legislators and legislative staff advocated for

Iowa Code § 717A.3A specifically because it would silence animal protection organizations.

64.     On information and belief, there are no other statutes in Iowa that target a specific

category of whistleblowing or investigative journalism. Undercover investigations of, for

example, financial institutions or medical providers are still permitted.

65.     Moreover, laws prohibiting fraud, trespass, adulteration of food products, and

theft of trade secrets already exist in Iowa.  *See*, *e.g.*, Iowa Code §§ 714.8-714.13 (criminal

fraud); 189A.10 (fraudulent practices in meat and poultry inspection); 716.7-716.8 (trespass);

190.3-190.9, 190.15 (adulteration of food); §§ 550.3-550.4 (theft of trade secrets).

**Investigations and Reporting Generally**

66.     Plaintiff ALDF has engaged in, and intends to continue to engage in, undercover

investigations of agricultural facilities in the United States.  ALDF conducts investigations

because they are useful to the organization's legal advocacy, as well as its educational and

outreach missions.

67.     Plaintiff PETA regularly conducts investigations into industrial factory farming

facilities and slaughtering operations in the United States, including previous investigations in

Iowa.  These investigations are central to the organization's mission and related public interest

campaigns.

68.    PETA's employment-based investigations at Postville, Iowa's Agriprocessors cow slaughter facility in 2004 and 2008 revealed painful and grossly inadequate slaughter techniques that left cows conscious for as long as two minutes after their throats were slit.  The investigations resulted in a six-month investigation by the Department of Agriculture and changes to the facilities' slaughter practices.[7]

69.    Another 2008 PETA employment-based investigation at a farm outside of Bayard, Iowa that supplied pigs to Hormel showed multiple beatings of pigs with metal rods and workers sticking clothespins into pigs' eyes and faces.  A supervisor was filmed kicking a young pig in the face, abdomen, and genitals to make her move and told the investigator that when he gets angry or a sow won't move, "I grab one of these rods and jam it in her [anus]."[8]  The investigation resulted in 22 charges of livestock neglect and abuse filed against six of the facility's former employees.

70.    Gaining employment or access to an agricultural production facility in Iowa would make one guilty of a serious misdemeanor.  Thus, ALDF and PETA are precluded from gaining access to the facilities.  ALDF is a legal organization with a Criminal Justice Program that provides free legal assistance and training to law and enforcement prosecutors, while PETA

---

[7] *See* Alan Cooperman, *USDA Investigating Kosher Meat Plant; Advocacy Group's Grisly Video Sparked Outcry*, Washington Post (Dec. 31, 2004), http://www.washingtonpost.com/wp-dyn/articles/A37569-2004Dec30.html [last visited Oct. 10, 2017]; Julia Preston, Kosher Plant Is Accused of Inhumane Slaughter, New York Times (Sept. 4, 2008), http://www.nytimes.com/2008/09/05/us/05immig.html [last visited Oct. 10, 2017].

[8] See People for the Ethical Treatment Animals, Mother Pigs and Piglets Abused by Hormel Supplier, https://secure.peta.org/site/Advocacy?cmd=display&page=UserAction&id=1131 (last visited Oct. 10, 2017); Graphic Abuse of Pigs Caught on Tape, CBS News (Sept. 17, 2008), https://www.cbsnews.com/news/graphic-abuse-of-pigs-caught-on-tape/ (last visited Oct. 4, 2017).

has often worked with law enforcement to ensure the prosecution of animal cruelty on factory farms and elsewhere. Neither organization would intentionally violate a criminal law.

71.    On information and belief, agricultural employers in Iowa inquire about whether a potential employee has any connections to an animal protection organization.

72.    Industry documents for the agricultural field routinely instruct agricultural employers to inquire about affiliations with animal protection organizations.

73.    During their investigations, investigators use recording equipment to document violations of applicable laws and regulations, including unsanitary practices, cruelty to animals, pollution, sexual misconduct, labor law violations, and other matters of public importance.

74.    Plaintiffs ALDF and PETA have used the videos and photos of illegal conduct obtained through undercover employment-based investigations to seek enforcement of civil and criminal laws and regulations, to encourage legislative and industry reform, to educate the public about factory farms, and to effectuate changes in corporate policies and supply chains.

