## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANIMAL LEGAL DEFENSE FUND,                )
CENTER FOR FOOD SAFETY, SHY 38, INC.      )
and HOPE SANCTUARY,                        )
                                           )
          **Plaintiffs,**            )      **CIVIL ACTION**
                                           )
v.                                         )      **No. 18-2657-KHV**
                                           )
LAURA KELLY, in her official capacity as   )
Governor of Kansas, and                    )
DEREK SCHMIDT, in his official capacity as )
Attorney General of Kansas,                )
                                           )
          **Defendants.**            )
_____)

### MEMORANDUM AND ORDER

On December 4, 2018, Animal Legal Defense Fund ("ALDF"), Center for Food Safety ("CFS"), Shy 38, Inc. and Hope Sanctuary filed suit under 42 U.S.C. § 1983 against the Kansas Governor and Attorney General in their official capacities, seeking a declaratory judgment that the Kansas Farm Animal and Field Crop and Research Facilities Protection Act, K.S.A. §§ 47-1825 et seq., is unconstitutional, and requesting a permanent injunction that prohibits defendants from enforcing it.  Pretrial Order (Doc. #49) filed July 31, 2019 at 17.  On January 22, 2020, the Court held that as a matter of law, plaintiffs lacked standing to challenge K.S.A. § 47-1827(a) and K.S.A. § 47-1828, but had standing to challenge K.S.A. § 47-1827(b), (c) and (d), which violate the First Amendment.[1]  Memorandum And Order (Doc. #63).  On April 3, 2020, the Court permanently enjoined defendants from enforcing K.S.A. § 47-1827(b), (c) and (d).  Memorandum And Order (Doc. #73).  This matter is before the Court on Plaintiffs' Motion For Attorneys' Fees

---

[1]      The Court incorporates the factual and procedural background from its Memorandum And Order (Doc. #63) and Memorandum And Order (Doc. #73).

And Costs (Doc. #66) filed February 6, 2020.[2]  For reasons stated below, the Court partially sustains plaintiffs' motion.

## Legal Standards

In an action under 42 U.S.C. § 1983, the Court has discretion to grant reasonable attorneys' fees to the prevailing parties as part of costs.  42 U.S.C. § 1988(b).  For purposes of Section 1988, plaintiffs prevail when "actual relief on the merits of [their] claim[s] materially alters the legal relationship" between the parties by modifying defendants' behavior in a way that directly benefits plaintiffs.  Verlo v. City & Cty. of Denver, 789 F. App'x 709, 712 (10th Cir. 2019) (citations omitted).  "Relief on the merits" occurs when plaintiffs "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Id. (citations omitted).  A "material alteration" of the parties' legal relationship occurs when "there is judicial imprimatur on the change," such as an enforceable judgment on the merits.  Id. (citations omitted).

## Analysis

Pursuant to Section 1988, plaintiffs request $236,994.25 in attorneys' fees,[3] $3,500 in paralegal and law clerk fees and $977.32 in expenses, for a total of $241,471.57.[4]  Memorandum

---

[2]    Defendants separately challenged plaintiffs' Bill Of Costs (Doc. #77) filed May 6, 2020.  See Defendants' Objection To Plaintiffs' Bill Of Costs (Doc. #84) filed May 18, 2020.  Pursuant to D. Kan. R. 54.1(b)(3), "the clerk will consider the objections and any reply, and will tax costs subject to review by the [C]ourt."  Accordingly, the clerk will resolve plaintiffs' Bill Of Costs (Doc. #77).

[3]    Plaintiffs seek $219,244.25 for work on the merits, $11,705 for the initial fee motion and $6,045 for the reply, for a total of $236,994.25 in attorneys' fees.  See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 25; Plaintiffs' Reply Memorandum In Support Of Motion For An Award Of Attorneys' Fees And Costs (Doc. #87) filed June 10, 2020 at 20.

[4]    As the Court explains below, plaintiffs have double-counted their time litigating fees, which inflates their total request by $11,705.  See Memorandum In Support Of Plaintiffs'

(continued…)

<u>In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs</u> (Doc. #79) at 25; <u>Plaintiffs' Reply Memorandum In Support Of Motion For An Award Of Attorneys' Fees And Costs</u> (Doc. #87) at 20.   Defendants agree that plaintiffs are entitled to attorneys' fees and expenses, but they argue that a reasonable award is approximately $117,354 in attorney and staff fees and $177 in expenses.   <u>Defendants' Opposition To Plaintiffs' Motion For An Award Of Attorneys' Fees And Expenses</u> (Doc. #86) filed May 27, 2020 at 2.