75.    Because ALDF and PETA are not able to conduct undercover investigations in Iowa as a result of the Ag-Gag law, gathering these videos and photos is impossible.

76.    PETA's 1998 investigation of Belcross Farm, a pig-breeding factory farm in North Carolina, resulted in felony indictments of workers after PETA released hours of video footage that revealed shocking, systematic cruelty from daily beatings of pregnant sows with a wrench and an iron pole to skinning pigs alive and sawing off a conscious animal's legs. A 2001 PETA investigation of Seaboard Farms, an Oklahoma pig farm, resulted in the first conviction for felony animal cruelty to farmed animals after PETA's investigation showed employees routinely throwing, beating, kicking, and slamming animals against concrete floors and bludgeoning them with metal gate rods and hammers. PETA's 2008 investigation of the factory

farms of Aviagen Turkeys resulted in the first-ever felony indictments for farmed poultry, and first convictions of factory farmers for abusing turkeys.

77.     ALDF's 2016 investigation of a Nebraska pig breeding operation owned by The Maschhoffs, the nation's third largest pig producer and a Hormel Foods supplier, revealed long-term neglect and lack of appropriate veterinary care, with pigs suffering for days or weeks with grossly prolapsed rectums, intestinal ruptures, large open wounds, and bloody baseball-sized ruptured cysts.  Pigs were denied food for long periods of time, and a botched "euthanasia" resulted in a mother pig slowly dying after being shot in the head multiple times over the course of several minutes.  Hormel suspended the supplier after ALDF's release of the investigation. Another ALDF investigation in 2015, of a Carthage, Texas-based Tyson Foods chicken slaughterhouse, showed birds treated like trash, left to suffocate by the hundreds on overcrowded conveyor belts and discarded, still alive, in heaps of dead and dying chickens, feathers, and filth. That investigation resulted in the filing of complaints—concerning the treatment of chickens, food safety, worker protection, and false corporate statements—with several federal and state agencies.

78.     Undercover investigations have and will continue to result in positive legal outcomes, provide insights into modern factory farming, and contribute immensely to public discourse about the political and ethical dimensions of our food choices.

79.     These exposés are an important part of the marketplace of ideas because they influence public opinion and consumer demand.  A 2012 consumer survey conducted by Purdue University's Department of Agricultural Economics and Department of Animal Sciences found that the public relies on the information gathered and presented by animal protection groups and investigative journalists more than they rely on industry groups and the government combined.

80.     With the exception of material generated by or done on behalf of the animal agricultural industry, or pro-agriculture speech produced by the State, investigations by journalists or activists and their subsequent coverage in the media provide the primary avenue through which the workings of agricultural operations may be gleaned.

81.     Existing employees in the agricultural industry almost never become whistleblowers, due to a lack of legal protections for whistleblowers in the industry, employees' often-precarious socioeconomic and immigration status, and the likelihood of retaliation from co-workers or management.  As a result, undercover employment-based investigations by advocacy organizations or journalists are the only available means of exposing the truth about what happens inside factory farms and slaughterhouses.  Plaintiffs are aware of no exposés by non-investigatory or "bona fide" employees in Iowa before or since the passage of the Ag-Gag law.

82.     Countless reporters and authors have sought access to factory farms and slaughterhouses by asking owners for tours in order to better understand modern industrial agriculture.  Owners and managers of these facilities virtually never give such consent.  The acclaimed author Jonathan Safran Foer, who spent three years researching agriculture for his book *Eating Animals*, wrote, "As it turns out, locked doors are the least of it. I never heard back from . . . any of the companies I wrote to. . . . Even research organizations with paid staffs find themselves consistently thwarted by industry secrecy. . . . The power brokers of factory farming know that their business model depends on consumers not being able to see (or hear about) what they do."

**Investigative Injuries (ALDF, CCI, BAILING OUT BENJI, and PETA)**

83.     Plaintiffs ALDF, CCI, BAILING OUT BENJI, PETA, and CFS, have the goal and organizational purpose of producing speech that shows the hidden side of industrial animal agriculture.

84.     ALDF and PETA have a specific interest in agricultural investigations in Iowa, which leads the nation in industrial animal agriculture.  Iowa is by far the country's biggest producer of pigs raised for meat.  More than 20 million pigs are raised on Iowa farms each year, more than twice as many as the country's number two producer, North Carolina (which also has an Ag-Gag law).  A majority of these pigs are born into the industry by breeder sows who are confined in "gestation crates," a form of intensive confinement that causes immense animal suffering and has been banned in several states.