As noted, in an action under Section 1983, the Court has discretion to grant reasonable attorneys' fees to the prevailing parties. 42 U.S.C. § 1988(b).  To determine whether a fee request is reasonable, the Court first calculates the lodestar amount by multiplying by a reasonable hourly rate the hours that counsel reasonably spent litigating.  <u>Kiley v. Lord</u>, No. 11-2516-KHV, 2013 WL 105025, at *2 (D. Kan. Jan. 8, 2013).  If parties seek compensation for services by non-lawyers, such as legal assistants or student law clerks, the Court must scrutinize the reported hours and suggested rates in the same manner.  <u>Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.</u>, 157 F.3d 1243, 1249 (10th Cir. 1998).  The parties who seek fees bear the burden of establishing entitlement to an award and documenting the appropriate hours and hourly rates.  <u>Kiley</u>, 2013 WL 105025, at *2.  If they do so, the Court presumes that the lodestar figure is a reasonable fee.  <u>Id.</u>

Here, plaintiffs base their fee request of $241,471.57 on (1) the total number of hours that counsel, paralegals and student law clerks expended, (2) their respective hourly rates, (3) a ten per cent enhancement to the lodestar amount for certain attorneys and (4) attorney expenses.  Defendants partially challenge each basis.

---

[4](…continued)
<u>Motion For An Award Of Attorneys' Fees And Costs</u> (Doc. #79) at 25 (including fee motion time in merits time).

## I.      Hours

Plaintiffs seek compensation for 479.1 hours that counsel spent litigating the merits of their case,[5] and 40.1 hours that counsel spent litigating attorneys' fees.[6]  See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 15. Additionally, plaintiffs seek compensation for 28 hours for work by a paralegal and student law clerks.  See id. at 22.

As noted above, to calculate the lodestar, the Court first determines the number of hours that counsel and non-lawyers reasonably expended.  Kiley, 2013 WL 105025, at *2.  Their work is reasonable if it is "useful and of a type ordinarily necessary to secure the final result obtained." Johnson v. City of Tulsa, Okla., 489 F.3d 1089, 1107 (10th Cir. 2007) (citation omitted).

Here, defendants assert that plaintiffs' claimed hours are unreasonable because their attorneys (1) cannot recover for their work litigating attorneys' fees, (2) did not exercise proper billing judgment, (3) provided vague and block billing reports, (4) duplicated meetings and conferences, (5) cannot recover for travel and (6) cannot recover for their work on discovery. Defendants argue that combined, plaintiffs' counsel and non-lawyers should have reasonably

---

[5]       Plaintiffs' motion for attorneys' fees contradicts itself regarding the time spent on the merits, which as noted above, results in a total request that is inflated by $11,705.  Initially, plaintiffs purportedly seek compensation for 479.1 hours of work on the merits.  See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 16. In plaintiffs' final calculation, however, they twice include the time spent on the initial fee motion: once by itself as a separate figure, and again in the time spent on the merits.  See id. at 25.  In other words, plaintiffs have doubled-counted their time.  The Court accounts for this error below.

[6]       Plaintiffs assert that counsel spent 22.5 hours working on the initial fee motion and 17.6 hours working on the reply, for a total of 40.1 hours.  See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 23; Plaintiffs' Reply Memorandum In Support Of Motion For An Award Of Attorneys' Fees And Costs (Doc. #87) at 20.

expended 360.5 hours litigating this matter, 27.6 hours of which should be billed at a paralegal rate.

A.      **Plaintiffs' Accounting Error**

Before the Court gets to defendants' challenges, it must address plaintiffs' blatant accounting error which, as the Court explained above, has inflated their total request by nearly $12,000.  In their final calculation of attorneys' fees (not including paralegals and law students), plaintiffs proffer separate figures for their work on the initial fee motion (22.5 hours, totaling $11,705) and their work on the merits (501.6 hours, totaling $219,244.25).[7]  See <u>Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs</u> (Doc. #79) at 25.  The latter figure (purportedly for work on the merits) includes, however, the time that plaintiffs' counsel spent on the initial motion for attorneys' fees.  As a result, plaintiffs have double counted those 22.5 hours (and therefore $11,705).

Accordingly, the Court strikes the 22.5 hours from plaintiffs' request for work on the merits.  The remaining hours for counsel's work on the merits (totaling 479.1 hours) are as follows:

- Alan Chen: 148
- Matthew Struger: 51.1
- Justin Marceau: 26
- David Muraskin: 14.8
- Kelsey Eberly: 132.7
- Amanda Howell: 51.7
- Michael Moss: 50
- Alene Anello: 4.8

The hours spent litigating attorneys' fees (totaling 40.1 hours for the initial motion and reply) remain the same:

- Chen: 18.8
- Struger: 4.9

_____

[7]      $219,244.25 includes plaintiffs' requested ten per cent enhancement.  Plaintiffs do not seek any enhancement for the time spent litigating fees.

-        Eberly: 16.4

Paralegal and law student hours (totaling 28 hours) also remain the same:

-        Jennifer Schlemmer (paralegal): 3.7
-        Jennifer Regier (law student): 4
-        Richard Barahona (law student): 20.3

**B.        Time Litigating Attorneys' Fees**

Defendants assert that plaintiffs' proposed hours are unreasonable because they cannot recover for the time that counsel spent litigating fees, which as detailed above, totals 40.1 hours. Specifically, defendants argue that if the Court substantially accepts their position on attorneys' fees, it should decline to award fees for time that plaintiffs' counsel spent litigating fees.