85.     Iowa is also the country's biggest egg producer, with more than 45 million hens raised on Iowa farms each year.  The vast majority of these hens are kept in "battery cages," a form of intensive confinement that causes immense animal suffering and has been banned in several states.

86.     In addition to its prominent role in pig and egg production, Iowa farms also raise millions of other animals for meat or other animal products, including cows, turkeys, and sheep.

87.     There are more than 250 slaughterhouses and processing plants in Iowa.

88.     Given Iowa's prominent role in animal agriculture, ALDF and PETA have a strong desire to conduct undercover investigations at facilities in the state.

89.     Plaintiffs ALDF and PETA's missions are best served by demonstrating that meat, dairy, eggs, and related products are produced in a similar manner industry-wide, across

the United States, which requires the ability to access a diverse array of states and not just a select few.  This requires constantly seeking investigative opportunities in different states.

90.    The inability to conduct undercover investigations in Iowa allows agricultural enterprises in Iowa to claim that they are treating their animals in a way that is different than what is shown in the videos obtained by Plaintiffs from other states.  Food safety, labor, and animal welfare issues are uniquely hidden from public scrutiny because of the Iowa Ag-Gag law.

91.    ALDF has identified agricultural production facilities where it would seek to conduct undercover, employment-based investigations, but it has not pursued employment at those facilities due to its reasonable fear of prosecution under the Ag-Gag law.  ALDF would retain a licensed investigator to conduct an undercover, employment-based investigation at an agricultural production facility in Iowa, but has refrained from doing so due to its reasonable fear of prosecution under the Ag-Gag law.

92.    Since Iowa passed the Ag-Gag law in 2012, at least 15 whistle-blowers have contacted PETA alleging cruel or inhumane treatment of animals at Iowa agricultural facilities, including pig farms, chicken farms, egg farms, dairy farms, fur farms, and cow slaughterhouses.  Because of the threat of criminal liability under the Ag-Gag law, PETA was unable to conduct an employment-based investigation at any of these facilities.

93.    The investigations desired by ALDF and PETA would violate the Ag-Gag statute, Iowa Code § 717A.3A.  A typical applicant applies for employment with the primary motive of obtaining a job in exchange for a wage.  An ALDF or PETA applicant with an *investigatory* motive would obtain the job under what the statute would consider the false pretense of being a typical applicant, thus violating subsection (a) of the Ag-Gag statute, even without making an affirmative misrepresentation.

94.     ALDF applicants would also violate subsection (b) by making affirmative misrepresentations during the employment process with the intent of video recording the conduct of the facility, even where the facility does not authorize such recording.  Those misrepresentations would include omitting investigators' affiliations with animal protection organizations, omitting their status as licensed private investigators (where applicable), downplaying their educational background, and telling innocuous white lies to ingratiate themselves to their interviewers, such as "I like your tie (or local sports team or company philosophy)."

95.     PETA applicants would also be considered to violate subsection (b) by making what the statute terms "affirmative misrepresentations" during the employment process by omitting their animal protection affiliations and by video recording what is believed to be illegal conduct at the facility, even where the facility does not authorize such recording.

96.     As a matter of policy, ALDF and PETA instruct their employees and agents not to exaggerate their qualifications for a position, such as by purporting to have skills, licenses, or clearances that they do not in fact have.

97.     The misrepresentations that ALDF intends to make are "downward" lies to misdirect attention from, for example, a journalism degree or animal rights background, rather than "upward" lies to exaggerate qualifications, such as claiming to have experience with a particular piece of machinery or a certification to drive a forklift.

98.     ALDF and PETA instruct their investigators to undergo the same training and perform the same lawful tasks as any other employee, including respecting all biosecurity protocols.

99.     The camera worn by investigators is hidden on the clothing and runs automatically; it does not interfere with the investigator's ability to perform the tasks required of the position.

100.    In terms of efficiency and productivity, the investigator is no different from any other employee.

101.    Plaintiffs reasonably believe that prosecutors in Iowa intend to enforce Iowa Code § 717A.3A.

102.    The Ag-Gag law creates a paradox.  When Plaintiffs' undercover investigators come across extreme animal cruelty or serious violations of food safety, labor, environmental laws, they are more likely to receive more media attention, and will be more likely to be prosecuted under Iowa Code § 717A.3A.  The more significant the exposé the more likely a prosecution.