The Court generally allows recovery for an attorney's work in seeking fees. Cummins v. Campbell, 44 F.3d 847, 855 (10th Cir. 1994). Such an award, however, "is not without limits." Id. The Tenth Circuit has explained that courts may grant compensation for time spent litigating fees "at least if the fee petitioner[s] [are] successful and [their] claim as to a reasonable fee is vindicated." Id. (citations omitted). The Tenth Circuit has also recognized a difference between time necessary to prepare and submit an application for fees, and hours spent disputing a fee award; the latter are especially suspect, and may be disallowed in their entirety. Alexander v. Astrue, 222 F. App'x 767, 769 (10th Cir. 2007) (citations omitted); see Sinajini v. Bd. of Educ. of San Juan Cty. Sch. Dist., 53 F. App'x 31, 39 (10th Cir. 2002) (hours not spent representing client are at best borderline what Congress intended to be compensable) (citations omitted).

Here, plaintiffs' attorneys are entitled to compensation for their work on the fee motions, but the Court reduces the requested award. In total, three different lawyers seek compensation for 40.1 hours of work on these briefs—22.5 hours on the initial motion and 17.6 hours on the reply. See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs

(Doc. #79) at 23; Plaintiffs' Reply Memorandum In Support Of Motion For An Award Of Attorneys' Fees And Costs (Doc. #87) at 20.  As the Court detailed above, however, the attorneys' final accounting was a mess, and they ultimately requested an extra $11,705 for hours which they did not actually work.  Having missed this error during the 22.5 hours working on the initial brief, counsel then spent another 17.6 hours on the reply without correcting this significant error, which forced the Court to identify and recalculate the proper fee.  Moreover, even setting aside its errors, counsel spent nearly 45 per cent of the proposed hours on the reply, which is almost entirely detached from their representation of plaintiffs.  See Sinajini, 53 F. App'x at 39 (hours spent disputing fee objections particularly suspect); Alexander, 222 F. App'x at 769 (court can entirely disallow hours spent disputing fees).  Finally, as detailed below, the Court only awards plaintiffs approximately 73 per cent of their total fee request, which further justifies a reduction for the fee motions.[8]  See Cummins, 44 F.3d at 855 (plaintiffs entitled to award for fee motion if claim vindicated); Catholic Benefits Ass'n LCA v. Azar, No. 14-240-R, 2018 WL 3876615, at *9 (W.D. Okla. Aug. 15, 2018) (lack of success on fee motion justifies reducing compensation for fee litigation).

Accordingly, the Court reduces by 30 per cent the overall time requested for the fee litigation, which leaves the following compensable hours:

- Chen: 13.1
- Struger: 3.4
- Eberly: 11.5

For clarity's sake, the total compensable hours (including merits and fee motions) for counsel, paralegals and student law clerks are as follows:

- Chen: 161.1

---

[8]   The Court awards plaintiffs a total of $176,298.42, compared to the $241,471.57 which they requested.

-     Struger: 54.5
-     Marceau: 26
-     Muraskin: 14.8
-     Eberly: 144.2
-     Howell: 51.7
-     Moss: 50
-     Anello: 4.8
-     Schlemmer (paralegal): 3.7
-     Regier (law student): 4
-     Barahona (law student): 20.3

### C.    Billing Judgment, Block Billing And Vagueness

Defendants assert that plaintiffs' proposed hours are unreasonable due to billing misjudgment, block billing and vagueness.[9] In particular, defendants argue that plaintiffs' records show that they overstaffed their prosecution of this case.

To show that counsel expended a reasonable number of hours, plaintiffs must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." Case, 157 F.3d at 1250. The Court can reduce plaintiffs' suggested hours if the attorneys' time records are "sloppy and imprecise" and fail to adequately document how they utilized large blocks of time. Id.

Once the Court has sufficient time records, it must ensure that the winning attorneys exercised billing judgment, which entails "winnowing the hours actually expended down to the hours reasonably expended." Id. Time that attorneys would not properly bill to their clients cannot reasonably be billed to the adverse party, which makes certain time presumptively unreasonable. Id. Accordingly, plaintiffs must "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Yost v. Stout, No. 06-4122-JAR, 2009 WL

---

[9]    Beyond highlighting individual time entries in plaintiffs' records, defendants do not actually discuss block billing or vagueness.

10695743, at *2 (D. Kan. Dec. 4, 2009) (citations omitted).  Ordinarily, plaintiffs must also omit time that counsel billed for basic background research and clerical tasks, and they should not bill an attorney rate for tasks which a paralegal or administrative support staff could have performed. See Erickson v. City of Topeka, Kansas, 239 F. Supp. 2d 1202, 1208 (D. Kan. 2002); see also Pena on Behalf of Pena v. Sch., No. 04-1352 LFG/RLP, 2006 WL 8444271, at *7 (D.N.M. Apr. 3, 2006) (attorneys should use billing judgment to reduce rates for paralegal work).  Finally, the Court permits fees—at a paralegal rate—when paralegals perform "tasks which would otherwise have been performed by a lawyer," but does not permit fees for "tasks which would otherwise have been performed by a secretary or other clerical worker."  Erickson, 239 F. Supp. 2d at 1208.