103.    ALDF and PETA would like to investigate one or more facilities in Iowa, but their constitutionally-protected speech is chilled because of the reasonable fear of prosecution under Iowa Code § 717A.3A.  They cannot engage in their investigative activities without fear of prosecution in Iowa.  They have taken steps to find a suitable investigator but cannot take further actions to obtain agricultural employment because of Iowa Code § 717A.3A.

104.    Realistically, there is no investigation strategy that would meaningfully reveal the conditions inside agricultural production facilities without violating the statute.

105.    Plaintiff CCI has likewise been harmed by the Ag-Gag law. For example, prior to the passage of Ag-Gag law, CCI's members who were workers at the Angola Pork, LLC facility collected photos of workplace safety violations that became key components of CCI's 2012 OSHA complaint that resulted in citations and notifications to the facility.  But under the chill of

Ag-Gag, CCI's members are unable to obtain evidence undercover.  In addition, CCI, which utilizes video and images in its online and in-person activism, including online petitions and other forms of advocacy, is unable to obtain or utilize documentary evidence of illegal dumping into Iowa waterways or other violations of the Clean Water Act—and are limited to what documentation and images are viewable from public property.

106.    Plaintiff Bailing Out Benji is harmed because since the Ag-Gag law took effect, it is unable to gain access to puppy mills or dog auctions on agricultural facilities by either posing as purchasers, breeders, or brokers either by stating so overtly or by letting the assumption go uncorrected, in order to investigate, document, and advocate against unsafe or inhumane practices in its work to protect dogs and puppies.

**Organizational Injuries (ALDF, PETA, CFS, CCI, and Bailing Out Benji)**

107.    ALDF, PETA, CFS, CCI, and Bailing Out Benji are each forced to divert money or organizational resources away from their core educational and outreach programs to focus on the social harms of Ag-Gag laws.  The existence of Iowa Code § 717A.3A forces each organization to do public outreach and education about Ag-Gag laws generally, including Iowa's, and as such they have less money and time to devote to outreach on topics that are central to their missions, such as animal rescues, educating the public about the harms of industrial farming, and other forms of abuse, neglect, and cruelty to animals.

108.    ALDF, PETA, CFS, CCI, and Bailing Out Benji are each harmed because the law hinders their outreach and educational programs.

109.     ALDF and PETA use their own investigations and those of other groups to file lawsuits and promote legislation to further their missions of protecting animals.  They also use investigations to document the problems with the legal system's treatment of animals, such as the absence of federal laws that protect animals on farms or the under-enforcement of state anti-cruelty laws.  Iowa Code § 717A.3A all but forecloses investigative accounts of the agricultural industry, creating an information vacuum that directly undermines the Plaintiffs' litigation, legislation, outreach, and educational programs.

110.     CFS relies on and uses videos and recordings obtained during undercover industrial agriculture investigations for its legal, policy, advocacy, and educational and outreach work.  For example, CFS was involved in litigation in Texas to enforce the state's Health and Safety Code at egg production facilities with the goal of protecting the public from contracting foodborne illnesses.  The lawsuit stemmed in part from an undercover investigation that revealed unsanitary and inhumane conditions at a Texas facility.  CFS is a uniquely-situated recipient of the undercover recordings as it is a listener; without access to undercover recordings CFS has difficulty fulfilling its mission and providing information to the public about food production at agricultural operations.

111.     CFS has imminent plans to rely on undercover investigations to pursue legal and policy work as part of its campaign against concentrated animal feeding operations.  The reasonable fear of foodborne illnesses from certain agricultural facilities, the difficulty in obtaining information, and the inability to protect the public from environmental and public health threats of certain agricultural operations are themselves actual injuries.

112.     Plaintiff Bailing Out Benji is unable to utilize information, images, video obtained through undercover investigations of puppy mills in Iowa in their public education activities,

because the chilling effect of Ag-Gag has led the cessation of the gathering of those materials by Companion Animal Protection Society and others.  Bailing Out Benji is similarly unable to send volunteers to dog auctions to document practices they view as abusive and rescue dogs, because gaining access to the facilities and information would require posing as dog breeders or brokers, under the threat of prosecution posed by Ag-Gag.