After the Court determines whether counsel exercised sound billing judgment, it must evaluate the hours that they expended on each task and determine if they are reasonable.  Case, 157 F.3d at 1250.  To do so, the Court considers the complexity of the case, the number of reasonable strategies that counsel pursued, opposing counsel's maneuvering and potentially duplicative services.  Id.  This does not mean that the Court must "identify and justify each disallowed hour," or announce what hours are permitted for each legal task.  Id. (citations omitted).

Here, for several reasons, defendants assert that plaintiffs' counsel exercised poor billing judgment, which was largely a product of overstaffing their team with ten billers.[10]  Defendants argue that this case focused on narrow legal issues which did not require discovery, depositions, extensive motion practice, hearings or trial.  Instead, based largely on relatively straightforward facts which the parties knew prior to the complaint, they presented limited legal questions to the Court on summary judgment, in contrast with similar litigation in other jurisdictions that involved

---

[10]     The Court is unclear on the basis for this number.  Plaintiffs seek fees for eight attorneys, one paralegal and two law students.  See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 25.

motions to dismiss, multiple hearings and oral arguments.   Moreover, given the substantive overlap, defendants argue that this parallel litigation highlights counsel's inefficiency in this case, such as the time they spent filing the complaint.   According to defendants, plaintiffs' use of so many billers "necessarily resulted in duplication and inefficiency."   Defendants' Opposition To Plaintiffs' Motion For An Award Of Attorneys' Fees And Expenses (Doc. #86) at 6; see Declaration Of Anthony F. Rupp (Doc. #86-2) at 48 (billing partner "typically would not want to bill a client in full for bringing 10 lawyers up to speed about a matter, multiple sets of eyes reviewing a matter, and for generalized background and training of young lawyers and law school students").   In support, defendants note that their single attorney handled the defense with limited clerical staff and one intern.   Defendants also challenge the time that plaintiffs claim for pro hac vice applications, basic background research and paralegal and clerical tasks.

Defendants' objections have merit.   This is especially true with respect to the amount of time that plaintiffs' counsel expended on the complaint.    In total, five different attorneys (Chen, Struger, Marceau, Muraskin and Howell) spent approximately 75 hours preparing and filing the initial complaint.   Approximately 33 of these hours came from Howell, who is not among the three lead attorneys on the case.   See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 9 (only Chen, Struger and Eberly were "primarily responsible as lead counsel").   Especially considering the substantive overlap with litigation by these attorneys in multiple other jurisdictions, this is an excessive amount of time.   At least with respect to this issue, it belies plaintiffs' assertion that "the attorneys were assigned to allotted roles to maximize efficiency," and that each attorney "played a discrete, non-duplicative role in the litigation."   Plaintiffs' Reply Memorandum In Support Of Motion For An Award Of Attorneys' Fees And Costs (Doc. #87) at 3; see Robinson v. City of Edmond, 160 F.3d 1275, 1285 n.10 (10th

Cir. 1998) (more lawyers representing party, greater likelihood for duplicated services).

In addition to duplicative services, the records also show that plaintiffs' counsel spent a considerable amount of time performing paralegal work, which they partially concede.  See Plaintiffs' Reply Memorandum In Support Of Motion For An Award Of Attorneys' Fees And Costs (Doc. #87) at 10 ("It is true that, lacking regular access to available paralegals, Plaintiffs' counsel performed some work that could have been performed by paralegals, such as proofing and cite-checking briefs, and organizing exhibits.").

Finally, plaintiffs' attorneys billed for some time which they spent preparing pro hac vice applications.  Defendants offer no authority that such time is not compensable, and courts that have addressed this issue have held to the contrary.  See Osterweil v. Bartlett, 92 F. Supp. 3d 14, 37 (N.D.N.Y. 2015); Barrett v. W. Chester Univ. of Penn. of State Sys. of Higher Educ., No. 03-4978, 2006 WL 859714, at *15 (E.D. Pa. Mar. 31, 2006) (pro hac vice admission costs recoverable under Section 1988 when "of the kind that would normally be charged to a fee-paying client").  The Court agrees with the Northern District of New York, however, that a paralegal rate should apply for this time.  See Osterweil, 92 F. Supp. 3d at 37; see also Jimico Enterprises, Inc. v. Lehigh Gas Corp., No. 07-0578 GTS/DRH, 2011 WL 4594141, at *11 (N.D.N.Y. Sept. 30, 2011), aff'd, 708 F.3d 106 (2d Cir. 2013).