113.    Plaintiff CCI also suffers a direct injury because it is hindered in its mission to educate the public about the harms of factory farming to workers and the environment.  Under Ag-Gag, it is unable to acquire and use in its advocacy efforts information or documentary evidence which was obtained in an undercover manner due to the chill of Ag-Gag.

114.    Iowa has a track record of having animal agricultural facilities that have caused major outbreaks of foodborne illnesses.  For example, in June of 2017 the owners of Quality Egg LLC—an egg company based in Iowa—pleaded guilty to federal food safety violations stemming from a nationwide salmonella outbreak that sickened more than 56,000 people in 2010.  Moreover, the U.S. Department of Agriculture sanitation reports from the packing facility at Wright County Egg farm in Iowa show inspectors noted the presence of bugs 30 times in the three months leading up to the salmonella.

## CLAIMS FOR RELIEF

### Declaratory Relief

115.    An actual and immediate controversy exists between Plaintiffs and Defendants. Plaintiffs contend that the challenged statute is unconstitutional. Defendants believe the statute is constitutional.

116.    Plaintiffs are therefore entitled to a declaration of rights with respect to this controversy.  Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law.

### Injunctive Relief

117.    Plaintiffs are entitled to an injunction. Defendants are acting and threatening to act under color of state law to deprive Plaintiffs of their constitutional rights.  Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a result of the existence, operation, enforcement, and threat of enforcement of the challenged statute.  Plaintiffs have no plain, adequate, or speedy remedy at law.  Plaintiffs are refraining from constitutionally protected activities solely for fear of prosecution under the statute.

### FIRST CAUSE OF ACTION

### (First Amendment: Content & Viewpoint Based Discrimination)

118.    Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

119.    The Ag-Gag law is a content-based restraint on constitutionally-protected speech on a matter of significant public concern; it is not narrowly tailored to a compelling government interest.

120.    The most important function of the First Amendment is to protect against laws that target certain messages or speech because of their "ideas, subject matter, or content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95–96 (1972).

121.   "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994).

122.   The Ag-Gag law is content-based on its face because it prohibits false pretenses and statements, but not true ones.

123.   The Ag-Gag law is content-based because it applies only to speech involving a single industry—agricultural production.

124.   The Ag-Gag law is content-based in both intent and effect, because it was passed with the legislative motive of eliminating undercover, employment-based investigations by animal rights groups into factory farms and other agricultural production facilities.

125.   The improper, speech-suppressing purpose behind the law is also revealed by examining the impact of the law, the historical background for the enactment, and the legislative history.

126.   The Supreme Court has recognized that misrepresentations, like those criminalized by the Ag-Gag law, are constitutionally protected, so long as they do not invade a legally cognizable interest. *United States v. Alvarez*, 132 S. Ct. 2537, 2545 (2012).

127.   The Ag-Gag law is not narrowly tailored because Iowa already has laws protecting the interests that purportedly motivated the legislature—laws protecting privacy, prohibiting trespass, and promoting biosecurity.  The only "harm" not accounted for by existing law is the embarrassment and political fall-out suffered by the agriculture industry when otherwise-legal undercover investigations paint the industry in a negative light.  Shielding an industry from criticism cannot be considered a legitimate, much less a "compelling," government interest.

128.     Even if the speech in question is not generally protected speech—for example, if the speech in question is merely cast as trespassing—the State still may not make a content-based distinction.  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 380 (1992).  That is to say, content-based distinctions are impermissible even for speech that is generally unprotected.

129.     The State has not limited the ability to engage in whistleblowing activity in other highly regulated or important industries, including medical providers, defense contractors, banks, or childcare providers.

130.     By singling out the agricultural industry for protection against political speech that may be harmful to its profits, the Ag-Gag law must be treated as a content- and viewpoint-based regulation.  In practice, the law ensures that only one side of the debate about industrial agricultural facilities is raised.

131.     The Ag-Gag statute, as a content- and viewpoint-based regulation that is neither justified by a compelling interest nor narrowly tailored, violates Plaintiffs' First Amendment rights.

132.     In August of 2015, the United States District Court for the District of Idaho ruled that a similar statute in Idaho infringed on the First Amendment, granting summary judgment for the plaintiffs.  *Animal Legal Def. Fund v. Otter,* 118 F. Supp. 3d 1195, 1199 (D. Idaho 2015).