After thoroughly reviewing the challenged portions of the time records, the Court reduces the requested hours to the following:

- Chen: 155.1 hours at attorney rate, 5 hours at paralegal rate
- Struger: 50.1 hours at attorney rate, 1 hour at paralegal rate
- Marceau: 26 hours at attorney rate
- Muraskin: 7.4 hours at attorney rate
- Eberly: 129.8 hours at attorney rate, 10.5 hours at paralegal rate
- Howell: 40.1 hours at attorney rate
- Moss: 50 hours at attorney rate
- Anello: 4.8 hours at paralegal rate

- Schlemmer (paralegal): 2.1 hours at paralegal rate
- Regier (law student): 4 hours at law student rate
- Barahona (law student): 20.3 hours at law student rate

### D.    Duplicative Conferences

Defendants assert that plaintiffs' proposed hours are unreasonable due to duplicative conferences among attorneys.

The Court can reduce hours for duplicated conferences and inter-office and intra-office meetings.  United States ex rel. Awad v. Coffey Health Sys., No. 16-2034-CM-JPO, 2019 WL 6910280, at *3 (D. Kan. Dec. 19, 2019).  This rule does not categorically bar billing for such activities, but instead bars doing so for "excessive time."  Anchondo v. Anderson, Crenshaw & Assocs., L.L.C., 616 F.3d 1098, 1105 (10th Cir. 2010) (citations omitted).  Moreover, given their obligation to provide clear time records that show "how billed hours were allotted to specific tasks," plaintiffs' records must do more than merely note that various attorneys met.  See Case, 157 F.3d at 1253.

Defendants' objections have limited merit.  Beyond highlighting objectionable time entries, defendants do not explain why any of the conferences were duplicative, or involved too many participants or repeated topics.  After carefully reviewing the challenged portions of the records, the Court reduces the compensable hours to the following:

- Chen: 155.1 hours at attorney rate, 5 hours at paralegal rate
- Struger: 50.1 hours at attorney rate, 1 hour at paralegal rate
- Marceau: 26 hours at attorney rate
- Muraskin: 7.1 hours at attorney rate
- Eberly: 129.2 hours at attorney rate, 10.5 hours at paralegal rate
- Howell: 40.1 hours at attorney rate
- Moss: 50 hours at attorney rate
- Anello: 4.8 hours at paralegal rate
- Schlemmer (paralegal): 2.1 hours at paralegal rate
- Regier (law student): 4 hours at law student rate
- Barahona (law student): 20.3 hours at law student rate

E.      Non-Reimbursable Travel

Defendants assert that plaintiffs counsel cannot recover for travel time.  According to defendants, such time is not compensable because Kansas City offers plenty of lawyers who could have adequately represented plaintiffs, thus making distant counsel unnecessary.

The Tenth Circuit has explained that "because there is no need to employ counsel from outside the area in most cases, we do not think travel expenses for such counsel between their offices and the city in which the litigation is conducted should be reimbursed," and that the Court should only depart from this rule in "unusual cases."  Ramos v. Lamm, 713 F.2d 546, 559 (10th Cir. 1983), disapproved of on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987); see Quail Creek Petroleum Mgmt. Corp. v. XL Specialty Ins. Co., 129 F. App'x 466, 472 (10th Cir. 2005).  The Tenth Circuit later clarified that prevailing parties can recover attorney travel fees that are "incidental and necessary expenses incurred in furnishing effective and competent representation."  Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000). Courts within this Circuit have interpreted this to mean that such fees are recoverable where the case demands particular skill or expertise.  See Catholic Benefits Ass'n LCA v. Azar, No. 14-240-R, 2018 WL 3876615, at *15 (W.D. Okla. Aug. 15, 2018) (fees warranted because issues require special skills that could not be handled by reasonably competent local trial attorneys); D.H. v. Ponca City Indep. Sch. Dist. No. 71, No. 06-523 CVE-SAJ, 2007 WL 2670105, at *3 (N.D. Okla. Sept. 7, 2007) (plaintiffs' counsel have high level of expertise in very focused area of Title IX litigation and plaintiffs could not have locally found combination of lawyers with that expertise).

Here, defendants argue that plaintiffs cannot recover for their attorney travel time because Kansas City lawyers could have adequately represented them.  In support, defendants assert that plaintiffs did not attempt to retain local counsel, and they point to their fee expert, Anthony Rupp,

who states that "Kansas attorneys are not shy about bringing civil rights lawsuits on politically charged issues." Declaration Of Anthony F. Rupp (Doc. #86-2) at 48.

This argument misses the point. The test is not whether local attorneys are *willing* to take the case, but whether they have the expertise necessary to effectively represent plaintiffs on the particular issues which the case presents. See Brown, 227 F.3d at 1297. Here, plaintiffs' attorneys have provided several affidavits to show that they comprise a small group that has collectively pursued every legal challenge to so called "Ag-Gag laws" across the country. These lawyers therefore have a unique background and expertise on these specific laws, which involve "extremely complex and difficult constitutional issues of first impression" that intersect free speech and property law. See Declaration Of Tai J. Vokins In Support of Plaintiffs' Motion For An Award of Attorneys' Fees And Costs (Doc. #79-9) at ¶ 6. Defendants offer nothing to rebut this evidence, and do not identify attorneys in the Kansas City area with comparable experience.[11] See D.H., 2007 WL 2670105, at *3 (combination of lawyers have expertise in narrow legal area which plaintiffs could not have found locally).