133.     The Idaho statute, I.C. § 18-7042(1)(d), also contained a provision criminalizing misrepresentation by job applicants.  The Idaho District Court stated that this statute "seeks to limit and punish those who speak out on topics relating to the agricultural industry, striking at the heart of important First Amendment values.  The effect of the statute will be to suppress speech by undercover investigators and whistleblowers concerning topics of great public importance:

the safety of the public food supply, the safety of agricultural workers, the treatment and health

of farm animals, and the impact of business activities on the environment." *Id.* at 1201.

134.    In July 2017, the United States District Court for the District of Utah declared

Utah's Ag-Gag law, which prohibited gaining access to agricultural facilities through

misrepresentation, unconstitutional under the First Amendment. *Animal Legal Def. Fund v.*

*Herbert*, No. 2:13-CV-00679-RJS, 2017 WL 2912423 (D. Utah July 7, 2017).  The court held

that the kinds of lies at issue are constitutionally protected by the free speech clause, and that the

lying prohibition was a content-based restraint on speech that was not narrowly tailored to a

compelling government interest.  *Id.* at *6-10, 12-15.

135.    In its opinion, the Utah District Court also recognized that the proliferation of Ag-

Gag laws was a concerted effort by the animal agriculture industry to silence its critics that was

not limited to Utah.  In doing so, the court specifically mentioned the Iowa Ag-Gag law, noting

that Iowa passed its Ag-Gag law in the wake of an investigation into horrific animal suffering at

an egg farm.  The court observed that "[a]ccording to its sponsors the [Iowa] bill's purpose was

'to crack down on activists who deliberately cast agricultural operations in a negative light and

let cameras roll rather than reporting abuse immediately,' and to stop 'subversive acts' that could

'bring down the industry,' including acts committed by 'extremist vegans.'"  *Id.* at *3.

136.    In September 2017, the U.S. Court of Appeals for the Tenth Circuit ruled that

Wyoming's two "Data Trespass" Ag-Gag laws, Wyo. Stat. §§ 6-3-414 and 40-26-101—which

banned collection of data on public lands if the data collector has to traverse private lands—

infringed on speech protected by the First Amendment.  *W. Watersheds Project v. Michael*, 869

F.3d 1189 (11th Cir. 2017).  The court explained that "The [statutes] regulate protected speech

under the First Amendment and that they are not shielded from constitutional scrutiny merely because they touch upon access to private property."

137.    Plaintiffs are entitled to prospective relief from the Defendants to remedy the deprivations suffered as a result of the violations of their First Amendment rights.

138.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the Ag-Gag law is unconstitutional and unenforceable in any situation.

## SECOND CAUSE OF ACTION

### (First Amendment: Overbreadth)

139.    Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

140.    The law in question is both technically overbroad in the sense that it violates the rights of third parties not before the court, and it is overbroad in the sense of restricting more speech than the Constitution permits.

141.    Both listeners and speakers can challenge a law as constitutionally overbroad. When a law impairs protected speech, both the would-be speakers and those who would benefit from hearing or seeing the speech are harmed.  One need not be threatening to violate Iowa Code § 717.3A in order to have a cognizable injury.

142.    Even a speaker or listener whose rights are not violated by the statute in question can raise an overbreadth challenge.  Overbreadth doctrine permits the vindication of First Amendment rights for parties not before the Court.

143.    A statute that prohibits substantially more speech than the First Amendment permits is unconstitutionally overbroad even though the State could lawfully punish some of the conduct targeted by the statute. *See United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010).

144.     Specifically, the Ag-Gag law, although designed to target and chill animal protection activists, also criminalizes all sorts of protected speech.  Intentionally or not, the law chills and criminalizes a plethora of protected speech that is not even related to animal welfare, including that concerning worker safety, food safety, labor laws, and other types of agricultural industry misconduct.

145.     The Ag-Gag law criminalizes not just the protected speech of Plaintiffs, but of any person or group that would seek to investigate an "agricultural production facility" in a similar manner, including employees, journalists, or any person merely concerned about the conditions under which food is processed.

146.     Because the Ag-Gag law categorizes so much protected speech as "criminal," it is unconstitutionally overbroad.

147.     Plaintiffs are entitled to prospective relief enjoining Defendants from enforcing the Ag-Gag law.

148.     Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the Ag-Gag law is unconstitutionally overbroad and unenforceable in any situation.