**F.   Discovery**

Because Eberly is ALDF's employee, defendants assert that she cannot recover for the time she spent assisting ALDF with discovery. They reason that because ALDF is mostly an organization of lawyers, Eberly is effectively wearing the "client hat" in this litigation. In other words, she is essentially a party to this case. Thus, if the Court were to shift to defendants the cost of Eberly's discovery work, it would effectively be shifting internal ALDF costs, which are not recoverable as attorneys' fees under Section 1988. Defendants admit that they have no authority

---

[11]   The Court also notes that the two lawyers who seek compensation for travel (Chen and Eberly) only billed for half of this time.

for this proposition, but by way of analogy, offer a case in which the Supreme Court held that attorneys who represent themselves cannot recover fees under Section 1988. See Kay v. Ehrler, 499 U.S. 432, 436 (1991). Defendants argue that this logic applies "with greater force to a *pro se*-like party's time spent responding to discovery which is not the performance of legal services." Defendants' Opposition To Plaintiffs' Motion For An Award Of Attorneys' Fees And Expenses (Doc. #86) at 14 (emphasis in original).

Defendants' argument is unpersuasive. First and foremost, the Supreme Court's limiting language in Kay actually undermines defendants' reasoning. Kay, 499 U.S. at n.7 (organization not comparable to pro se litigant because organization always represented by counsel, whether in-house or pro bono); see Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 325 (D.C. Cir. 2006) (in Kay, Supreme Court made "crystal clear" that exception for individual plaintiffs who represent themselves does not apply to organizations).

Moreover, Eberly is not a party to this case and she is not representing herself. She is an attorney who represents ALDF, which the challenged time entries themselves show. Defendants' Suggested Deletions To Time Shown On Reprint Of Plaintiff Counsels' Time Entries (Doc. #86-2) at 23 ("Conferring with client re discovery responses"), 24 ("Sending ROG responses to clients and counsel for review"), id. ("Corresponding with ALDF staff re discovery requests"), id. ("Talking with client re ROG responses"). That is, she assisted ALDF with its discovery obligations, as litigators commonly do. Defendants offer no authority for the proposition that such work is not compensable under Section 1988. Indeed, if defendants' proposed rule is correct— that Eberly cannot recover for litigating this case because she is also an ALDF employee—it would presumably apply with equal force to Howell and Anello, who are also ALDF lawyers. Not only that, it should apply to all of their work—not just the 1.7 hours which defendants challenge with

-15-

respect to discovery.  In other words, if Eberly, Howell and Anello are effectively parties to this

case—or as defendants put it, "pro se-like"—plaintiffs cannot recover for any of their time on this

case, which totals approximately 205 hours.  The Court declines to adopt defendants' rule which,

for purposes of Section 1988, would have far-reaching consequences.  See New Century Found.

v. Robertson, No. 18-00839, 2019 WL 6492901, at *3 (M.D. Tenn. Dec. 3, 2019) (Kay's reasoning

on pre se litigants under Section 1988 does not apply to trustee of organization); Prison Legal

News v. Stolle, 129 F. Supp. 3d 390, 397 (E.D. Va. 2015), aff'd, 681 F. App'x 182 (4th Cir. 2017)

(counsel at nonprofit legal services organization, or in-house counsel, entitled to attorney's fee if

performing otherwise compensable litigation-related work).

To summarize, plaintiffs can recover for the following:

- Chen: 155.1 hours at attorney rate, 5 hours at paralegal rate
- Struger: 50.1 hours at attorney rate, 1 hour at paralegal rate
- Marceau: 26 hours at attorney rate
- Muraskin: 7.1 hours at attorney rate
- Eberly: 129.2 hours at attorney rate, 10.5 hours at paralegal rate
- Howell: 40.1 hours at attorney rate
- Moss: 50 hours at attorney rate
- Anello: 4.8 hours at paralegal rate
- Schlemmer (paralegal): 2.1 hours at paralegal rate
- Regier (law student): 4 hours at law student rate
- Barahona (law student): 20.3 hours at law student rate

## II.    Rates

Defendants challenge some of plaintiffs' proposed billing rates.  To determine whether

billing rates are reasonable, the Court establishes a rate for each lawyer based upon the norm for

comparable private firm lawyers in the area, which the Court calculates at the time of the fee award.

Fish v. Kobach, No. 16-2105-JAR, 2018 WL 3647132, at *6 (D. Kan. Aug. 1, 2018) (citations

omitted).  This rule applies whether private or nonprofit counsel represent plaintiffs.  Id.  A

reasonable hourly rate comports with those "prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation."   Id. (citations omitted).