### THIRD CAUSE OF ACTION

### (Fourteenth Amendment: Equal Protection & Due Process)

149.     Plaintiffs incorporate herein by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

150.     The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  Equal

Protection and Due Process generally prohibit laws that impinge on fundamental rights, including freedom of speech.

151.    When a statute is enacted based on improper motives, including animus towards a particular group of people, the Equal Protection and Due Process Clauses of the Fourteenth Amendment are violated.  *See, e.g.*, *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).

152.    The motivating purpose behind Iowa Code § 717A.3A was animus towards animal rights groups.

153.    A substantial motivating purpose for the enactment of Iowa Code § 717A.3A was to harm a politically unpopular group and shelter a single industry from political discourse and criticism.

154.    Iowa Code § 717A.3A targets animal protection groups.  The legislative history is replete with statements from legislators claiming that the purpose of the law is to prohibit a whistleblower from gaining access to factory farms.  The history and impact of the statute confirms and redoubles this illicit motive.

155.    Iowa already has laws that protect the interests that purportedly motivated the legislature—laws protecting privacy, prohibiting trespass, and promoting biosecurity.  The only "harm" not accounted for by existing law is the embarrassment and political fall-out suffered by the agriculture industry when otherwise-legal undercover investigations expose animal cruelty, unsanitary environments, and labor code violations inside factory farms.

156.    Iowa Code § 717A.3A also substantially burden's Plaintiffs' exercise of a fundamental right—namely, freedom of speech, in violation of the Due Process Clause of the Fourteenth Amendment.

157.    Plaintiffs are entitled to prospective relief from the Defendants to remedy the Equal Protection and Due Process violations.

158.    Plaintiffs are entitled to declaratory relief in the form of this Court ruling that the Ag-Gag law is unconstitutional.

## PRAYER FOR RELIEF

Plaintiffs respectfully request an order and judgment:

1.    Declaring that the challenged statute, Iowa Code § 717A.3A (2012), violates the U.S. Constitution on its face and as applied to Plaintiffs;

2.    Permanently enjoining Defendants, as well as their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from enforcing the challenged statute;

3.    Striking down the challenged statute in its entirety;

4.    To ensure that the public has accurate notice of the requirements of the law and the Iowa Code, and to ameliorate past harm and prevent further chilling of protected speech, requiring the Defendants to provide public notice, including in the official and online editions of the Iowa Code, that Iowa Code § 717A.3A is unconstitutional;

5.    Awarding the Plaintiffs reasonable attorneys' fees and costs; and

6.    Awarding any such relief as the Court may deem just and proper.


Dated this 10th Day of October, 2017

/s/ Rita Bettis
Rita Bettis, AT0011558
ACLU OF IOWA FOUNDATION, INC.
505 Fifth Ave., Ste. 901
Des Moines, IA 50309–2316
Telephone:  515.243.3988

Fax: 515.243.8506
Email:  Rita.Bettis@aclu-ia.org

Professor Justin Marceau, (*Pro Hac Vice
application pending*)
Of Counsel, Animal Legal Defense Fund
University of Denver
Sturm College of Law
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6449
jmarceau@law.du.edu

Professor Alan Chen (*Pro Hac Vice application
pending*)
University of Denver
Sturm College of Law
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-66283
achen@law.du.edu

Matthew Liebman, (*Pro Hac Vice
application pending*)
Animal Legal Defense Fund
525 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533, ext. 1028
mliebman@aldf.org

Matthew Strugar (*Pro Hac Vice application
pending*)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(323) 696-2299
matthew@matthewstrugar.com

Paige M. Tomaselli (*Pro Hac Vice
application pending*)
Center for Food Safety
303 Sacramento St., 2nd Floor
San Francisco, CA 94111
(415) 826-2770
ptomaselli@centerforfoodsafety.org

David S. Muraskin (*Pro Hac Vice application pending*)
Public Justice, P.C.
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 861-5245
dmuraskin@publicjustice.net

Leslie A. Brueckner (*Pro Hac Vice application pending*)
Public Justice, P.C.
555 12th St., Suite 1230
Oakland, CA 94607
(510) 622-8205
lbrueckner@publicjustice.net

Attorneys for Plaintiffs