Unless the subject of the litigation is "so unusual or requires such special skills" which only out-of-state lawyers possess, the Court applies the local fee rates even when the lawyers who are seeking fees are from another area.  Id. (citations omitted).   The Court also applies this framework to non-lawyer assistants, such as paralegals and law students.  See Case, 157 F.3d at 1255 (court scrutinizes suggested rates for legal assistants in same manner as lawyers).

Here, plaintiffs seek the following hourly billing rates:

- Chen: $600
- Struger: $400
- Marceau: $400
- Muraskin: $325
- Howell: $325
- Eberly: $275
- Moss: $250
- Anello: $250
- Schlemmer (paralegal): $125
- Regier (law student): $125
- Barahona (law student): $125

See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 10, 22.  Defendants do not challenge the rates for Struger, Marceau, Muraskin, Moss or Schlemmer,[12] but propose the following rates for the remaining individuals:

- Chen: $450
- Howell: $225
- Eberly: $225
- Anello: $85 (paralegal rate)
- Regier (law student): $100
- Barahona (law student): $100

See  Defendants'  Opposition  To  Plaintiffs'  Motion  For  An  Award  Of  Attorneys'  Fees  And

---

[12]      Although defendants assert that a $125 paralegal rate should apply to Schlemmer, they argue that she cannot recover for any time.  See Defendants' Opposition To Plaintiffs' Motion For An Award Of Attorneys' Fees And Expenses (Doc. #86) at 22.

Expenses (Doc. #86) at 17.  In support, defendants primarily rely on average rates for Kansas City, Kansas and Rupp's affidavit, which states that because he and Chen have similar years of experience, Chen's rate should be "closer to $425 than to $600."  Declaration Of Anthony F. Rupp (Doc. #86-2) at 47.  As to Eberly, Rupp reasoned that because she would likely be an associate at Moss's firm, she should have a lower hourly rate than Moss.  Id.  Finally, Rupp suggests an hourly rate of $125 for paralegal work, and $100 for the student law clerks.  Id.

Defendants' objections have some merit.  As to Chen, defendants rightfully point out that he and Rupp have similar years of experience.  As the Court explained above, however, this case involved complex constitutional issues that intersect free speech and property law, and Chen, who is a leading scholar on these narrow First Amendment issues, is part of a small group that has collectively pursued every legal challenge to Ag-Gag laws across the country.  See Declaration Of Alan K. Chen In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79-1) at 3.  Defendants do not dispute this particularly relevant expertise, which justifies a higher billing rate.  See Fish, 2018 WL 3647132, at *7 (attorneys entitled to $450 per hour "given their experience and skill working on complex voting rights litigation throughout the country").

As to Eberly, plaintiffs have proffered sufficient evidence to justify their requested rate of $275 per hour.   Like Chen, Eberly has been part of the team that has challenged Ag-Gag laws across the country, including in Kansas, Iowa, Arkansas, North Carolina and Idaho, and she has written and presented on the subject at laws schools and continuing legal education events nationwide.  Declaration Of Kelsey R. Eberly In Support Of Plaintiffs' Motion For Attorneys' Fees And Costs (Doc. #79-5) at 2.  Defendants do not challenge this experience, and their only countervailing evidence is Rupp's assertion that Eberly's rate should be lower than Moss's.  This reasoning is unpersuasive, and does not justify reducing the requested rate.

The parties provide little evidence to support their proposed hourly rates for Howell. Without further discussion, plaintiffs offer blanket assertions from Howell and their fee expert that a reasonable rate would be $325. Similarly, defendants suggest a rate of $225, but they do not actually discuss Howell. Moreover, Rupp does not mention Howell or a suggested rate.

Finally, as to the law students and the time for paralegal work, the Court has carefully reviewed the evidence and finds that plaintiffs' requested hourly rates of $125 are reasonable. See Declaration Of Anthony F. Rupp (Doc. #86-2) at 47 (agreeing with plaintiffs' proposed paralegal rate of $125 per hour); see also Fish, 2018 WL 3647132, at *8 (granting $110 per hour for paralegals).

In sum, after thoroughly reviewing the evidence, the Court finds that plaintiffs' attorneys and staff are entitled to the following reasonable hourly rates:

- Chen: $500
- Struger: $400
- Marceau: $400
- Muraskin: $325
- Howell: $275
- Eberly: $275
- Moss: $250
- Anello (paralegal rate): $125
- Schlemmer (paralegal): $125
- Regier (law student): $125
- Barahona (law student): $125

Applying these rates to the hours which the Court detailed above results in a total lodestar of $175,317.50, which breaks down as follows:

- Chen: $78,175
- Struger: $20,165
- Marceau: $10,400
- Muraskin: $2,307.50
- Howell: $11,027.50
- Eberly: $36,842.50
- Moss: $12,500
- Anello: $600

- Schlemmer (paralegal): $262.50
- Regier (law student): $500
- Barahona (law student): $2,537.50

## III. Enhancement Of Lodestar

For the merits portion of this litigation, plaintiffs request a ten per cent enhancement of the fees for Chen, Struger, Marceau, Muraskin and Eberly.

The Supreme Court has explained that because the lodestar figure includes "most, if not all, of the relevant factors constituting a reasonable attorney's fee," the lodestar is a presumptively reasonable fee. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010) (citations omitted). Accordingly, the Court can only enhance the lodestar figure in rare circumstance where it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Id.; see Anchondo v. Anderson, Crenshaw & Assocs., L.L.C., 616 F.3d 1098, 1102 (10th Cir. 2010). In Perdue, the Supreme Court specifically held that only in "rare and exceptional" circumstances does the lodestar figure not adequately account for "superior attorney performance." Perdue, 559 U.S. at 554. Accordingly, to receive a fee enhancement, the moving parties must present specific evidence that the lodestar fee would not have been "adequate to attract competent counsel." Id. (citations omitted). The Supreme Court listed several examples that could satisfy this standard, such as where the lodestar does not measure the attorney's true market value, where the attorney's performance includes an extraordinary outlay of expenses and litigation is exceptionally protracted or where an attorney's performance involves exceptional delay in the payment of fees. Id. 554–56.

Here, plaintiffs assert that Chen, Struger, Marceau, Muraskin and Eberly are entitled to a ten per cent fee enhancement for three reasons. They first argue that they achieved "exceptional results" in this case because they "vindicated not just their own rights but the First Amendment

rights of all whistleblowers and media organizations seeking to report on food production in one of the nation's most heavily agricultural states." Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 17. In support, plaintiffs tout the media attention which the case captured. Id. Second, plaintiffs claim that because this was a politically unpopular case, they would have had difficulty finding local attorneys to represent them. Finally, plaintiffs stress the expertise that these particular lawyers have in First Amendment challenges to Ag-Gag laws.

Plaintiffs' arguments are unpersuasive. Taking the last argument first, the Supreme Court has made clear that under Section 1988, courts cannot adjust the lodestar figure based on factors which the figure already subsumes. See Perdue, 559 U.S. at 553 (court should not adjust lodestar based on novelty and complexity of case, or quality of attorney's performance). Here, as discussed with respect to billing rates, and as plaintiffs apparently concede, the Court has already accounted for the expertise of plaintiffs' attorneys. See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 17 ("factors like complexity and attorney performance are best considered in setting an attorney's reasonable hourly rate and not in justifying an enhancement"). The same is true with respect to plaintiffs' rationale that they would be hypothetically unable to find local counsel because this case involves politically unpopular issues. On its face, this argument is conjectural. See Declaration Of Anthony F. Rupp (Doc. #86-2) at 46 ("Kansas attorneys are not shy about bringing civil rights lawsuits on politically charged issues from abortion to school finance to state and local executive orders and municipal ordinances"). Furthermore, the Court has granted plaintiffs travel fees for out-of-state attorneys, ensuring that the lodestar is "adequate to attract competent counsel." See Perdue, 559 U.S. at 554 (citations omitted). Finally, plaintiffs offer no authority to support a fee enhancement based on their alleged

"exceptional results" in this case.  The degree of media attention is certainly not the test for increasing attorneys' fees, and the fact that other entities could theoretically benefit from the Court's decision does not justify deviation from the lodestar figure.  The Court rejects plaintiffs' suggested enhancement.

## IV.    Expenses

Plaintiffs seek $980.92 in attorney expenses.[13]  See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 23.  The Tenth Circuit has explained that while courts can only award as costs those items in 28 U.S.C. § 1920, "other out-of-pocket expenses incurred during litigation may be awarded as attorneys fees under [S]ection 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable."  Jane L. v. Bangerter, 61 F.3d 1505, 1517 (10th Cir. 1995).

Here, defendants challenge two items on plaintiffs' list of expenses: travel costs for Chen to participate in the initial scheduling conference ($514.81) and for Eberly to meet with clients ($289.11).  In support, defendants reiterate their argument that courts do not reimburse travel by non-local counsel.  The Court rejected this above, and does so again here.  See Wirtz v. Kansas Farm Bureau Servs., Inc., 355 F. Supp. 2d 1190, 1209 (D. Kan. 2005) (travel is expense usually charged to client, and therefore court has discretion to award to prevailing party).

## V.    Conclusion

Pursuant to Section 1988, the Court awards plaintiffs $175,317.50 in attorneys' fees and $980.92 in expenses.

---

[13]    Plaintiffs state that they seek $977.32, but the items which purportedly make up that number actually come out to $980.92.  See Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Costs (Doc. #79) at 23.

**IT IS THEREFORE ORDERED** that <u>Plaintiffs' Motion For Attorneys' Fees And Costs</u> (Doc. #66) filed February 6, 2020 is **SUSTAINED in part.  Defendants must pay plaintiffs $175,317.50 in attorneys' fees and $980.92 in expenses.**

Dated this 15th day of July, 2020 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

-23-